IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

RICHARD ROGERS, individually and on behalf of similarly situated individuals,

    Plaintiff,

v.

BNSF RAILWAY COMPANY,

    Defendant.

Case No. 1:19-cv-03083

Hon. Matthew F. Kennelly

**DEFENDANT BNSF RAILWAY COMPANY'S
MEMORANDUM OF LAW IN SUPPORT OF ITS
MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT**

Despite informing the Court that Plaintiff intended to respond to Defendant BNSF Railway Company's ("BNSF") motion to dismiss, which argued that Plaintiff's claim was preempted by several federal statutes, Plaintiff instead filed his First Amended Complaint (the "FAC").[1] In a bald attempt to circumvent BNSF's preemption arguments, the FAC now alleges—without any real explanation—that BNSF has violated Illinois' Biometric Information Privacy Act, 740 ILCS 14/1, *et seq.* ("BIPA"), by purportedly "requir[ing] truck drivers, including Plaintiff, who visit specific facilities to provide their biometric identifiers, in the form of fingerprints and related biometric information, ***in order to efficiently process*** individuals and truck drivers into its facilities." FAC ¶ 3.

Plaintiff's new allegation replaces Plaintiff's original allegation that BNSF "requires truck drivers who visit its facilities, including Plaintiff, to provide their biometric identifiers, in the form fingerprints and related biometric information to identify which individuals and truck drivers are visiting its facilities and ***for security purposes***."[2] *Compare* Compl. ¶ 3 (ECF 1-1) *with* FAC ¶ 3 (emphasis added). In fact, if the Court compares the original Complaint with the FAC, it would notice that essentially all Plaintiff did to "amend" his allegations was to delete the phrase "for security purposes," replace that phrase with "in order to efficiently process," and add a few conclusory allegations about how *now* BNSF's alleged collection of "biometric identifiers" was never about security, but instead to "allow[] Defendant to handle incoming and outgoing loads more efficiently than it would be able to using traditional identification and verification methods."

---

[1] By Federal Rule 15(a)(1), Plaintiff's FAC was due on July 5, 2019 – twenty-one days after BSNF filed its motion to dismiss. *See* Fed. R. Civ. P. 15(a)(1). On July 1, 2019, Plaintiff's counsel asked if BNSF would agree to an extension of this deadline until July 12, 2019. While BNSF agreed to such an extension, Plaintiff did not move the Court for leave or an order to extend his deadline to amend.

[2] BNSF does not concede that any of Plaintiff's allegations are true or that it collects, stores, uses, or disseminates "biometric identifiers" or "biometric information" as defined by BIPA. However, for purposes of a motion to dismiss, the Court must "accept[] as true all well-pleaded facts alleged, and draw[] all possible inferences in [the plaintiff's] favor." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008).

*See* FAC ¶ 24.

Despite Plaintiff's attempt at circumvention, his allegations still fail as a matter of law. While Plaintiff attempts to craft his pleadings to avoid the word "security," it is plain from the FAC that any alleged "collection" of "biometrics" was done in order to ensure that BNSF could control access to its facilities and verify that those who entered its property are, in fact, who they say they are (in other words, still for security purposes). As such, the FAC still ignores the intent and prerogative of the federal government, under the Federal Railroad Safety Act of 1970, 49 U.S.C. § 20101, *et seq.* (the "FRSA") and related federal safety and security laws, to require America's railway carriers—including BNSF—to utilize enhanced security measures, including biometrics, to prevent unauthorized entry to their facilities.

Because Plaintiff's BIPA claim is premised entirely on BNSF's alleged collection, use, and dissemination of biometric information for security purposes only (despite Plaintiff's attempts to avoid the phrase), the FAC is preempted by the FRSA and should therefore be dismissed with prejudice. But even if Plaintiff's claims were not premised on BNSF's security, the FAC should still be dismiss because it is preempted by the Interstate Commerce Commission Termination Act, 49 U.S.C. § 10101 *et seq.* (the "ICCTA") and the Federal Aviation Administration Authorization Act, 49 U.S.C. § 14501(c) ("FAAAA"). In the alternative, the FAC should be dismissed because Plaintiff also fails to plead negligence, recklessness, or intent and therefore fails to plead an actionable BIPA violation.

## BACKGROUND

On April 4, 2019, Plaintiff Richard Rogers filed a Class Action Complaint in the Circuit Court of Cook County, purporting to bring an action against BNSF for alleged BIPA violations. *See* Compl., ECF 1-1. BNSF removed the action and moved to dismiss the Complaint. *See* Not. of Removal, ECF 1; Mot. to Dismiss, ECF 12. Plaintiff filed the FAC on July 12, 2019. FAC,

ECF 18. BNSF is "one of the largest freight railroad networks and railroad operators in North America." FAC ¶ 2. The company moves a variety of products, serves more than 40 ports, spans 28 states, operates 25 intermodal facilities and over 8,000 locomotives, and has an average of 1,500 trains in service each day. *See* BNSF Railway Company, *Fact Sheet*, BNSF, *available at* https://www.bnsf.com/about-bnsf/pdf/fact_sheet.pdf (last accessed July 25, 2019) (attached as **Exhibit A**).[3]

Plaintiff alleges that he "worked as a truck driver for a third party logistics company." FAC ¶ 18. There are nearly 1.8 million heavy and tractor trailer truck drivers operating on America's roads. *See* Bureau of Labor Statistics, *Heavy and Tractor-trailer Truck Drivers*, Occupational Outlook Handbook, *available at* https://www.bls.gov/ooh/transportation-and-material-moving/heavy-and-tractor-trailer-truck-drivers.htm.[4] Plaintiff alleges that BNSF "requires truck drivers, including Plaintiff, who visit specific facilities to provide their biometric identifiers, in the form of fingerprints and related biometric information, in order to efficiently process individuals and truck drivers into its facilities." FAC ¶ 3. Specifically, Plaintiff claims that his "work as a truck driver required him to visit various railyards, including those owned and operated by [BNSF], to pick up and drop off various loads." *Id.* ¶ 19. He alleges that at "certain facilities, Plaintiff was required to scan his biometric identifier and/or biometric information into biometrically-enabled identity verification devices and associated technology, such as Defendant's RailPASS mobile application and kiosks (the 'Biometric System')." *Id.* Plaintiff also alleges that

---

[3] The Seventh Circuit has approved taking judicial notice of reliable information published on the internet in the motion to dismiss context. *See Austin v. Am. Ass'n of Neurological Surgeons*, 253 F.3d 967, 971 (7th Cir. 2001) ("[T]here is an abundance of up-to-date relevant [medical] literature easily retrievable from the World Wide Web . . . . [referring to various websites]."); *Weaver v. Hollywood Casino-Aurora, Inc.*, 255 F.3d 379, 384 (7th Cir. 2001).

[4] "The Court may of course judicially notice public records and government documents, including those available from reliable sources on the Internet." *Bova v. U.S. Bank, N.A.*, 446 F. Supp. 2d 926, 931 n.2 (S.D. Ill. 2006) (citations omitted).

"[u]sing the Biometric System, Defendant collected, captured, stored, and otherwise obtained biometric identifiers and associated biometric information from Plaintiff and other truck drivers to *track their access to its facilities* …" *Id.* ¶ 20 (emphasis added). He further alleges that BNSF "obtains and relies on data and information derived from biometric identifiers, *i.e.* biometric information" in order to, among other things, "*maintain access records*." *Id.* ¶ 38 (emphasis added).

Plaintiff alleges that BNSF violated BIPA by: (1) failing to obtain a written release from Plaintiff before obtaining his biometric information (*id.* ¶ 40); (2) failing to provide a written disclosure regarding BNSF's use of biometric information and the purpose or duration of such use (*id.*); (3) failing to obtain Plaintiff's consent before disseminating his biometric information to any "technology vendors" (*id.* ¶ 26); and (4) failing to make publicly available a retention and destruction schedule for Plaintiff's biometric information. *Id.* ¶ 41.

## ARGUMENT

To overcome a motion to dismiss under Rule 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim has facial plausibility "when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct the complaint has alleged," the court must dismiss the complaint. *Id.* at 679. While "[f]ederal preemption is an affirmative defense," *Vill. of DePue v. Exxon Mobil Corp.*, 537 F.3d 775, 786 (7th Cir. 2008), if, as is the case here, "a plaintiff's complaint nonetheless sets out all of the elements of an affirmative defense, dismissal under Rule 12(b)(6) is appropriate." *Indep. Tr. Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 935 (7th Cir. 2012).

A.   **PLAINTIFF'S BIPA CLAIM IS PREEMPTED BY THREE SEPARATE FEDERAL STATUTES**

Preemption "operates to prevent the enforcement of state laws that conflict with federal laws or regulations." *Fifth Third Bank v. CSX Corp.*, 415 F.3d 741, 745 (7th Cir. 2005).[5] In the present matter, Plaintiff's BIPA claim is precluded by the FRSA, the ICCTA, and the FAAAA. BNSF does not contend that Congress has preempted BIPA. Rather, Congress, through the FRSA, ICCTA, and FAAAA, has precluded the application and enforcement of BIPA in the context now before the Court. And this is not the first time that a BIPA claim was subject to dismissal due to federal preemption. While BNSF is not aware of any BIPA actions dismissed due to FRSA, ICCTA, or FAAAA preemption, the Seventh Circuit recently affirmed the dismissal of a BIPA case due to federal preemption under the Railway Labor Act, 45 U.S.C. § 181, *et seq.* (the "RLA"). *Miller v. Sw. Airlines Co.*, 926 F.3d 898, 905 (7th Cir. 2019). Accordingly, because Plaintiff's claims are expressly preempted by federal law, the FAC should be dismissed with prejudice.[6]

   1.   **Plaintiff's BIPA Claim Is Preempted by the FRSA.**

Congress enacted the FRSA to "promote safety in every area of railroad operations and reduce railroad-related accidents and incidents." 49 U.S.C. § 20101. Congress expressly authorized the Secretary of Transportation to "prescribe regulations and issue orders for *every area*

---

[5] There are three categories of federal preemption: (1) express preemption (when congress declares its intention to preempt state regulation through a direct statement in the text of a law); (2) implied preemption (the structure and purpose of the federal law shows Congress's intention to preempt the field); and (3) conflict preemption (when a state and federal law conflict so that it is impossible for a party to comply with both laws). *Fifth Third Bank*, 415 F.3d at 745–46 (citing *English v. Gen. Elec. Co.*, 496 U.S. 72, 79 (1990)).

[6] Even if Plaintiff's BIPA claim was not expressly preempted by the FRSA (it is), Plaintiff's claim would also be preempted by implication and by actual conflict. While some courts only consider express preemption when a federal statute "contains an express preemption provision," *e.g.*, *BNSF Ry. Co. v. Box*, 470 F. Supp. 2d 855, 866 (C.D. Ill. 2007), the U.S. Supreme Court has held that a statute's express preemption provision does not preclude implied and/or actual conflict preemption from also applying. *See, e.g.*, *Geier v. Am. Honda Motor Co.*, 529 U.S. 861, 884-85 (2000); *see also Haynes v. Nat'l R.R. Passenger Corp.*, 423 F. Supp. 2d 1073, 1082-84 (C.D. Cal. 2006) (holding plaintiffs' failure to warn claim regarding defendant's train seating configuration was not expressly preempted by FRSA but was nonetheless preempted "based on the Commerce Clause" where "[c]onflicting jury verdicts on [the question of defendant's seating configuration] would have a direct effect on the trains and create a significant burden on interstate passenger train travel").

*of railroad safety*" and "[w]hen prescribing a security regulation or issuing a security order that affects the safety of railroad operations" consult with the Secretary of Homeland. 49 U.S.C. § 20103(a) (emphasis added). To ensure that laws, regulations, and orders related to railroad safety and security are uniform, Congress included an express preemption provision in the FRSA. 49 U.S.C. § 20106. Under that provision, once the Secretary of Transportation (with respect to railroad safety matters), or the Secretary of Homeland Security (with respect to railroad security matters), prescribes a regulation or issues an order related to railroad safety or security, a state generally may not adopt or "continue in force a law" that covers the same subject matters. 49 U.S.C. § 20106(a)(2).[7]

Under the FRSA's preemption provision, Plaintiff's BIPA claim is preempted if the FRSA and associated federal regulations "cover" the subject matter of Plaintiff's claim, *i.e.*, the "federal regulations substantially subsume the subject matter of the relevant state law." *CSX Transp., Inc. v. Easterwood*, 507 U.S. 658, 664 (1993); *see also Lundeen v. Canadian Pac. Ry. Co.*, 507 F. Supp. 2d 1006, 1011 (D. Minn. 2007) (noting that claims arising under state law "are preempted whenever federal regulations, adopted pursuant to the FRSA, address the same subject matter"). In fact, Plaintiff's BIPA claim is still preempted even if federal regulations do not specifically require BNSF to use biometric technology for security purposes. *See Lundeen v. Canadian Pacific Railroad Co.*, 507 F. Supp. 2d 1006 (D. Minn. 2007) ("[A] federal regulation may substantially subsume a particular subject matter when the FRSA examines a safety concern and affirmatively determines its goals will best be achieved by issuing a regulation directing railroads to develop a plan to address the concern, thus granting them the flexibility to adjust specific requirements to

---

[7] In the rare circumstances that a state may continue to enforce such a law, that law must be: (1) necessary to eliminate or reduce an essentially local safety or security hazard; (2) not incompatible with a law, regulation, or order of the United States Government; <u>and</u> (3) not unreasonably burden interstate commerce. 49 U.S.C. § 20106.

their individual circumstances."); *see also In re Derailment Cases*, 416 F.3d 787, 794 (8th Cir. 2005) ("[A] regulatory framework need not impose bureaucratic micromanagement in order to substantially subsume a particular subject matter.").[8] Here, the federal government has promulgated rules and regulations that require BNSF to control access to its facility and ensure it knows who comes on and off its property, and in doing so, these rules and regulations preclude Plaintiff's BIPA claim.

For example, in 2007, Congress required the Secretary of the Department of Homeland Security ("DHS") to promulgate regulations requiring railroad carriers to "prepare, submit to the Secretary for approval, and implement a security plan" that addresses security vulnerabilities and "establish standards and guidelines, based on and consistent with the risk assessment and National Strategy for Railroad Transportation Security … for developing and implementing the vulnerability assessments and security plans for railroad carriers." 6 U.S.C § 1162(a). Among the security vulnerabilities identified by Congress are concerns about "physical security" and "alarms, cameras, and other protections systems" at "critical railroad carrier assets and infrastructure, including platforms, stations, intermodal terminals, tunnels, bridges, switching and storage areas, and information systems." *Id.* at § 1162(d). The resulting DHS regulations require, *inter alia*, that "[t]he rail hazardous materials shipper and the rail hazardous materials receiver must use physical security measures to ensure that no unauthorized person gains access to the rail secure area." 49

---

[8] Congress amended the FRSA in 2008, adding "[c]larification regarding State law causes of action." *See* 49 U.S.C. § 20106(b) (noting that certain claims arising under state law are not preempted where a plaintiff alleges that the defendant "(A) has failed to comply with the Federal standard of care established by a regulation or order issued by the Secretary of Transportation . . . , or the Secretary of Homeland Security . . .; (B) has failed to comply with its own plan, rule, or standard that it created pursuant to a regulation or order issued by either of the Secretaries; or (C) has failed to comply with a State law, regulation, or order that is not incompatible with subsection (a)(2)."); *Lundeen v. Canadian Pacific Ry. Co.*, 532 F.3d 682, 688-90 (8th Cir. 2008). This amendment does not impact BNSF's argument, as Plaintiff does not (and cannot) allege that BNSF failed to comply with any "Federal standard of care" or any plan, rule, or standard created by BNSF.

C.F.R. § 1580.107.[9] BNSF is such a rail hazardous materials shipper. *See* Safely Transporting Hazardous Materials, BNSF, https://www.bnsf.com/in-the-community/safety-and-security/railway-safety/hazmat-safety.html (last accessed July 25, 2019) (listing hazmat cargo that customers ship with BNSF).

The federal government also requires that anyone transporting certain hazardous materials "must develop and adhere to a transportation security plan" that conforms to government regulations. 49 C.F.R. § 172.800(b). These security plans must address unauthorized access by including "[m]easures to address the assessed risk that unauthorized persons may gain access to the hazardous materials" that are stored or transported. *Id.* § 172.802. "To avoid unnecessary duplication of security requirements, security plans that conform to regulations, standards, protocols, or ***guidelines issued by other Federal agencies***, international organizations, or ***industry organizations*** may be used to satisfy the requirements" of this regulation. *Id.* § 172.804 (emphasis added). To that end, numerous federal agencies and industry organizations have long encouraged and/or endorsed the use of biometric technology to increase security in the nation's transit system.

For example, DHS's Critical Infrastructure and Key Resources Sector-Specific Plan from May 2007 (the "May 2007 Plan") notes under "[e]nhance infrastructure and conveyance security" that there was a need to "[i]mprove detection and deterrence, including integration of biometric-based systems." *See* May 2007 Plan at 90, *available at* Homeland Security Digital Library (HSDL), https://www.hsdl.org/?view&did=474328 (excerpt attached as **Exhibit B**).[10] The

---

[9] The regulation specifically notes that such rules are promulgated with the express preemptive effect provided under the FRSA. *Id.* § 1580.109.

[10] *See also* DOT's National Freight Strategic Plan ("DOT Freight Plan"), which is currently in draft form available for public comment and which includes a case study of the Electronic Freight Manifest System ("EFM") used at Chicago O'Hare International Airport and New York City-JKF International Airport, where "[o]n top of the economic benefits, the EFM system enhanced security through the use of ***biometrics*** and smart cards to document and control access to cargo." DOT Freight Plan at 102, *available at* https://www.transportation.gov/sites/dot.gov/files/docs/DRAFT_NFSP _for_Public_Comment_508_10%2015%2015%20v1.pdf (excerpt attached as **Exhibit C**).

Transportation Security Administration ("TSA") also already uses biometrics to control access to a certain type of intermodal transit facility—maritime infrastructure. "The Transportation Worker Identification Credential, also known as TWIC®, is a tamper- and counterfeit-resistant *biometric* smart card credential." TWIC® Card and Reader Technology, TSA, https://www.tsa.gov/for-industry/twic-card-reader-technology (last accessed July 25, 2019) (emphasis added). "TWIC® card technology is designed to work quickly and securely to confirm the eligibility of the individual presenting the card to access secure areas of the nation's maritime infrastructure … TWIC Readers confirm that: (1) the card is authentic and issued by TSA; (2) the card has not expired; (3) that the card has not been revoked or reported lost or stolen; and (4) *through a biometric fingerprint match the person presenting the card is the rightful holder*." *Id.* (emphasis added).

In the present case, despite deleting the phrase "for security purposes" from his allegations, it is clear that any alleged "collection" of "biometrics" by BNSF is to allow BNSF to control access to its facilities as required by federal law. For example, Plaintiff alleges that "[u]sing the Biometric System, Defendant collected, captured, stored, and otherwise obtained biometric identifiers and associated biometric information from Plaintiff and other truck drivers to *track their access to its facilities* …" FAC ¶ 20 (emphasis added). He also alleges that BNSF "obtains and relies on data and information derived from biometric identifiers, *i.e.* biometric information" in order to, among other things, "*maintain access records*." *Id.* ¶ 38 (emphasis added). Such activity goes to the safety and security of BNSF's facilities and therefore, as alleged, Plaintiff's BIPA claims is "covered" (and preempted) by the FRSA and associated federal regulations.

Notably, courts have found a law preempted by the FRSA even when—like in this case—the conflicting law is not (on its face) specifically directed at safety or security. For example, in *Michigan Southern Railroad Co. v. City of Kendallville*, the Seventh Circuit analyzed "a municipal

ordinance regarding weed control" after the City of Kendallville sought declaratory and injunctive relief against a railroad that ran through the city. 251 F.3d 1152, 1153 (7th Cir. 2001). The Seventh Circuit noted that "[e]ven though the city does not argue that its ordinance is a safety provision—in fact argues that it is not—the railroad's argument that the ordinance has an impact on safety is not entirely farfetched." *Id.* at 1155. Ultimately, the Seventh Circuit held that "the existence of a vegetation control regulation . . . is solid evidence that the Secretary thinks vegetation control is a safety issue." *Id.* Because "[t]he Kendallville ordinance affirmatively violates a requirement set out in § 20106, which as we said requires that the state law, regulation, or order not place an unreasonable burden on interstate commerce," the court found that the FRSA preempted Kendallville's ordinance. *Id.*[11]

Like the *Kendallville* ordinance, BIPA is not a railroad security statute. And like *Kendallville*, there are federal regulations specific to railway safety and security that implicate the use of biometrics at BNSF's railyards. Federal agencies have endorsed biometric technology and, per federal regulation, guidelines from federal agencies or industry organization satisfy BNSF's requirements to implement a security plan for its facilities. Taking Plaintiff's allegations to be true, BIPA would require that BNSF obtain, maintain, and track over 1.8 million written disclosures and consents from the over 1.8 million heavy and tractor trailer truck drivers on America's roads, which impacts BNSF's prevention of unauthorized access to critical transit infrastructure and may place "an unreasonable burden on interstate commerce." *Kendallville*, 251 F.3d at 1154; *see also* 49 U.S.C. § 20106(a)(2)(C).

---

[11] The *Kendallville* court did not directly address whether the challenged ordinance qualified for the FRSA's "state participation exemption" because Kendallville never advanced the argument (likely because the Seventh Circuit would have been "unlikely to apply the state participation exception to a municipal ordinance"). *Kendallville*, 251 F.3d at 1154. The Seventh Circuit nonetheless held the ordinance to be preempted under the FRSA.

### 2. Plaintiff's BIPA Claim Is Preempted By The ICCTA

Even if Plaintiff's allegations were not about security (which fundamentally, they are) Plaintiff's BIPA claim is still preempted by the ICCTA, a statute conferring "exclusive" jurisdiction over the regulation of railroad transportation on the Surface Transportation Board. *See Wedemeyer v. CSX Transp., Inc.*, 850 F.3d 889, 894 (7th Cir. 2017). Like the FRSA, the ICCTA contains an express preemption provision:

> The jurisdiction of the Board over—
>
> > (1) transportation by rail carriers, and the remedies provided in this part with respect to rates, classifications, rules (including car service, interchange, and other operating rules), practices, routes, services, and facilities of such carriers; and
> >
> > (2) the construction, acquisition, operation, abandonment, or discontinuance of spur, industrial, team, switching, or side tracks, or facilities, even if the tracks are located, or intended to be located, entirely in one State,
>
> is exclusive. Except as otherwise provided in this part, the remedies provided under this part with respect to regulation of rail transportation are exclusive and preempt the remedies provided under Federal or State law.

49 U.S.C. § 10501(b). Congress defined "transportation" to include "***railroad property, facilities, and equipment*** related to the movement of passengers or property, or both, by rail." 49 U.S.C. § 10102(9) (emphasis added). "Congress's intent in the [ICCTA] to preempt state . . . regulation of railroad transportation has been recognized as broad and sweeping." *Union Pac. R. Co. v. Chicago Transit Auth.*, 647 F.3d 675, 678 (7th Cir. 2011). There are two ways state actions can be preempted by the ICCTA: "(1) categorical, or per se, preemption, and (2) as-applied preemption." *Wedemeyer*, 850 F.3d at 894.

Here, Plaintiff's BIPA claim is preempted as applied because it "would have the effect of preventing or unreasonably interfering with railroad transportation." *Id.* at 895; *see also Union Pac. R. Co.*, 647 F.3d at 681 (holding state's condemnation proceeding preempted by ICCTA

because it "would have a significant impact on railroad transportation by preventing Union Pacific from using the property for railroad transportation and by unreasonably interfering with existing transportation on the neighboring tracks"). As alleged, Plaintiff's claim interferes with BNSF's railroad transportation by interfering with BNSF's ability to "track [truck driver] access to its facilities, record which loads are being tendered by drivers to [BNSF], and record which loads are being removed by truck drivers from [BNSF's] facilities." FAC ¶ 20. Moreover, BNSF's alleged "biometrically-enabled security and identity verification devices and associated technology," (*id.* ¶ 19), directly implicate BNSF's "railroad property, facilities, and equipment related to the movement of passengers or property, or both, by rail" and thus implicate BNSF's "railroad transportation." *See, e.g.*, *Smith v. CSX Transp., Inc.*, 247 F. Supp. 3d 952, 957 (N.D. Ill. 2017) (holding plaintiffs' negligence claims preempted by ICCTA because "parking and idling of trains for extended periods of time on tracks adjacent to [plaintiffs'] property is necessary to the operation of CSX's railroad business"); *see also Del Grosso v. Surface Transp. Bd.*, 898 F.3d 139, 146 (1st Cir. 2018) (holding that "bagging, palletizing, and shrink-wrapping [wood pellets]" qualifies as "transportation" under the ICCTA because they "make it easier to transload the wood pellets from railcars to trucks"); *New York Susquehanna & W. Ry. Corp. v. Jackson*, 500 F.3d 238, 248 (3d Cir. 2007) ("[W]e hold that transloading operations are 'transportation' under the [ICCTA]."). Accordingly, Plaintiff's BIPA claim is preempted by the ICCTA, and the Complaint should be dismissed with prejudice.

        **3.     Plaintiff's BIPA Claim Is Preempted By The FAAAA**

Plaintiff's claim is also preempted by the FAAA. In passing the FAAAA, Congress expressly preempted states from enacting or enforcing any law "related to a price, route, or service of any motor carrier . . . with respect to the transportation of property." 49 U.S.C. § 14501(c); *Rowe v. N.H. Motor Transp. Ass'n*, 552 U.S. 364, 371 (2008). The FAAAA's preemption

provision "is most sensibly read . . . to mean States may not seek to impose its own public policies or theories of . . . regulation on the operations of" a broker or motor carrier." *See Am. Airlines, Inc. v. Wolens*, 513 U.S. 219, 229 n.5 (1995).[12]

Similar to the other federal laws which preempt Plaintiff's BIPA claims, FAAAA preemption is broad, meaning that state laws are preempted even if they only have an indirect effect on or have a connection with or reference to a motor carrier's prices, routes, or services, or if they have a significant impact "related to Congress' deregulatory and preemption related objectives." *Rowe*, 552 U.S. at 371–72. A claim is preempted under the FAAAA if: (1) the claim "concern[s] a motor carrier's transportation of property" (*Dan's City Used Cars, Inc. v. Pelkey*, 569 U.S. 251, 261 (2013)); (2) the claim (as opposed to the law under which it is advanced) "has a connection with, or reference to [motor carrier's] prices, routes, or services" (*Northwest, Inc. v. Ginsberg*, 572 U.S. 273, 284 (2014)); and (3) the claim emanates from a "state-imposed obligation." *Id.* at 285; *see also Am. Airlines, Inc.*, 513 U.S. at 232). Here, Plaintiff's BIPA claim satisfies all three conditions.

First, "transportation" means, "services related to the movement of property, including arranging for, receipt, delivery, elevation, transfer in transit . . . storage, handling . . . and interchange of passengers and property." *Dan's City Used Cars, Inc.*, 569 U.S. at 261. On the face of the FAC, Plaintiff alleges that BNSF "collected" his "biometrics" when BNSF purportedly "required [him] to scan his biometric identifier and/or biometric information into biometrically-enabled identity verification devices and associated technology" when Plaintiff would "pick up

---

[12] While *Wolens* dealt with the Airline Deregulation Act, the FAAAA's preemption language mirrors the preemption provision of the Airline Deregulation Act. The Supreme Court has stated that courts should follow the same preemption analysis of Airline Deregulation Act cases in determining the FAAAA's preemptive scope. *See, e.g.*, *Rowe*, 552 U.S. at 370 ("We have said that 'when judicial interpretations have settled the meaning of an existing statutory provision, repetition of the same language in a new statute indicates, as a general matter, the intent to incorporate its judicial interpretations as well.'") (citation omitted).

and drop off various loads." FAC ¶ 19, 39. Simply put, the heart of Plaintiff's BIPA claim—the "collection" of "biometrics"—is an essential aspect of his ability to transport property in and out of BNSF facilities.

Second, Plaintiff alleges that he is a truck driver who, on behalf of his third party logistics employer, must provide his "fingerprints" to gain access to BNSF facilities to pick up and drop off freight. FAC ¶¶ 18–19. Again, as alleged, Plaintiff's BIPA claim is an essential element to his ability to provide his services. The fact that this alleged requirement is implemented by BNSF in its capacity as a railyard operator is of no importance. Instead, all that matters is that Plaintiff's claim bears directly on how he provides delivery services. *See Rowe*, 552 U.S. at 373 (finding FAAAA preempted shipping regulation because it impacted manner in which motor carrier provided services); *Am. Trucking Ass'n, Inc. v. City of Los Angeles*, 569 U.S. 641, 652 (2013) ("We have often rejected efforts by States to avoid preemption by shifting their regulatory focus from one company to another in the same supply chain.").

Finally, Plaintiff's claim is clearly based on a state-imposed obligation, specifically BIPA. *See* FAC ¶ 36–44. Accordingly, Plaintiff's BIPA claim is preempted under the FAAAA.

**B.     ALTERNATIVELY, PLAINTIFF FAILS TO PLEAD A RECKLESS OR NEGLIGENT VIOLATION OF BIPA**

Even if Plaintiff's claim is not preempted by federal law (which it is), it should be dismissed because Plaintiff fails to plead negligence, recklessness, or intent and therefore fails to plead an actionable BIPA violation. Plaintiff's claim fails because BIPA "only subjects violators to statutory damages if there is negligence or willfulness." *Rivera v. Google Inc.*, 238 F. Supp. 3d 1088, 1104 (N.D. Ill. 2017). BIPA's statutory damages provision provides:

> A prevailing party may recover for each violation . . . against a private entity that ***negligently*** violates a provision of this Act, liquidated damages of $1,000 or actual damages, whichever is greater; against a private entity that ***intentionally or***

> *recklessly* violates a provision of this Act, liquidated damages of $5,000 or actual damages, whichever is greater.

740 ILCS 14/20(1)–(2) (emphasis added). In other words, not every violation of BIPA is actionable. Rather, Plaintiff must allege (and eventually prove) more than a mere violation—he must show that BNSF acted *negligently*, *recklessly*, or *intentionally* in violating BIPA. *See id.* Allowing Plaintiff to meet his pleading obligation related to alleged negligence, recklessness, or intent by simply alleging a mere violation would render superfluous those terms in the statute. *See People v. Trainor*, 752 N.E.2d 1055, 1063 (Ill. 2001). Because there is a difference between a BIPA violation and an actionable BIPA violation, Plaintiff must plead culpability.

Here, Plaintiff pleads no facts suggesting that BNSF acted negligently, recklessly, or intentionally. He merely requests an Order "[a]warding statutory damages of $5,000 for each willful and/or reckless violation" and "statutory damages of $1,000 for each negligent violation." FAC at p. 10. At no point does Plaintiff allege facts establishing negligence or recklessness, nor identify which alleged BIPA violation was negligent and which was reckless, instead leaving this Court (and BNSF) guessing which is which. This falls short of his pleading burden, and Plaintiff's Complaint should therefore be dismissed.[13]

## CONCLUSION

For the foregoing reasons, Plaintiff's Amended Class Action Complaint should be dismissed with prejudice.

---

[13] At the very least, the Court should strike Plaintiff's prayer for the $5,000 statutory award. FAC at 10. Nothing in the Complaint suggests that BNSF recklessly or intentionally violated any duty owed to Plaintiff. To plead recklessness or intent, a plaintiff "must first plead the elements of negligence . . . and then also plead a heightened state of mind." *Papadakis v. Fitness 19 IL 116, LLC*, 2018 IL App (1st) 170388, ¶ 22, 2018 WL 3203621, at *4 (Ill. App. Ct. 2018). Plaintiff simply asks for "statutory damages of $5,000 for each willful and/or reckless violation"—again, without pleading which violation was which. Put simply, Plaintiff alleges no facts suggesting negligence—let alone recklessness or intent.

Dated: July 26, 2019          Respectfully submitted,

                                           **BNSF RAILWAY COMPANY**

                                           By: */s/ Elizabeth B. Herrington*
                                                    By Its Attorneys

                                                    Elizabeth B. Herrington
                                                    Alex D. Berger
                                                    Tyler Z. Zmick
                                                    MORGAN, LEWIS & BOCKIUS LLP
                                                    77 West Wacker Drive
                                                    Chicago, IL 60601-5094
                                                    Telephone: +1.312.324.1000
                                                    Facsimile: +1.312.324.1001
                                                    beth.herrington@morganlewis.com
                                                    alex.berger@morganlewis.com
                                                    tyler.zmick@morganlewis.com

## **CERTIFICATE OF SERVICE**

I, Elizabeth B. Herrington, hereby certify that on this 26th day of July, 2019, I caused a copy of the foregoing DEFENDANT BNSF RAILWAY COMPANY'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT to be served upon all counsel of record via the Court's CM/ECF system.

*/s/ Elizabeth B. Herrington*
Elizabeth B. Herrington