**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**


| | | |
|---|---|---|
| **RICHARD ROGERS, individually and on behalf of similarly situated individuals,** | ) ) ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 19 C 3083** |
| | ) | |
| **BNSF RAILWAY COMPANY,** | ) | |
| | ) | |
| **Defendant.** | ) | |


**<u>MEMORANDUM OPINION AND ORDER</u>**

MATTHEW F. KENNELLY, District Judge:

Richard Rogers has sued BNSF Railway Company on behalf of a putative class

for violations of the Illinois Biometric Information Privacy Act (BIPA). In his amended

complaint, Rogers alleges that he is a truck driver who at times visits BNSF railyards to

pick up and drop off loads. At some BNSF facilities, Rogers alleges, he is required to

scan a biometric identifier—such as a fingerprint or hand scan—into identity verification

devices, including BNSF's RailPASS mobile application and kiosks. According to

Rogers, BNSF collects and stores this information and has done so without providing

him and others similarly situated with written disclosures regarding the purpose and

duration of its use of the information; without making available its retention or

destruction policies; and without obtaining informed written consent from him and others

similarly situated—all of which, he alleges, the BIPA requires.

The BIPA requires a private entity that possesses biometric identifiers or

information to develop and make available to the public a written policy establishing a

retention schedule and guidelines for permanently destroying the information when the

initial purpose for collecting it has been satisfied or within three years of a person's last

interaction with the entity, whichever is sooner. 740 ILCS 14/15(a). In addition, the

BIPA prohibits a private entity from collecting or obtaining a person's biometric identifier

or information unless it first informs the person or her legally authorized representative

in writing that the information is being collected or stored, as well as the purpose and

length of term of the collection, storage, and use, and receives a written release

executed by the person or her legally authorized representative. *Id.* § 15(b)(1)-(3). The

statute also restricts disclosure and dissemination of biometric information and

regulates its storage. *Id.* § 15(c)-(e). The BIPA provides a right of action to a person

aggrieved by a violation of the statute and permits a prevailing party to recover actual

damages or liquidated damages of $1,000 for a negligent violation or $5,000 for an

intention or reckless violation. *Id.* § 20.

BNSF has moved to dismiss Rogers's amended complaint under Federal Rule of

Civil Procedure 12(b)(6) for failure to state a claim. It contends that Rogers's BIPA

claim is preempted by one or more of three federal statutes and that Rogers has failed

to adequately allege a negligent or reckless violation of the BIPA.

In considering a motion to dismiss under Rule 12(b)(6), the Court takes the

complaint's factual allegations as true and draws reasonable inferences in the plaintiff's

favor. *See, e.g., United Cent. Bank v. Davenport Estate LLC*, 815 F.3d 315, 318 (7th

Cir. 2016). Dismissal is appropriate only if the complaint does not allege enough facts

to state a claim for relief that is plausible on its face. *See, e.g., O'Boyle v. Real Time*

*Resolutions, Inc.*, 910 F.3d 338, 342 (7th Cir. 2018).

The Court notes that preemption is an affirmative defense. Dismissal under Rule 12(b)(6) based on an affirmative defense is proper only if it is clear from the complaint and matters of which the court may take judicial notice that the claims are barred as a matter of law, *see, e.g., Parungao v. Cmty. Health Sys., Inc.*, 858 F.3d 452, 457 (7th Cir. 2017), that is, only if the complaint "admits all the ingredients of an impenetrable defense." *Xechem, Inc. v. Bristol-Myers Squibb Co.*, 372 F.3d 899, 901 (7th Cir. 2004).

## 1. Preemption

A state statute must give way if it conflicts with or frustrates federal law. U.S. Const., art. VI, cl. 2; *CSX Transp., Inc. v. Easterwood*, 507 U.S. 658, 663 (1993); *Union Pac. R. Co. v. Chi. Transit Auth.*, 647 F.3d 675, 678 (7th Cir. 2011). But "[i]n the interest of avoiding unintended encroachment on the authority of the States . . ., a court interpreting a federal statute pertaining to a subject traditionally governed by state law will be reluctant to find pre-emption. Thus, pre-emption will not lie unless it is the clear and manifest purpose of Congress." *Easterwood*, 507 U.S. at 663-64 (internal quotation marks omitted). A court considers the text and structure of the federal statute to find evidence of preemptive purpose. *Id.* at 664. "If the statute contains an express pre-emption clause, the task of statutory construction must in the first instance focus on the plaining wording of the clause, which necessarily contains the best evidence of Congress' pre-emptive intent." *Id.*; *see also Dan's City Used Cars, Inc. v. Pelkey*, 569 U.S. 251, 260 (2013).

BNSF argues that three federal statutes preempt Rogers's BIPA claim: the Federal Railroad Safety Act (FRSA), the Interstate Commerce Commission Termination

Act (ICCTA), and the Federal Aviation Administration Authorization Act (FAAAA).  The

Court will address each, starting with the ICCTA.

**a.     ICCTA**

In the ICCTA, Congress "expressly conferred on the [Surface Transportation]

Board exclusive jurisdiction over the regulation of railroad transportation."  *Chi. Transit*

*Auth.*, 647 F.3d at 678 (internal quotation marks omitted).  The operative provision of

the statute reads as follows:

> The jurisdiction of the Board over—
>
> (1) transportation by rail carriers, and the remedies provided in this part  with respect to rates, classifications, rules (including car service, interchange, and other operating rules), practices, routes, services, and facilities of such carries; and
>
> (2) the construction, acquisition, operation, abandonment, or discontinuance of spur, industrial, team, switching, or side tracks, or facilities, even if the tracks are located, or intended to be located, entirely in one State,
>
> is exclusive.  Except as otherwise provided in this part, the remedies provided under this part with respect to the regulation of rail transportation are exclusive and preempt the remedies provided under Federal or State law.

49 U.S.C. § 10501(b).  The statute defines "transportation" to include railroad property

"related to the movement of passengers or property, or both, by rail" as well as

"services related to that movement."  *Id.* § 10102(9)(A)-(B).

The BIPA has nothing do to with regulating rail transportation.  BNSF points out,

accurately, that given the definition of "transportation," the ICCTA's preemption

provision applies to railroad property and facilities that are related to movement of

persons or property.  But that does not mean that the BIPA amounts to a regulation of

rail transportation.  The statute imposes no limits or restrictions on the movement of

property or persons.  Rather, it imposes disclosure, consent, and recordkeeping

requirements related not to transportation of persons or property but rather to certain

types of information.

BNSF also argues that enforcing the BIPA against it "would have the effect of

preventing or unreasonably interfering with railroad transportation," and if that were the

case the statute would in fact be preempted as applied to BNSF.  *See Wedemeyer v.*

*CSX Transp., Inc.*, 850 F.3d 889, 894-95 (7th Cir. 2017); *Chi. Transit Auth.*, 647 F.3d at

681.  But as Rogers notes, there is no basis to support this contention in the record

currently before the Court.  Specifically, there is nothing inherent in the BIPA's

requirements suggesting that compliance with or enforcement of the statute has any

bearing on how BNSF operates trains or tracks, and nothing in Rogers's complaint that

suggests anything of the kind.  Any impact of the BIPA's disclosure, consent, and

recordkeeping requirements on BNSF's rail transportation operations is—on the present

record at least—not just indirect but also highly speculative.

As Rogers argues, his claims involve, in substance, tortious acts committed by a

landowner that happens to be a railroad company, acts that do not have anything to do

with rail transportation.  The ICCTA's preemption provision does not reach that far.  *See*

*Smith v. CSX Transp., Inc.*, 247 F. Supp. 3d 952, 956 (N.D. Ill. 2017).  BNSF has not

shown unreasonable interference with rail transportation, as required to sustain a

preemption defense based on the ICCTA.

**b.    FAAAA**

Congress deregulated trucking in 1980, and in 1994 it sought to preempt state

trucking regulation as part of the FAAAA.  It borrowed language from the Airline

Deregulation Act of 1978 that says:  "[A] State . . . may not enact or enforce a law . . .

related to a price, route, or service of any motor carrier . . . with respect to transportation

of property."  29 U.S.C. § 14501(c)(1).  The ordinary meaning of "related to" is a broad

one, and thus the statute's use of those words "expresses a broad preemptive purpose."

*Dan's City Used Cars*, 569 U.S. at 260 (internal quotation marks omitted).  Specifically,

a state law or enforcement action that has a connection with or reference to carrier

rates, routes, or services is preempted by the FAAAA, even if the effect "is only

indirect."  *Rowe v. N.H. Motor Transp. Ass'n*, 552 U.S. 364, 370 (2008) (citing *Morales*

*v. Trans World Airlines, Inc.*, 504 U.S. 374, 384, 386 (1992).  Preemption occurs "at

least where state laws have a 'significant impact' related to Congress' deregulatory and

pre-emption-related objectives."  *Rowe*, 552 U.S. at 371 (quoting *Morales*, 504 U.S. at

390).  But the FAAAA does not preempt state laws "affecting carrier prices, routes, and

services in only a tenuous, remote, or peripheral manner."  *Dan's City Used Cars*, 569

U.S. at 261 (internal quotation marks and ellipsis omitted).   And consistent with the

statute's language, to be preempted, the state law "must . . . concern a motor carrier's

'transportation of property.'"  *Id.*

The BIPA does not refer to, and has no connection with, motor carrier services,

rates, or routes, and it does not concern transportation of property.  Rather, it is a

generally-applicable statute that in this situation just happens to apply to a railroad.  And

as with the ICCTA, BNSF has not made a showing of any impact on its services (let

alone a significant impact, assuming that is required); any such contention is highly

speculative, to say the least.  Preemption under the ICCTA occurs if the effect of the

state regulation is that carriers will have to offer delivery services that differ significantly

6

from what the market might dictate absent the regulation. *Rowe*, 552 U.S. at 373.

BNSF has not shown that is the case here. In sum, at least on the present record, the

impact of the BIPA on motor carrier prices, routes, or services is "too tenuous, remote,

or peripheral" to give rise to FAAAA preemption. *Costello v. BeavEx, Inc.*, 810 F.3d

1045, 1055 (7th Cir. 2016).

### c.     FRSA

Congress enacted the FRSA "to promote safety in all areas of railroad operations

and to reduce railroad-related accidents, and to reduce deaths and injuries to persons .

. . ." 45 U.S.C. § 20101; *Easterwood*, 507 U.S. at 661. To this end, the FRSA provides

that laws and regulations related to railroad safety and security "shall be nationally

uniform to the extent possible," 45 U.S.C. § 20103(a)(1), and it permits states to adopt

or continue laws, regulations and standards "related to railroad safety or security" only

until the Secretary of Transportation (for safety) or the Secretary of Homeland Security

(for security) "has adopted a rule, regulation, order, or standard covering the subject

matter of such State requirement." *Id.* § 20103(a)(2).

The question for purposes of FRSA preemption is whether the Secretaries of

Transportation or Homeland Security have issued regulations "covering" the same

subject matter as the BIPA. *Easterwood*, 507 U.S. at 664. The term "covering" requires

the party claiming preemption of a state law to "establish more than that [federal

regulations] touch upon or relate to [the] subject matter" of the state law, *id.*; "pre-

emption will lie only if the federal regulations substantially subsume the subject matter

of the relevant state law." *Id.*

BNSF identifies no federal regulation that governs collection or storage of

biometric information or that, more generally, prescribes use of such information to identify persons who enter railroad facilities. Rather, BNSF cites only a regulation that requires it to use physical security measures to ensure that unauthorized persons do not gain access to secure areas in railroad facilities—a regulation that does not on its face require collection of biometric information, let alone prescribe how it is to be collected or stored. This is far too general to have a preemptive effect vis-à-vis the BIPA. In the words of *Easterwood*, the regulation at most "touches upon" the same subject matter as the BIPA (and, frankly, even that is a stretch); it does not "substantially subsume" the subject matter of the BIPA.

*Michigan Southern R. Co. v. City of Kendallville*, 251 F.3d 1152 (7th Cir. 2001), cited by BNSF, is significantly different. There the court concluded that a local ordinance governing vegetation growth was preempted by a federal regulation that also regulated vegetation growth. *See id.* at 1155. The court noted that the Secretary of Transportation had found that vegetation growth was a railroad safety issue, but although this was a necessary condition for preemption of the local ordinance, it was not sufficient; the critical factor was that enforcement of the local ordinance in a railroad right-of-way would undermine Congress's and the Secretary's goal of uniform regulation of vegetation control in such areas. *See id.* There is no similar conflict here. Indeed, BNSF's suggestion that the BIPA's purported impact on safety is sufficient to require preemption runs headlong into the Seventh Circuit's rejection, in *Norfolk Southern Railway Co. v. Box*, 556 F.3d 571 (7th Cir. 2009), of a contention that "[a]ll state laws and regulations related to railroad safety and security are preempted." *Id.* at 573. As the court concluded in *Box*, the Supreme Court has understood the FRSA's use of the

8

word "cover" to give the FRSA "a relatively narrow scope compared with all safety-related issues." *Id.* (citing *Easterwood*, 507 U.S. at 664-65). The federal rules requiring railroads to adopt physical security measures do not "cover" the subject of disclosures and consents required to obtain and store biometric information—indeed, they make no mention at all of biometric information or other particular identification methods.

For these reasons, the Court concludes that BNSF is not entitled to dismissal based on preemption under the FRSA, the ICCTA, or the FAAAA.

## 2.      Adequacy of pleading

BNSF also argues that Rogers had not sufficiently alleged a negligent, reckless, or intentional violation of the BIPA. Essentially BSNF's contention is that the allegations of negligence and recklessness are conclusory and unsupported. Federal Rule of Civil Procedure 9(b), however, says that intent, knowledge, and other conditions of a person's mind "may be alleged generally," and thus the question before the Court is whether Rogers's complaint meets Rule 8's plausibility requirement. It does. As Rogers points out, the BIPA took effect more than ten years ago, and if the allegations of his complaint are true—as the Court must assume at this stage—BNSF has made no effort to comply with its requirements. This is certainly enough, at the pleading stage, to make a claim of negligence or recklessness plausible. It is true that Rogers does not plead details regarding what BNSF knew or did not know and when, but Rule 8 "does not demand that a plaintiff prove his case at the outset of the litigation," *Alexander v. United States*, 721 F.3d 418, 424 (7th Cir. 2013), and more pertinent here, the rule "does [not] demand that a plaintiff come to court ready to plead facts . . . that he has no way of knowing prior to discovery." *Id.*

**Conclusion**

For the reasons stated above, the Court denies defendant's motion to dismiss

[dkt. no. 19].

Date:  October 31, 2019

_____
MATTHEW F. KENNELLY
United States District Judge