**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| RICHARD ROGERS, individually and on behalf of all others similarly situated, | ) ) ) | |
| *Plaintiff*, | ) ) ) | No. 19-cv-03083 |
| v. | ) ) | |
| BNSF RAILWAY COMPANY, a Delaware corporation, | ) ) ) | Hon. Matthew F. Kennelly |
| *Defendant*. | ) ) ) | |
| _____ | ) | |

## PLAINTIFF'S MOTION AND MEMORANDUM OF LAW IN SUPPORT OF CLASS CERTIFICATION

Plaintiff Richard Rogers, by and through his undersigned counsel, pursuant to Fed. R. Civ.

P. 23, moves for entry of an order certifying the Class proposed below, appointing Plaintiff as

Class Representative, and appointing Plaintiff's attorneys as Class Counsel. In support of his

Motion, Plaintiff submits the following Memorandum of Law.

Dated: August 17, 2021

Respectfully submitted,

RICHARD ROGERS, individually, and on behalf of similarly situated individuals

By: /s/ *David L. Gerbie*
One of Plaintiff's Attorneys

Myles McGuire
Evan M. Meyers
David L. Gerbie
Brendan Duffner
MCGUIRE LAW, P.C.
55 W. Wacker Drive, 9th Fl.
Chicago, Illinois 60601
Tel: (312) 893-7002
Fax: (312) 275-7895
mmcguire@mcgpc.com

emeyers@mcgpc.com
dgerbie@mcgpc.com
bduffner@mcgpc.com
*Counsel for Plaintiff and the Putative Class*

## <u>TABLE OF CONTENTS</u>

Table Of Authorities ................................................................................................................ iv

I.      INTRODUCTION .........................................................................................................1

II.     FACTUAL BACKGROUND ........................................................................................4

        A.     The Illinois Biometric Information Privacy Act ........................................................4

        B.     The Underlying Misconduct ........................................................................................4

        C.     The Proposed Class ......................................................................................................6

III.    ARGUMENT ................................................................................................................7

        A.     Legal Standard For Class Certification .....................................................................7

        B.     The Proposed Class Is Certifiable under Federal Rule 23(a) ....................................8

                1. <u>The Class is sufficiently numerous</u> .........................................................................8

                2. <u>The proposed Class is ascertainable</u> ......................................................................9

                3. <u>The requirement of commonality is satisfied</u> ........................................................12

                4. <u>Plaintiff's claim is typical of those of the other Class members</u> ...........16

                5. <u>Plaintiff and proposed Class Counsel will adequately represent
the Class</u> .................................................................................................................17

        C.     The Proposed Class Also Satisfies Federal Rule 23(b)(3) Standards .................20

                1. <u>Common questions of law and fact predominate</u> ................................................21

                2. <u>A class action is the most efficient way of adjudicating the Class
members' claims and is superior to a multitude of individual
lawsuits.</u> .................................................................................................................23

IV.    PLAINTIFF'S COUNSEL SHOULD BE APPOINTED CLASS COUNSEL .................25

V.     CONCLUSION ................................................................................................................26

## <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>                                                                                    <u>Page(s)</u>

*Amchem Products, Inc. v. Windsor*,
    521 U.S. 591 (1997) ............................................................................................ 21, 23

*Amgen v. Conn. Ret. Plans & Trust Funds*,
    568 U.S. 455 (2013) .................................................................................................. 8

*Arenson v. Whitehall Convalescent and Nursing Home, Inc.*,
    164 F.R.D. 659 (N.D. Ill. 1996) ............................................................................. 13

*Barragan v. Evanger's Dog and Cat Food Co.*,
    259 F.R.D. 330 (N.D. Ill. 2009) ............................................................................... 8

*Baxter v. Kawasaki Motors Corp.*,
    259 F.R.D. 336 (N.D. Ill. 2009) ............................................................................. 18

*Beaton v. SpeedyPC Software*,
    907 F.3d 1018 (7th Cir. 2018) ................................................................................ 16

*Bell v. PNC Bank, N.A.*,
    800 F.3d 360 (7th Cir. 2015) ............................................................................... 7, 22

*Birchmeier v. Caribbean Cruise Line, Inc.*,
    302 F.R.D. 240 (N.D. Ill. 2014) .......................................................................... 9, 11

*Boundas v. Abercrombie & Fitch Stores, Inc.*,
    280 F.R.D. 408 (N.D. Ill. 2012) .......................................................................... 9, 12

*Carbajal v. Capital One*,
    219 F.R.D. 437 (N.D. Ill. 2004) .................................................................... 18, 24-25

*Carnegie v. Household Int'l, Inc.*,
    376 F.3d 656 (7th Cir. 2004) ............................................................................. 24-25

*CE Design Ltd. v. Cy's Crabhouse N., Inc.*,
    259 F.R.D. 135 (N.D. Ill. 2009) ........................................................... 13, 16, 18, 23

*Erica P. John Fund, Inc. v. Halliburton Co.*,
    563 U.S. 804 (2011) ................................................................................................ 21

*Foreman v. PRA III, LLC*,
    05-cv-3372, 2007 WL 704478 (N.D. Ill. Mar. 5, 2007) ...................................... 22

*Gen. Tel Co. of Sw. v. Falcon*,
　　457 U.S. 147 (1982)................................................................... 25

*Godfrey v. GreatBanc Tr. Co.*,
　　18-cv-7918, 2021 WL 679068 (N.D. Ill. Feb. 21, 2021)............................................... 8, 10

*Gomez v. St. Vincent Health, Inc.*,
　　649 F.3d 583 (7th Cir. 2011) ............................................................ 17

*Gordon v. Caribbean Cruise Line, Inc.*,
　　14-cv-5848, 2019 WL 498937 (N.D. Ill. Feb. 8, 2019)................................................ 9

*Hanlon v. Chrysler Corp.*,
　　150 F.3d 1011 (9th Cir. 1998) ........................................................... 21

*Haynes v. Logan Furniture*,
　　503 F.2d 1161 (7th Cir. 1974) ........................................................... 24

*Hinman v. M & M Rental Ctr., Inc.*,
　　545 F. Supp. 2d 802 (N.D. Ill. 2008) ................................................ 8, 13, 16, 23

*Howard v. Cook Cnty. Sheriff's Off.*,
　　989 F.3d 587 (7th Cir. 2021) ......................................................... 12, 16

*In re Bridgestone/Firestone, Inc.*,
　　288 F.3d 1012 (7th Cir. 2002) .......................................................... 23

*Keele v. Wexler*,
　　149 F.3d 589 (7th Cir. 1998) ........................................................ 13, 16

*Kramer et al v. Autobytel et al.*,
　　10-cv-02722 (N.D. Cal. 2011) .......................................................... 20

*Kusinski v. ADP, LLC*
　　2017-CH-12364, (Cir. Ct. Cook Cnty., Ill. 2021)............................................ 20

*Lemon v. Int'l Union of Operating Eng'rs*,
　　216 F.3d 577 (7th Cir. 2000) ........................................................... 21

*Lozano v. Twentieth Century Fox*,
　　09-cv-6344, (N.D. Ill. 2011) ........................................................... 20

*Maxwell v. Arrow Financial Services, LLC*,
　　03-cv-1995, 2004 WL 719278 (N.D. Ill. Mar. 31, 2004) .................................. 17

*McCabe v. Crawford & Co.*,
210 F.R.D. 631 (N.D. Ill. 2002)........................................................................ 8

*McFields v. Dart,*
982 F.3d 511 (7th Cir. 2020) ................................................................... 16, 21

*Morris v. Risk Mgmt. Alternatives, Inc.*,
203 F.R.D. 336 (N.D. Ill. 2001)...................................................................... 24

*Mullins v. Direct Digital, LLC,*
795 F.3d 654 (7th Cir. 2015) ............................................................... 9, 11, 12

*Murray et al. v. Bill Me Later, Inc.*,
12-cv-04789, (N.D. Ill. 2014) .......................................................................... 20

*Parish v. Sheriff of Cook County,*
07-cv-4369, 2008 WL 4812875 (N.D. Ill. Oct. 24, 2008) ................................ 7

*Pearlstone v. Costco Wholesale Corp.*
18-cv-00630, (E.D. Mo. 2020).......................................................................... 20

*Phillips v. Waukegan Hous. Auth.*,
331 F.R.D. 341 (N.D. Ill. 2019)................................................................. 8, 13

*Prather et al. v. Wells Fargo Bank, N.A.*
17-cv-00481, (N.D. Ill. 2019) .......................................................................... 20

*Radamanovich v. Combined Ins. Co. of Am.*,
216 F.R.D. 424 (N.D. Ill. 2003)...................................................................... 21

*Rogers v. CSX Intermodal Terminals, Inc.*
19-CH-04168, (Cir. Ct. Cook Cnty., Ill. 2021)................................................ 20

*Rojas et al v. Career Education Co.*,
10-cv-05260, (N.D. Ill. 2012) .......................................................................... 20

*Salkauskaite v. Sephora USA, Inc.*
18-cv-08507, (Cir. Ct. Cook Cnty., Ill. 2021)................................................ 20

*Sandoval v. M1 Auto Collisions Centers*,
309 F.R.D. 549 (N.D. Cal. 2015)...................................................................... 21

*Schmidt v. Smith & Wollensky, LLC*,
268 F.R.D. 323 (N.D. Ill. 2010)................................................................. 13, 15

*Shurland v. Bacci Café & Pizzeria on Ogden, Inc.*,
    271 F.R.D. 139 (N.D. Ill. 2010)....................................................................... 12

*Simpson v. Dart*,
    18-cv-0553, 2021 WL 2254969 (N.D. Ill. June 3, 2021)................................... 6

*Smith v. Nike Retail Servs., Inc.*,
    234 F.R.D. 648 (N.D. Ill. 2006)................................................................... 8, 16

*Spano v. The Boeing Co.*,
    633 F.3d 574 (7th Cir. 2011) ......................................................................... 17

*Suchanek v. Sturm Foods, Inc.*,
    764 F.3d 750 (7th Cir. 2014) ......................................................................... 23

*Surowitz v. Hilton Hotels Corp.*,
    383 U.S. 363 (1966)....................................................................................... 19

*Szabo v. Bridgeport Machines, Inc.*,
    249 F.3d 672 (7th Cir.2001) ............................................................................ 7

*T.S. v. Twentieth Century Fox Television*,
    334 F.R.D. 518 (N.D. Ill. 2020)................................................................ 13, 16

*Valladares v. Blackboard, Inc. et al.*,
    16-CH-06482, (Cir. Ct. Cook Cnty., Ill. 2017).............................................. 20

*Van v. Ford Motor Co.*,
    332 F.R.D. 249 (N.D. Ill. 2019)..................................................................... 12

*Vergara v. Uber Technologies, Inc.*,
    15-cv-06942, (N.D. Ill. 2017) ........................................................................ 20

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011).................................................................................12-13

*Wilkins v. Just Energy Grp., Inc.*,
    308 F.R.D. 170 (N.D. Ill. 2015)..................................................................... 19

*Zeidel v. A&M (2015), LLC*,
    13-cv-06989, (N.D. Ill. 2018) ........................................................................ 20

## **Statutes and Rules**

740 ILCS 14/1, *et seq*.................................................................................. 1, 4, 23

Fed. R. Civ. P. 23(a) .............................................................................................. 7-20

Fed. R. Civ. P. 23(b)(3).......................................................................................... 20-25

Fed. R. Civ. P. 23(g) ........................................................................................ 18-19, 26

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S
## MOTION FOR CLASS CERTIFICATION

**I.      INTRODUCTION**

This litigation arises out of Defendant BNSF Railway Company's ("BNSF" or "Defendant") unlawful collection of the biometric identifiers and biometric information (collectively, "biometrics") of tens of thousands of individuals in Illinois without their informed written consent. BNSF is one of the nation's largest freight railroad operators and maintains four facilities in Illinois: Logistics Park Chicago, Corwith, Willow Springs, and Cicero. At each of these four Illinois facilities, Defendant has required visiting truck drivers to provide their biometrics – in this case, fingerprints – without first gaining their informed written consent as required by the Illinois Biometric Information Privacy Act, 740 ILCS 14/1, *et seq*. ("BIPA").

The claims of Plaintiff and the proposed Class – all individuals who entered one of BNSF's four Illinois facilities – center around Defendant's biometrically-reliant Automatic Gate Systems ("AG System"). Defendant purchased these AG Systems to operate at each of its four Illinois facilities, and such AG Systems were operated in a substantially identical manner—and collected and stored substantially identical types of information in the same manner for each of the Class members during the relevant period. Because the Class members' biometrics were universally collected and captured in an identical manner through Defendant's AG Systems, and because their legal claims and resulting statutory damages are identical, this case is particularly well suited for class treatment.

The substantial discovery conducted in this litigation, including oral and written discovery from Defendant, numerous third parties, and expert witnesses, has revealed Defendant's consistent conduct with respect to the entirety of the putative Class. Importantly, through discovery Plaintiff has obtained the biometric and other Personally Identifiable Information ("PII") from BNSF's AG

1

Systems which identifies every individual whose biometrics were captured through the AG Systems since 2014. To analyze the AG Systems' data, Plaintiff engaged expert data forensics firm Global Digital Forensics ("GDF" or "Plaintiff's Experts"), a highly-experienced, reputable computer forensics firm whose members have served as expert witnesses in scores of lawsuits. On May 7, 2021, Plaintiff timely disclosed to Defendant the report produced by GDF ("Plf's Expert Report").[1] After Defendant produced its own expert report by David Kalat ("Def's Expert Report") on June 7, 2021, GDF supplemented its report with both oral testimony through a deposition and a subsequent declaration.[2][3] As set forth therein, GDF has determined to a very high degree of certainty that there are 44,149 unique and ascertainable members of the proposed Class.[4] These putative Class members are current and former truck drivers whose biometrics were captured and collected by Defendant's AG Systems in Illinois. As explained in detail in the GDF Report and in the deposition testimony and supplemental Declaration of GDF's Joseph Caruso, the identification of the putative Class members in this case can be readily quantified and qualified; *that is, we know not only how many Class members there are, but also the identity of, and contact information for, each of those Class members*.

---

[1] A true and accurate copy of the Plaintiff's Expert Report is attached hereto as <u>Exhibit A</u>.

[2] A true and accurate copy of the Defendant's Expert Report is attached hereto as <u>Exhibit B</u>.

[3] The Supplemental Declaration of Plaintiff's expert Joseph Caruso ("Caruso Decl.") is attached hereto as <u>Exhibit C</u>.

[4] Plaintiff's Expert Report identifies 54,374 putative Class members. (Plf's Expert Report, Exh. A ¶¶ 24-25.) However, as explained at the July 19, 2021 deposition of Plaintiff's expert Joseph Caruso, this number was based on GDF's calculation of *all* unique individuals whose information was contained in the BNSF AG Systems' databases produced in discovery. (*See* July 19, 2021 Transcript of Deposition of Joseph Caruso, relevant excerpts of which are attached hereto as <u>Exhibit D</u>, at 22:2-22.) When GDF re-analyzed the data to determine only the total number of individuals whose biometrics were captured at Defendant's four *Illinois* facilities, such an analysis identified 44,149 unique putative Class members. (Caruso Decl., Exh. C, ¶ 10.) This 44,149 number is consistent with the class size calculations conducted by Defendant's expert, whose analysis was also limited to the unique individuals who had their biometrics collected at one of Defendant's four Illinois facilities. (Def's Expert Report, Exh. B, ¶ 1). To formally present this updated 44,149 class member calculation that was discussed in detail at Mr. Caruso's deposition, GDF has submitted the aforementioned Supplemental Declaration of Joseph Caruso.

Importantly, Defendant's own expert does not deny the ascertainability of the Class.[5] Indeed, both Plaintiff's and Defendant's experts have identified remarkably consistent Class sizes despite the relatively large size of such Class, and neither dispute that Class members can be easily identified.[6] Of course, this should not be surprising where one of the principal purposes of the AG Systems was to accurately identify individuals seeking entry into BNSF's Illinois facilities. Thus, there is effectively complete agreement between the experts in this case that the Class is comprised of approximately 44,100-45,700 individuals who are identifiable through their numerous categories of PII captured and stored by the AG Systems. (Caruso Decl., Exh. C, ¶ 10; Def's Expert Report, Exh. B, ¶¶ 1, 32.) This lack of any real dispute as to the size and ascertainability of the Class is not happenstance, as the conduct related to the unlawful collection of biometrics was uniform across BNSF's four Illinois facilities at all relevant times.

The very nature of Defendant's AG Systems, which were designed to catalogue and identify individuals uniformly, accurately, and quickly, renders this case uniquely suitable for class certification. Indeed, a ruling as to the legality of Defendant's collection of biometrics and its failure to obtain the requisite written consent can be applied uniformly across all putative Class members. Thus, regardless of how the Court or a jury ultimately rules on the merits of this litigation, class certification – and the resulting uniform treatment of the Class members – is undoubtedly appropriate here. Accordingly, Plaintiff moves the Court to certify the Class set forth below, to appoint Plaintiff as class representative, and to appoint Plaintiff's Counsel as class counsel.

---

[5] *See* July 30, 2021 Transcript of Deposition of Defendant's expert David Kalat, relevant excerpts of which are attached hereto as <u>Exhibit E</u>, at 69:20-70:7, 81:11-17.

[6] Defendant's expert identified "no more than 45,622 unique drivers whose information was collected on or after April 4, 2014" while Plaintiff's expert identified 44,159 unique drivers. (Def's Expert Report, Exh. B, ¶ 1; Caruso Decl., Exh. C, ¶ 10.)

## II.     FACTUAL BACKGROUND

### A.     The Illinois Biometric Information Privacy Act

BIPA was designed to protect individuals' personal and immutable biometric information. 740 ILCS 14/5, *et seq.* As the Illinois Legislature found, "biometrics are unlike other unique identifiers," in particular because they can't be changed. *Id*. § 5(c). "Therefore, once [an individual's biometric data is] compromised, the individual has no recourse." *Id*. Special information, the Legislature concluded, requires special protection. *Id.*

Under BIPA, biometric identifiers include fingerprints, handprints and vocal identifiers, while biometric information can be defined as any information based on a biometric identifier, regardless of how it is converted or stored. (Dkt. 18, First Amended Complaint ("FAC") ¶ 1; 740 ILCS 14/10.) In recognition of the importance of the security of individuals' biometrics, the Illinois Legislature enacted BIPA, which provides, *inter alia*, that private entities, such as Defendant, may not obtain and/or possess an individual's biometrics unless they first receive a written release from the person for the collection of his or her biometric identifiers and/or information. (FAC ¶ 5; 740 ILCS 14/10.)

### B.     The Underlying Misconduct

Defendant is one of the largest freight railroad networks and railroad operators in North America. (FAC ¶ 3.) Plaintiff worked as a truck driver for a third-party logistics company and regularly drove to Defendant's facilities in Illinois to drop off loads of freight. (*See* Transcript of December 14, 2020 Deposition of Plaintiff Richard Rogers, attached hereto as Exhibit F, at 13:22-14:6; FAC ¶¶ 18-19.) However, when entering Defendant's Illinois facilities, Plaintiff was required to scan his fingerprint into Defendant's biometrically-enabled identity verification

devices. (Rogers Dep., Exh. F, at 36:7-11, 132:4-8; FAC ¶ 19; *see* Biometric Registration Slideshow, attached hereto as Exhibit G.) Plaintiff never provided written consent for such collection and was never informed in writing of the purpose of such collection or how long his information would be stored. (Rogers Dep., Exh. F, at 132:4-133:15; FAC ¶¶ 25-27.)

Discovery has now shown unequivocally that these facts are not unique to Plaintiff. In fact, Defendant's conduct is systemic with respect to the entire Class. All members of the proposed Class have had their biometrics captured within the state of Illinois. During the relevant time period, which begins on April 4, 2014, Defendant utilized its AG Systems at its four Illinois facilities to capture, collect, and store the biometrics of every truck driver entering its four Illinois facilities. (*See* Transcript of December 4, 2020 Deposition of Carlos Reyes, BNSF's Director of Technology Services, attached hereto as Exhibit H, at 31:10-34:14; *see also* Transcript of December 9, 2020 Deposition of Timothy Ash, Chief Solutions Officer of Remprex, LLC, attached hereto as Exhibit I, at 68:21-69:18.)

The AG Systems at issue in this case were also partially operated by third party Remprex, LLC ("Remprex"). BNSF contracted with Remprex to install and manage certain portions of its Illinois AG Systems. After BNSF purchased the AG Systems (in part through Remprex), Remprex was also contracted to staff and service portions of such systems. Among the various services provided by Remprex to BNSF was the provision of gate clerks to operate the AG Systems at BNSF's Illinois facilities. Such gate clerks, on behalf of BNSF, assisted with registering drivers' biometrics into BNSF's AG Systems.[7]

---

[7] Defendant will undoubtedly argue that the biometrics of the Class were captured by Remprex, LLC (and not itself). However, such argument is without merit because the biometric captures were done entirely for the benefit of BNSF, the biometrics were stored on BNSF's servers at BNSF's property, and the biometric information is contractually owned by BNSF. Most importantly though, such argument simply adds to the numerous common questions which can (and should) be answered on behalf of the whole class, as any

5

Defendant's AG Systems utilize kiosks that include fingerprint scanners to allow truck drivers to gain entry to the facilities. (Reyes Dep., Exh. H, at 30:7-20; Ash Dep., Exh. I, at 69:2-8.) At each of Defendant's four Illinois facilities, the AG Systems captured and stored biometric information. (Transcript of December 11, 2020 Deposition of Remy Diebes, President and CEO of Remprex, LLC, attached hereto as <u>Exhibit J</u>, at 68:8-23; Exh. G Biometric Registration Slideshow.) Specifically, while visiting Defendant's four Illinois railyards, Plaintiff and the Class members were required to scan their fingerprints into Defendant's AG Systems to gain access to the facilities. (Rogers Dep., Exh. F, at 132:4-14.) Attached as Exhibit G is a document produced by BNSF in discovery which explains the precise procedure used to gather the biometric identifiers and/or biometric information (and other PII) from the putative Class members. However, such biometric collection violated Plaintiff's and the Class members' statutory rights under BIPA because Defendant failed to obtain informed written consent from the individuals prior to capturing and collecting their biometric information. (Reyes Dep., Exh. H, at 35:21-25; Ash Dep., Exh. I, at 81:13-83:2, 158:4-8; FAC ¶¶ 36-44.)

### C. The Proposed Class

By this Motion, Plaintiff seeks to certify the following Class:

> All individuals whose fingerprint information was registered using an Auto-Gate System at one of BNSF's four Illinois facilities at any time between April 4, 2014 and January 25, 2020.[8]

---

questions relating to the nature of BNSF's relationship to Remprex will produce the same answers for all Class members.

[8] The Class Plaintiff seeks to certify here is narrower than that asserted in his First Amended Complaint. (*See* FAC ¶ 28.) Following the Court's ruling on Plaintiff's pending Motion to Remand (Dkt. 85), which was filed on August 11, 2021 and which seeks to sever and remand Plaintiff's claims under Section 15(a) of BIPA, Plaintiff will formally request leave of the Court to file a second amended complaint that conforms with the facts learned in discovery and his theory of liability going forward. *See Simpson v. Dart,* 18-CV-0553, 2021 WL 2254969, at *1 (N.D. Ill. June 3, 2021) ("It is not uncommon for plaintiffs and courts to shift or change class definitions during a lawsuit[.]")

As discussed below, the proposed Class satisfies each of the four requirements for certification under Rule 23(a) of the Federal Rules of Civil Procedure: numerosity, commonality, typicality, and adequacy of representation. The Class also satisfies Rule 23(b) of the Federal Rules of Civil Procedure. A class action is not just appropriate here; it is also the only practical way that the members of the putative Class can obtain appropriate redress for Defendant's unlawful conduct.

## III.    ARGUMENT

### A.    Legal Standard For Class Certification

Class certification is appropriate where a plaintiff satisfies all of the prerequisites of Rule 23(a) and meets one of three provisions of Rule 23(b). Fed. R. Civ. P. 23. "To be certified, a proposed class must satisfy the four requirements of Rule 23(a): '(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims and defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.'" Fed. R. Civ. P. 23(a); *see Bell v. PNC Bank, N.A.,* 800 F.3d 360, 373 (7th Cir. 2015).

When a plaintiff seeks certification under Rule 23(b)(3), the court should grant certification provided "questions of law or fact common to the class members predominate over any questions affecting individual members" and a "class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3); *Bell,* 800 F.3d at 373.

The Court need not rely solely on the allegations in the operative complaint in assessing whether to certify a class, but instead "should make whatever factual and legal inquiries are required under Rule 23." *Parish v. Sheriff of Cook County,* 07-cv-4369, 2008 WL 4812875, at *2 (N.D. Ill. Oct. 24, 2008) (Kennelly, J) (quoting *Szabo v. Bridgeport Machines, Inc.,* 249 F.3d 672, 675-76 (7th Cir. 2001)). However, at the class certification stage, the Court does not "adjudicate

th[e] case," but rather "select[s] the method best suited to adjudication of the controversy fairly and efficiently." *Godfrey v. GreatBanc Tr. Co.,* 18-cv-7918, 2021 WL 679068, at *2 (N.D. Ill. Feb. 21, 2021) (Kennelly, J) (quoting *Amgen v. Conn. Ret. Plans & Trust Funds,* 568 U.S. 455, 460 (2013)). As explained in greater detail below, all factors of Rule 23(a) and all elements of Rule 23(b)(3) are satisfied here, making class certification appropriate.

**B.      The Proposed Class Is Certifiable Under Federal Rule 23(a).**

1.      <u>The Class is sufficiently numerous.</u>

The first requirement for certifying a class is showing that the proposed class is "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1); 735 ILCS 5/2-801(1). "Although there is no bright-line test for numerosity, a class of forty is generally sufficient to satisfy Rule 23(a)." *Hinman v. M & M Rental Ctr., Inc.*, 545 F. Supp. 2d 802, 805-806 (N.D. Ill. 2008); *McCabe v. Crawford & Co*., 210 F.R.D. 631, 643 (N.D. Ill. 2002) (stating that a class of forty or more is sufficiently numerous). To satisfy this requirement, a "plaintiff does not need to demonstrate the exact number of class members as long as a conclusion is apparent from good-faith estimates." *Barragan v. Evanger's Dog and Cat Food Co.*, 259 F.R.D. 330, 333 (N.D. Ill. 2009); *Smith v. Nike Retail Servs., Inc.*, 234 F.R.D. 648, 659 (N.D. Ill. 2006). "And when considering numerosity, courts should also consider, in addition to the number of plaintiffs, the putative class members' geographic diversity, judicial economy, and the ability of the putative class members to institute individual lawsuits." *Phillips v. Waukegan Hous. Auth.*, 331 F.R.D. 341, 350 (N.D. Ill. 2019).

Here, the size of the proposed Class is over 44,000 unique individuals. (Def's Expert Report, Exh. B, ¶ 1; Plf's Expert Report, Exh. A, ¶¶ 24-25; Caruso Decl., Exh. C, ¶ 10.) This number is based on BNSF's AG Systems' data obtained through discovery and which was

analyzed by both Plaintiff's expert and Defendant's expert. (*Id.*) Thus, there is no dispute as to the Class consisting of over 44,000 individuals—a number that clearly satisfies the numerosity requirement. *See, e.g., Gordon v. Caribbean Cruise Line, Inc.*, 14-cv-5848, 2019 WL 498937, at *6 (N.D. Ill. Feb. 8, 2019) ("Generally speaking, classes of forty or more members are sufficiently numerous to warrant certification.")

> 2.     The proposed Class is ascertainable.

While not explicitly required by the text of Rule 23(a), in determining whether a case should proceed as a class action, courts in this Circuit evaluate whether the proposed class is objectively defined such that class members are ascertainable. *Mullins v. Direct Digital, LLC,* 795 F.3d 654, 657 (7th Cir. 2015). However, to meet the ascertainability requirement, the Court "need not ascertain 'absent class members' actual identities' . . . [r]ather, 'it is enough that the class be ascertain*able*,' with class members to be identified during a claims administration process[.]" *Birchmeier v. Caribbean Cruise Line, Inc.*, 302 F.R.D. 240, 245 (N.D. Ill. 2014) (citing *Boundas v. Abercrombie & Fitch Stores, Inc.*, 280 F.R.D. 408, 417 (N.D. Ill. 2012)) (emphasis in original).

Importantly, the Seventh Circuit has explicitly adopted a lenient view of ascertainability, and has declined to require, as some circuits have, that plaintiffs demonstrate a "'reliable and administratively feasible' way to identify all who fall within the class definition." *Mullins,* 795 F.3d at 657. ("[T]he district court was correct not to let a quest for the perfect treatment of [ascertainability] become a reason to deny class certification and with it the hope of any effective relief at all.") Instead, the Seventh Circuit has stated that the proper analysis with respect to ascertainability focuses on whether the class is "defined clearly and that membership [is] defined by objective criteria rather than by, for example, a class member's state of mind." (*Id.*)

Here, the proposed Class is readily ascertainable using the objective data captured by Defendant's AG Systems. A person can only be a Class member if: (1) the data shows that a biometric template was captured for that individual; (2) the data shows that such biometric template was captured at one of Defendant's four Illinois facilities; and (3) the data shows that such capture occurred between April 4, 2014 and January 25, 2020.[9]

Any individual's status as a Class member can thus be objectively determined, as Defendant's AG Systems recorded the dates on which individuals scanned and registered their fingerprints such that individuals whose biometrics were captured during the relevant time period can be identified. (Plf's Expert Report, Exh. A, ¶ 25 and Exh. D to Plf's Expert Report, pp. 36-40; Caruso Decl., Exh. C, ¶ 10; Def's Expert Report, Exh. B, ¶ 32.) The Class data has also been sorted to only include individuals for whom a biometric template is present within the data—a template created only through individuals' registration of their finger/fingerprint into the AG System. (Kalat Dep., Exh. E, at 69:20-70:7.)[10] Indeed, Defendant's expert testified during his deposition that every truck driver who presented a finger at an AG System in Illinois since 2014 is included within the Class data. (Kalat Dep., Exh. E, at 69:20-70:7, 81:11-17.) ("I think [my estimate of 45,622] includes every truck driver who presented a finger in Illinois.") Thus, there is no dispute – even between the Parties' respective experts – as to the ability to use the AG Systems' data to be able to adequately identify Class members.

---

[9] Indeed, in order to ensure that all Class members can be identified using objective data currently in the record, Plaintiff has specifically limited the Class definition to individuals who scanned their fingerprints prior to January 25, 2020, as BNSF has only thus far produced data through that date.

[10] While the Parties agree that there are biometric templates within the Class data, Defendant's expert has refused to opine on whether or not such templates constitute biometric information under BIPA. (Def's Expert Report, Exh. B, ¶ 18 n.10.) This, of course, conveniently leaves the door open for Defendant to argue that the biometric templates are not actually biometric information, as defined by BIPA. However, such an argument, while utterly unsupported, is a quintessential merits issue that should be decided after class certification, since the resolution of that issue would apply equally to all members of the proposed Class. *Godfrey,* 2021 WL 679068, at *2. (Kennelly, J.)

Furthermore, in this case, Defendant's records also include complete and accurate identifying information for the 44,000+ drivers who had their biometric templates captured by Defendant in Illinois since April 4, 2014. (*See*, *e.g.*, Plf's Expert Report, Exh. A, at p. 8) (table showing a personal profile of Plaintiff made from the AG Systems data, which includes his first and last name, driver's license number, address, biometric information, and date of birth.) As a result, the Class data includes not only the date of each driver's entry into the facility, but also the date of their initial biometric registration, their first and last name, their date of birth, a scan of their driver's license, their mailing address, and of course their biometrics. (*Id.*, ¶¶ 24-25.)

Plaintiff anticipates that Defendant will argue that the presence of duplicate or incomplete entries in the data make this class unascertainable. (Def's Expert Report, Exh. B, ¶¶ 25-32.) Such an argument would be legally incorrect, however, as it goes against the ascertainability standard set forth by the Seventh Circuit in *Mullins,* which held that the proper focus is on the class definition—<u>not</u> the ability to identify every particular class member at the time of class certification. *Mullins,* 795 F.3d at 657; *see also Birchmeier,* 302 F.R.D. at 245 (finding that at the class certification stage, it is enough that the class be ascertain*able*, with class members to be identified during a claims administration process). Such an argument would also be factually incorrect, as Defendant's own expert report states that it is possible to identify individual Class members through a combination of certain fields of data associated with each individual, including their name, PartyID, and date-of-birth. (Def's Expert Report, Exh. B, ¶ 32.) This conclusion was confirmed by Plaintiff's expert. (Plf's Expert Report, Exh. A, ¶ 25; Caruso Dep., Exh. D, at 107:2-108:5) (Plaintiff's expert stating that he could identify the number of unique individuals who had their biometrics scanned with "99 percent" accuracy.) Thus, even under the strict ascertainability standard eschewed by the Seventh Circuit, the individual members of the proposed Class here are

readily "ascertainable," as should be expected where the system at issue was specifically designed to ascertain the identities of individuals seeking entry into Defendant's facilities.

The Class data here, by definition, contains personally identifiable information – including Class members' full names, addresses, drivers' license numbers, and birth dates – which is a level of identifying information well above and beyond that which is required to certify a class. (Plf's Expert Report, Exh. A, at p. 8.) Indeed, classes have been certified based on information that was far less complete, personal or identifying. *Boundas*, 280 F.R.D. at 418 (finding that a proposed class is ascertainable even if the actual "names and addresses" of the class members are not identified); *Shurland v. Bacci Café & Pizzeria on Ogden, Inc.,* 271 F.R.D. 139, 145 (N.D.Ill.2010) ("In instances where the names and addresses of class members are not easily ascertainable, notice by publication alone continues to find support in more recent case law.") Accordingly, in light of the immense amount of specific identifying information available for the Class, the Class is clearly ascertainable and achieving accurate and direct notice will be exceedingly straightforward.

Because the proposed Class definition provides objective criteria to easily determine membership, the ascertainability requirement is fulfilled. *Mullins,* 795 F.3d at 657.

3.    The requirement of commonality is satisfied.

The second requirement of Rule 23(a)(2) is met where "there are questions of fact or law common to the class." Fed. R. Civ. P. 23(a)(2). To establish commonality, the class representative must demonstrate that members of the class "have suffered the same injury." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349-50 (2011). However, "only one common question is necessary to satisfy Rule 23(a)'s commonality" requirement." *Van v. Ford Motor Co.*, 332 F.R.D. 249, 273 (N.D. Ill. 2019); *see Howard v. Cook Cnty. Sheriff's Off.,* 989 F.3d 587, 598 (7th Cir. 2021). Commonality requires that the class members' claims "depend upon a common contention" that

is "of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes,* 564 U.S. at 350. In *Dukes*, the Supreme Court concluded that the most relevant part of commonality is "the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Id.*

Commonality is often present where defendants have "engaged in standardized conduct toward members of the proposed class." *Schmidt v. Smith & Wollensky, LLC*, 268 F.R.D. 323, 327 (N.D. Ill. 2010) (quoting *Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998)); *Hinman*, 545 F. Supp. 2d at 806. *See also CE Design Ltd. v. Cy's Crabhouse N., Inc.,* 259 F.R.D. 135, 141 (N.D. Ill. 2009) (finding commonality where plaintiff produced evidence of standardized conduct); *T.S. v. Twentieth Century Fox Television*, 334 F.R.D. 518, 528 (N.D. Ill. 2020). Similarly, "claims that arise out of standard documents present a classic case for treatment as a class action." *Arenson v. Whitehall Convalescent and Nursing Home, Inc.*, 164 F.R.D. 659, 664 (N.D. Ill. 1996) (internal quotations omitted); *see also Phillips v. Waukegan Housing Authority,* 331 F.R.D. 341 (N.D. Ill. 2019).

Here, Defendant's conduct was standard, uniform, and systematic for each truck driver who entered its four Illinois facilities. Each of BNSF's four Illinois facilities maintained independent storage of the information captured through the AG Systems. A copy of this information, along with a central repository of biometric information and other PII (names, birth dates, drivers' license information, and mailing addresses) was obtained by Plaintiff through discovery. (Plf's Expert Report, Exh. A, ¶ 21.) The first time each putative Class member visited one of Defendant's Illinois facilities, they were directed inside the facility so that they could "register" with the AG System. (Reyes Dep., Exh. H, at 32:25-34:14; Ash Dep., Exh. I, at 70:9-

71:23.) These drivers were then uniformly registered into the AG System through providing a scan of their driver's license, having their photo taken, and then having their fingerprints scanned by Defendant's biometric system. (*Id.*; Exh. G Biometric Registration Slideshow.) This is undisputed.

Documents produced by BNSF in discovery confirm this deposition testimony and exemplify the systematic nature of Defendant's biometric collection process. (*See* Exh. G Biometric Registration Slideshow.)[11] After their initial registration, drivers could enter Defendant's facilities on subsequent visits by pulling into designated AG System lanes – akin to a "tollbooth lane" – each of which was equipped with a biometrically-enabled kiosk. (Reyes Dep., Exh. H, at 48:15-51:6.) Through such kiosks, drivers enter a unique ID number and use the biometric fingerprint scanner. (*Id.*) The biometric fingerprint scanner then cross-compares the data gathered from the fingerprint present on the scanner with the data associated with the fingerprints and related biometric information associated with that driver's prior registration. (*Id.*) If a match, the individual would be allowed into the facility. (Diebes Dep., Exh. J, at 102:12-103:13.) This process was uniform across all of Defendant's four Illinois facilities throughout the relevant time period. (Diebes Dep., Exh. J, at 60:6-63:14.) The kiosks also operate in a materially similar manner today as they did in the past and at all times during the proposed Class period. The process for validating and confirming the identity of drivers was materially the same throughout the proposed Class period, and the information was captured and stored in materially the same fashion throughout the proposed Class period. (Diebes Dep., Exh. J, at 42:11-43:12, 77:22-78:7, 99:11-18.)

---

[11] BNSF's relationship with Remprex was also at least partially governed by contract, the contents of which are not relevant to this Motion but may be relevant for merits issues on summary judgment. That the technology and conduct relating to the collection of Class members' biometrics were governed in part by a consistent contractual relationship further supports Plaintiff's position that the putative Class members were treated in a standardized way that lends itself to class treatment. (Diebes Dep., Exh. J, at 63:6-14.)

Crucially, while drivers are required to register their biometrics upon their initial entry into one of Defendant's facilities and then present their finger at each subsequent visit, drivers were never provided with any information explaining the collection of their biometrics *and were never asked to provide any written consent prior to the capture of their biometrics*. (Reyes Dep., Exh. H, at 35:21-25; Ash Dep., Exh. I, at 81:13-83:2, 158:4-8.)

Thus, it is clear that there was a standardized pattern of conduct toward all members of the proposed Class, which makes this case perfectly-suited for class treatment. *Schmidt*, 268 F.R.D. at 327. Put simply, there is a common fact pattern for each class member: each Class member visited one of Defendant's Illinois facilities and had their biometric identifiers and/or biometric information collected and stored through the same AG Systems, and Defendant uniformly failed to obtain the consent required by BIPA prior to such collection. Defendant's use of the AG Systems to systematically gather the putative Class members' biometrics is precisely the kind of fact pattern to which Rule 23 was intended to apply.

This common fact pattern leads to common questions of fact and law. The common questions that can be answered through class treatment of the Class include: (1) whether the fingerprint templates that Defendant collected constitute biometric identifiers or biometric information as those terms are defined by BIPA; (2) whether, prior to obtaining the Class biometric information, Defendant received the informed written consent required by BIPA; (3) whether Defendant is directly liable for its BIPA violations; (4) whether Defendant is liable for the actions of its vendor, Remprex; (5) whether Defendant's defense of implied consent applies across the Class; (6) whether BIPA is subject to preemption by the Federal Railroad Safety Act, the Federal Aviation Administration Authorization Act, or the Interstate Commerce Commission Termination Act; and (7) whether Defendant's violations of BIPA were reckless or negligent, given BNSF's

complete failure to even attempt to gain truck drivers' informed written consent prior to collecting their biometrics.

Importantly, regardless of *how* the Court ultimately answers these questions, certification of the Class will result in *common answers* to these questions. Plaintiff need only establish a "single common question" to satisfy Rule 23(a)(2), *Beaton v. SpeedyPC Software*, 907 F.3d 1018, 1026 (7th Cir. 2018) (citation omitted), and that requirement is plainly met here. The sheer number and significance of the common questions that exist between Plaintiff and the Class members are more than sufficient to meet the commonality requirement.

<h4>4.    <u>Plaintiff's claim is typical of those of the other Class members.</u></h4>

To satisfy the typicality requirement, Plaintiff must show that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "A plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory." *Howard*, 989 F.3d at 605 (7th Cir. 2021) (quoting *Keele*, 149 F.3d at 595 (7th Cir. 1998)); *McFields v. Dart*, 982 F.3d 511, 517 (7th Cir. 2020); *Hinman*, 545 F. Supp. 2d at 806. The typicality requirement may be satisfied even if there are factual distinctions; typicality does not require claims to be "identical" and is generally "liberally construed." *T.S. v. Twentieth Century Fox Television*, 334 F.R.D. at 530. In other words, "individual claims may feature some factual variations as long as they 'have the same essential characteristics.'" *Beaton*, 907 F.3d at 1026; *CE Design Ltd.*, 259 F.R.D. at 141; *Smith v. Nike Retail Services, Inc.*, 234 F.R.D. at 660.

Here, Plaintiff's claim is identical to those of the proposed Class members he seeks to represent. Defendant's conduct in collecting, storing and using Plaintiff's biometrics during the driver registration process is typical of Defendant's conduct towards the rest of the Class. (Reyes

Dep., Exh. H, at 48:15-51:6; Exh. G Biometric Registration Slideshow.) All Class members had their biometrics captured by Defendant during the driver registration process – using the same procedure and the same AG System technology – and Defendant's lack of compliance with Section 15(b) of BIPA was uniform across the Class. (Reyes Dep., Exh. H, at 35:21-25; Ash Dep., Exh. I, at 81:13-83:2, 158:4-8; Exh. G Biometric Registration Slideshow.) Thus, the legal claims, as well as the factual basis for such legal claims, are not just typical, but are *identical* for Plaintiff and all members of the Class.

In sum, Plaintiff's claims arise out of a purposely uniform course of conduct by one entity that used the same AG Systems for the entire class period, and such claims are based on the same legal theory with identical statutory damages sought by all putative Class members. As such, Plaintiff's claims satisfy the typicality requirement.

      5.     <u>Plaintiff and proposed Class Counsel will adequately represent the Class.</u>

Plaintiff must also show that the "representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "This adequate representation inquiry consists of two parts: (1) the adequacy of the named plaintiffs as representatives of the proposed class's myriad members, with their differing and separate interests, and (2) the adequacy of the proposed class counsel." *Gomez v. St. Vincent Health, Inc.*, 649 F.3d 583, 592 (7th Cir. 2011), *as modified* (Sept. 22, 2011); *see also Spano v. The Boeing Co.*, 633 F.3d 574, 586-87 (7th Cir. 2011). Rule 23(a)(4) requires that both class representative and counsel "zealously represent and advocate on behalf of the class as a whole." *Maxwell v. Arrow Financial Services, LLC*, 03-cv-1995, 2004 WL 719278, at *5 (N.D. Ill. Mar. 31, 2004).

To be an adequate class representative, a plaintiff must not have "antagonistic or conflicting claims" and a plaintiff must have a "sufficient interest in the outcome of the case to

ensure vigorous advocacy." *Baxter v. Kawasaki Motors Corp*., 259 F.R.D. 336, 342 (N.D. Ill. 2009). To demonstrate counsel's adequacy, courts consider: "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions . . . ; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g).

Here, Plaintiff, a truck driver, has the exact same interests as the members of the proposed Class. Plaintiff had his biometric information captured by Defendant without the prior written consent required by BIPA and in the same manner and using the same technology as the other Class members. (Rogers Dep., Exh. F, at 132:4-14; Exh. G Biometric Registration Slideshow.) Additionally, Plaintiff suffered the same statutory violation and is entitled to the same statutory damages as every other Class member. *CE Design Ltd.,* 259 F.R.D. 135, at 142 ("Because any damage award is likely to be confined to statutory damages, plaintiff's pecuniary interests are aligned with those of the class."). Therefore, Plaintiff does not have antagonistic or conflicting claims with the Class and has the same interest as them: to ensure that Class members obtain the compensation to which they are entitled, and that Defendant ceases its unlawful collection of biometric information and complies with BIPA. (Rogers Dep., Exh. F, at 36:24-37:6.)

Moreover, Plaintiff's pursuit of this matter, including sitting for a deposition, demonstrates that he will zealously advocate for the Class and put its interests ahead of his own. (Rogers Dep., Exh. F, at 41:19-42:4) (Plaintiff describing that he has put in not "countless" but "a lot" of hours working on this lawsuit). Plaintiff is aware of his responsibility to the other Class members and is committed to acting in the best interests of the Class. (Rogers Dep., Exh. F, at 23:16-25:12.) In fact, Plaintiff's understanding of the facts and law here, including his role as class representative, goes far beyond the modest standard set forth by the Seventh Circuit. *See Carbajal v. Capital One,*

219 F.R.D. 437, 442 (N.D. Ill. 2004) ("[T]he class representative's role is limited. It was found not to be enough to defeat a class certification in *Surowitz v. Hilton Hotels Corp.*, 383 U.S. 363, 366 (1966), that the named plaintiff did not understand her complaint at all, could not explain the statements in it, had little knowledge of what the lawsuit was about, did not know the defendants by name, nor even the nature of the misconduct of the defendants.") Plaintiff specifically sought out and retained Proposed Class Counsel to seek redress for his injuries, and he has been very closely involved with, and has dedicated substantial time to the prosecution of, this litigation, including reviewing and assisting with pleadings and discovery responses and sitting for a full-day deposition. (Rogers Dep., Exh. F, at 20:13-22:3) Thus, Plaintiff has shown that he has been, and will be, a zealous advocate for the Class and that he is highly invested in the outcome of the case. (*Id*. at 36:24-37:10). *See Wilkins v. Just Energy Grp., Inc.*, 308 F.R.D. 170, 184 (N.D. Ill. 2015) ("[Plaintiff] has demonstrated that she is sufficiently interested in the outcome of this case as she sat for her deposition and responded to written discovery.")

Further, Proposed Class Counsel satisfy Rule 23(a)(4) and Rule 23(g). First, Plaintiff's counsel have invested hundreds of hours over the past two years investigating and litigating this matter. (*See* Declaration of David L. Gerbie ("Gerbie Decl."), filed contemporaneously herewith as Exhibit K, ¶ 19.) Proposed Class Counsel have filed the initial and amended complaints, defeated Defendant's Motion to Dismiss, propounded several rounds of written discovery, taken seven depositions of Defendant and its technology providers, defended Plaintiff's deposition, engaged an expert data forensics firm to produce an expert report, deposed each Party's expert, and reviewed tens of thousands of documents during discovery. (Gerbie Decl., Exh. K, ¶ 19.)

Second, Class Counsel have regularly engaged in major complex and class litigation; have extensive experience in class action lawsuits involving BIPA, having been appointed as class

19

counsel in numerous BIPA class actions; and have in-depth knowledge of the law, having litigated scores of BIPA class actions. (Gerbie Decl., Exh. K, ¶¶ 13-18.) Plaintiff's Counsel have been appointed class counsel in numerous complex class actions, including many BIPA class actions, in the Northern District of Illinois, the Circuit Court of Cook County, and in state and federal courts throughout the nation. *See, e.g., Lozano v. Twentieth Century Fox*, 09-cv-6344 (N.D. Ill. 2011); *Kramer et al v. Autobytel et al.*, 10-cv-02722 (N.D. Cal. 2011); *Rojas et al v. Career Education Co.*, 10-cv-05260 (N.D. Ill. 2012); *Murray et al. v. Bill Me Later, Inc.*, 12-cv-04789 (N.D. Ill. 2014); *Valladares v. Blackboard, Inc. et al.*, 2016-CH- 06482 (Cir. Ct. Cook Cnty. 2017); *Vergara v. Uber Technologies, Inc.*, 15-cv-06942 (N.D. Ill. 2017); *Zeidel v. A&M (2015), LLC*, 13-cv-06989 (N.D. Ill. 2018); *Prather et al. v. Wells Fargo Bank, N.A.* (N.D. Ill. 2019); *Pearlstone v. Costco Wholesale Corp.* (E.D. Mo. 2020); *Kusinski v. ADP, LLC* (Cir. Ct. Cook Cnty., Ill. 2021); *Salkauskaite v. Sephora USA, Inc.* (Cir. Ct. Cook Cnty., Ill. 2021). (Gerbie Decl., Exh. K, ¶ 14.) Proposed Class Counsel were also recently appointed Class Counsel and gained final approval of a BIPA class action settlement in Illinois against another major railroad for similar alleged violations of BIPA. *Rogers v. CSX Intermodal Terminals, Inc.* (Cir. Ct. Cook Cnty., Ill. 2021). Finally, Plaintiff's counsel have devoted, and will continue to devote, the resources necessary to prosecute this matter. (Gerbie Decl., Exh. K, ¶ 19.) Thus, both Plaintiff and Plaintiff's counsel have adequately represented the putative Class over the past two years and will continue to adequately and zealously represent the Class through the resolution of this litigation.

### C. The Proposed Class Also Satisfies Rule 23(b)(3) Standards.

A class is certifiable under Rule 23(b)(3) where "questions of law or fact common to class members predominate over any questions affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed.

R. Civ. P. 23(b)(3). To satisfy Rule 23(b)(3), a plaintiff must also show that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Certification under Rule 23(b)(3) is appropriate and encouraged "whenever the actual interests of the parties can be served best by settling their differences in a single action." *Sandoval v. M1 Auto Collisions Centers*, 309 F.R.D. 549, 571 (N.D. Cal. 2015) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998) (citing 7A Federal Practice & Procedure § 1777)). A case such as this, where individual recoveries would be relatively small and but for the class action model would not likely be pursued, is a quintessential example of the practical utility of the class action mechanism.

1.   <u>Common questions of law and fact predominate.</u>

The "purpose" of Rule 23(b)(3)'s predominance requirement is to determine whether a proposed class is "sufficiently cohesive to warrant adjudication by representation.'" *McFields*, 982 F.3d at 518 (7th Cir. 2020) (quoting *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 623 (1997)). To satisfy the predominance requirement of Rule 23(b)(3), "each class member must share common questions of law or fact with the rest of the class, therefore making class-wide adjudication of the common questions efficient compared to the repetitive individual litigation of the same question." *Lemon v. Int'l Union of Operating Eng'rs*, 216 F.3d 577, 581 (7th Cir. 2000). While the common issues must predominate, they need not be exclusive. *Radamanovich v. Combined Ins. Co. of Am.*, 216 F.R.D. 424, 435 (N.D. Ill. 2003). "Considering whether questions of law or fact common to class members predominate begins, of course, with the elements of the underlying cause of action." *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 809 (2011) (internal quotation marks omitted). However, "a court weighing class certification must walk a balance between evaluating evidence to determine whether a common question exists and

predominates, without weighing that evidence to determine whether the plaintiff class will ultimately prevail on the merits." *Bell*, 800 F.3d at 377 (7th Cir. 2015).

Here, the elements of the Class members' claims are *identical* under BIPA and will be based on the same class-wide proof applicable to other members within the same Class. *Foreman v. PRA III, LLC*, 05-cv-3372, 2007 WL 704478, at *11 (N.D. Ill. Mar. 5, 2007) (Predominance is satisfied "when there exists generalized evidence that proves or disproves an element on a simultaneous, classwide basis ... [since s]uch proof obviates the need to examine each class member's individual position."). As set forth in Section III(3), *supra*, there are numerous questions of law and fact at issue in this litigation, and all are subject to common proof and can be adjudicated on a class-wide basis for all members of the Class.

Not only are the questions of law uniform across the class, but questions of fact regarding Defendant's actions can be answered on a class-wide basis. Defendant's driver registration process was consistent for all truck drivers at all four of Defendant's Illinois facilities. (Exh. G Biometric Registration Slideshow; Reyes Dep., Exh. H, at 32:25-34:14; Ash Dep., Exh. I, at 70:9-71:23.) Similarly, Defendant's kiosks, AG Systems, and driver identity validation procedure, including the databases used to collect and store the biometrics, have remained materially the same at all times relevant to this litigation. (Diebes Dep., Exh. J, at 42:11-43:12, 77:22-78:7, 99:11-18.) To be sure, there is no evidence at all in the record that at any point Defendant, or anyone acting on Defendant's behalf, obtained or even attempted to obtain written consent for the collection of biometrics from any of the Class members who are identified in the Class database. (Reyes Dep., Exh. H, at 35:21-25; Ash Dep., Exh. I, at 81:13-83:2, 158:4-8; Rogers Dep., Exh. F, at 132:4-133:15.) And even if Defendant had any reasonable basis to contest the existence of consent, its argument would still uniformly apply to all proposed Class members. Indeed, the predominant

facts at issue are Defendant's uniform practices with respect to its ownership of the AG Systems and the collection of biometrics, not any specific circumstances or knowledge of individual Class members.[12]

The uniformity in the facts of this case as they relate to each Class member and the statutory consent requirement of BIPA Section 15(b) – the question of whether Defendant's actions violated BIPA – is not dependent on factual inquiries as to individual class members. "Generally, when a class challenges a uniform policy or practice, the validity of the policy or practice tends to be the predominant issue in the ensuing litigation." *CE Design Ltd.,* 259 F.R.D. 135 at 142. As such, not only do common questions of law predominate, so do common questions of fact.

2.  A class action is the most efficient way of adjudicating the Class members' claims and is superior to a multitude of individual lawsuits.

Rule 23(b)(3) requires a class action to be superior to other available methods and a fair and efficient method to adjudicate the controversy. Fed. R. Civ P. 23(b)(3). To determine whether a class action is a superior method, courts often look to whether it is an "efficient use of both judicial and party resources." *Hinman,* 545 F. Supp. 2d at 807. A class action is the superior method of resolving large scale claims if it will "achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750, 759 (7th Cir. 2014) (quoting *Amchem*, 521 U.S. at 615). The superiority requirement is generally satisfied where class members have uniform claims governed by the same law. *In re Bridgestone/Firestone, Inc.*, 288 F.3d 1012, 1015 (7th Cir. 2002). Courts should also consider the "improbability that large numbers of class members would possess the initiative to litigate

---

[12] Relatedly, because BIPA requires an objective measure of consent ("informed written consent"), as opposed to some lesser form of consent such as oral or implied, the state of mind of any truck driver is irrelevant and would not impact class certification here. *See* 740 ILCS 14/1, *et seq.*

individually." *Morris v. Risk Mgmt. Alternatives, Inc.*, 203 F.R.D. 336, 345 (N.D. Ill. 2001) (quoting *Haynes v. Logan Furniture*, 503 F.2d 1161, 1164-65 (7th Cir. 1974)). In making an inquiry as to the efficiency of the class action model in a given case, "[t]he more claimants there are, the more likely a class action is to yield substantial economies in litigation." *Carnegie v. Household Int'l, Inc.,* 376 F.3d 656, 660–61 (7th Cir. 2004).

In determining whether a class action is the superior method, courts often consider the following factors: (1) the class members' interest in individually controlling separate actions; (2) any litigation already begun by class members; (3) the desirability of concentrating the litigation in the particular forum; and (4) the difficulties in managing a class action. Fed. R. Civ. P. 23(b)(3); *Carbajal,* 219 F.R.D. at 442-443.

This case is particularly well suited for class treatment because the Class members' interest in pursuing individual actions is minimal given that most members of the Class could find the cost of litigating their claims – each of which may be statutorily limited to $1,000 for negligent violations of BIPA and $5,000 for willful and reckless violations – to be prohibitive. *See Carbajal,* 219 F.R.D. at 443 ("[T]he fact that any one individual plaintiff only a modest amount ($1,000) absent actual damages actually makes the claims more suitable for determination in a class action, as no individual would have incentive to sue on his or her own.") Because the claims at issue here involve uniform statutory damages, based on violations of the same prong of one statute, a class action will allow for a single, consistent adjudication of whether Defendant's practices comport with BIPA. *Id.* This is the most efficient outcome given Defendant's uniform practices at issue here and will avoid any future inconsistent rulings. *Id.*

Further, many members of the putative Class may not have access to competent counsel willing to invest the time and resources necessary to prosecute their claims on an individual basis.

It is therefore unlikely that, absent a class action, individuals would be able to obtain relief through individual lawsuits. Indeed, proposed Class Counsel are unaware of any other members of the proposed Class who have initiated their own BIPA lawsuit against Defendant. As such, adjudicating the Class members' claims in a single proceeding will "save[] the resources of both the courts and the parties by permitting an issue potentially affecting every class member to be litigated in an economical fashion under Rule 23." *Gen. Tel Co. of Sw. v. Falcon*, 457 U.S. 147, 155 (1982); s*ee Carbajal,* 219 F.R.D. at 443 ("Class actions . . . may permit the plaintiffs to pool claims which would be uneconomical to litigate individually"); *Carnegie,* 376 F.3d at 660–61.

Moreover, proceeding with this case in this forum makes sense because this litigation has been pending in this Court since 2019, because the Class is limited to individuals who were wronged within Illinois, and because BIPA is an Illinois statute. And as stated above, this case does not intersect with any other class actions pending against Defendant.

Finally, the claims of Plaintiff and the Class members can be easily managed as a class action. As set forth above, liability can be established on a class-wide basis based on the same common facts uncovered in discovery. Nor are there any potential difficulties with ascertaining the Class given the objective class definition or with providing direct notice to the Class, as Plaintiff's counsel are already in possession of such individuals' names and mailing addresses. Accordingly, a class action is the most efficient method of adjudicating this action and is superior to individual lawsuits.

## IV.     PLAINTIFF'S COUNSEL SHOULD BE APPOINTED CLASS COUNSEL

Finally, and as set forth in Section III B(5), *supra*, Plaintiff's counsel, McGuire Law, P.C., has been appointed as class counsel in numerous class actions, including many BIPA class actions and multiple class actions in the Northern District of Illinois, and will continue to "fairly and

adequately represent the interests of the class" in this case. Fed. R. Civ. P. 23(g)(4). As a result, Plaintiff respectfully requests that the Court appoint McGuire Law, P.C. as Class Counsel pursuant to Fed. R. Civ. P. 23(g).

**V.**     **CONCLUSION**

For the reasons set forth above, the numerosity, commonality, typicality, and adequacy requirements of Rule 23(a) and the predominance and superiority requirements of Rule 23(b) are satisfied. Plaintiff respectfully requests that the Court enter an Order certifying the proposed Class, appointing Plaintiff Richard Rogers as Class Representative, appointing Myles McGuire, Evan M. Meyers, David L. Gerbie, and Brendan Duffner of McGuire Law, P.C. as Class Counsel, and awarding such additional relief as the Court deems reasonable and just.

Dated: August 17, 2021                    RICHARD ROGERS, individually, and on
                                          behalf of similarly situated individuals

                                          By: */s/ David L. Gerbie*
                                          One of Plaintiff's Attorneys

Myles McGuire
Evan M. Meyers
David L. Gerbie
Brendan Duffner
MCGUIRE LAW, P.C.
55 W. Wacker Drive, 9th Fl.
Chicago, Illinois 60601
Tel: (312) 893-7002
Fax: (312) 275-7895
mmcguire@mcgpc.com
emeyers@mcgpc.com
dgerbie@mcgpc.com
bduffner@mcgpc.com

*Counsel for Plaintiff and the Putative Class*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on August 17, 2021, a copy of *Plaintiff's Motion and Memorandum in Support of Class Certification* was filed electronically with the Clerk of Court, with a copy sent by Electronic Mail to all counsel of record.

/s/ David L. Gerbie_____