**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| RICHARD ROGERS, individually and on behalf of similarly situated individuals,<br><br>*Plaintiff,*<br><br>v.<br><br>BNSF RAILWAY COMPANY,<br><br>*Defendant.* | No. 19-cv-03083<br><br>Hon. Matthew F. Kennelly |

**PLAINTIFF'S L.R. 56.1 RESPONSE TO DEFENDANT'S STATEMENT OF MATERIAL FACTS AND L.R. 56.1(b)(3)(c) STATEMENT OF ADDITIONAL MATERIAL FACTS IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure and Local Rule 56.1, Plaintiff Richard Rogers ("Plaintiff") respectfully submits this Response to Defendant BNSF Railway Company's ("BNSF" or "Defendant") Statement of Material Facts, as well as Plaintiff's Statement of Additional Material Facts in Opposition to Defendant's Motion for Summary Judgment.

**A.      The Parties and Relevant Non-Parties[1]**

| | |
|---|---|
| 1 | Plaintiff Richard Rogers is an Illinois resident who has visited BNSF's intermodal facilities in Illinois from 2003 to as recently as November 2020 in connection with his work as an intermodal truck driver for various third-party logistics companies. |
| | Ex. 1, ECF No. 103, Sec. Am. Compl. ("SAC") ¶¶ 15, 16; Ex. 2, Rogers Dep. Tr. 13:22–14:13, 30:3–31:5. |

**Plaintiff's Response:** Plaintiff does not dispute Statement No. 1.

---

[1] Defendant's headings are reproduced herein for the sake of accuracy and completeness, but pursuant to L.R. 56.1(a)(3), do not constitute factual assertions by Defendant. As a result, Plaintiff is not required to dispute them, though to the extent necessary, Plaintiff disputes each heading that purports to make a factual assertion.

| 2 | BNSF is one of the largest freight railroad networks and railroad operators in North America, moving a variety of products (including hazardous materials), transporting freight to the Canadian and Mexican borders, serving more than 40 ports, spanning 28 states and three Canadian provinces, operating 25 intermodal facilities and has an average of 1,200 trains in service each day. |
| --- | --- |
| | Ex. 3, Briggs Decl. ¶¶ 2–3. |

**Plaintiff's Response:** Plaintiff does not dispute Statement No. 2.

| 3 | An "intermodal facility" or "hub" is a terminal where trailers and containers are loaded and unloaded from trucks to trains and vice versa. |
| --- | --- |
| | Ex. 4, Burris Dep. Tr. 18:8–16. |

**Plaintiff's Response:** Plaintiff does not dispute Statement No. 3.

| 4 | Non-party Remprex, LLC ("Remprex") is a third-party service provider to BNSF since 2007 that performs a service Remprex calls "intelligent gate operation" in which Remprex processes trucks and truck drivers moving through BNSF's intermodal terminals in Illinois and other parts of the country by means of Remprex's "automated gate system" or "AGS." |
| --- | --- |
| | Ex. 5, Ash Dep. Tr. 33:7–16; 34:2–35:23; Ex. 6, Intermodal Facilities Services Agreement dated July 1, 2007 (the "2007 Remprex Contract), at BNSF_00000132, BNSF_00000151–55; Ex. 7, Intermodal Facilities Services Master Agreement (the "2018 Remprex Contract"), at BNSF00001137; Ex. 8, Reyes Dep. Tr. 116:25–117:11 (stating that the AGS is utilized in Illinois, Texas, Kansas, Tennessee, California, Arizona, and Washington); *id.* at 117:19–25 (testifying that Remprex operates the AGS at BNSF's intermodal facilities throughout the United States, including Illinois); Ex. 4, Burris Dep. Tr. 141:24–142:6 (testifying Remprex operates the AGS in seven different states). |

**Plaintiff's Response:** Plaintiff does not dispute that Remprex is a third-party service provider of BNSF, assists BNSF in processing trucks and truck drivers moving through BNSF's intermodal facilities, and has provided services to BNSF since 2007. However, Plaintiff disputes Defendant's characterization of the "automated gate system" or "AGS" as belonging to Remprex, LLC.[2] The

---

[2] Plaintiff also disputes Defendant's use of the term "AGS" throughout its Statement of Facts, as the systems used at Defendant's Illinois facilities stored individuals' biometrics locally, on servers present at each location. Plaintiff thus uses the plural term "AG Systems" to more accurately reflect the fact that these

AG Systems belong to BNSF and are merely operated and maintained in part by Remprex, as BNSF owns the hardware that comprises the AG Systems, including but not limited to the biometric kiosks, gate arms, and camera equipment. Ex. 1, Reyes Dep. Tr., at 31:22-25; Ex. 2, Diebes Dep. Tr., at 50:5-22; 51:6-11; 52:17-53:4; Ex. 3, Ash Dep. Tr., at 38:11-39:13. BNSF also owns the physical property on which the AG Systems are built and affixed. Ex. 1, Reyes Dep. Tr., at 53:14-54:23. BNSF also owns the data that is gathered through and produced by the AG Systems, including but not limited to the biometric information collected on BNSF's behalf. Ex. 4, BNSF Master Agreement with Remprex, at REM_000503, ¶ 2 (Privacy and Security Supplement executed by BNSF and Remprex referring to "all information and data transmitted to or stored by Provider in connection with performance of its obligations under this agreement, including but not limited to, personally identifiable information ("PII") of employees or customers of BNSF" as "BNSF Confidential Information"). Furthermore, Remprex's clerk console reference manual also specifically identifies the drivers as registering their biometrics "with Burlington Northern Santa Fe (BNSF)." See Ex. 5 at REMPREX_0001475 at "Biometric Registration Holds." BNSF specifically contracted to ensure that it owned the data gathered through the AG Systems pursuant to BNSF's contract with Remprex. Ex. 2, Diebes Dep. at 58:12-15; 68:11-23. BNSF itself also participates in the processing of trucks through the AG Systems, which are directly connected to BNSF's other computer systems. Ex. 1, Reyes Dep. Tr., at 47:7-51:6.

---

systems were not, and are not, one cohesive system. Indeed, Plaintiff registered separate and mathematically unique biometrics with BNSF's AG Systems on multiple occasions and at multiple locations and such information was stored locally at those locations. (*See* SAF Nos. 22-24). Defendant's contract with Nascent for the installation of the AG Systems also refers to such systems in the plural. *See* Ex. 10 to BNSF SOF, at BNSF_00000004, ¶ 2 (referring in the plural to the installation of automated gate systems).

| | |
|---|---|
| 5 | Consistent with the contracts between Remprex and BNSF, Remprex (not BNSF) and its employees operate and maintain the Remprex AGS system at BNSF's intermodal facilities, operating checkpoints and Driver's Assistance Operations to provide twenty-four hours per day, seven days per week onsite coverage, including "[p]erform[ing] AGS driver registration including biometrics."fn. 1<br><br>Fn. 1: BNSF does not concede that the "biometrics" used by Remprex to register drivers into the Remprex AGS constitute a "biometric identifier" or "biometric information" as defined by BIPA. This disputed fact is immaterial to BNSF's motion for summary judgment. Even if the "biometrics" used by Remprex to register drivers are either biometric identifiers or biometric information as defined by BIPA, BNSF is still entitled to summary judgment. |
| | Ex. 7, 2018 Remprex Contract, at BNSF00001164–65. |

**Plaintiff's Response:** Plaintiff does not dispute that BNSF had contracts with Remprex and that, pursuant to those contracts, BNSF purchased Remprex's services, which included operation of the AG Systems on BNSF's behalf. Plaintiff disputes Defendant's characterization of the AG Systems and Remprex's involvement with the AG Systems. Plaintiff incorporates by reference his Response to Statement No. 4, which disputes Defendant's characterization of the AG Systems as the "Remprex AGS." Plaintiff similarly disputes BNSF's characterization, contained in footnote no. 1, of the AG Systems as belonging to Remprex—as well as BNSF's subsequent legal conclusion, which is improperly included in a Statement of Facts. *See* L.R. 56.1(d)(4). Remprex is a service provider and value-added reseller of the AG Systems, which are owned and ultimately controlled by BNSF. Ex. 1, Reyes Dep. Tr., at 31:22-25; Ex. 2, Diebes Dep. Tr., at 41:22-43:1; 50:5-22; 51:6-11; 52:17-53:4; Ex. 3, Ash Dep. Tr., at 38:11-39:13. Plaintiff disputes Defendant's claim that Remprex alone maintains the AG Systems, as upgrades to such systems must be approved by BNSF. Ex. 3, Ash Dep. Tr., at 90:17-91:1. Plaintiff does not dispute that Remprex provides 24/7 "intelligent gate operation" services at BNSF's intermodal facilities.

| 6 | Non-party Nascent Technology, LLC ("Nascent") is another third-party service provider to BNSF that initially designed and sold the AGS system to BNSF in 2006, prior to Remprex. |
| | Ex. 9, Urban Dep. Tr. 12:1–9; 12:21–13:4; Ex. 10, Contract for Other Work between BNSF and Nascent dated Nov. 29, 2006, at BNSF_00000004 ("Contractor shall perform Work for the installation of automated gate systems at Corwith Intermodal Hub, Chicago, Illinois and at LPC Intermodal Hub, Elwood, Illinois[.]") |

**Plaintiff's Response:** Plaintiff does not dispute that Nascent is a third-party service provider, and Plaintiff does not dispute that Nascent wrote the software that runs the AG Systems, conformed such software to the initial hardware that comprised the AG Systems, and sold hardware to BNSF in 2006. However, Plaintiff disputes Defendant's suggestion that Nascent unilaterally designed the AG Systems utilized by Defendant. BNSF played a large role in designing the AG Systems, including approving the screenflows that would be displayed to truck drivers and dictating features and enhancements for Nascent to implement into the AG Systems. (Ex. 1, Reyes Dep. Tr., 58:11-59:11; Ex. 6, Pang Dep. Tr., 84:4-18; Ex. 7, Urban Dep. Tr., 14:2-14; 36:1-24). Additionally, Plaintiff objects to the relevance of Defendant's citation to BNSF_00000004, which concerns BNSF's contract with Nascent for physical installation of the AG Systems only and does not involve design of the AG Systems.

| 7 | Nascent has owned and continues to own the software that operates the Remprex AGS, requiring that any changes to the AGS software be made exclusively by Nascent. |
| | Ex. 11, Software License Agreement dated Aug. 31, 2012, at BNSF_00000099 ("Licensee shall not modify, merge, or incorporate any form or portion of the Software with other program or create any derivative work from the Software."); *id.* at BNSF_00000100, § 3(a); Ex. 9, Urban Dep. Tr. 56:20–57:16. |

**Plaintiff's Response:** Plaintiff incorporates by reference his Response to Statement No. 4, which disputes Defendant's characterization of the AG Systems as the "Remprex AGS." Plaintiff does not dispute that BNSF licenses software from Nascent that runs its AG Systems. However, Plaintiff

disputes Defendant's characterization of Nascent's changes to the software. Defendant's representation in Statement No. 7 is misleadingly incomplete because Nascent makes material changes to the AG Systems' software at the direction of its customer BNSF. Ex. 1, Reyes Dep. Tr., 59:4-11. Such software was custom designed to fit BNSF's specific requirements, including compatibility with existing BNSF systems and use of specific input requirements such as commercial driver's license numbers. Ex. 1, Reyes Dep. Tr., at 58:11-59:11. BNSF, Remprex and Nascent maintained an intraorganizational "Change Order" system by which requests for changes to the AG Systems were submitted by BNSF and implemented by Remprex and Nascent. Urban Dep. Tr., 14:2-14; 36:1-24; Ex. 6, Pang Dep. Tr., at 83:25-85:17; Ex. 8, Gruben Dep. Tr., at 31:2-17; Ex. 9 at REMPREX_0010677-10680 (emails between Remprex, Nascent and BNSF demonstrating the intraorganizational Change Order system and depicting Change Order driven by BNSF leadership (*see* 0010678 "Purpose Behind Change Order"; ).[3] BNSF also ensured that its branding and BNSF logo would be used on the AG System software. Ex. 7, Urban Dep. Tr., at 33:1-34:22; Ex. 10, AGS Daily Report for BNSF's Logistics Park Chicago Location, at REMPREX_0006924 (daily statistical report regarding AG System performance bearing BNSF branding and sent to BNSF).

| 8 | Plaintiff alleges that BNSF "requires truck drivers, including Plaintiff, who visit its four intermodal facilities located in Illinois, to provide their biometric identifiers in the form of fingerprints and related biometric information as part of the process of accessing the facilities," and specifically that "Plaintiff was required to register his biometric identifiers and/or biometric information into biometrically-enabled AutoGate Systems that partially control ingress and egress at the facilities" |
|---|---|
| | Ex. 1, SAC ¶¶ 3, 16. |

**Plaintiff's Response:** Plaintiff does not dispute Statement No. 8.

---

[3] Plaintiff notes that due to the manner in which they were produced, the email exhibits generally show the older emails at the bottom of the page.

| 9 | The only time Plaintiff allegedly submitted his fingerprints to BNSF was when Plaintiff used the AGS kiosk when entering BNSF's intermodal facilities in Illinois. |
|---|---|
|  | Ex. 1, SAC ¶¶ 16, 18; Ex. 2, Rogers Dep. Tr. 35:1–36:6, 59:13–21. |

**Plaintiff's Response:** Plaintiff does not dispute that he did submit his fingerprints to BNSF when using the AG Systems' kiosks when entering BNSF's intermodal facilities in Illinois. However, Plaintiff disputes Statement No. 9 because he also submitted his fingerprints to BNSF on each occasion he was asked to register his biometrics with BNSF's various Illinois AG Systems at each AG System's Driver Assistance Booth ("DAB"). The DABs are buildings that are different from the AG Systems' kiosks. Ex. 7, Urban Dep. Tr., at 29:3-22 (describing the difference between a biometric registration and a subsequent scan); Ex. 1, Reyes Dep. Tr., at 32:18-34:22 (describing registration process and subsequent scan process).

| 10 | BNSF maintains four intermodal terminals in Illinois—Corwith, Cicero, Willow Springs, and Logistics Park Chicago ("LPC")—each of which utilizes an "AGS" operated and maintained by Remprex to control truck drivers entering and exiting from the facilities. |
|---|---|
|  | Ex. 1, SAC ¶ 3; Ex. 3, Briggs Decl. ¶ 27; Ex. 8, Reyes Dep. Tr. 30:5–12, 31:10–14, 39:24–40:15. |

**Plaintiff's Response:** Plaintiff does not dispute that Remprex operated and maintained (in part) the AG Systems at BNSF's four intermodal terminals in Illinois. However, Plaintiff disputes Defendant's characterization of the AG Systems to the extent it suggests that Remprex "operated and maintained" the AG Systems unilaterally, as Remprex could not replace the servers, or perform other essential functions required to manage and store fingerprint data without BNSF's express permission. Ex. 1, Reyes Dep. Tr., at 63:2-19. The contracts between Remprex and BNSF required that Remprex take direction from BNSF. Ex. 1, Reyes Dep. Tr., at 146:5-147:14; Ex. 4, BNSF Master Agreement with Remprex, at REM_000478 (Provider shall take direction from BNSF Management or designated BNSF representatives as appropriate). Moreover, Defendant

contracted and paid for Remprex's services, including the service whereby Remprex collected truck drivers' biometrics pursuant to contract. Ex. 4, BNSF Master Agreement with Remprex, at REM_000479 (detailing Remprex's duties under the contract which include registering truck drivers' biometrics and "training as necessary for [BNSF] and other authorized users of the system").

**B.    The Nascent/Remprex Auto Gate System ("AGS")**

| | |
|---|---|
| | Non-party Nascent designed the AGS system used at BNSF's intermodal facilities. |
| 11 | Ex. 9, Urban Dep. Tr. 9:12–18 (describing the gate system at issue in this lawsuit as Nascent's gate system used by Remprex); *id.* at 11:3–20 (describing writing the software and integrating the hardware for Nascent that would become the AGS at BNSF's facilities). |

**Plaintiff's Response:** Plaintiff does not dispute that Nascent is involved in designing the software in the AG Systems, that BNSF licenses the software that operates its AG Systems, and that Nascent makes back-end changes to it from a programming standpoint. However, Plaintiff disputes BNSF's characterization of Nascent's role with the software, as it is misleading and incomplete because it does not include the fact that BNSF can and does request customization and changes to the AG Systems' software to address its specific needs, and Nascent makes those changes. Ex. 1, Reyes Dep. Tr., at 58:11-59:11; Ex. 6, Pang Dep. Tr., at 83:25-85:17. BNSF also approved and modified the screenflows, i.e., the content and sequence of screens that were shown to truck drivers at the AG Systems' kiosks. Ex. 6, Pang Dep. Tr., at 84:4-85:17. In fact, BNSF, Remprex, and Nascent maintained an intraorganizational "Change Order" system by which requests for changes to the AG Systems were submitted by BNSF and implemented by Remprex and/or Nascent. Urban Dep. Tr., 14:2-14; 36:1-24; Ex. 6, Pang Dep. Tr., at 83:25-85:17; Ex. 8, Gruben Dep. Tr., at 31:2-17; Ex. 9 at REMPREX_0010677-10680 (emails between Remprex, Nascent and BNSF describing BNSF led change order). Plaintiff incorporates by reference his Response to Statement Nos. 6 and

7, above, regarding BNSF's role in designing the AG Systems.

| 12 | The AGS system is comprised of both hardware and software. |
| | Ex. 9, Urban Dep. Tr. 11:5–6 ("[T]he components of the gate system consist of hardware and software."); Ex. 5, Ash Dep. Tr. 38:18–20 (same). |

**Plaintiff's Response:** Plaintiff does not dispute Statement No. 12.

| 13 | Nascent designs the software that operates the AGS |
| | Ex. 9, Urban Dep. Tr. 13:13–21. |

**Plaintiff's Response:** Plaintiff does not dispute that Nascent was involved in designing the software that operates the AG Systems. However, Plaintiff disputes Statement No. 13 to the extent it implies that Nascent alone designs the software that operates the AG Systems. BNSF played a role in designing the AG Systems through requesting changes to the AG Systems, submitting its BNSF branding and imagery to Nascent, and approving the screenflows that would be shown to Plaintiff and similarly situated individuals. Ex. 1, Reyes Dep. Tr., at 58:11-59:11; Ex. 6, Pang Dep. Tr., at 83:25-85:17; Ex. 7, Urban Dep. Tr., at 14:2-14; 36:1-24. Plaintiff does not dispute that Nascent makes back-end changes to the AG Systems' software from a programming standpoint. Defendant could have, but never asked its service providers to implement a biometric consent screen to the AG System screenflows. Ex. 1, Reyes Dep. Tr., at 35:21-25; Ex. 3, Ash Dep. Tr., at 81:13-83:2; 158:4-8.

| 14 | Nascent also selected the hardware used by the AGS and integrated that hardware into Nascent's AGS. |
| | Ex. 9, Urban Dep. Tr. 13:22–14:1. |

**Plaintiff's Response:** Plaintiff does not have enough information to confirm or deny whether Nascent selected the initial hardware that was used in the AG Systems and sold it to BNSF. Plaintiff disputes BNSF's characterization of the AG Systems as "Nascent's AGS." Indeed, it is inconsistent with BNSF's characterization of the AG Systems as "Remprex's AGS" in Statement

Nos. 5, 7, 21, 23, 28, 31, 35, 51, 52, 53, and 54. Plaintiff further incorporates by reference his Response to Statement No. 4, which disputes Defendant's characterization of its AG Systems as "Remprex's AGS." The AG Systems at issue in this lawsuit belong to BNSF for the same reasons outlined in Plaintiff's Response to Statement No. 4. BNSF's characterization of the AG Systems as "Nascent's AGS" is also inconsistent with BNSF's Statement No. 6 that the AG Systems were "sold" to BNSF in 2006.

| | |
|---|---|
| 15 | Nascent initially sold the AGS to BNSF in 2006 with Remprex later becoming an authorized reseller of the AGS to BNSF. |
| | Ex. 10, Contract for Other Work between BNSF and Nascent dated Nov. 29, 2006, at BNSF_00000004 ("Contractor shall perform Work for the installation of automated gate systems at Corwith Intermodal Hub, Chicago, Illinois and at LPC Intermodal Hub, Elwood, Illinois[.]"); Ex. 9, Urban Dep. Tr. 12:1–9 ("At one point there was a value-added reseller brought on, and [Nascent] worked directly with that reseller, who was REMPREX[.]"); Ex. 5, Ash Dep. Tr. 38:21–39:4 (Remprex is "a reseller of this equipment."). |

**Plaintiff's Response:** Plaintiff does not dispute Statement No. 15.

| | |
|---|---|
| 16 | Both Nascent and Remprex describe the AGS as their system. |
| | Ex. 9, Urban Dep. Tr. 9:12–18, 10:8–9 (testifying that he "wasn't aware that Nascent is involved directly in the lawsuit but that *their* gate system was used by REMPREX in the railroad[.]") (emphasis added); *id.* at 13:10–14:1 (describing the AGS as "our system"); Ex. 5, Ash Dep. Tr. 34:2–35:23 (testifying that Remprex provides its "intelligent gate operation" services to BNSF, which includes operating and maintaining the AGS). |

**Plaintiff's Response:** Disputed. Remprex's clerk console reference manual identifies the drivers as registering their biometrics "with Burlington Northern Santa Fe (BNSF)." See Ex. 5 at REMPREX_0001475 at "Biometric Registration Hold". Defendant's citation to the deposition testimony of Timothy Ash does not support Statement No. 16 because, in the cited testimony, Mr. Ash does not describe the AG Systems as Remprex's systems and merely describes services provided by Remprex (i.e., "its services"). Plaintiff further disputes Statement No. 16 to the extent that Defendant seeks to imply that either Nascent or Remprex owns the AG Systems. The AG

Systems at issue in this lawsuit belong to BNSF for the same reasons outlined in Plaintiff's

Response to Statement No. 4.

| | |
|---|---|
| | Nascent owns the software that operates the AGS. |
| 17 | Ex. 11, Software License Agreement dated Aug. 31, 2012, at BNSF_00000100 ("[A]ll components of the Software and Documentation consist of proprietary works of Nascent … Licensor has all rights, title, and interest in and to the licensed Software and Documentation which shall remain with Nascent."); Ex. 9, Urban Dep. Tr. 56:20– 57:4 (testifying that Nascent owns the software it designed that operates the AGS). |

**Plaintiff's Response:** Plaintiff does not dispute Statement No. 17.

| | |
|---|---|
| | Pursuant to the license agreement between Nascent and BNSF, any changes to Nascent's AGS software can only be done by Nascent. |
| 18 | Ex. 11, Software License Agreement dated Aug. 31, 2012, at BNSF_00000099 ("Licensee shall not modify, merge, or incorporate any form or portion of the Software with other program or create any derivative work from the Software."); Ex. 9, Urban Dep. Tr. 56:20–57:16. |

**Plaintiff's Response:** Plaintiff does not dispute that BNSF licenses the AG Systems' software

from Nascent and cannot unilaterally alter the code of said software. However, Plaintiff disputes

Statement No. 18 to the extent that it implies that BNSF is unable to request or require changes to

be made to the AG Systems' software because BNSF, Remprex, and Nascent maintained an

intraorganizational "Change Order" system by which requests for changes to the AG Systems were

submitted by BNSF and implemented by Remprex and/or Nascent. Urban Dep. Tr., 14:2-14; 36:1-

24; Ex. 6, Pang Dep. Tr., at 83:25-85:17; Ex. 8, Gruben Dep. Tr., at 31:2-17; Ex. 9 at

REMPREX_0010677-10680 (emails between Remprex, Nascent, and BNSF describing BNSF led

change order).

| | |
|---|---|
| | In addition to reselling the AGS to BNSF, Remprex has operated and maintained the AGS system at BNSF's intermodal facilities in Illinois and in other parts of the country since 2007. |
| 19 | Ex. 5, Ash Dep. Tr. 34:2–35:23 (explaining that Remprex operates the AGS at BNSF's four intermodal facilities in Illinois); Ex. 6, 2007 Remprex Contract, at BNSF_00000132, BNSF_00000151–152 (describing Remprex's agreement to operate the AGS at BNSF's LPC facility in Illinois); Ex. 8, Reyes Dep. Tr. 116:25–117:11 (stating that the AGS is utilized in Illinois, Texas, Kansas, Tennessee, California, Arizona, and Washington); *id.* at 117:19–25 (testifying that Remprex operates the AGS at BNSF's intermodal facilities throughout the United States, including Illinois); Ex. 4, Burris Dep. Tr. 141:24–142:6 (testifying Remprex operates the AGS in seven different states). |

**Plaintiff's Response:** Plaintiff does not dispute that Remprex resold the AG Systems to BNSF, or that BNSF contracted with Remprex to be involved with the operations and maintenance of the AG Systems in Illinois since 2007. However, Plaintiff disputes Statement No. 19 to the extent that it implies that Remprex has been the sole operator and maintainer of the AGS since 2007, as BNSF plays an active role in maintaining the AG Systems, including approving upgrades to hardware and software. Ex. 3, Ash Dep. Tr., at 90:17-91:1. BNSF itself participates in the processing of trucks through the AG Systems, which are directly connected to BNSF's other computer systems. Ex. 1, Reyes Dep. Tr., at 47:7-51:6. Remprex also takes direction from BNSF in performing various services related to the AG Systems. Ex. 4, BNSF Master Agreement with Remprex, at REM_000478 (Provider shall take direction from BNSF Management or designated BNSF representatives as appropriate).

| | |
|---|---|
| | Remprex's AGS is designed and operated to be uniform and interconnected across multiple BNSF intermodal facilities regardless of location. |
| 20 | Ex. 4, Burris Dep. Tr. 141:24–143:4 (testifying that Remprex operates the AGS at facilities in seven different states and that Remprex's operation of these facilities is generally the same); Ex. 5, Ash Dep. Tr. 115:12–116:20 (testifying that Remprex created a central database for driver registration across multiple BNSF intermodal facilities); Ex. 8, Reyes Dep. Tr. 40:16–21 ("Remprex has moved a big part of their operations to a centrally located operating center in Chicago where they are performing the driver assistance remotely from that -- from that building."). |

**Plaintiff's Response:** Disputed. Plaintiff incorporates by reference his Response to Statement No. 4, which disputes Defendant's characterization of the AG Systems as the "Remprex AGS." Plaintiff also disputes that the AG Systems are designed to be uniform because there are not biometric readers at every BNSF facility in the United States, and even for facilities with biometric readers, individuals are not required to use the biometric component. Ex. 1, Reyes Dep. Tr., at 33:21-35:7; 140:6-20. Moreover, the AG Systems were not uniform and interconnected; instead Defendant and its service provider Remprex attempted but failed to successfully deploy a centralized repository of biometrics that synced properly. Ex. 11, Caruso Decl., at ¶¶ 7-8; See Ex. 12, at REMPREX_0011142-0011145 (email chain detailing unsuccessful synchronization and resulting need to disable biometric component of an AG System). Each Illinois BNSF facility maintained its own independent servers on which the captured biometrics were stored. Ex. 11, Caruso Decl., at ¶ 7.

| 21 | The first step of the Remprex AGS has the truck driver pull through a "portal" that takes images of all parts of the vehicle in order to identify the equipment that is coming through (*i.e.*, pictures of the license plate, chassis, and container) and to create a record of the condition of the equipment entering the intermodal facility before the driver proceeds to the kiosk. |
|----|----|
|    | Ex. 5, Ash Dep. Tr. 58:2–59:6. |

**Plaintiff's Response:** Plaintiff incorporates by reference his Response to Statement No. 4, which disputes Defendant's characterization of the AG Systems as the "Remprex AGS." Plaintiff does not otherwise dispute Statement No. 21.

| 22 | At the kiosk, the driver will be asked to enter some form of identifying number, usually the driver's commercial driver's license number. |
|----|----|
|    | Ex. 5, Ash Dep. Tr. 68:2–8. |

**Plaintiff's Response:** Plaintiff does not dispute Statement No. 22.

| 23 | If the driver is not registered in the Remprex AGS system, the kiosk will direct the driver to proceed to the "Driver's Assistance Building" or "DAB," which is in a holding area in the facility. |
|---|---|
| | Ex. 5, Ash Dep. Tr. 70:9–16; Ex. 12, Remprex Presentation, BNSF_00001342–43. |

**Plaintiff's Response:** Disputed. Plaintiff incorporates by reference his Response to Statement No.

4, which disputes Defendant's characterization of the AG Systems as the "Remprex AGS."

Plaintiff also disputes Statement No. 23 to the extent that it implies that the "Driver Assistance

Building" or "DAB" is on Remprex property or is owned by Remprex. Ex. 3, Ash Dep. Tr., at

75:1-5. The DABs at each Illinois facility are BNSF's property and are located on BNSF owned

or leased real estate. Ex. 1, Reyes Dep. Tr., at 53:6-54:23; Ex. 3, Ash Dep. Tr., at 86:20-87:19; Ex.

2, Diebes Dep. Tr., at 69:8-70:12. Plaintiff also disputes this Statement to the extent that it implies

that unregistered drivers proceed on foot to the DAB or that there is any "holding area" that

otherwise prevents unregistered and unidentified drivers from accessing the entirety of BNSF's

facilities as if they have already been identified. Ex. 3, Ash Dep. Tr., at 161:5-162:3. There is not.

In fact, ████████████████████████████████████████

████████████████████████████████████████

██████████████████████. *Id.*

| 24 | The AGS, including the DAB, is operated and maintained exclusively by Remprex and Remprex employees, and no BNSF employees are involved in the registration of drivers into the AGS system. |
|---|---|
| | Ex. 5, Ash Dep. Tr. 167:6–168:18 (testifying that Remprex "clerks" are responsible for assisting drivers through the AGS, including registering truck drivers); Ex. 12 Remprex Presentation, at BNSF_00001342–45 (describing the process by which Remprex employees register drivers in the DAB); Ex. 8, Reyes Dep. Tr. 118:1–19 (testifying that Remprex employees are exclusively responsible for operating and maintaining the AGS). |

**Plaintiff's Response:** Plaintiff does not dispute that Defendant paid Remprex to have Remprex

employees operate and maintain the AG Systems and the DABs at Defendant's facilities. However,

Plaintiff disputes Defendant's use of the word "exclusively," as BNSF provides power and internet services to the AG Systems and the DAB, the DAB is located on BNSF property, the information captured by the AG Systems is housed on servers owned by BNSF and located on BNSF property, and Remprex must seek BNSF's approval to replace the AGS servers. Ex. 1, Reyes Dep. Tr., at 54:2-23; 63:2-19. Plaintiff also disputes Defendant's claim that "no BNSF employees are involved in the registration of drivers into the AGS" because pursuant to contract all such registrations were done at the direction of, and under the supervision of BNSF. Ex. 4, BNSF Master Agreement with Remprex, at REM_000478 (Provider shall take direction from BNSF Management or designated BNSF representatives as appropriate). Plaintiff further disputes Defendant's assertion that BNSF employees were not involved in the registration of drivers because the AG System databases obtained by Plaintiff in discovery indicate that numerous BNSF employees had log-in credentials to the AG Systems' clerk consoles. Such consoles were primarily used to register drivers. Ex. 13, Plaintiff's Expert Report, at pg. 16 ¶ 57; Ex. L. Plaintiff further disputes Defendant's assertion that BNSF employees were not involved in the registration of drivers because Remprex was contractually obligated to provide BNSF employees with training to ensure that such BNSF employees would be able to use the AG Systems. Ex. 4, BNSF Master Agreement with Remprex, at REM000479 (detailing Remprex's duties under the contract which include registering truck drivers' biometrics and "training as necessary for [BNSF] and other authorized users of the system").

| 25 | The unregistered driver will enter the DAB where a Remprex employee (often referred to as a "clerk") will register the driver into the AGS system by: (1) taking a picture of the driver's license; (2) recording the driver's license or other identifying number; (3) confirming the driver's information with the Uniform Intermodal Interchange and Facilities Access Agreement ("UIIA") database of registered drivers; (4) scanning the driver's fingers. |
| --- | --- |
| | Ex. 5, Ash Dep. Tr. 70:9–71:23; Ex. 12, Remprex Presentation, BNSF_00001342–45. |

15

**Plaintiff's Response:** Plaintiff does not dispute that typically a Remprex employee registers drivers with the AG Systems in the ways described in Statement No. 25. However, Plaintiff disputes Statement No. 25 to the extent that it implies that the "Driver Assistance Building" or "DAB" is on Remprex property or is owned by Remprex. Ex. 3, Ash Dep. Tr., at 75:1-5. The DABs at each of BNSF's Illinois facilities are BNSF's property and are located on BNSF owned or leased real estate. Ex. 1, Reyes Dep. Tr., at 53:6-54:23; Ex. 3, Ash Dep. Tr., at 86:20-87:19; Ex. 2, Diebes Dep. Tr., at 69:8-70:12. Plaintiff also disputes this Statement to the extent it implies that the information derived from drivers' fingerprints is owned by Remprex. Ex. 4, BNSF Master Agreement with Remprex, at REM_000503, ¶ 2 (Privacy and Security Supplement executed by BNSF and Remprex referring to "all information and data transmitted to or stored by Provider in connection with performance of its obligations under this agreement, including but not limited to, personally identifiable information ("PII") of employees or customers of BNSF" as "BNSF Confidential Information"). Plaintiff further notes that this language specifically mirrors BNSF's internal Corporate Policy on "Confidential Information" which includes biometrics. Ex. 14, BNSF's 2017 Corporate Policy on Confidential Information, at BNSF_00001323 § III Personally Identifiable Information (PII) (enumerating "[f]inger print, retinal scan, DNA profile or other biometric data" as "PII" and "Confidential Information" protected by various state laws). Plaintiff also disputes Defendant's description of the process of collecting drivers fingerprints as "scanning the driver's fingers." The drivers' biometric identifiers in the form of their immutable fingerprints, and associated biometric information, is the information that is being scanned by the AG Systems. Ex. 1, Reyes Dep. Tr., at 131:21-132:2. Defendant's description wrongly attempts to obfuscate the nature of the information being collected as potentially being something other than the kind of information directly protected by BIPA.

| 26 | After Remprex has registered and validated the driver's information, the driver is then able to proceed into the intermodal facility. |
|---|---|
| | Ex. 5, Ash Dep. Tr. 71:16–23; Ex. 12, Remprex Presentation, BNSF_00001342–45. |

**Plaintiff's Response:** Plaintiff disputes this Statement because it is factually inaccurate. Drivers are permitted into BNSF's intermodal facilities prior to having their biometrics registered, and prior to any ID verification. Ex. 3, Ash Dep. Tr., at 161:5-162:3. In fact, ████████████

████████████████████████████████████████████

████████████████████████. *Id.*

| 27 | On subsequent visits, a registered driver will enter his identifying number into the kiosk and place a finger onto a scanner at the entry gate kiosk to authenticate his identity. |
|---|---|
| | Ex. 5, Ash Dep. Tr. 69:9–12; Ex. 8, Reyes Dep. Tr. 32:23-33:19. |

**Plaintiff's Response:** Plaintiff does not dispute that Statement No. 27 generally describes the scanning process whereby registered drivers scan their biometrics to gain entry into BNSF's Illinois facilities. However, on some occasions the biometric scanning features of the AGS are suspended and, as such, individuals' biometrics are not used to authenticate their identity prior to entering BNSF's facilities. Ex. 3, Ash Dep. Tr., at 158:22-159:10.

| 28 | When a registered driver presents his finger to a finger scanner at a gate kiosk for authentication, the Remprex AGS system calls up the specific template stored for the specific driver identification number that has been presented and conducts the matching within the finger scanner itself, which then merely emits an output that either affirms or denies the match, and no new information is collected from the driver. |
|---|---|
| | Ex. 13, Kalat Decl. ¶ 3; Ex. 13-A, Expert Report of David Kalat, ¶ 43. |

**Plaintiff's Response:** Plaintiff disputes Statement No. 28. When a registered driver presents his finger to a finger scanner at the gate kiosk for authentication, new information <u>is</u> collected from the driver in the form of a biometric template that is captured and collected from the fingerprint presented to the finger scanner, and is then compared with the biometric template already stored

on file for the specific driver identification number. Ex. 7, Urban Dep. Tr., at 29:3-30:10. While biometric templates collected at the time of registration are permanently stored on BNSF's servers, Plaintiff does not dispute that the biometric templates captured by the finger scanner at the gate kiosk at visits subsequent to the registration are not stored in perpetuity.

| 29 | There is no evidence of any BNSF employee registering a truck driver into the AGS. |
| | Ex. 8, Reyes Dep. Tr. 118:11–15. |

**Plaintiff's Response:** Plaintiff disputes Statement No. 29. There is evidence in the record that numerous BNSF employees did have login credentials and were thus authorized users of the AG Systems, including at least John Clement, Tracy Skaggs, and Art Gneuhs. Ex. 13, Plaintiff's Expert Report, at pg. 16 ¶ 57; Ex. L. There is also contractual evidence that during the relevant time period, Remprex and BNSF agreed that Remprex would be responsible for providing training as necessary for BNSF and other authorized users of the AG Systems. Ex. 4, BNSF Master Agreement with Remprex, at REM000479 (detailing Remprex's duties under the contract which include registering truck drivers' biometrics and "training as necessary for [BNSF] and other authorized users of the system").

### C. Remprex's Possession of Driver Registration Data

| 30 | The information Remprex collects from a driver when it registers a driver into the AGS, including information related to a driver's finger scan, is stored in Remprex's DriverReg Databases. |
| | Ex. 13, Kalat Decl. ¶ 4; Ex. 13-A, Expert Report of David Kalat, ¶ 14; Ex. _8, Reyes Dep. Tr. 36:9–20 (explaining that driver registration data is stored "on a server on the Remprex network." |

**Plaintiff's Response:** Plaintiff does not dispute that Remprex has access to the BNSF servers that store biometric information collected by the AG Systems. Plaintiff objects to BNSF referring to these databases as "Remprex" databases, as such databases belong to BNSF, are labeled according to BNSF's various facilities, are stored on BNSF's servers, and the information stored on BNSF's

servers is also owned by BNSF. Ex. 1, Reyes Dep. Tr., at 31:22-25; 53:14-54:23; 63:2-19; Ex. 2, Diebes Dep. Tr., at 50:5-53:4; Ex. 3, Ash Dep. Tr., at 38:11-39:13; 87:4-88:3; Ex. 7, Urban Dep. Tr., at 24:14-17. Plaintiff disputes this Statement to the extent that it implies that the information collected from drivers as they are registered into the AG Systems belongs to or is owned by Remprex or to the extent it implies that Defendant is not in possession of Plaintiff's and the Class Members' biometrics because such information was owned by BNSF. Ex. 4, BNSF Master Agreement with Remprex, at REM_000503, ¶ 2 (Privacy and Security Supplement executed by BNSF and Remprex referring to "all information and data transmitted to or stored by Provider in connection with performance of its obligations under this agreement, including but not limited to, personally identifiable information ("PII") of employees or customers of BNSF" as "BNSF Confidential Information"); Ex. 2, Diebes Dep. Tr., at 58:12-15; 68:11-23. Plaintiff further disputes this statement to the extent it implies that BNSF itself is not "collecting" biometrics through this registration process and that it is instead exclusively Remprex which is responsible for such collection. The DriverReg databases are contained on separate servers which are owned by BNSF and stored on BNSF's property. Ex. 1, Reyes Dep. Tr., at 53:14-54:23; Ex. 3, Ash Dep. Tr., at 86:20-87:19. Plaintiff also objects to the relevance of Defendant's citation to the deposition of Carlos Reyes, as the testimony cited does not identify what entity owns the server to which he is referring.

| 31 | Each individual Remprex AGS at BNSF's intermodal facilities maintains its own distinct DriverReg Database on a local server. |
| | Ex. 13, Kalat Decl. ¶ 5; Ex. 13-A, Expert Report of David Kalat, ¶ 14; Ex. 16, Kalat Dep. Tr. 72:18–24; Ex. 5, Ash Dep. Tr. 85:6–20, 86:21–87:3; Ex. 8, Reyes Dep. Tr. 36:9–20. |

**Plaintiff's Response:** Plaintiff does not dispute that each AG System at BNSF's Illinois intermodal facilities maintains its own local driver_reg database. However, the servers referenced

in this Statement are owned by BNSF. Ex. 3, Ash Dep. Tr., at 87:4-19. Plaintiff also incorporates by reference his Response to Statement No. 4, which disputes Defendant's characterization of the AG Systems as the "Remprex AGS."

| 32 | Remprex also maintains a central database that was designed to synchronize driver registration records from the various Remprex AGS sites across BNSF's nationwide network. |
| --- | --- |
| | Ex. 13, Kalat Decl. ¶ 6; Ex. 13-A, Expert Report of David Kalat, ¶¶ 15–16; Ex. 16, Kalat Dep. Tr. 68:14–69:7; Ex. 5, Ash Dep. Tr. 115:12–116:21. |

**Plaintiff's Response:** Plaintiff does not dispute that a central database was designed for the purpose of synchronizing driver registration records, but disputes that BNSF has a nationwide network of biometrically-enabled AG Systems and disputes that the synchronization attempt was *effective*. Ex. 1, Reyes Dep. Tr., at 33:21-35:7; 140:6-20; Ex. 15, Rogers Dep. Tr., at 75:10-78:13. Plaintiff disputes that the "central database" was effective as there were significant technical difficulties with the central biometrics databases syncing properly. See Ex. 12, at REMPREX_0011142-0011145. Plaintiff incorporates by reference his Response to Statement No. 4, which disputes Defendant's characterization of the AG Systems as the "Remprex AGS." Plaintiff similarly disputes Defendant's characterization of its various AG System sites as "Remprex AGS sites." In reality they are BNSF AG System sites because the AG Systems are BNSF property, are located on BNSF property, and BNSF is responsible for all ensuring its AG Systems had enough resources to function. Ex. 3, Ash Dep. Tr., at 87:4-90:5.

| 33 | The servers that contain the information Remprex collects from a driver during registration are not connect [sic] to BNSF's network but are isolated on a separate network maintained by Remprex. |
| --- | --- |
| | Ex. 8, Reyes Dep. Tr. 36:9–20 ("So the data for that registration event would be captured and stored on a server on the Remprex network."); Ex. 14, Gruben Dep. Tr. 48:22–49:1. |

**Plaintiff's Response:** Plaintiff disputes Statement No. 33 to the extent it implies that Remprex is

not collecting truck drivers' information on BNSF's behalf and pursuant to a contract with BNSF. Ex. 4, BNSF Master Agreement with Remprex, at REM_000478 (stating that service provider Remprex shall take direction from BNSF). Plaintiff also disputes Statement No. 33 to the extent that it implies that Defendant has no access to the biometric information collected by its AG Systems. Ex. 3, Ash Dep. Tr., at 91:17-20; Ex. 2, Diebes Dep. Tr., at 75:12-76:6. Plaintiff also disputes Statement No. 33 to the extent that it implies that BNSF does not retain full possession and ownership of all truck drivers' information collected on BNSF's behalf, including truck drivers' biometric information. Ex. 4, BNSF Master Agreement with Remprex, at REM_000503, ¶ 2 (Privacy and Security Supplement executed by BNSF and Remprex referring to "all information and data transmitted to or stored by Provider in connection with performance of its obligations under this agreement, including but not limited to, personally identifiable information ("PII") of employees or customers of BNSF" as "BNSF Confidential Information"). Plaintiff also disputes Statement No. 33 to the extent that it implies that BNSF does not own the AG Systems' servers that store truck drivers' biometrics. Ash Dep. Tr., at 38:11-39:13; 87:4-88:3. Plaintiff further disputes Statement No. 33 ███████████████████████████████ ████████████████████████████████████ Ex. 7, Urban Dep. Tr., at 53:12-20. Plaintiff also disputes this Statement because the network "maintained by Remprex", and all the data contained on such network, and components that comprised such network were owned by BNSF. Ex. 4, BNSF Master Agreement with Remprex, at REM_000503, ¶ 2 (Privacy and Security Supplement executed by BNSF and Remprex referring to "all information and data transmitted to or stored by Provider in connection with performance of its obligations under this agreement, including but not limited to, personally identifiable information ("PII") of employees or customers of BNSF" as "BNSF Confidential Information").

| 34 | Remprex alone is responsible for managing and maintaining the AGS servers. |
| | Ex. 14, Gruben Dep. Tr. 46:3–6. |

**Plaintiff's Response:** Plaintiff disputes Statement No. 34 because Remprex must seek BNSF's approval to maintain or replace the AGS servers. Ex. 1, Reyes Dep. Tr., 63:2-19.

| 35 | While the Remprex AGS sends some limited information to BNSF's systems related to chassis information, driver name, and driver identification number, no information related to a driver's finger scan data is transmitted to BNSF or any other party. |
| | Ex. 8, Reyes Dep. Tr. 37:11–38:20 ("[N]one of the biometric data is included in any of that data that's transferred between AGS and other BNSF or third-party systems."); Ex. 14, Gruben Dep. Tr. 84:1–4 ("Q. Is any biometric information about the individual truck drivers ever shared by REMPREX to BNSF?  A.  No."). |

**Plaintiff's Response:** Plaintiff disputes Statement No. 35 because truck drivers' fingerprint data is transmitted to and stored on servers that are owned by BNSF, and which are located on BNSF property. Ex. 1, Reyes Dep. Tr., at 31:22-25; 53:14-54:23; Ex. 2, Diebes Dep. Tr., at 50:5-22; 51:6-11; 52:17-53:4; Ex. 3, Ash Dep. Tr., at 38:11-39:13. Plaintiff also disputes Statement No. 35 because there is evidence that Remprex would transmit drivers' fingerprint image(s) via email at the request of BNSF. Ex. 3, Ash Dep. Tr., at 151:15-20; Ex. 16, at REM_00009749-REM_00009754 (email exchange documenting the request and receipt of a truck driver's fingerprint image (00009754) by BNSF employee Michael Spagnolo). Plaintiff incorporates by reference his Response to Statement No. 4, which disputes Defendant's characterization of the AG Systems as the "Remprex AGS." Plaintiff also disputes Statement No. 35 to the extent that it implies that BNSF does not ultimately own and control the biometric information that is collected from truck drivers' fingerprints. Ex. 4, BNSF Master Agreement with Remprex, at REM_000503, ¶ 2 (Privacy and Security Supplement executed by BNSF and Remprex referring to "all

information and data transmitted to or stored by Provider in connection with performance of its obligations under this agreement, including but not limited to, personally identifiable information ("PII") of employees or customers of BNSF as "BNSF Confidential Information").

| | |
|---|---|
| | While the DriverReg database contains AGSUserIDs with "bnsf.com" email addresses, there is no evidence that any BNSF employee had access to any information related to a driver's finger scan. |
| 36 | Ex. 13, Kalat Decl. ¶ 7; Ex. 13-A, Expert Report of David Kalat, ¶¶ 48–59; Ex. 8, Reyes Dep. Tr. 114:8–17; Ex. 14, Gruben Dep. Tr. 73:6–12; Ex. 4, Burris Dep. Tr. 143:23–144:14; Ex. 5, Ash Dep. Tr. 100:3–21 (identifying only Remprex employees as having access to drivers' finger scan information). |

**Plaintiff's Response:** Plaintiff disputes Statement No. 36 because there is evidence that Remprex transmitted fingerprint information via email to BNSF at the request of BNSF. Ex. 16, at REM_00009749-REM_00009754 (email exchange documenting the request and receipt of a truck driver's fingerprint image (00009754) by BNSF employee Michael Spagnolo); Ex. 3, Ash Dep. Tr., at 151:15-20. Furthermore, BNSF owns the servers upon which ████████████████

████████████████████████████. Ex. 3, Ash Dep. Tr., at 91:17-20. BNSF also has a contractual right to access the fingerprint data that is captured at its Illinois facilities. Ex. 2, Diebes Dep. Tr., at 77:15-21. There is also evidence that BNSF has requested access to information, including biometric information stored on BNSF's servers, and gotten such access. Ex. 2, Diebes Dep. Tr., at 73:24-75:19. There is also evidence in the record that numerous BNSF employees had login credentials to the AG Systems, including at least John Clement, Tracy Skaggs, and Art Gneuhs. Ex. 13, Plaintiff's Expert Report, at pg. 16 ¶ 57; Ex. L. Similarly, Remprex was required to train BNSF employees so that they could operate the AG Systems. Ex. 4, BNSF Master Agreement with Remprex, at REM000479 (detailing Remprex's duties under the contract which include registering truck drivers' biometrics and "training as necessary for [BNSF] and other authorized users of the system").

|  | There is no evidence that BNSF ever accessed information related to a driver's finger scan. |
|---|---|
| 37 | Ex. 8, Reyes Dep. Tr. 121:18–21 ("Q. At any time, does BNSF ever receive any information relating to the scan or the scanner information from those fingers? A. No, we do not."); Ex. 14, Gruben Dep. Tr. 73:6–12; Ex. 4, Burris Dep. Tr. 143:23–144:14; Ex. 5, Ash Dep. Tr. 100:3–21 (identifying only Remprex employees as having access to drivers' finger scan information). |

**Plaintiff's Response:** Plaintiff disputes Statement No. 37 because there is evidence that Remprex transmitted driver fingerprint images via email to BNSF at the request of BNSF. Ex. 16, at REM_00009749-REM_00009754 (email exchange documenting the request and receipt of a driver's fingerprint image (00009754) by a BNSF employee); Ex. 3, Ash Dep. Tr., at 151:15-20. There is also evidence that BNSF requested and received biometric information from Remprex. Ex. 2, Diebes Dep. Tr., at 73:24-75:19; 77:15-21. Similarly, Plaintiff disputes this Statement because all of the biometric information and biometric identifiers were ██████████████ ██████████████████ stored on BNSF's property. Ex. 7, Urban Dep. Tr., at 53:12-20. Thus, BNSF has direct possession of, ownership of, and access to such information. Ex. 3, Ash Dep. Tr., at 91:17-20. Furthermore, Remprex's clerk console reference manual also specifically identifies the drivers as registering their biometrics "with Burlington Northern Santa Fe (BNSF)" rather than Remprex. See Ex. 5 at REMPREX_0001475 at "Biometric Registration Holds."

### D. Plaintiff's Specific Interaction with the AGS System

| 38 | Plaintiff has visited BNSF intermodal terminals in Illinois in connection with his job as an intermodal truck driver since 2003, with a visit to BNSF's Corwith facility as recently as November 2020. |
|---|---|
|  | Ex. 2, Rogers Dep. Tr. 13:22–14:13; 30:3–31:5. |

**Plaintiff's Response:** Plaintiff does not dispute Statement No. 38.

| 39 | Plaintiff's driver registration information first appears in Remprex's DriverReg Databases on December 5, 2012. |
|----|----|
| | Ex. 13, Kalat Decl., ¶ 8; Ex. 13-A, Expert Report of David Kalat, ¶ 42. |

**Plaintiff's Response:** Plaintiff does not dispute that his biometric information first appears in the AG Systems' driver_reg databases on December 5, 2012. However, Plaintiff disputes Defendant's characterization of the driver_reg databases as "Remprex's", as such servers are owned by BNSF, located on BNSF property and powered by BNSF. *See* SAF *infra,* at Nos. 1-4. The "DriverReg Databases" and the data contained on them are BNSF's. Ex. 4, BNSF Master Agreement with Remprex, at REM_000503, ¶ 2 (Privacy and Security Supplement executed by BNSF and Remprex referring to "all information and data transmitted to or stored by Provider in connection with performance of its obligations under this agreement, including but not limited to, personally identifiable information ("PII") of employees or customers of BNSF" as "BNSF Confidential Information").

### E.     BNSF's Security Obligations

| 40 | Security is crucially important for BNSF's railroad business and maintaining an accurate visitor authentication system is vital considering the sensitive cargo BNSF transports, the volume of cargo transported, the number of train cars in motion at any given time, and the number of truck drivers and other personnel entering a BNSF facility on a given day. |
|----|----|
| | Ex. 3, Briggs Decl. ¶ 4. |

**Plaintiff's Response:** Plaintiff does not dispute that security is important to Defendant, but Plaintiff disputes Statement No. 40 to the extent that it implies that the unfettered use of biometrics without informed written consent by its AG Systems is necessary to achieve the security or efficiency it desires or needs. Plaintiff also disputes Statement No. 40 because BNSF gives Remprex permission to turn off the biometric components for any number of reasons. Ex. 17, REMPREX_0013009-0013010 (email chain whereby BNSF authorizes Remprex to disable AG System biometrics).

| 41 | BNSF transports cargo designated "hazardous material" by the U.S. Department of Homeland Security ("DHS"), including petroleum crude oil, alcohols, liquified petroleum gas, elevated temperature liquid, anhydrous ammonia, sulphuric acid, hydrochloric acid solution, sulphur, sodium hydroxide solution, and diesel fuel. |
|---|---|
| | Ex. 3, Briggs Decl. ¶ 3. |

**Plaintiff's Response:** Plaintiff does not dispute Statement No. 41.

| 42 | Because BNSF is a shipper of hazardous material, BNSF is required by federal law and federal regulations to utilize an identity verification system at its railyards for security purposes. |
|---|---|
| | Ex. 3, Briggs Decl. ¶ 5. |

**Plaintiff's Response:** Plaintiff objects to Statement No. 42 because it is not a statement of fact but rather a legal conclusion. Plaintiff disputes Statement No. 42 because no federal law or regulation requires BNSF to use an identification system at its railyards for security purposes. Plaintiff does not dispute that BNSF is required by federal law to develop a transportation security plan. But that is all that is required by the only Regulation Defendant cites to: C.F.R. § 172.800(b). In fact, C.F.R. 172.800(b) actually relates to the physically secure transportation of hazardous materials; it does not relate to security of persons or identity verification systems or require their use and does not require the use of or even mention or relate to *biometric* identity verification systems.

| 43 | BNSF is a member of the U.S. Customs and Border Protection's ("CBP") CustomsTrade Partnership Against Terrorism ("C-TPAT") program. |
|---|---|
| | Ex. 3, Briggs Decl. ¶ 19. |

**Plaintiff's Response:** Plaintiff does not dispute that BNSF is a voluntary member of the U.S. Customs and Border Protection's C-TPAT program.

| 44 | To become a C-TPAT member, a company must meet industry-specific eligibility requirements, including security standards and requirements set by CBP. |
|---|---|
| | Ex. 3, Briggs Decl. ¶ 10. |

**Plaintiff's Response:** Plaintiff does not dispute that, to volunteer to participate as a C-TPAT

member, a company must meet certain industry-specific eligibility requirements.

| 45 | Under CBP's current Minimum Security Criteria for Rail Carriers, BNSF [sic] members must implement access controls to prevent unauthorized access into facilities/areas, help maintain control of employees and visitors, and protect company assets, including the positive identification of all employees, visitors, service providers, and vendors at all points of entry. |
|---|---|
| | Ex. 3, Briggs Decl. ¶ 13. |

**Plaintiff's Response:** Plaintiff does not dispute Statement No. 45 other than to the extent it implies that BNSF's status as a "member" of the C-TPAT program is not a voluntary undertaking by BNSF.

| 46 | CBP's guidance to C-TPAT members identifies "biometric identification systems" as a means of fulfilling a C-TPAT member's requirement to prevent unauthorized access into its facilities. |
|---|---|
| | Ex. 3, Briggs Decl. ¶ 15. |

**Plaintiff's Response:** Plaintiff does not dispute that CBP's guidance identifies "biometric identification systems" as a means of preventing unauthorized access into facilities but disputes this Statement to the extent it implies that the use of a biometric identification system is required or that such undertakings are anything other than voluntary.

| 47 | BNSF's status as a C-TPAT member is noted in many of its contracts with customers and with its vendors who assist in carrying out operations at BNSF railyard facilities, including BNSF's contracts with Remprex. |
|---|---|
| | Ex. 3, Briggs Decl. ¶ 25. |

**Plaintiff's Response:** Plaintiff does not dispute that BNSF's status as a C-TPAT member is noted in its contracts with Remprex.

| 48 | Consistent with CBP's Minimum Security Criteria for Rail-Carriers Criteria ID 10.1, BNSF, among other things, contracts with Remprex to provide a variety of services at BNSF's intermodal facilities in the state of Illinois and across the country. |
|---|---|
| | Ex. 3, Briggs Decl. ¶ 26. |

**Plaintiff's Response:** Plaintiff does not dispute that BNSF contracted with Remprex to provide services at its intermodal facilities but objects to Statement No. 48 to the extent it is a legal argument as to whether Defendant's contracts or conduct is "consistent with" CBP's Minimum Security Criteria.

| | |
|---|---|
| 49 | Pursuant to the agreement between Remprex and BNSF, one of the services Remprex provides to BNSF is controlling entry to BNSF facilities in Illinois, which includes Remprex staffing and operating the AGS. |
| | Ex. 3, Briggs Decl. ¶ 27. |

**Plaintiff's Response:** Plaintiff does not dispute that BNSF contracted with Remprex to help control access to BNSF facilities in Illinois, which includes staffing and operations involving the AG Systems. However, Plaintiff disputes Statement No. 49 to the extent it implies that Defendant does not own and have ultimate control over the AG Systems and its service provider Remprex, including the biometric functions of the AG Systems. Ex. 1, Reyes Dep. Tr., 146:5-147:14; Ex. 4, BNSF Master Agreement with Remprex, at REM_000478 (stating that service provider Remprex shall take direction from BNSF). Additionally, Plaintiff objects to the relevance of Defendant's citation to a declaration in lieu of one of the actual agreements entered into between BNSF and Remprex.

| | |
|---|---|
| 50 | Biometric technology used by Remprex in connection with the AGS improves security at BNSF facilities because unlike other identity authentication systems (*e.g.*, key cards), biometrics cannot be obtained and used by an unauthorized person to gain entry to a BNSF facility. |
| | Ex. 3, Briggs Decl. ¶ 6. |

**Plaintiff's Response:** Plaintiff disputes Statement No. 50 to the extent it suggests that only Remprex used the biometric technology at issue, when BNSF used it and when Remprex's use of any such technology was only pursuant to a contract whereby BNSF paid Remprex to use the

technology on its behalf and for its benefit. Plaintiff also disputes Statement No. 50 because the

 *See* Statement

No. 54.

|  | The inclusion of a "biometric reader" at the Remprex AGS kiosk was for security purposes to prevent unauthorized access to BNSF's facilities. |
|---|---|
| 51 | Ex. 12, Remprex Presentation, at BNSF_00001342–1347 (describing the use of biometrics for security purposes and detailing how Remprex AGS clerks will conduct a "Security Intervention"); Ex. 15, BNSF Presentation, at BNSF_00004711 (2008 presentation noting that one of the benefits of the AGS is "[i]mproved security through use of biometric driver ID's"); Ex. 8, Reyes Dep. Tr. 32:18–33:10 (testifying that "the AGS system provides a heightened level of security and authentication" through registering drivers, including when drivers "scan two fingers on a reader"); Ex. 5, Ash Dep. Tr. 34:2–23 (testifying that one of the services Remprex provides through the AGS is "[a]ssuring that every single individual coming into the terminal, we have positive validation for security purpose"); *id.* at 69:2–6 (testifying that drivers are "asked to put their finger on the biometric reader to validate they are who they are, as if they are a registered driver"); Ex. 4, Burris Dep. Tr. 145:21–146:3. |

**Plaintiff's Response:** Plaintiff incorporates by reference his Response to Statement No. 4, which

disputes Defendant's characterization of the AG Systems as the "Remprex AGS." Plaintiff also

disputes that the inclusion of a biometric reader at the AGS kiosk was solely or even primarily for

"security purposes." The evidence shows that it was primarily for efficiency; to get rid of the old

system of manually processing truck drivers. Ex. 18, at REM_0017454 (weekly efficiency report sent by Remprex to BNSF detailing key performance indicators such as "processing time" which refers to how quickly drivers were let into the facilities); Ex. 2, Diebes Dep. Tr., at 144:4-147:9 (describing that the "key performance indicators," of the AGS which are data points that are collected regarding the performance of the AG Systems and reported to BNSF, had nothing to do with biometrics); *See Generally* Ex. 10, Daily AG System Report for BNSF's Logistics Park Chicago Location, (report sent daily to BNSF that contains data related the efficiency of drivers being processed through the facility, rather than any safety or security statistics).

### F. The Nascent/Remprex AGS Improves Efficiency at Intermodal Facilities

| 52 | In addition to improving safety and security, the Remprex AGS increases the efficiency of BNSF's intermodal facilities. |
|----|---|
|    | Ex. 4, Burris Dep. Tr. 69:7–70:20; Ex. 15, BNSF Presentation dated Dec. 1, 2008, at BNSF_00004711 (stating that one benefit of AGS is "[i]mproved trucker turn times"). |

**Plaintiff's Response:** Plaintiff disputes that the AG Systems increases the efficiency of BNSF's intermodal facilities. Plaintiff incorporates by reference his Response to Statement No. 4, which disputes Defendant's characterization of the AG Systems as the "Remprex AGS." Plaintiff also incorporates his Response to Statement No. 50, which explains how the AGS Systems, as implemented, ████████████████████████████████████████████

████████████████████████████.

| 53 | The Remprex AGS allows for more trucks to be processed in and out of BNSF's intermodal facilities. |
|----|---|
|    | Ex. 15, BNSF Presentation dated Dec. 1, 2008, at BNSF_00004711 (stating that one benefit of AGS is "[i]mproved trucker turn times"). |

**Plaintiff's Response:** Plaintiff does not have information sufficient to confirm or deny the volume of trucks processed with and without an AGS. Plaintiff incorporates by reference his Response to

Statement No. 4, which disputes Defendant's characterization of the AG Systems as the "Remprex AGS." Plaintiff also objects to the relevance of Defendant's citation to a demonstrative advertising slideshow rather than to any hard data when such data is likely available. Ex. 10, AGS Daily Report for BNSF's Logistics Park Chicago Location, at REMPREX_0006924 (report sent daily to BNSF that contains data related to the efficiency of drivers being processed through the facility).

| 54 | Without the use of the Remprex AGS's "biometric reader," Remprex employees would need to manually verify driver identities prior to allowing a driver on the property. |
| | Ex. 12, Remprex Presentation, at BNSF_00001346–47 (detailing the manual steps a Remprex employee must undertake to manually verify a driver's identity). |

**Plaintiff's Response:** Disputed. Plaintiff incorporates by reference his Response to Statement No. 4, which disputes Defendant's characterization of the AG Systems as the "Remprex AGS." Plaintiff further disputes this Statement because it is not true that manual identity verification would be a necessary alternative to the use of the AGS Systems. Indeed, since the filing of this lawsuit, BNSF has launched its "RailPASS" smartphone application whereby truck drivers can verify their identities through their smartphones, without the use of the biometric kiosks that are the subject of this lawsuit. Ex. 15, Rogers Dep. Tr., at 75:10-78:13. This method of identity verification also relies on biometric identifiers and biometric information, but BIPA is not implicated because, much like other iOS and Android based biometric identity verification technologies, all biometrics are kept on users' smartphones such that no biometrics are collected or stored by Defendant. (*Id*); Ex. 19, REMPREX_0003640, RailPASS Smartphone Application Slideshow. Further, even aside from RailPASS or the biometrically-enabled AG Systems, there are a number of other ways that Defendant can verify the identities of drivers without the use of biometrics, such as through unique QR codes or commercial driver's license numbers, or manual

driver's license ID checks. Nothing prevents Defendant from contracting with Remprex or some other entity for these purposes, or otherwise conducting such identity verifications itself.

**PLAINTIFF'S L.R. 56.1(B)(3)(C) STATEMENT
OF ADDITIONAL MATERIAL FACTS IN OPPOSITION
TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

**A.    BNSF owns the AG Systems and the data collected by the AG Systems, including the biometric information derived from truck drivers' fingerprints.**

| | |
|---|---|
| 1 | Each of the Illinois AG Systems is located at a BNSF intermodal facility owned or leased by BNSF. |
| | Ex. 2, Diebes Dep. Tr., at 69:20-70:12 (describing that each intermodal facility has a server room where the information captured from truck drivers is stored locally). |

| | |
|---|---|
| 2 | BNSF owns the hardware that comprises the AG Systems, including the ingates, biometric kiosks, and computers. |
| | Ex. 1, Reyes Dep. Tr., at 31:22-25; 53:14-54:23; 63:2-19; Ex. 2, Diebes Dep. Tr., at. 50:5-53:4; Ex. 3, Ash Dep. Tr., at 38:11-39:13; 87:4-88:3; Ex. 7, Urban Dep. Tr., at 24:14-17. |

| | |
|---|---|
| 3 | BNSF owns the servers and the driver_reg databases that store truck drivers' biometric information derived from their fingerprints. |
| | Ex. 1, Reyes Dep. Tr., at 31:22-25; 53:14-54:23; 63:2-19; Ex. 2, Diebes Dep. Tr., at 50:5-53:4; Ex. 3, Ash Dep. Tr., at 38:11-39:13; 87:4-88:3; Ex. 7, Urban Dep. Tr., at 24:14-17. See Ex. 5 at REMPREX_0001475 at "Biometric Registration Holds" identifying the drivers as registering their biometrics "with Burlington Northern Santa Fe (BNSF)." |

| | |
|---|---|
| 4 | Each of BNSF's Illinois locations has a climate-controlled server room that is owned by BNSF, located on BNSF property, powered by BNSF, and that stores truck drivers' biometric information on-site. |
| | Ex. 1, Reyes Dep. Tr., at 53:14-54:23; (describing that the servers are on BNSF property and powered by BNSF); Ex. 3, Ash Dep. Tr., at 89:13-90:5 (describing that the server rooms are climate controlled and powered by BNSF); Ex. 11, Caruso Decl., at 7. |

| | |
|---|---|
| 5 | The biometric information captured and collected from truck drivers' fingerprints by the AG Systems and stored on BNSF's ███████████████ |
| | Ex. 7, Urban Dep. Tr., at 53:12-20. Ex. 13, Plaintiff's Expert Report, at pg. 10 ¶ 33. |

| | |
|---|---|
| 6 | Defendant's service provider ████████████████████████████████████████████████████████████████████████████████████████████████. |
| | Ex. 7, Urban Dep. Tr., at 54:4-8. |



| 7 | BNSF purchased and installed its first Illinois biometrically enabled AG Systems prior to Remprex's existence as a company. |
|---|---|
| | Ex. 1, Reyes Dep. Tr., at 97:24-98:22. |

| 8 | During the initial set-up of the AG Systems, prior to the existence of Remprex, numerous BNSF employees were given log-in credentials to use the AG Systems. |
|---|---|
| | Ex. 13, Plaintiff's Expert Report, at pg. 16 ¶ 57; Ex. L |

| 9 | BNSF employees' log-in credentials were never removed or disabled from the Illinois AG Systems. |
|---|---|
| | Ex. 13, Plaintiff's Expert Report, at pg. 16 ¶ 57; Ex. L |

| 10 | Remprex takes direction from BNSF regarding the management and use of the AG Systems pursuant to a Master Agreement between the two entities. |
|---|---|
| | Ex. 3, Ash Dep. Tr., at 33:7-13; Ex. 2, Diebes Dep. Tr., at 108:13-109:13; *See Generally* Ex. 4, BNSF Master Agreement with Remprex, at REM_000451-000507; Ex. 17 at REMPREX_0013009-0013010 (Remprex seeking and receiving BNSF approval to disable biometrics for all AG Systems). |

| 11 | The BNSF Privacy and Security Supplement to the Master Agreement applies to and reserves BNSF's ownership of all the information that is collected pursuant to the contract with Remprex, including the biometric information captured through the AG Systems. |
|---|---|
| | Ex. 1, Reyes Dep. Tr., at 133:23-134:4; Ex. 4, Master Agreement between BNSF and Remprex, at REM_000503, ¶ 2 (Privacy and Security Supplement executed by BNSF and Remprex referring to "all information and data transmitted to or stored by Provider in connection with performance of its obligations under this agreement, including but not limited to, personally identifiable information ("PII") of employees or customers of BNSF" as "BNSF Confidential Information"). |

| 12 | BNSF owns the biometric identifiers and/or biometric information captured, collected, received through trade, or otherwise obtained from truck drivers through the AG Systems. |
|---|---|
| | Ex. 2, Diebes Dep. Tr., at 52:17-53:4; 54:11-16; 77:15-21; Ex. 7, Urban Dep. Tr., at 41:3-14; Ex. 1, Reyes Dep. Tr., at 142:6-20; Ex. 4, Master Agreement between BNSF and Remprex, at REM_000503, ¶ 2 (Privacy and Security Supplement executed by BNSF and Remprex referring to "all information and data transmitted to or stored by Provider in connection with performance of its obligations under this agreement, including but not limited to, personally identifiable information ("PII") of employees or customers of BNSF" as "BNSF Confidential Information"). |

| 13 | Remprex does not own the hardware that comprises the AG Systems. |
| --- | --- |
| | Ex. 3, Ash Dep. Tr., at 38:11-39:13; Ex. 2, Diebes Dep. Tr., at 50:5-22; 51:6-11; 52:17-53:4; Ex. 1, Reyes Dep. Tr., at 31:22-25. |

| 14 | Remprex does not own the information, including the biometric information, collected by the AG Systems. |
| --- | --- |
| | Ex. 2, Diebes Dep. Tr., at 50:5-22; 51:6-11; 52:17-53:4; Ex. 4, Master Agreement between BNSF and Remprex, at REM_000503, ¶ 2 (Privacy and Security Supplement executed by BNSF and Remprex referring to "all information and data transmitted to or stored by Provider in connection with performance of its obligations under this agreement, including but not limited to, personally identifiable information ("PII") of employees or customers of BNSF" as "BNSF Confidential Information"). |

| 15 | Remprex assists BNSF in the collection of information from truck drivers, including information derived from those truck drivers' fingerprints, for the benefit of BNSF. |
| --- | --- |
| | Ex. 1, Reyes Dep. Tr., at 129:11-24; Ex. 3, Ash Dep. Tr., at 33:7-13 |

| 16 | There is no evidence that Remprex owns, has a right to sell, or has the right to use for its own purposes the fingerprint data collected by the AG Systems. |
| --- | --- |
| | Ex. 1, Reyes Dep. Tr., at 142:20-143:5; Ex. 2, Diebes Dep. Tr., at 50:5-22 |

| 17 | Truck drivers visiting BNSF's Illinois facilities have the option not to have their biometrics registered, although this option is not conveyed to them at the time of their registration or in any other systematic manner by BNSF or its service providers. |
| --- | --- |
| | Ex. 1, Reyes Dep. Tr., at 34:15-22. |

| 18 | BNSF has not uniformly implemented biometric AG Systems at its facilities nationwide, and for the AG Systems equipped with biometrics, disables the biometric functions of its AG Systems for various reasons. |
| --- | --- |
| | Ex. 1, Reyes Dep. Tr., at 33:21-35:7; 140:6-20; Ex. 17, REMPREX_0013009-0013010 (email chain whereby BNSF authorizes Remprex to disable AG System biometrics). See Ex. 12, at REMPREX_0011142-0011145 (email chain showing on (0011143 (top) and 0011144 (bottom) that BNSF approval was required prior to disabling of biometric functions of AG Systems) |

| 19 | Unidentified truck drivers are allowed to drive their trucks into BNSF facilities prior to any identification or verification of their loads or vehicles at the driver assistance building ("DAB"), which is owned by BNSF and located on BNSF property. |
| | Ex. 3, Ash. Dep. Tr., at 72:22-74:8; Def. SUF #54 "Without the use of the Remprex AGS's "biometric reader," Remprex employees would need to manually verify driver identities **prior to allowing a driver on the property**." (emphasis added). |

| 20 | After a driver passes through the ingate at a BNSF, ██████████████████ ████████████████████████████████████████████ ██████████████████████████. |
| | Ex. 3, Ash. Dep. Tr., at 161:5-18; Def. SUF #54 "Without the use of the Remprex AGS's "biometric reader," Remprex employees would need to manually verify driver identities prior to allowing a driver on the property." |

| 21 | Following the initiation of this litigation, BNSF launched and began using its "RailPASS" smartphone application whereby truck drivers can verify their identities through their smartphones prior to entering Defendant's facilities in Illinois and elsewhere, without the use of the AGS biometric kiosks that are the subject of this lawsuit. |
| | Ex. 15, Rogers Dep. Tr., at 75:10-78:13; Ex. 19, REMPREX_0003640, RailPASS Smartphone Application Slideshow |

**B.    Facts Specific To Plaintiff**

| 22 | Plaintiff's biometrics were captured, collected, received through trade, otherwise obtained, and/or stored on-site at BNSF's Cicero facility when he registered his fingerprints at that site on October 16, 2014. Such information was stored on BNSF's local Cicero servers. |
| | Ex. 11, Caruso Decl., at ¶ 10; BIO DB Hard Drive Copy of Cicero, Corwith, Logistics Park Chicago, Willow Springs, and Central Databases Produced in Discovery |

| 23 | Plaintiff's biometrics were captured, collected, received through trade, otherwise obtained and/or stored on-site at BNSF's Willow Springs facility when he registered his fingerprints at that site on November 26, 2014. Such information was stored on BNSF's local Willow Springs servers. |
| | Ex. 11, Caruso Decl., at ¶ 10; BIO DB Hard Drive Copy of Cicero, Corwith, Logistics Park Chicago, Willow Springs, and Central driver_reg Databases Produced in Discovery |

| 24 | Each time Plaintiff or a member of the proposed Class registered their fingerprints at one of BNSF's Illinois locations, mathematically unique biometric information was captured, collected, received through trade, otherwise obtained and/or stored on-site on servers at that Illinois location. |
|---|---|
| | Ex. 11, Caruso Decl., at ¶ 7; BIO DB Hard Drive Copy of Cicero, Corwith, Logistics Park Chicago, Willow Springs, and Central driver_reg Databases Produced in Discovery |

### C. Defendant Knew It Was Collecting Biometrics But Failed To Comply With The Law.

| 25 | BNSF was aware that the truck driver registration process at its Illinois facilities included the capture of biometrics by the AG Systems. |
|---|---|
| | Ex. 1, Reyes Dep. Tr., at 131:21-132:2 |

| 26 | BNSF does not seek, and has never sought, written consent from truck drivers to capture, collect, receive through trade, otherwise obtain, store or use their biometrics. |
|---|---|
| | Ex. 1, Reyes Dep. Tr., at 35:21-25; Ex. 3, Ash Dep. Tr., at 81:13-83:2; Ex. 7, Urban Dep. Tr., at 36:1-24 (describing that Nascent could have implemented a biometric consent screen if BNSF had requested, and could have displayed any information to the drivers). |

| 27 | BNSF has never sought, and has never obtained, written consent from Plaintiff to capture, collect, store, receive through trade, or otherwise obtain his biometrics. Similarly, Plaintiff was never informed in writing of the specific purpose or length of term for which his biometrics were being captured, collected, stored, received through trade, or otherwise obtained, or when such biometrics would be destroyed. |
|---|---|
| | Ex. 15, Rogers Dep. Tr., at 132:4-133:15 |

| 28 | BNSF has never required its service providers Remprex or Nascent to implement a paper or electronic informed written consent regime related to the collection of truck drivers' biometrics, although Nascent could have, and would have, implemented such an electronic informed written consent regime if so requested. |
|---|---|
| | Urban Dep. Tr., 14:2-14; 36:1-24; Ex. 1, Reyes Dep. Tr., at 35:21-25; Ex. 3, Ash Dep. Tr., at 81:13-83:2; 158:4-8; Ex. 6, Pang Dep. Tr., at 83:25-85:17; Ex. 8, Gruben Dep. Tr., at 31:2-17; Ex. 9 at REMPREX_0010677-10680 (emails between Remprex, Nascent and BNSF describing BNSF led change order) |

| 29 | Prior to 2017, BNSF's Corporate Policy on Confidential Information did not categorize biometrics (or any synonymous word) as confidential "personally identifiable information." |
| | Ex. 20, BNSF's 2014 Corporate Policy on Confidential Information, at BNSF_00001319 § III Personally Identifiable Information or PII; Ex. 21 BNSF's 2015 Corporate Policy on Confidential Information, at BNSF_00001321 § III Personally Identifiable Information or PII. |

| 30 | In 2017, BNSF amended its Corporate Policy on Confidential Information to include biometrics as a known protected category of "PII" or "Personally Identifiable Information." |
| | Ex. 14, BNSF's 2017 Corporate Policy on Confidential Information, at BNSF_00001323 § III Personally Identifiable Information (PII) (enumerating "[f]inger print, retinal scan, DNA profile or other biometric data" as "PII" and "Confidential Information"). |

| 31 | Pursuant to contract, BNSF owns the information, including biometric information, captured, obtained, and stored through the AG Systems, and such information is required to be treated as BNSF's Confidential Information. |
| | Ex. 4, Master Agreement between BNSF and Remprex, at REM_000503, ¶ 2 (Privacy and Security Supplement executed by BNSF and Remprex referring to "all information and data transmitted to or stored by Provider in connection with performance of its obligations under this agreement, including but not limited to, personally identifiable information ("PII") of employees or customers of BNSF" as "BNSF Confidential Information"). |

| 32 | Prior to the commencement of this litigation in 2019, BNSF was aware that biometric identifiers and biometric information were highly sensitive types of information. |
| | Ex. 14, BNSF's 2017 Corporate Policy on Confidential Information, at BNSF_00001323 § III Personally Identifiable Information (PII) (enumerating "[f]inger print, retinal scan, DNA profile or other biometric data" as "PII" and "Confidential Information"). Ex. 22, at REMPREX_0009896-0009897 (email chain from BNSF executives to Remprex asking "how the ags biometric data is stored and what data security measures are in place to protect that data.") |

| 33 | BNSF was aware as early as 2017 that biometrics were defined and protected by various state laws. |
| | Ex. 14, BNSF's 2017 Corporate Policy on Confidential Information, at BNSF_00001323 § III Personally Identifiable Information (PII) (enumerating "[f]inger print, retinal scan, DNA profile or other biometric data" as "PII" and "Confidential Information" protected by various state laws). |

|   | Even after amending its Corporate Policy on Confidential Information to include biometrics, BNSF undertook no efforts to comply with BIPA or otherwise receive informed written consent from individuals prior to collecting, capturing, receiving through trade, storing, or otherwise obtaining the biometrics of truck drivers. |
|---|---|
| 34 | Ex. 14, BNSF's 2017 Corporate Policy on Confidential Information, at BNSF_00001323 § III Personally Identifiable Information (PII) (enumerating "[f]inger print, retinal scan, DNA profile or other biometric data" as "PII" and "Confidential Information"); Ex. 1, Reyes Dep. Tr., at 35:21-25; Ex. 3, Ash Dep. Tr., at 81:13-83:2, 158:4-8; Ex. 7, Urban Dep. Tr., at 36:1-24 (describing that Nascent could have implemented a biometric consent screen if BNSF had requested, and could have displayed any information to the drivers). |

|   | Since 2014, at least one other major rail carrier has attempted to implement an informed written consent regime related to the collection of truck drivers' biometrics at its intermodal facilities in Illinois. |
|---|---|
| 35 | Ex. 2, Diebes Dep. Tr., at 32:4-22. |

**E. Jurisdictional Allegations[4]**

|   | Plaintiff Richard Rogers is a citizen and resident of the State of Illinois. |
|---|---|
| 36 | Pl.'s Second Am. Compl., Dkt. 103, at 11. |

|   | Defendant BNSF Railway Company is incorporated in Delaware and maintains its headquarters in Texas. Defendant is one of the largest freight railroad networks in the United States and conducts business throughout Illinois and Cook County. Defendant is licensed by the Illinois Secretary of State to conduct business in Illinois. |
|---|---|
| 37 | Def.'s Answer to Pl.'s Second Am. Compl., Dkt. 111, at 11. |

|   | This Court has personal jurisdiction over BNSF because BNSF transacts business within the jurisdiction. |
|---|---|
| 38 | Def.'s Answer to Pl.'s Second Am. Compl., Dkt. 111, at 14. |

---

[4] Defendant's Motion violates Local Rule 56.1(a)(3)(B), which requires movants to include "all facts supporting venue and jurisdiction" in the district court as part of their statement of material facts. *Sec. First Network Bank v. C.A.P.S., Inc.*, 01-cv-342, 2003 WL 21877644, at *1 (N.D. Ill. Aug. 7, 2003). Defendant has not done so. *See* Dkt. 108-2. The Court could therefore, at its discretion, deny Defendant's Motion outright. *Shaw v. Johnson,* 88-cv-10611, 1990 WL 114565, at *1 (N.D. Ill. July 27, 1990). For the sake of efficiency and completeness, Plaintiff has included these facts in his own Statement of Additional Facts.

| | |
|---|---|
| 39 | This Court has subject matter jurisdiction over this matter pursuant to the Class Action Fairness Act, 28 U.S.C. §1322(d) et seq. because this case is a class action in which the amount in controversy exceeds the sum or value of $5,000,000.00 exclusive of interest and costs; there are greater than 100 putative class members; at least one putative class member is a citizen of a state other than Defendant's states of citizenship; and none of the exceptions under subsection 1332(d) apply to this instant action. |
| | Def.'s Answer to Pl.'s Second Am. Compl., Dkt. 111, at 13. |

| | |
|---|---|
| 40 | Venue is proper in the Northern District of Illinois under 28 U.S.C. 1391(b)(2). |
| | Def.'s Answer to Pl.'s Second Am. Compl., Dkt. 111, at 13-14. |