**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| RICHARD ROGERS, individually and on behalf of similarly situated individuals,<br><br>        Plaintiff,<br><br>    v.<br><br>BNSF RAILWAY COMPANY,<br><br>        Defendant. | Case No. 1:19-cv-03083<br><br><br>Honorable Matthew F. Kennelly |

**DEFENDANT BNSF RAILWAY COMPANY'S
OMNIBUS MOTION IN LIMINE**

Defendant BNSF Railway Company ("BNSF"), through its undersigned counsel, respectfully moves in *limine*, to exclude the following evidence. Counsel for BNSF has met and conferred with counsel for Plaintiff and counsel opposes the following Motions in Limine.

1. **Evidence, Testimony, or Argument Suggesting That BNSF Is or Can Be Held Liable for a Third Party's Acts or Omission Under BIPA**

Plaintiff alleges that BNSF violated Section 15(b) of BIPA by collecting, capturing, receiving through trade, or otherwise obtaining his biometric data without providing notice and obtaining consent. *See* Dkt. 103 at 6-7. The evidence at trial will show, and Plaintiff does not dispute, that BNSF contracts with third-party Remprex, who "provides 24/7 'intelligent gate operation' services at BNSF's intermodal facilities," in Illinois through an Auto-Gate System ("AGS"), *see* Dkt. 142 at 3 (citation omitted), and that the alleged biometric data collection at issue took place only at the AGS kiosk or related Driver Assistance Building.

Although Plaintiff is well aware of Remprex's role as a third-party independent contractor, and despite the fact that the Complaint does not allege that BNSF is vicariously liable under BIPA

for the acts or omissions of Remprex or any other third party,[1] BNSF anticipates that at trial, Plaintiff will attempt to introduce evidence or argue that BNSF is liable for Remprex's acts or omissions through a theory of supervisory or vicarious liability. That is, BNSF expects that Plaintiff will not only attempt to argue that BNSF directly violated Section 15(b), but also that BNSF is vicariously liable for any of Remprex's violations of Section 15(b) by allegedly acting in a supervisory capacity vis-à-vis Remprex. Indeed, Plaintiff has submitted proposed jury instructions premised on vicarious liability. *See* Pretrial Order at Ex. F.

For at least two independently sufficient reasons, the Court should preclude Plaintiff from introducing evidence, testimony, or argument that attempts to hold BNSF vicariously liable for the acts or omissions of Remprex. First, the Complaint does not allege vicarious liability. And second, even if Plaintiff had pleaded vicarious liability, as a matter of law there is no vicarious liability under BIPA. The Court should grant BNSF's motion.

### a. The Complaint Does Not Allege Vicarious Liability

The Court should exclude evidence and argument on vicarious liability because Plaintiff does not allege this theory anywhere in the operative Complaint. To the contrary, the Complaint alleges that "*Defendant* collected, captured, stored, and otherwise obtained biometric information from Plaintiff and other truck drivers," yet "failed to provide any written disclosures describing the purpose and duration of such use and failed to obtain informed written consent," in violation of BIPA. D.E. 103 (Second Amended Complaint), ¶¶ 17–19, 28–36 (emphasis added); *see also* D.E. 1-1 (Initial Complaint), ¶¶ 19–22, 32–39; D.E. 18 (First Amended Complaint), ¶¶ 20–27, 36–

---

[1] In denying BNSF's motion for summary judgment, this Court found that "there is conflicting evidence regarding BNSF's role in operating the AGS" that presents an issue appropriate for trial. Dkt. 142 at 15. But the Court did not address whether BNSF can be held vicariously liable under BIPA for Remprex's conduct. Dkt. 158 at 5.

44.  Plaintiff has not sought or obtained leave to amend its Complaint, and Plaintiff should not be permitted to "add[] a new theory of liability to the case at th[is] late stage of the proceedings." *Aldridge v. Forest River, Inc.*, 635 F.3d 870, 876 (7th Cir. 2011) (affirming denial of leave to amend to add new theory of liability during trial).  Because vicarious liability is not at issue here, evidence, testimony, and argument on this subject should be excluded.  *See, e.g.*, *Nat'l Jockey Club v. Ganassi*, No. 04 3743, 2009 WL 2177217, at *4 (N.D. Ill. July 21, 2009) (excluding evidence relating to conversion claim where legal theory of conversion was not at issue).

### b.  BIPA Does Not Impose Vicarious Liability

Even if Plaintiff had pleaded vicarious liability, evidence and argument on this issue should still be excluded because BIPA does not impose vicarious or secondary liability.

The plain language of Section 15(b) requires active participation in the collection of biometric data.  To be liable under Section 15(b), a private entity must "collect, capture, purchase, receive through trade, or otherwise obtain" biometric data.  740 ILCS 14/15(b).  In other words, a party must "take an active step" in collection—passive possession or indirect involvement by one private entity is not enough to impose liability under BIPA when the relevant biometric information is collected by a different private entity.  *See, e.g.*, *Stauffer v. Innovative Heights Fairview Heights, LLC*, No. 3:20-CV-00046-MAB, 2022 WL 3139507, at *4 (S.D. Ill. Aug. 5, 2022) ("[D]istrict courts from within the Seventh Circuit that have confronted [the difference between 'collection' and 'possession'] have concluded that in order for § 15(b) to apply, the defendant must take an *active step* to collect, capture, or otherwise obtain the plaintiff's biometric information."); *Jacobs v. Hanwha Techwin Am., Inc.*, No. 21 C 866, 2021 WL 3172967, at *2 (N.D. Ill. July 27, 2021) (same); *Bernal v. ADP, LLC*, 2019 WL 5028609, at *2 (Ill. Cir. Ct. Aug. 23, 2019) (holding that the Court must "assess Defendant's actual involvement, relative to the

biometric scanning technology"); *Heard v. Becton, Dickson & Co.*, 440 F. Supp. 3d 960, 967 (N.D. Ill. 2020) (same); *see generally Honeycutt v. United States*, 137 S. Ct. 1626, 1632 (2017) ("Neither the dictionary definition nor the common usage of the word 'obtain' supports the conclusion that an individual 'obtains' property that was acquired by someone else.").

By its terms, Section 15(b) liability therefore applies only to an entity that itself collects biometric data. *Cf. Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 177 (1994) (no secondary liability under § 10(b) of the Securities Exchange Act of 1934 where Congress did not "use[] the words 'aid' and 'abet' in the statutory text"); *Zekman v. Direct Am. Marketers, Inc.*, 695 N.E.2d 853, 859 (Ill. 1998) (no secondary liability for a violation of the Illinois Consumer Fraud and Deceptive Business Practices Act because the Act only condemns actions directly done by the perpetrator of the fraud). This requirement is antithetical to vicarious liability, which "is not based upon the defendant's own fault … [but] upon the principle that he must bear legal responsibility for *another's* wrong." *Gaston v. Ghosh*, 920 F.3d 493, 497 (7th Cir. 2019) (emphasis added). Here, BNSF expects that Plaintiff will attempt to prove BNSF violated Section 15(b) in part by arguing that BNSF is liable for Remprex's acts or omissions because BNSF allegedly supervised Remprex. Evidence and argument about this vicarious liability theory should not be heard at trial. Unlike evidence relevant to whether BNSF *itself* "took an active step" to collect biometrics, *Stauffer*, 2022 WL 3139507, at *4, evidence on vicarious liability would relate to a legal theory not at issue in the case and should be excluded. *See Nat'l Jockey Club*, 2009 WL 2177217, at *4.

### c. In The Alternative, Any Vicarious Liability Evidence Should Be Limited

The Court should exclude all evidence, testimony, or argument suggesting that BNSF is or can be held vicariously liable under BIPA for a third party's acts or omissions. But if the Court is

inclined to allow any of this evidence, it should limit it to the parameters of the test for vicarious liability, including (1) whether BNSF had "the right to control the manner and method" in which Remprex or any other third party carried out its work; (2) whether Remprex had the right to affect BNSF's legal relationships; and (3) whether Remprex was acting within the scope of its authority at the time of the alleged Section 15(b) violations. *See Oliveira-Brooks v. Re/Max Int'l, Inc.*, 372 Ill.App.3d 127, 134 (1st Dist. 2007); *Simich v. Edgewater Beach Apartments Corp.*, 368 Ill. App. 3d 394, 402 (1st Dist. 2006). The Court should also then adopt the heightened standard for vicarious liability that BNSF proposes in its jury instructions, and further limit the evidence accordingly. *See* Pretrial Order at Ex. H (BNSF's proposed alternative vicarious liability instructions). Evidence tending to support any alternative theory of vicarious liability is irrelevant and will serve only to confuse the jury and prejudice BNSF. *See* Fed. R. Evid. 401, 402, 403.

## 2. Evidence of Parties' Financial Condition

Evidence of a party's wealth or net worth is generally irrelevant. *See Rush Univ. Med. Ctr. v. Minnesota Min. & Mfg. Co.*, No. 04 C 6878, 2009 WL 3229435 (N.D. Ill. Oct. 1, 2009) ("courts often recognize that the issue of the finances of a party can distract the jury from the real issues in the case"); *see also State Farm Mut. Auto Ins. Co. v. Campbell*, 538 U.S. 408, 417 (2003) ("[T]he presentation of evidence of a defendant's net worth creates the potential that juries will use their verdicts to express biases against big businesses[.]").

Neither BNSF nor Plaintiff's financial conditions affect BNSF's potential BIPA liability. Any evidence on the parties' financial conditions, including the ownership of BNSF by Berkshire Hathaway or the involvement of Warren Buffett, could only serve to distract the jury and prejudice BNSF. It should be excluded under Fed. R. Evid. 401, 402, and 403.

### 3. Evidence or Argument Regarding Data Encryption

The trial involves a single claim for violation of Section 15(b) of BIPA. Section 15(b) applies only to notice and consent to collect biometric data and does not address data protection or encryption. Another section of BIPA, Section 15(e), places technical requirements on storage of biometric data, but there is no Section 15(e) claim in this case.

Evidence supporting a legal theory not at issue in the case is properly excluded through a motion in limine. *See, e.g.*, *Brennan v. Paul Revere Life Ins. Co.*, No. 00 C 0725, 2002 WL 1284385, at *6 (N.D. Ill. June 10, 2002) (excluding evidence of any claims that have been "tak[en] out of the case"). Here, Plaintiff is attempting to prove only a violation of Section 15(b)—*i.e.*, whether BNSF "collect[ed], capture[d], purchase[d], receive[d] through trade, or otherwise obtain[ed]" biometrics without providing notice or receiving consent. 740 ILCS 14/15(b). Because evidence or argument about the manner in which data was stored or protected—including evidence regarding whether biometric data was stored in an unencrypted manner—is irrelevant to a Section 15(b) claim, any such evidence should not be admitted because it could only serve to confuse or bias the jury. *See* Fed. R. Evid. 401, 402, 403.

### 4. Reference to Identity Theft or Data Breaches

Similarly, BNSF anticipates that Plaintiff may seek to reference identity theft or data breaches—though none has occurred in this case—to attempt to argue what *could* happen as a result of a BIPA violation. Any such evidence or argument should be excluded because Plaintiff alleges only a statutory violation of BIPA Section 15(b), not actual damages resulting from any identity theft or other harm. *See* Dkt. 103 at 6-7. The sole dispute at trial will be whether BNSF "collect[ed], capture[d], purchase[d], receive[d] through trade, or otherwise obtain[ed]" Plaintiff's biometrics. 740 ILCS 15/15(b). Reference to harm that could theoretically happen—but

undisputedly did not occur in this case—is irrelevant and references to non-existent identity theft would be more prejudicial than probative.  Fed. R. Evid. 401, 403.

     **5.   Reference to All Registered Drivers' "Fingerprints" Being Stored on Remprex's Database**

BNSF anticipates that Plaintiff will assert that "fingerprints" for every registered driver were stored on the Remprex AGS database, rather than differentiating between "finger scans," "mathematical representations," or "finger templates."  Plaintiff should not be permitted to do so. The distinction between "fingerprints" and data derived from fingerprints is material under BIPA. *Compare* 740 ILCS 14/10 (defining "biometric identifier," which includes fingerprints) *with* 740 ILCS 14/10 (defining "biometric information," as "information … based on an individual's biometric identifier used to identify an individual").  And Plaintiff has not offered any proof that actual fingerprint images *for every driver*—rather than templates or mathematical representations of finger scans—were stored on the Remprex database.

Unless and until Plaintiff can prove that images of every driver's "fingerprint" were stored on the Remprex database (which he cannot), Plaintiff should not be allowed to blur the essential distinction between "fingerprints" and data derived from fingerprints.  "The likelihood that a jury will blur the distinction between" similar words with materially different meanings "is properly considered under Rule 403," especially when those terms are used in the context of expert testimony. *Norwest Bank v. K-Mart Corp.*, No. 3:94-CV-78RM, 1997 WL 33479072, at *3 (N.D. Ind. Jan. 29, 1997) (citing *United States v. Brown*, 7 F.3d 648, 655 (7th Cir. 1993) ("[W]e recognize that in a close case the danger of unfair prejudice may be heightened by the 'aura of special reliability' that often surrounds expert testimony, and that jurors may tend to give such testimony undue weight.")).  There is a substantial likelihood the jury will blur this key distinction if Plaintiff is not required to distinguish between "fingerprints" and data derived from them.

Moreover, there is a further risk of unfair prejudice to BNSF because any erroneous use of the word "fingerprints" to describe what is instead biometric information derived from fingerprints implies a heightened risk of harm from identity theft or data breaches—which has not occurred in this case and, even if it had, could not possibly have resulted in the disclosure of every driver's fingerprints. The Court should accordingly bar Plaintiff from using the term "fingerprint" except where the evidence shows that a fingerprint was actually collected and stored.

6. **Reference to the Number of Times Biometric Data Was Collected**

BNSF anticipates that Plaintiff may seek to present evidence of the number of times Plaintiff's or other individuals' biometric information or identifiers were collected (including through the undisclosed expert testimony of Joseph Caruso, which BNSF separately moves to exclude). But the number of separate occasions on which any individual's biometric information or identifiers were collected is not relevant to determining the number of times BIPA was violated since a violation under section 15(b) of BIPA does not occur "each time a private entity scans a person's biometric identifier" but instead "only upon the first scan." *Cothron v. White Castle Sys., Inc.*, 20 F.4th 1156, 1167 (7th Cir. 2021) (certifying this issue to the Illinois Supreme Court). This issue is awaiting decision before the Illinois Supreme Court and BNSF maintains that the number of scans is not necessary for determining either liability or damages. Any related evidence is accordingly irrelevant and risks prejudice to Defendant. *See* Fed. R. Evid. 401, 402, 403.

7. **Use of Untimely Disclosed Documents**

On August 18, 2022 Plaintiff's counsel produced to BNSF 447 pages of new discovery materials bates labeled PLA000142 – PLA000588. At 11:57 PM on August 24, 2022, the night before the Pretrial Order was due, Plaintiff's counsel produced to BNSF an additional 415 pages of new discovery materials bates labeled PLA000589 - PLA001056. The next day at 1:00 PM,

Plaintiff produced two videos and a document bates labeled PLA001057 – PLA0001061. Plaintiff did not formally add these documents to their exhibit list until 3:58 PM the *day* the Pretrial Order submission was due. Finally, at 5:05 PM the *day* the Pretrial Order submission was due, Plaintiff produced to BNSF 14 pages of new discovery materials bates labeled PLA001062 – PLA001075 and an edited exhibit list. Plaintiff produced only 141 pages of discovery prior to the close of fact discovery in this case and has now produced over *six times* that much (over 880 pages) nearly two years after the fact discovery deadline—and has placed all this late discovery on its exhibit list.

BNSF's objections to these documents are listed in Ex. A to the Pretrial Order. However, the Court should exclude these documents based on their belated production alone. "Federal Rule of Civil Procedure 37(c)(1) provides that, '[i]f a party fails to provide information . . . as required by Rule 26(a) or (e) . . . the party is not allowed to use that information . . . to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.'" *Taylor v. Cook Cnty. Sheriff's Off.*, No. 13 C 1856, 2019 WL 4415765, at *2 (N.D. Ill. Sept. 16, 2019) (*quoting* Fed. R. Civ. P. 37(c)(1)). "Plaintiff has the burden of proving substantial justification or harmlessness." *Id.*

Plaintiff here cannot show that his egregiously late production of these documents is substantially justified or harmless. Plaintiff offered no excuse for the timing of his production. The documents are all publicly available on the internet, and Plaintiff could have produced them at any time in the last three years if he had acted with even a modicum of diligence.

Indeed, this is not the first lack of "sufficient diligence" on behalf of Plaintiff or the first time he has attempted to conduct discovery past the Court ordered deadline. *See* ECF No. 69 ("The Court has reviewed the parties' joint status report and observes that the parties (largely or perhaps entirely plaintiff) have continued to conduct written discovery beyond the Court-ordered

deadline of 9/14/2021 without seeking court approval. Regardless, the request for a three or nearly-three month extension of the fact discovery deadline is not supported given the absence of sufficient diligence in the months since the deadlines were set, until after the Court began pushing. For this reason, the Court extends the deadlines only as follows and states that this is a final extension, at least with respect to the fact discovery deadline. Fact discovery is to be completed by 12/31/2020.").

Moreover, Plaintiff's untimely production is prejudicial to BNSF's ability to prepare its defenses for trial. The discovery deadlines exist for good reason, and BNSF has been preparing for trial based on the existing record.

Plaintiff should not be permitted to produce on the eve of trial and rely on more than 880 pages of discovery produced nearly two years after the fact discovery deadline. "At some point, discovery must come to end." *Taylor*, 2019 WL 4415765, at *5 (excluding documents produced after the close of discovery that plaintiff could have timely produced if it had acted diligently).

### 8. Expert Testimony on the Ultimate Issues

Expert opinion testimony on the ultimate issue whether BNSF "collect[ed], capture[d], purchase[d], receive[d] through trade, or otherwise obtain[ed]" Plaintiff's biometrics within the meaning of BIPA Section 15(b) should be excluded. Under the Federal Rules of Evidence, "[i]t is … apparent that testimony offering nothing more than a legal conclusion—i.e., testimony that does little more than tell the jury what result to reach—is properly excludable." *Woods v. Lecureux*, 110 F.3d 1215, 1220 (6th Cir. 1997) (citing Fed. R. Evid. 704); *see also Jimenez v. City of Chicago*, 732 F.3d 710, 721 (7th Cir. 2013) ("As a general rule … an expert may not offer legal opinions.").

Excluding such evidence is particularly important here, since answering whether Defendant violated Section 15(b) of BIPA is a legal determination that raises novel and complex issues. Courts in this Circuit regularly address Section 15(b)'s statutory language to give meaning to its operative verbs. *See, e.g.*, *Stauffer v. Innovative Heights Fairview Heights, LLC*, No. 3:20-CV-00046-MAB, 2022 WL 3139507, at *4 (S.D. Ill. Aug. 5, 2022) (collecting cases from district courts within the Seventh Circuit addressing BIPA's statutory language). Any expert testifying based on his or her knowledge of the industry or relevant technology could only serve to confuse the jury if he or she attempts to use technical vernacular to demonstrate legal meaning. As a result, any such testimony would do "little more than tell the jury what result to reach," and "is properly excludable." *Woods*, 110 F.3d at 1220.

### 9. Evidence of After-the-Fact Remedial Measures

BNSF anticipates that Plaintiff may reference the fact that biometrics have not been used as part of the Remprex AGS since approximately March 2020 for the purpose of proving BNSF's alleged culpability and the need for advance notice and consent. Plaintiff and Plaintiff's witnesses should be precluded from making comments and argument about this fact as it is a subsequent remedial measure. Fed. R. Evid. 407; *see also Traylor v. Husqvarna Motor*, 988 F.2d 729, 733 (7th Cir. 1993).

### 10. Evidence of BNSF's Theoretical Motives to Increase Profits

A claim under section 15(b) of BIPA—which is the only claim in this case—does not require any proof of motive or intent. The parties' only dispute at trial is over whether BNSF "collect[ed], capture[d], purchase[d], receive[d] through trade, or otherwise obtain[ed]" Plaintiff's biometrics. Accordingly, any attempt by Plaintiff to present evidence of BNSF's theoretical motives to increase profit margins by using the AGS or biometrics is not relevant to Plaintiff's

claims, and therefore should be excluded as irrelevant and prejudicial. *See* Fed. Rule of Evid. 402 and 403; *see, e.g.*, *United States v. Hamzeh*, 986 F.3d 1048, 1055 (7th Cir. 2021) (explaining that "evidence of motive … is irrelevant" to "strict liability element[s]" of a cause of action); *cf. LaPlante v. Am. Honda Motor Co.*, 27 F.3d 731, 739 (1st Cir. 1994) ("A defendant's motive for its action or inaction is, generally speaking, immaterial to the question of whether the defendant acted negligently." (citing *Kunz v. Utah Power & Light Co.*, 913 F.2d 599, 605 (9th Cir. 1990)).

### 11. Suggestions That Jurors Place Themselves in the Plaintiff's Position

Suggesting that the jury put itself in the plaintiff's position to determine liability or damages—also known as a "Golden Rule" appeal—"is universally recognized as improper because it encourages the jury to depart from neutrality and to decide the case on the basis of personal interest and bias rather than on the evidence.'" *Spray-Rite Serv. Corp. v. Monsanto Co.*, 684 F.2d 1226, 1246 (7th Cir. 1982), *aff'd*, 465 U.S. 752 (1984) (citations omitted). Courts routinely bar the use of such an appeal at trial. *See, e.g.*, *Dinsay v. RN Staff Inc.*, No. 119CV00907TWPDML, 2021 WL 2643639 (S.D. Ind. June 28, 2021) ("Like settlement negotiation evidence, the case law is clear and firmly established that golden rule arguments are not permissible at trial."); *Talley v. Butler*, No. 3:14-CV-976-RJD, 2018 WL 10322078, at *2 (S.D. Ill. May 30, 2018) (same); *Thomas v. Ritz*, No. 3:15-CV-108-RJD, 2018 WL 1784473, at *4 (S.D. Ill. Apr. 13, 2018) (same). This Court should therefore bar any suggestion that jurors put themselves in Plaintiff's position when assessing liability or damages.

### 12. Appeals to the Jury That Elicit Sympathy for the Plaintiff

The jurors must decide this case based on a dispassionate analysis of the facts. Because of this, attempting to "evok[e] sympathy" is not a "valid bas[i]s for offering evidence or testimony." *United States Sec. & Exch. Comm'n v. Berrettini*, No. 10-CV-1614, 2015 WL 4247776, at *2 (N.D.

Ill. July 14, 2015); *see also United States v. Kelly*, 991 F.2d 1308, 1314 (7th Cir. 1993) (holding that counsel's attempt to "improperly appeal[] to the emotions of the jury" was "plainly inappropriate").

BNSF anticipates that Plaintiff's counsel may attempt to offer evidence or elicit testimony designed to evoke the jurors' sympathy for Plaintiff. Any evidence of this kind—for example, Plaintiff's testimony about his fears or concerns about the alleged collection of his biometric data—would have no bearing on whether BNSF violated Section 15(b) of BIPA, which is the only claim at issue. Instead, it would only serve to "improperly appeal" to the jurors' emotions. *Kelly*, 991 F.2d at 1314. It should therefore be excluded.

### 13. Legal Opinions of Witnesses

"The Seventh Circuit has held … that lay witnesses may be prohibited from testifying … as to 'the legal implications of conduct.'" *Tarpoff v. United States*, No. 09-CV-00411 DRH, 2011 WL 1205731, at *2 (S.D. Ill. Mar. 10, 2011) (citing *United States v. Baskes*, 649 F.2d 471, 478 (7th Cir. 1980)). Where a witness is asked to give an opinion on whether conduct at issue was unlawful, "the trial court may properly conclude that any response would not be helpful to the trier of fact" under Federal Rule of Evidence 701. *Baskes*, 649 F.2d at 478. Only this Court may instruct the jurors on the law in this case, and it should therefore prohibit Plaintiff from attempting to offer legal conclusions through witnesses.

### 14. BNSF's Policies and Procedures That Are Irrelevant and That Do Not Establish a Legal Duty

Among other BNSF policies and procedures, Plaintiff has included on their exhibit list certain BNSF Rules and Policies regarding Confidential Information, information management, electronic messaging, and records retention. All of this evidence is irrelevant and should be excluded. Plaintiff is attempting to prove only a violation of Section 15(b)—*i.e.*, whether BNSF

"collect[ed], capture[d], purchase[d], receive[d] through trade, or otherwise obtain[ed]" their biometrics without providing notice or receiving consent. 740 ILCS 14/15(b). Because evidence or argument about BNSF policies regarding confidential information or protection or encryption could relate, at most, only to claims under Section 15(a) (requiring an entity in possession of biometric data to establish a retention and destruction schedule) or Section 15(e) (regulating the manner in which biometric data must be stored) it is not relevant here.

### 15. <u>The Number of Lawyers or Number and Size of Law Firms Representing the Parties</u>

The number of lawyers retained by either party and the number and size of the law firms representing either party are irrelevant to whether BNSF is liable under Section 15(b) of BIPA. Any testimony on this topic could only serve to bias the jury. Therefore, BNSF moves to exclude such evidence under Federal Rules of Evidence 401, 402, and 403.

**WHEREFORE,** for the reasons detailed above, BNSF asks this Court to enter an order excluding and limiting Plaintiff from introducing certain evidence and argument at the trial of this matter.

Dated: August 25, 2022

Respectfully submitted,

**BNSF RAILWAY COMPANY**

By: */s/ Elizabeth Herrington*
    By Its Attorneys

Elizabeth Herrington
Tinos Diamantatos
Gregory Fouts
Alborz Hassani
Benjamin Kabe
MORGAN, LEWIS & BOCKIUS LLP
110 North Wacker Drive, Suite 2800
Chicago, IL  60606-1511
Telephone:   +1.312.324.1000
Facsimile:    +1.312.324.1001
beth.herrington@morganlewis.com
tinos.diamantatos@morganlewis.com
gregory.fouts@morganlewis.com
al.hassani@morganlewis.com
benjamin.kabe@morganlewis.com

Andrew S. Tulumello
Claire L. Chapla (*admitted pro hac vice*)
Robert Niles-Weed (*pro hac vice pending*)
WEIL, GOTSHAL & MANGES LLP
2001 M Street, NW, Suite 600
Washington, DC 20036
Telephone: +1.202.682.7000
drew.tulumello@weil.com
claire.chapla@weil.com
robert.niles-weed@weil.com

*Counsel for Defendant BNSF Railway Company*

## **CERTIFICATE OF SERVICE**

I, Elizabeth Herrington, certify that on August 25, 2022, I caused a copy of the foregoing

to be served upon all counsel of record via the Court's CM/ECF system.


*/s/ Elizabeth Herrington*
Elizabeth Herrington