**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | |
|---|---|
| RICHARD ROGERS, individually and on behalf of similarly situated individuals, ) ) ) | |
| Plaintiff, ) ) | No. 19-cv-03083 |
| v. ) ) | |
| BNSF RAILWAY COMPANY, a Delaware corporation, ) ) ) | Hon. Matthew F. Kennelly |
| Defendant. ) ) | |

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT BNSF RAILWAY COMPANY'S OMNIBUS MOTION *IN LIMINE***

Plaintiff Richard Rogers and the Certified Class (together "Plaintiffs"), through their undersigned counsel, for their Response in Opposition to Defendant BNSF Railway Company's ("Defendant" or "BNSF") Omnibus Motion *in Limine*, hereby state as follows:

1.      **Plaintiffs Seek To Hold BNSF Liable for BNSF's Own Actions.**

As with its unsuccessful summary judgment motion, BNSF continues to attempt to over-complicate things. Section 15(b) of BIPA creates liability for collecting, capturing, purchasing, receiving through trade, or otherwise obtaining biometrics without providing notice or obtaining written consent. At trial, Plaintiffs will prove that BNSF did these things. The fact that Remprex also played some role in providing labor associated with the capture of Plaintiff Rogers' and the Certified Class members' biometrics – as did numerous other third parties, such as the computer programmers who created the scanning technology, for example – does nothing to change the analysis. Plaintiffs seek to hold BNSF *directly* liable for its own active participation in the alleged violations, not vicariously liable for the actions of another.

At summary judgment, BNSF contended that it was Remprex clerks who operated the gates and registered the truck drivers by scanning their fingerprints, and that the biometric information was stored on Remprex databases. The Court, however, pointed to other evidence about BNSF's own role in these activities, including the "admitted fact that 'Remprex takes direction from BNSF regarding the management and use of the AG [gate] systems pursuant to the [contract].'" The Court concluded that this latter evidence "tends to show that BNSF ultimately called the shots on whether and how biometric information was collected." (Dkt. 142, at 15). The Court thus rejected BNSF's argument that "Remprex is the party that Rogers should have sued," and denied summary judgment on the grounds that a reasonable jury could conclude on this record that "BNSF, and not just Remprex, violated BIPA[.]" (*Id.*)

The evidence in this case supports BNSF's direct, non-derivative liability at trial, regardless of Remprex's role. BNSF is not being sued for passively possessing the data; BNSF is being sued for its own actions. The thrust of the claim is not limited to "allegedly supervis[ing] Remprex." Liability here is not vicarious, and thus no "heightened standard for vicarious liability" (Def. Mot. at 5) is applicable. Nor is there any basis to limit any purported "vicarious liability evidence" in the manner BNSF's motion proposes.

The plain language of the statute supports Plaintiffs' position. BIPA specifically prohibits private entities such as BNSF from escaping liability for the capturing of biometrics without consent by also including important catch-all prohibitions. BIPA specifically prohibits the receipt through trade, *or otherwise obtaining* of biometrics without express written consent, thus ensuring that, for example, taking the active step of hiring a third party to perform biometric collection on your behalf would still subject the private entity to liability, and not allowing the entity to pass the buck onto its alleged "independent contractors."

Additionally and independently, BSNF can also be held liable indirectly. Under Illinois law, a corporation such as BNSF can act (and can only act) through its officers, employees and agents. *See Black v. Peoria Marine Const. Co.,* 160 Ill. App. 3d 357, 364, 513 N.E.2d 622, 627 (3rd Dist. 1987); IPI 50.11. Corporations that direct their agents to commit tortious acts cannot legitimately defeat liability by blaming those agents. Any act or omission of an officer or employee within the scope of their authority is the action or omission of the defendant corporation. Likewise, any act of omission of an agent within the scope of its agency, is the action or omission of the defendant corporation. *Id.*

While it is not completely clear what precisely BNSF's motion *in limine* is asking the Court to do, no pretrial relief has been justified.

**2. BNSF's Financial Condition Is Relevant.**

While financial condition is not always probative, it sometimes can be, and is in this case. BNSF's massive bargaining leverage with respect to Remprex, for instance, will be relevant. BNSF is one of the largest railroads in the country with a lot of business to give or take away from Remprex. This status is most easily demonstrated by evidence of BNSF's revenue and national reach. Whether and to what extent Remprex was completely beholden to BNSF is probative. Plaintiffs have no quarrel with the notion that gratuitous or cumulative references to Warren Buffet are not admissible, but BNSF's effective ability to control Remprex through its massive market dominance should not be barred, particularly if, as expected, BNSF tries to paint the picture of Remprex as a total free agent with independence and no motive to do whatever BNSF asked of it.

In any event, BNSF has already included documents that waive this argument. For example, Defendant's Trial Exhibit No. 77, a document BNSF seeks to have admitted at trial,

is an informational document describing BNSF's national network and general history. It reads "On Feb. 12, 2010, BNSF became a subsidiary of Berkshire Hathaway, Inc., and is a leading "transporter of the products and materials that help feed, clothe, supply and power communities throughout America and the world." Similarly, Defendant's Trial Exhibit No. 79, a "BNSF History Slide Show," amounts to 48 pages of BNSF background, painting the company as an American institution built over 160 years. This slide show also references both Berkshire Hathaway and Warren Buffet and includes a picture of Mr. Buffet.

### 3 & 4. BNSF's Failure To Encrypt The Biometrics And The Subjects Of Data Breaches And Identify Theft Are Relevant To Demonstrating BNSF's State Of Mind And Rebutting Its Anticipated Arguments At Trial.

Other than noting that Section 15(b) does not require any showing of inadequate data protection, BNSF offers no rationale for barring all evidence that touches on these subjects. To the contrary, evidence showing that BNSF was unduly cavalier with the biometric data it collected in the face of very real threats to Certified Class members' privacy rights is relevant to show its reckless state of mind, which is very much at issue. (Dkt. 31 at 9) (finding that failure to comply with BIPA, a ten-year-old statute, makes a claim of recklessness plausible).

Specifically, Plaintiffs contend that BNSF not only collected their biometric information, but did so recklessly as required for the heightened statutory penalty. 740 ILCS 14/20 (2). "In general terms, recklessness denotes a course of action which shows an utter indifference to or a conscious disregard." *Rogers v. CSX Intermodal Terminals, Inc.,* 409 F. Supp. 3d 612, 618 (N.D. Ill. 2019). Recklessness "often needs to be inferred from circumstantial evidence and the surrounding circumstances." *People v. O'Connor,* 2021 IL App (1st) 191437-U, ¶ 46. Plaintiffs intend to show that BNSF's failure to take even basic precautions with the data it collected shows the requisite indifference and conscious disregard

4

toward Plaintiffs' privacy rights, especially when viewed in the context that BNSF's own internal policy on confidential information identified biometrics (including fingerprints) as a protected category of information deserving of a particularly high degree of care.

Evidence along these lines is a perfectly legitimate way to demonstrate recklessness. The fact that such biometrics are unencrypted on BNSF's servers would ensure that, if such data were compromised, it would also be accessible and usable for identity theft or sale. Similarly, the nature of the potential threat (data breaches or identity theft) is necessarily relevant to assessing Defendant's indifference. A doctor may not be negligent for allowing a medical student to treat a superficial wound. But the legal result might be different if that same doctor allowed the student to handle open heart surgery. The magnitude of the risk/threat presented is part of the equation in evaluating the conduct, just as it is here.

Further, Plaintiffs expect BNSF to claim at trial that it could not or did not access the biometric identifiers and information stored on its servers. For Plaintiffs to rebut this defense, it is relevant to introduce evidence showing that the data was not only stored on BNSF's servers at BNSF's locations, but immediately accessible to BNSF due to its lack of encryption.

5.      **References to "Fingerprints"**

Without disputing that *some* drivers gave fingerprints,[1] BNSF argues that not *all* drivers did. According to BNSF, some drivers only gave "finger scans," "mathematical representations," or "finger templates"—as opposed to actual fingerprints. (Mot. at 7). From there, BNSF contends that "[u]nless and until Plaintiff can prove that images of *every* driver's 'fingerprint' were stored on the Remprex database (which he cannot), Plaintiff should not be

---

[1] There can be no serious dispute that the actual fingerprints of at least some drivers were collected and stored. There are photographs of actual fingerprints in the database.

allowed to blur the essential distinction between 'fingerprints' and data derived from 'fingerprints.'" (*Id.*)

It is not clear exactly what BNSF is asking the Court to order, or what would happen if the Court granted its motion. BNSF appears to be attempting to bar Plaintiffs from using the word "fingerprint" at all, while asking the Court to split the hair between "fingerprint" (not allowed according to BNSF) and "finger scan" (allowed). Regardless, Plaintiffs cannot be fairly barred from referring to the information captured here as fingerprints, as *all* of the information captured in this case are either fingerprints or information derived therefrom.

In fact, the Rule 26 report of Plaintiff's expert, Joe Caruso, affirmatively states: "Indeed, the dbo.PartyBiometrics table contains an actual image of each registered driver's <u>fingerprint</u>, as well as the biometric template which was derived from the driver's fingerprint." (Dkt. 91-1, ¶ 45). BNSF's Expert, David Kalat, never offered an opinion as to what part or percent of the Certified Class members have a fingerprint image in the data, and expressly refused to offer his opinion regarding what constitutes biometric identifiers (fingerprints) and what constitutes biometric information (information derived from fingerprints). (Dkt. 117-1 at Ex. A, p. 1, 7 n.10). If BNSF believes it can prove to the jury's satisfaction that it did not in fact collect and store all of the drivers' fingerprints (as opposed to data derived from fingerprints), it is obviously welcome to try.

More important is the question of whether the distinction even matters. It does not. That this distinction is one without a difference is clear from the plain words of the statute: both biometric identifiers (fingerprints) and biometric information (data derived from fingerprints) are actionable and subject to the same notice and consent requirements under BIPA. Thus, the inverse of Defendant's sought relief is actually the most appropriate result

here. On that basis, the Court should actually prevent Defendant from attempting to distinguish between biometric identifiers and biometric information for the purpose of assessing liability or damages because both types of information are equally actionable and subject to the same liquidated damages analysis under the law. The Court should thus not only deny this motion, but affirmatively bar BNSF from imputing significance to the distinction.

### 6.    Number of Collections

This motion concerns the *Cothron* issue, namely, whether each scan triggers Section 15(b), or only the first. *Cothron v. White Castle Sys., Inc.,* 477 F. Supp. 3d 723, 731 (N.D. Ill. 2020) (finding liability for all scans, just not the first), question certified to the Illinois Supreme Court, 20 F.4th 1156 (7th Cir. 2021). To be clear, no court has ever concluded that the law is as BNSF wishes it to be. The only courts to have examined the issue have found the law to be the opposite of BNSF's position—including this Court, twice. (Dkt. 142) (denying summary judgment); (Dkt. 143) (granting class certification).

BNSF's motion *in limine* inaccurately implies that the Seventh Circuit accepted Defendant's position pending certification, just as Defendant's' FPTO commentary in support of their Instruction No. 5 expressly suggests that the "Seventh Circuit has found that Defendant's position is a reasonable one and refused to rule on the issue." (Dkt. 177-8, Final Pretrial Order, at Exhibit H). This is a considerable overstatement. Judge Sykes' opinion in fact took no position, but it did point out that the defense theory "has some notable weak spots." 20 F.4th at 1165 ("The premise--two violations aren't worse than one--may simply be wrong. Repeated collections or disclosures of biometric data, even if by or to the same entity, might increase the risk of misuse or mishandling of biometric data. If so, each violation would seem to independently aggrieve a plaintiff."); *id.* (a "first-time-only reading would itself lead

to an odd result. Once a private entity has violated the Act, it would have little incentive to course correct and comply if subsequent violations carry no legal consequences.").

For present purposes, the Court has stated at earlier hearings that it would be open to addressing the issue through a properly structured verdict form or special interrogatory fashioned at the close of the evidence. That, rather than granting this motion, is the appropriate course of action.

### 7.     Use of Recently Produced BNSF Documents

Plaintiffs incorporate the argument set forth in their own motion *in limine* No. 2, which addresses the same subject. This motion should be denied for the reasons stated therein.

### 8.     Expert Testimony on the Ultimate Issues

Fed. R. Evid. 704 expressly provides that an opinion is not objectionable just because it embraces an ultimate issue. While baldly unsupported "legal conclusions" may be unhelpful or objectionable under specific circumstances, that is not what Plaintiffs will present here. BNSF has declined to specifically identify any supposedly objectionable opinions, but if Defendant finds a question objectionable at trial, the Court can address it.

What might be motivating this motion is the refusal of BNSF's expert to opine about whether information collected by the AGS system constitutes either biometric identifiers or biometric information as defined by BIPA. (Dkt. 117-1 at Ex. A, p. 1, 7 n.10).[2] That only one side's expert offers helpful opinions is an insufficient justification for barring both.

---

[2] Defendant should have conceded this point long ago. BIPA is very broad, such that it clearly encompasses the collected information. 740 ILCS 14/10 (broadly defining biometric information as "any information, regardless of how it is captured, converted, stored, or shared, based on an individual's biometric identifier used to identify an individual").

### 9.    Remedial Measures

Contrary to the premise of BNSF's motion, the Federal Rules do not bar evidence of subsequent remedial measures. Rather, Rule 407 expressly provides that evidence bearing on activities that can be characterized as remedial are admissible, as long as there is a relevant purpose, "such as proving ownership, control, or feasibility of precautionary measures, if controverted or impeachment." *See* Fed. R. Evid. 407.

Here, the evidence is directly related to most of the admissible purposes enumerated in the Rule, including the primary issue at trial: who was pulling the strings. For example, evidence that BNSF directed Remprex to turn off biometrics at BNSF facilities, and that Remprex followed that direction, is plainly admissible to demonstrate BNSF's control over Remprex. *Dewick v. Maytag Corp.,* 324 F. Supp. 2d 894, 903 (N.D. Ill. 2004).

There is thus no need for any pretrial ruling before the Court hears the claims, defenses and evidence. The motion should instead be "denied as premature because there are a number of purposes for which evidence of subsequent remedial measures could be offered without running afoul of Rule 407." *Woods v. Amazon.com, LLC,* 17-cv-4339, 2019 WL 2323874, at *13 (N.D. Ill. May 30, 2019) ("For example, Woods might offer such evidence to impeach testimony that Defendants had no authority to change unsafe practices at the construction site"); *Dewick*, 324 F. Supp. 2d at 903 ("[T]he motion *in limine* must be rejected, with Maytag having the opportunity to reassert its objection in the context of the actual testimony as introduced at trial.").

### 10.    BNSF's Motive

BNSF implemented the system at issue to increase throughput, reduce wait-times, and increase profits, but argues *in limine* that motive evidence should be excluded under

Rule 401 and 403 because Plaintiffs' claims "do not require any proof of motive or intent." (Mot. at 12). If that is to be the guiding legal principal, then it must go both ways. Evidence and argument about safety and security – which are not relevant anyway – must be barred for the same reasons. In particular, the fact that BNSF claims to have been motivated by safety/security concerns is equally irrelevant to the question of whether BIPA was or was not violated. (*See* Dkt. 178, Plaintiff's Omnibus Motion *in limine* Nos. 5 and 6).

**11.    Golden Rule Arguments**

Defendant is correct insofar as "Golden Rule" appeals are impermissible at trial. Plaintiffs will abide by the rule.

**12.    Appeals To Elicit Sympathy**

Plaintiffs have no quarrel with the proposition that improper appeals to decide cases based on sympathy are objectionable, but the motion seeks to enforce a line that is better policed at trial in the context of actual questions or testimony.

**13.    Legal Opinions of Witnesses**

This is another underdeveloped motion *in limine* not particularly amenable to being granted in the abstract. Under Fedd. R. Evid. 701, lay witnesses can offer opinion testimony under enumerated circumstances. Plaintiffs have no intention of calling witnesses to tell the jury what the law is, but it is difficult to know precisely what BNSF is proposing to bar. If the Court hears a given question in context, it can surely decide whether the subject infringes on the Court's position as the instructor on the law at that time.

**14.    BNSF's Policies and Procedures**

This motion, too, is overbroad in its sweep. The Court has been presented with no

grounds to conclude that policies governing the three identified categories are completely irrelevant to this trial. BNSF's policies governing "confidential information" and "information management" for instance, are exactly what the trial is about.

Similarly, and as explained above, these policies and procedures are also crucially relevant to the question of BNSF's negligence or its recklessness. Defendant now seeks to bar the fact that its *own* policies and procedures identify biometrics as being subject to federal and state laws from being presented to the jury. But it is precisely this fact that could lead a juror to reasonably conclude that BNSF was reckless in its failure to act in accordance with its own enumerated policies and develop a system to receive informed written consent prior to capturing, collecting, purchasing, receiving through trade, or otherwise obtaining the biometrics of the Class. Indeed, this evidence tends to show that BNSF was aware that state laws applied to the collection of biometrics and nevertheless did nothing to ensure it was complying with such laws. There is no basis to exclude this evidence, and, importantly, BNSF fails to explain why the Court should conclude otherwise.

15. **Size of the Legal Teams**

It is unlikely, but not impossible, that the door could be opened to this subject. For example, if BNSF tries to defend itself by implying it was unsophisticated and uncounseled, or that BIPA is too new or cutting edge of a law, it might be fair to point out that BNSF appears to have access to fulsome legal representation. Plaintiffs will not attempt to make any such argument, however, without first raising it at a side bar.

Dated: September 1, 2022

Respectfully submitted,

RICHARD ROGERS, individually and on behalf of the Certified Class

By:   /s/ David L. Gerbie
*One of Plaintiff's Attorneys*

Myles McGuire
Evan M. Meyers
David L. Gerbie
Brendan Duffner
MCGUIRE LAW, P.C.
55 W. Wacker Drive, 9th Fl.
Chicago, IL 60601
Tel: (312) 893-7002
mmcguire@mcgpc.com
emeyers@mcgpc.com
dgerbie@mcgpc.com
bduffner@mcgpc.com

Jon Loevy
Michael I. Kanovitz
LOEVY & LOEVY
311 N. Aberdeen St., 3rd Floor
Chicago, Illinois 60607
Tel: (312) 243-5900
jon@loevy.com
mike@loevy.com

*Attorneys for Plaintiff and the Certified Class*

## CERTIFICATE OF SERVICE

I hereby certify that, on September 1, 2022, I caused the foregoing *Plaintiffs'*
*Response in Opposition to Defendant's Omnibus Motion In Limine* to be electronically
filed with the Clerk of the Court using the CM/ECF system. A copy of said document will
be electronically transmitted to all counsel of record:


/s/ David L. Gerbie