# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| RICHARD ROGERS, individually and on behalf of similarly situated individuals, <br><br> Plaintiff, <br><br> v. <br><br> BNSF RAILWAY COMPANY, <br><br> Defendant. | Case No. 1:19-cv-03083 <br><br> Honorable Matthew F. Kennelly |

## DEFENDANT BNSF RAILWAY COMPANY'S SUPPLEMENTAL
## BRIEF ON VICARIOUS LIABILITY ISSUES

Defendant BNSF Railway Company ("BNSF") submits this brief pursuant to the Court's Order requesting supplemental briefing on the vicarious liability arguments raised by Plaintiff. ECF. No. 192. At the pretrial conference, Plaintiff stated that he is pursuing two theories of vicarious liability, in addition to seeking to hold BNSF directly liable under BIPA. First, Plaintiff argues BNSF can be held vicariously liable under Section 15(b) of BIPA for the acts or omissions of a separate private entity like Remprex because "a corporation can only act through others, . . . so an act of someone that you ask to do an act on your behalf is an act of BNSF itself" (i.e., the "agency" theory). Tr. 63:2–6. Second, Plaintiff says BNSF can be held liable under Section 15(b) for "tak[ing] an active step towards collection" of biometric identifiers or information (Tr. 63:12–16)—here, "hiring a third party to perform biometric collection on your behalf" (i.e., the "active step" theory). ECF. No. 183 at 2.

For the following reasons, and for the reasons given in BNSF's first motion in limine and its objections to Plaintiff's Proposed Jury Instructions Nos. 2 through 5, Plaintiff's agency theory and "active step" theory are not actionable under BIPA.[1]  *See* ECF No. 173 at 1–5; ECF No. 177-6 at 5–17.  The Court should grant BNSF's motion in limine and bar Plaintiff from introducing any evidence or argument suggesting that BNSF can be held vicariously liable for Remprex's conduct or for taking an "active step" toward engaging in conduct that allegedly violates Section 15(b).  The Court should also reject Plaintiff's Proposed Jury Instructions Nos. 2 through 5 and adopt BNSF's Proposed Jury Instruction No. 2, which properly instructs the jury on the elements of a Section 15(b) claim.  *See* ECF No. 177-8 at 3.

## ARGUMENT

### I. BIPA Does Not Impose Vicarious Liability For The Conduct Of A Third-Party Agent

Vicarious liability is a common-law tort doctrine that provides "an *exception* to th[e] general rule" that "a person injured by the tortious action of another must seek his or her remedy from the person who caused the injury."  *Lawlor v. N. Am. Corp. of Ill.*, 983 N.E.2d 414, 427 (Ill. 2012) (emphasis added).  Under this exception, "a principal may be held liable for the tortious actions of an agent which cause a plaintiff's injury."  *Id.* (citation and internal quotation marks omitted).  Whether BIPA incorporates these common-law agency liability principles is a question of statutory interpretation, so the Court must "look to the language of the statute to determine the intent of the drafters.  When the statutory language is clear, no resort is necessary to other aids of construction."  *Zekman v. Direct Am. Marketers, Inc.*, 695 N.E.2d 853, 858 (Ill. 1998).  The text of BIPA makes clear that the Legislature did not intend to incorporate vicarious or agency liability.

---

[1] Neither of these theories is alleged in the operative complaint.  BNSF maintains that Plaintiff's effort to amend the complaint on the eve of trial through his proposed jury instructions and briefing is improper and an independent basis to grant BNSF's motion in limine.  *See* ECF No. 173 at 2–3.

-2-

Section 15(b) of BIPA provides that "[n]o ***private entity*** may collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifier or biometric information unless it first" provides written notice and obtains informed written consent. 740 ILCS 14/15(b) (emphasis added). And Section 20 creates a private right of action "against a ***private entity***" that violates the statute. 740 ILCS 14/20 (emphasis added). BIPA defines "private entity," as, in relevant part, "any individual, partnership, corporation, limited liability company, association, or other group, however organized." 740 ILCS 14/10. "Private entity" is ***not*** defined to include agents or contractors—and nothing else in BIPA indicates the Legislature intended to treat a company and its agent as a single "private entity" or provide a cause of action against a private entity for the acts or omissions of its agents or contractors.

BIPA's text contrasts sharply with other Illinois statutes that *do* incorporate common-law principles of agency or secondary liability by using statutory language expressly showing the Illinois Legislature's intent to include them. For example, the Illinois Uniform Fraudulent Transfer Act ("IUFTA") provides, in relevant part, that "[u]nless displaced by the provisions of this Act, the principles of law and equity, ***including . . . the law relating to principal and agent***, . . . supplement its provisions." 740 ILCS 160/11 (emphasis added). For this reason, courts have interpreted the IUFTA to impose secondary liability for aiding and abetting fraudulent transfers, reasoning that even though the statute does not expressly address secondary liability, Section 11 makes clear that the IUFTA is supplemented by the common law. *See, e.g.*, *In re Rest. Dev. Grp., Inc.*, 397 B.R. 891, 897–98 (N.D. Ill. Bankr. 2008) (holding the Legislature expressly authorized aiding and abetting liability by providing that the IUFTA supplements existing law).

Similarly, the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA") incorporates traditional agency liability principles because the statute expressly defines the term

"person" to "include[] any natural person or his legal representative, partnership, corporation (domestic and foreign), company, trust, business entity or association, ***and any agent***, employee, salesman, partner, officer, director, member, stockholder, associate, trustee or cestui que trust ***thereof***." 815 ILCS 505/1 (emphases added); *see also, e.g.*, 740 ILCS 90/1 ("the liability of such hotel, the proprietor or manager thereof, for any and all loss or damage to such property or effects sustained by such guest is limited to such loss or damage as may result from the fault or negligence of such proprietor or manager ***or of his agents or employees***"); 525 ILCS 30/22 ("Any person who violates this Act or any rule, ***or causes such violation by his employee or agent***, shall be liable for a civil penalty of not to exceed $10,000 for each violation. . . ."); 210 ILCS 47/3-601 ("The owner and licensee are liable to a resident for any intentional or negligent act or omission ***of their agents or employees*** which injures the resident.") (all emphases added).[2]

By contrast, nothing in the text, structure, or legislative history of BIPA suggests the Illinois Legislature intended for BIPA to incorporate common-law principles of vicarious or agency liability. The Legislature plainly knew how to incorporate agency principles in BIPA—as it did in many other statutes—and it *did not* incorporate them here. "Where the legislature uses certain words in one instance and different words in another, it intended different results." *Dana Tank Container, Inc. v. Hum. Rts. Comm'n*, 687 N.E.2d 102, 104 (Ill. App. Ct. 1997).

The Illinois Supreme Court has squarely held that absent a clear indication from the Legislature, an Illinois statute does not impose secondary liability. In *Zekman*, for example, the Court considered whether Section 2 of ICFA—which imposes liability for "[u]nfair methods of competition and unfair or deceptive acts or practices"—"also makes it unlawful to knowingly

---

[2] *Cf. Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 754 (1998) (noting that "[i]n express terms, Congress has directed federal courts to interpret Title VII based on agency principles" because "the term 'employer' is defined under Title VII to include 'agents'").

receive the benefits of" a third party's fraud, which the Court viewed as "a form of secondary liability."[3] 695 N.E.2d at 858–59. The Court said no because that "would require [the Court] to read into the statute violations that are not a part of the statutory text." *Id.* at 859.

At the pretrial conference, this Court pointed out that the federal Telephone Consumer Protection Act ("TCPA") sheds light on the question presented. Tr. 61:13–62:6. The text of the TCPA and the regulatory and judicial opinions interpreting it confirm that while the TCPA incorporates common-law tort principles of agency liability, BIPA does not. In *Aranda v. Caribbean Cruise Line, Inc.*, 179 F. Supp. 3d 817 (N.D. Ill. 2016), this Court explained that "liability for a TCPA violation may be imputed to a party that did not itself place the unlawful calls if the party that placed the calls did so as an agent of that party." *Id.* at 830. That is because the FCC, "which Congress vested with the authority to promulgate rules and regulations implementing the TCPA, . . . has made clear that federal common law agency principles apply in the TCPA context."[4] *Id.* The FCC reached this conclusion because the TCPA "empowers 'any person' to sue for damages and injunctive relief for do-not-call violations 'by ***or on behalf of***' a company." *In re Joint Petition filed by Dish Network, LLC*, 28 F.C.C.R. 6574, 6584, ¶ 29 (2013)) (quoting 47 U.S.C. § 227(c)(5)) (emphasis added). And "[s]tandard dictionary definitions of the phrase 'on behalf of' include, among other things, 'in the interest of,' 'as a representative of,' and 'for the benefit of'—concepts that easily can be read to encompass common law agency principles." *Id.* at 6585, ¶ 30 (citations omitted). Here, on the other hand, nothing in the text or

---

[3] Although ICFA incorporates agency principles by expressly defining "person" to include agents, *Zekman* involved whether there is secondary liability under the statute "where there is an arms-length, non-agency contractual relationship between the defendant and the primary wrongdoer." *Grant-Hall v. Cavalry Portfolio Servs., LLC*, 856 F. Supp. 2d 929, 943 (N.D. Ill. 2012).

[4] *See also, e.g., Warciak v. Subway Rests., Inc.*, 949 F.3d 354, 356 (7th Cir. 2020) (noting that the FCC has ruled "there is vicarious liability for TCPA violations" (citation omitted)).

structure of BIPA suggests it imposes liability on a private entity for the conduct of a third party acting "on behalf of" another when it violates BIPA.

Notwithstanding the text of BIPA, Plaintiff argues vicarious liability for a third party's conduct is available because "under Illinois law, a corporation can only act through others," "so an act of someone that you ask to do an act on your behalf is an act of BNSF itself." Tr. 63:3–4. According to Plaintiff, this means that, as a matter of law, "any act of [sic] omission of an agent within the scope of its agency, is the action or omission of the defendant corporation." ECF No. 183 at 3. But this argument ignores the gateway question of whether BIPA incorporates common-law vicarious liability principles and treats a company and its third-party agents or contractors as a single private entity. It also ignores the nature of Plaintiff's allegations, which assert that BNSF as an entity—not specific BNSF employees or agents—collected Plaintiff's biometrics in violation of BIPA. *See* ECF No. 103. BNSF does not dispute that, as a corporation, it acts through its officers and employees. But that is not the same as imputing liability to BNSF for the statutory violations of an alleged third-party agent when nothing in the text of BIPA indicates the statute incorporates common-law agency principles.

Plaintiff's untenable position also would mean that a company can *never* hire a third-party contractor without taking on all of that contractor's statutory liabilities as its own, no matter the context or the particular Illinois statute at issue. This would wildly expand liability for companies that hire third-party contractors. This is not the law in Illinois. Indeed, the Illinois Pattern Jury Instructions on Agency—which Plaintiff has asked the Court to adopt in this case—expressly advise that those instructions "should be used outside the tort area only with great caution." IPI 50.00. Because the text of BIPA is clear, and the legislative history likewise shows no intent to incorporate common-law agency principles, BNSF cannot be held liable for Remprex's alleged

violations of Section 15(b).

### II. BIPA Does Not Impose Liability For Taking An "Active Step" Toward Collecting, Capturing, Receiving Through Trade, Or Otherwise Obtaining Biometric Data

At the pretrial conference, Plaintiff also argued BNSF can be liable under Section 15(b) for "tak[ing] an active step towards collection" of biometric identifiers or information. Tr. 63:12–16. According to Plaintiff, BNSF has taken an "active step" here by contracting with Remprex. *See* ECF No. 183 at 2. But Section 15(b) does not impose liability merely for "taking an active step." As the text of Section 15(b) and the judicial decisions applying it make clear, a party must itself actively collect biometric data—taking a preliminary step toward collecting biometrics or passively possessing biometrics is not sufficient for liability to attach under Section 15(b).

Section 15(b) provides that "[n]o private entity may **collect**, **capture**, **purchase, receive through trade**, or **otherwise obtain** a person's or a customer's biometric identifier or biometric information" without first providing written notice and obtaining informed written consent. 740 ILCS 14/15(b) (emphases added). The plain language of Section 15(b) thus connotes affirmative action and unambiguously requires that a private entity *actively* "collect, capture, purchase, receive through trade, or otherwise obtain" biometrics—it must *complete* the action, not merely take a preliminary or "active step" toward doing so. Plaintiff does not (and cannot) meaningfully dispute this. Instead, Plaintiff impliedly focuses on the "otherwise obtain" language, arguing that this phrase somehow means a private entity can be liable under Section 15(b) for taking only an active step toward obtaining biometrics without completing the action of obtaining them. ECF No. 183 at 2. But "obtain" means to collect or to come into possession of. *See, e.g.*, *Honeycutt v. United States*, 137 S. Ct. 1626, 1632 (2017) (defining "obtain" as to "bring into one's own possession; to procure, esp. through effort" (quoting Black's Law Dictionary 1247 (10th ed. 2014))). It is similar to all the other words in Section 15(b) and in no way lessens the level of conduct needed to violate

the statute. *See* Antonin Scalia & Brian A. Garner, *Reading Law* 195 (2012) ("words grouped in a list should be given related meanings" (citation omitted)).

The term "active step" does not appear anywhere in BIPA, but some courts have used this phrase in explaining that a private entity violates Section 15(b) only through active collection of biometrics, not through passive possession, which is addressed in other BIPA provisions, such as Section 15(a). Not one of these decisions holds or suggests that an "active step" toward collecting biometric data, as Plaintiff argues, is sufficient to trigger Section 15(b) liability. In *Stauffer v. Innovative Heights Fairview Heights, LLC*, No. 3:20-cv-00046-MAB, 2022 WL 3139507 (N.D. Ill. Aug. 5, 2022), for example, the plaintiff brought a Section 15(b) claim against a franchisor that allegedly required its Illinois franchisees to use a biometric timekeeping system and also "retained the 'unlimited' right to access all of the [biometric] information contained in the system" from these franchisees. *Id.* at *2. The court granted the franchisor's motion to dismiss, agreeing with the franchisor that, at most, it "had access to the biometric information" and did not itself operate the timekeeping systems at issue. *Id.* at *3. The court first explained that the "active step" concept for Section 15(b) "recognize[s] and honor[s] th[e] intentional distinction in the language used by the Illinois legislature in different sections of BIPA ('collection' vs. 'possession')." *Id.* at *4. The court then rejected the plaintiff's argument that the franchisor had violated Section 15(b) because it "'dictated every step of the process' and was 'far from passive' in the collection of biometric identifiers," emphasizing that the plaintiff did not plausibly allege the franchisor "ever did anything to extract or obtain the biometric information from [its franchisees' systems]." *Id.* at *5–6. This principle controls here—Plaintiff seeks to hold BNSF liable simply for retaining Remprex, even though BNSF did not collect the biometrics at issue.

Similarly, in *Namuwonge v. Kronos, Inc.*, 418 F. Supp. 3d 279 (N.D. Ill. 2019), the court

considered whether a plaintiff stated a Section 15(b) claim against a provider of timekeeping software used by an employer to collect its employees' biometrics. The court dismissed the claim because the plaintiff did not "plausibly allege that the [provider] collected, captured, or otherwise obtained [the plaintiff]'s biometric information"—she had merely alleged it supplied the software system to the employer. *Id.* at 286. And in *Jacobs v. Hanwha Techwin America, Inc.*, No. 21 C 866, 2021 WL 3172967 (N.D. Ill. July 27, 2021), the court dismissed a Section 15(b) claim against the provider of security cameras used by T.J. Maxx because T.J. Maxx—not the provider—was "the active collector and processor of the data." *Id.* at *2–4. The court rejected the plaintiff's argument that the provider could be held liable under Section 15(b) for "mere possession" of his biometric data, without alleging that the provider actually took "any active steps" to actually collect or obtain that data. *Id.* at *2.

These decisions and the plain language of Section 15(b) foreclose Plaintiff's "active step" argument. Plaintiff's "active step" theory is not that BNSF itself actively obtained the biometric information at issue—instead, Plaintiff seeks to hold BNSF liable under Section 15(b) simply for taking a step toward doing so. Plaintiff's theory is similar to that in *Stauffer*, where the plaintiff alleged the franchisor violated Section 15(b) by requiring its franchisees to use biometric timekeeping systems and by retaining the right to access biometric information stored on those systems. The court in *Stauffer* rejected that argument, and this Court should do the same. Indeed, Plaintiff's theory has no limiting principle: If Section 15(b) merely requires an "active step," *any* private entity could be liable for assisting or facilitating another entity's violations of Section 15(b), which would be an impermissible form of aiding and abetting liability. That rule cannot be squared with *Stauffer, Kronos*, *Jacobs*, or any other BIPA case. As numerous courts in this district have held, the scope of liability under Section 15(b) is not so broad.

Plaintiff argues that Section 15(b) imposes liability for "taking the active step of hiring a third party to perform biometric collection on your behalf" because otherwise, a private entity could "pass the buck onto its alleged 'independent contractors.'" ECF No. 183 at 2. In other words, Plaintiff believes it is unfair he cannot sue BNSF for Remprex's alleged violations of BIPA. But that was the Legislature's decision. Plaintiff argues for the same type of secondary liability theory that the Legislature elected not to provide. And the Illinois Supreme Court will not create secondary liability in the absence of express statutory language, even where a party "*knowingly* receive[s] the benefits of another's [tortious conduct]."[5] *Zekman*, 695 N.E.2d at 859 (emphasis added). Nothing in the text of BIPA precludes a company from retaining an expert third-party vendor, particularly one that is contractually responsible for compliance with all applicable laws—including BIPA—in performing its security work. Plaintiff can bring a Section 15(b) claim against the vendor. In this case, Plaintiff has simply chosen to sue BNSF instead. But Illinois law does not permit Plaintiff to impute liability to BNSF for Remprex's alleged violations of BIPA.

## CONCLUSION

For these reasons, and the reasons stated in BNSF's first motion in limine and its objections to Plaintiff's Proposed Jury Instructions Nos. 2 through 5, the Court should grant BNSF's motion in limine, reject Plaintiff's Proposed Jury Instructions Nos. 2 through 5, and adopt BNSF's Proposed Jury Instruction No. 2, which properly instructs the jury on the elements of a Section 15(b) claim. *See* ECF No. 177-8 at 3. If the Court denies BNSF's motion and instructs the jury on agency liability, it should adopt BNSF's proposed alternative. *See* ECF No. 177-6 at 10–11.

---

[5] There are many examples of other Illinois statutes that, unlike BIPA, expressly provide for aiding and abetting liability. *See, e.g.*, Illinois Vehicle Code, 625 ILCS 5/18a-305 (providing that "[i]t shall be unlawful for any person to aid or abet in any violation of this Chapter"); Illinois Human Rights Act, 775 ILCS 5/6-101 (providing that it is a civil rights violation for a person to conspire to "[a]id, abet, compel, or coerce a person to commit any violation of this Act").

| | |
|---|---|
| Dated: September 12, 2022 | Respectfully submitted,<br>**BNSF RAILWAY COMPANY**<br><br>By: */s/ Elizabeth Herrington*<br>    By Its Attorneys<br><br>Elizabeth Herrington<br>Tinos Diamantatos<br>Gregory Fouts<br>Alborz Hassani<br>Benjamin Kabe<br>MORGAN, LEWIS & BOCKIUS LLP<br>110 North Wacker Drive, Suite 2800<br>Chicago, IL 60606-1511<br>Telephone: +1.312.324.1000<br>Facsimile: +1.312.324.1001<br>beth.herrington@morganlewis.com<br>tinos.diamantatos@morganlewis.com<br>gregory.fouts@morganlewis.com<br>al.hassani@morganlewis.com<br>benjamin.kabe@morganlewis.com<br><br>Andrew S. Tulumello<br>Claire L. Chapla (*admitted pro hac vice*)<br>Robert Niles-Weed (*admitted pro hac vice*)<br>WEIL, GOTSHAL & MANGES LLP<br>2001 M Street, NW, Suite 600<br>Washington, DC 20036<br>Telephone: +1.202.682.7000<br>drew.tulumello@weil.com<br>claire.chapla@weil.com<br>robert.niles-weed@weil.com<br><br>*Counsel for Defendant BNSF Railway Company* |

## **CERTIFICATE OF SERVICE**

I, Elizabeth Herrington, certify that on September 12, 2022, I caused a copy of the foregoing to be served upon all counsel of record via the Court's CM/ECF system.

*/s/ Elizabeth Herrington*
Elizabeth Herrington