IN THE UNITED STATES DISTRICT COURT FOR THE
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RICHARD ROGERS, individually and on behalf of similarly situated individuals,<br><br>*Plaintiff*,<br><br>v.<br><br>BNSF RAILWAY COMPANY,<br><br>*Defendant*. | No. 19-cv-03083<br><br>Hon. Matthew F. Kennelly |

PLAINTIFFS' SUPPLEMENTAL RESPONSE IN OPPOSITION TO
DEFENDANT'S FIRST MOTION *IN LIMINE*

Myles McGuire
Evan M. Meyers
David L. Gerbie
Brendan Duffner
MCGUIRE LAW, P.C.
55 W. Wacker Drive, 9th Fl.
Chicago, IL 60601
Tel: (312) 893-7002
mmcguire@mcgpc.com
emeyers@mcgpc.com
dgerbie@mcgpc.com
bduffner@mcgpc.com

Jon Loevy
Michael I. Kanovitz
LOEVY & LOEVY
311 N. Aberdeen St., 3rd Floor
Chicago, Illinois 60607
Tel: (312) 243-5900
jon@loevy.com
mike@loevy.com

*Attorneys for Plaintiff and the Certified Class*

Plaintiffs respectfully submit this Supplemental Memorandum on the issue of vicarious liability raised in Defendant's first motion *in limine*.

I.  **BNSF Is A Corporation That Acted Through An Agent, Remprex, to Violate BIPA.**

It is a well-settled principal that a corporation acts, and can only act, through its employees and agents. *See Black v. Peoria Marine Const. Co.,* 160 Ill. App. 3d 357, 364, (3rd Dist. 1987) ("[D]efendants were corporations which could only act through their agents or employees and an act or omission by an employee or agent within their scope of authority was the act or omission of the defendant corporations.") This proposition follows from the fact that the corporation is a legal fiction that exists only as through those with have authority to act for it. *See Downtown Disposal Servs., Inc. v. City of Chicago,* 2012 IL 112040, ¶ 17, 979 N.E.2d 50, 54 (Ill. 2012) (A "corporation is an artificial entity that must always act through agents"); *John Doe Corp. 1 v. Huizenga Managers Fund, LLC,* 2021 IL App (2d) 200513, ¶ 84, 188 N.E.3d 1259, 1279 (same), appeal denied sub nom. *Doe Corp. 1 v. Huizenga Managers Fund, LLC,* 183 N.E.3d 879 (Ill. 2021).

Plaintiffs contend that BNSF acted through Remprex to violate BIPA, by authorizing Remprex to collect, capture, etc. the Class members' biometric identifiers and information. In particular, BNSF managers hired Remprex to manage BNSF's railyards and biometric entry gates, thereby authorizing Remprex to collect biometrics from the Class. Thus, even though the physical collection was conducted by Remprex, it is still an act of BNSF. *See, e.g., Lawlor v. N. Am. Corp. of Illinois,* 2012 IL 112530, ¶ 46, 983 N.E.2d 414, 428 (Ill. 2012) (private investigation company was acting as agent of defendant corporation while investigating corporation's former employee even though employer did not control the manner of the investigation where employer requested that

1

investigator obtain former employee's phone records, violating her right to privacy); *Villa v. Arthur Rubloff & Co. of Illinois,* 183 Ill. App. 3d 746, 749, 539 N.E.2d 364, 366 (1989) ("[T]here is no question that under the present circumstances, a property manager is clearly an agent for the property owner"); *Peoria Marine Const. Co.,* 513 N.E. 2d at 626 (corporation acted through its subcontractor's employee). *Cf. McHale v. W.D. Trucking, Inc.,* 2015 IL App (1st) 132625, ¶ 96, 39 N.E.3d 595, 627 (statement by an agent on a matter within the scope of his agency is a statement of the corporation).

To illustrate the conferral of authority, consider the result if the BNSF manager/agents that hired Remprex to manage BNSF's biometric gates had, instead, operated the gates with their own hands. The biometric collection would clearly be BNSF's act because BNSF, as a fictitious entity, could only collect biometrics through its agents. Similarly, if those same BNSF manager/agents authorized other BNSF employees to collect the biometrics, the same conclusion obtains—those employees are BNSF agents and so their actions are the actions of BNSF.

The fact that the BNSF managers deputized Remprex instead of other BNSF employees does not change the result. Both can be agents through whom the corporation acts for these purposes. *See The Roscoe Co. v. Lewis University, College of Law* 79 Ill. App. 3d 1098, 35 Ill. Dec. 133, 398 N.E. 2d 1083 (1st Dist. 1979) (corporation hired to operate university property was an agent, such that its employees were subagents who could contractually bind university). *Peoria Marine Const. Co.,* 513 N.E. 2d at 626 (corporation acts through both its employees and its agents).

In that light, if the proper characterization of the evidence is that BNSF authorized Remprex to use its biometric gates to collect drivers' biometrics, then BNSF is directly

liable under BIPA. *See Lawlor,* 983 N.E.2d at 429 ("We agree with the appellate court, when all of the evidence is considered, together with all reasonable inferences … that there was not a total failure or lack of evidence to support the jury's determination on agency in this case. Our standard of review is a high one, and based upon the evidence . . . it was not unreasonable for the jury to conclude that [Defendant's] conduct was consistent with a *principal exercising control over its agent by directing it to obtain specific information and providing it with the necessary tools to accomplish the task*.") (emphasis added).

Plaintiffs do not understand BNSF to argue otherwise. Rather, BNSF disputes the facts. It claims that it did not authorize Remprex to collect Plaintiffs' biometrics. Perhaps the jury will agree or, perhaps, they will conclude that the contract to run BNSF's biometric entry gates for BNSF's benefit authorizes collecting biometrics (not to mention storing the data on BNSF's servers). Either way, the nature of the authorization from BNSF is a question for the jury. *McHale,* N.E.3d at 627 ("[W]hen, as here, there is some dispute as to the extent of the parties' relationship, the existence and scope of an agency relationship are questions of fact for the jury to determine.").

## II. Alternatively, BNSF Is Directly Liable In That It Took An "Active Step" To Collect, Capture, Etc. Plaintiffs' Biometrics.

Plaintiffs' second, and related, contention is that BNSF (via its managers) took an "active step" in "collect[ing], captur[ing], receive[ing] through trade, or otherwise obtain[ing]" Plaintiffs' biometrics. In particular, BNSF did more than just passively come into possession of Plaintiffs' biometrics—it purchased the biometric Auto-Gate Systems and hired Remprex to run it.

BIPA case law holds that an "active step" is the touchstone of liability because the active step differentiates Section 15(b) conduct from the mere passive "possession" of

3

biometric identifiers/information governed by 15(a) and (d). *See King v. PeopleNet Corp.,* No. 21 CV 2774, 2021 WL 5006692, at *8 (N.D. Ill. Oct. 28, 2021) (Section "15(b) doesn't penalize mere possession of biometric information.") Thus, a BIPA defendant need not complete every step of the offense itself so long as it took an active step to cause the offense. *See Ronquillo v. Doctor's Assocs., LLC,* No. 21 C 4903, 2022 WL 1016600, at *3 (N.D. Ill. Apr. 4, 2022) (Subway franchisor could be held liable for BIPA violation against franchisee's employees because it required its franchisees to use biometric punch clocks). All that is required is that the defendant played more than a passive role. *Id.* ("[The Subway franchisor] argue[s] that only [plaintiff's] actual employer, the unnamed Subway franchisee, captured and obtained her biometric information. But in doing so, [it] attempt[s] to rewrite the complaint to avoid its actual allegations, which allow for the reasonable inference that [the Subway franchisor] played more than a passive role in the process"); *Patterson v. Respondus, Inc., et al.* 20-cv-7692, 2022 WL 860946, at *26 (N.D. Ill. Mar. 23, 2022) (Allegation that a defendant licensed biometric software and required plaintiff to use said software was sufficient to constitute an "active step" for purposes of liability under 15(b).)

Here, a jury could reasonably find that BNSF played more than a passive role in the collection of biometrics. For example, among other actions, BNSF: purchased the biometric scanners to be used with the AGS entry system; licensed the software used to collect biometrics; hired Remprex to operate the AGS and manage the entry procedures knowing that the AGS included biometric scanners; and contracted to own the biometrics.[1]

---

[1] A related form of direct liability is that BNSF "otherwise obtained" plaintiffs' biometrics by having Remprex collect the data because BNSF owned that data pursuant to contract and stored it on its own servers.

4

If the jury finds that BNSF took an active step to cause the collection, capture, etc. of Plaintiffs' biometrics, then the question of whether Remprex is an agent or independent contractor becomes superfluous; BNSF would be held liable for its own active step.[2] If this is the case, then it would not matter whether BIPA embraces vicarious liability for a Section 15(b) violation (which, in any event and as explained below, it does).

### III. BIPA Incorporates Vicarious Liability For A Section 15(b) Violation Through Common Law Principals Of Agency And/Or Ratification.

Plaintiff's third contention is that, even if BNSF's liability is characterized as vicarious, such liability is still covered by Section 15(b). At the outset, both sides agree that the common law recognizes tort of an agent's acts so long as the acts are within the scope of the agent's authority. The Parties part ways on whether BIPA abrogates the common law in this regard. BNSF argues that BIPA excludes vicarious liability because the statute does not expressly adopt it.[3] Plaintiffs' position, by contrast, is that common law rules apply to statutory torts unless the statute evidences an intent to abrogate the common law. *See Wordlaw v. Enterprise Leasing Co. of Chicago, LLC, et al.* No. 20-cv-3200, 2020 WL 7490414, at n.2 (N.D. Ill. 2020) ("[W]hile BIPA is limited to 'private entities,' the text does not close the door on traditional theories of agency liability.")

Plaintiffs' position is correct, as recognized in the canons of statutory construction. Moreover, BIPA does not evidence any intent to abrogate vicarious liability statutory torts. BNSF is thus vicariously liable under Section 15(b) if the jury finds that Remprex was its

---

[2] Again, we do not understand BNSF to argue that the actions of its manager in contracting with Remprex to operate the biometric gates are not the actions of BNSF itself.

[3] This Court already rejected Defendants' argument that Plaintiffs were required to have pleaded vicarious liability when ruling on BNSF's motions *in limine* at the pretrial conference. *Moreover*, BNSF was aware throughout that Plaintiffs present both direct and vicarious liability theories. *E.g.* Dkt. 112, Answer and Affirmative Defenses, at Defenses Nos. 3,4,9. *See also Aranda v. Caribbean Cruise Line, Inc.,* 179 F. Supp. 3d 817, 830 (N.D. Ill. 2016) (Kennelly, J.) (plaintiffs did not have to plead legal theories and defendants were aware since early in the case that plaintiffs sought to hold them liable for the acts committed by others).

5

agent. The general rule is that the common law doctrine of *respondeat superior* applies to statutory torts the same as for common law torts. *See Shager v. Upjohn Co.,* 913 F.2d 398, 404 (7th Cir. 1990) ("It is well settled that the common law doctrine of *respondeat superior* applies to statutory torts the same as for common law torts.") This rule of vicarious liability "usually is carried over to statutory torts, because statutes creating torts rarely bother to set forth all the ancillary doctrines—governing such issues as causation, immunity, or, here, derivative liability—that are necessary to compose a complete regime of tort liability." *Id. See also Aranda,* 179 F. Supp. 3d at 830 ("[T]he FCC has made clear that federal common law agency principles apply in the TCPA context. This means that a seller may be vicariously liable in the context of an agency relationship") (citations omitted).

Application of *respondeat superior* follows from the fact that legislatures are presumed to know the common law and enact their statutes in light of it. Accordingly, *respondeat superior* is part of the statutory scheme unless the legislature evidences intent to abrogate it. *See Advincula v. United Blood Servs.,* 176 Ill. 2d 1, 21–22, 678 N.E.2d 1009, 1019–20 (Ill. 1996) ("The common law . . . furnishes one of the most reliable backgrounds upon which analysis of the objects and purposes of a statute can be determined"); *Foster Wheeler Energy Corp. v. LSP Equip., LLC,* 346 Ill.App.3d 753, 759 (2nd Dist. 2004) ("The common law, where it has not been expressly abrogated by statute, is as much a part of the law of the state as the statutes themselves"); *Scott v. Dreis & Krump Mfg. Co.,* 26 Ill. App. 3d 971, 983, 326 N.E.2d 74, 82 (1st Dist. 1975) ("[S]tatutes should be construed with reference to the principles of the common law, and it will not be presumed that an innovation thereon was intended farther than is specified or clearly to be implied").[4]

---

[4] Illinois common law plainly recognizes vicarious liability for privacy torts committed by an agent. *See Lawlor v. N. Am. Corp. of Illinois,* 2012 IL 112530, ¶ 51, 983 N.E.2d 414, 429 (Ill. 2012) (In invasion of

6

Thus, BIPA is properly construed to permit common law vicarious liability unless the legislature has evidenced an intent to abrogate it. There is no evidence of such intent here. To the contrary, BIPA states that a corporation must follow Section 15(b) and thus envisions liability for the acts of corporate agents.[5] This Court reached the same conclusion in the context of a statutory tort under the Fair Credit Reporting Act given that the statute expressly applied to corporations. *Del Amora v. Metro Ford Sales & Serv., Inc.,* 206 F. Supp. 2d 947, 951 (N.D. Ill. 2002) (Kennelly, J.) ("The term "person" is defined broadly to include corporations which, as we have noted, necessarily act through their agents. 15 U.S.C. § 1681a(b); *Shager*, 913 F.2d at 404. It follows that a subscriber corporation can be liable for its agent's misconduct under the Act."). So too here. BIPA defines the "private entity" which can be liable under Section 15(b) to include a corporation. 740 ILCS 14/10. Under Illinois law, a corporation acts through its employees *and* its agents. *See Peoria Marine Const. Co.,* 513 N.E.2d at 626-27 ("[D]efendants were corporations which could only act through their agents or employees and an act or omission by an employee or agent within their scope of authority was the act or omission of the defendant corporations").

BNSF's only argument for abrogation is based on the active step requirement recognized in the case law. Def's Omnibus Motion *In Limine,* Dkt. 173 at 3-4. But the argument is circular. If a corporation acts through its agents (which it does) then an active step of the agent is an active step of the corporation. Moreover, the act of authorizing an

---

privacy case "there was a sufficient basis for the jury to conclude that [the principal] directed, controlled, or authorized the method in which [the agent] investigators performed the work in obtaining [the plaintiff's] phone records.") *See also Gaynor v. Am. Ass'n of Nurse Anesthetists,* 2015 IL App (1st) 150557-U, 2015 WL 9594358, at *10-16 (adjudicating vicarious liability for defamation and invasion of privacy claims).

[5] The BIPA exemption for "contractor(s), subcontractor(s), or agent(s)" of governmental entities, 740 ILCS 14/25(e), is further indication that BIPA preserved common law application of vicarious liability. In addition, through its catch-all provisions, Section 15(b) expressly regulates biometrics being "received through trade" or "otherwise obtained," actions that involve the participation of a third party.

agent to collect biometrics is itself an active step by the corporation's managers. *See Ronquillo,* 2022 WL 1016600, at *3. Thus, there is nothing in the active step requirement which indicates a legislative intent to abrogate *respondeat superior*. Compare *Morris v. Ameritech Illinois,* 337 Ill. App. 3d 40, 49, 785 N.E.2d 62, 69 (1st Dist. 2003) (finding that statute expressly abrogated vicarious liability by specifying a limited set of remedies against a principal for the actions of its agent); *Carle Found. v. Illinois Dep't of Revenue,* 396 Ill. App. 3d 329, 342, 917 N.E.2d 1136, 1146–47 (4th Dist. 2009) ("It is a general rule[,] in the construction of statutes, that they are not to be presumed to alter the common law further than they expressly declare. Statutes are to be construed in reference to the principles of the common law; and it is not to be presumed [ ] that the legislature intends to make any innovation upon the common law further than the case ab[s]olutely requires") (quoting *Mackin v. Haven,* 187 Ill. 480, 493, 58 N.E. 448, 452 (1900)). [6]

Nor does BNSF's claim that Remprex was an independent contractor change the analysis. *See* Dkt. 173 at 5 (arguing that "Plaintiff is well aware of Remprex's role as a third-party independent contractor"). Although BNSF wrote in its contract that Remprex is an independent contractor, Plaintiffs do not accept that characterization and neither must the jury. Putting such language in a contract is not a get out jail free card.

Rather, Remprex can be both an independent contractor as to matters which were truly discretionary and not controllable by BNSF, yet still be an agent as to conduct BNSF authorized. *See Horwitz v. Holabird & Root,* 212 Ill. 2d 1, 13, 816 N.E.2d 272, 279 (Ill. 2004) ("That someone is an independent contractor does not bar the attachment of vicarious

---

[6] Indeed, BNSF's argument is fundamentally flawed because it begins one step removed from BIPA's plain language, relying instead on the judicially-created "active step" standard as evidence that the Illinois Legislature *expressly* abrogated vicarious liability. *See Foster Wheeler Energy Corp. v. LSP Equip., LLC,* 346 Ill.App.3d 753 at 759 (requiring express abrogation).

8

liability for her actions if she is also an agent"); *McHale v. W.D. Trucking, Inc.,* 2015 IL App (1st) 132625, ¶ 53, 39 N.E.3d 595, 615 ("An employer usually is not vicariously liable for the tortious actions of an independent contractor. However, the fact that someone is an independent contractor does not bar the attachment of vicarious liability for the independent contractor's actions if he or she is also an agent"); *Dixon v. MB Real Est. Servs., LLC,* 2016 IL App (1st) 152329-U, ¶ 15 ("Yet just because the written contract between Titan and MB says that the security guards are independent contractors does not mean that MB cannot be deemed to be an employer. A written contract is not conclusive of the relationship between the alleged agent and the alleged principal."); *Lawlor*, 983 N.E.2d at 427 (where employer expected independent contractor to obtain employees' phone records, contractor was its agent as to that conduct). *See also Horowitz,* 212 Ill. 2d at 22, 816 N.E. 2d at 284 (Independent contractor's acts can "be imputed to their clients [if] it is shown that the client directed, controlled, *authorized*, or ratified the alleged misconduct") (emphasis added).

Independently, even if the jury finds that Remprex was an independent contractor as to the collection of biometrics, BNSF can still be liable for a 15(b) violation via the doctrine of ratification. Ratification in this context occurs when the principal knows of the independent contractor's conduct and gains a benefit by accepting it. *Id.; see also Beker,* 632 N.E.2d at 277; *Aranda*, 179 F. Supp. 3d at 833 ("The evidence would also permit a reasonable jury to find that CCL, VOMT, and Berkley ratified acts that ESG undertook on their behalf by knowingly accepting the benefits that flowed from them. Ratification occurs when a principal knowingly chooses to accept the benefits of unauthorized actions an agent

9

takes on the principal's behalf"); *Toney v. Quality Res., Inc.,* 75 F. Supp. 3d 727, 745 (N.D. Ill. 2014) (adjudicating ratification-based vicarious liability for TCPA statutory tort).

Here, the evidence will show that BNSF knew Remprex was collecting biometrics, that it had the ability to instruct Remprex to stop doing so at any time, and that BNSF benefited from the collection of biometrics. The jury can thus find liability through ratification. *See Horowitz,* 212 Ill. 2d at 13, 816 N.E.2d at 279 (even though attorneys are independent contractors who exercise independent judgment a client can become vicariously liable by ratifying their conduct); *Id.* at 22, 284 (Independent contractor's misconduct can "be imputed to their clients [if] it is shown that the client directed, controlled, authorized, or *ratified* the alleged misconduct.") (emphasis added). *See also Jones v. Beker,* 260 Ill. App. 3d 481, 485, 632 N.E.2d 273, 277 (1st Dist. 1994) ("The general rule in Illinois is that a principal is not liable for the acts of his independent contractor. . . . [Nevertheless, r]atification of an unauthorized act is equivalent to an original authorization and confirms that which was originally unauthorized. . . . [R]atification will be found '[a]s long as the principal has full knowledge of the facts and has the choice of either accepting or rejecting the benefits of the transaction.'") Similarly, ratification is a basis for a jury to find BNSF authorized Remprex to collect biometrics. *Aranda*, 179 F. Supp. 3d at 831 ("An entity may be held vicariously liable for violations of the TCPA [statutory tort] 'under a broad range of agency principles, including not only formal agency, but also principles of apparent authority and ratification'") (citations omitted). [7]

---

[7] The Court should also reject BNSF's request for a heightened standard of proof. None of the cases it cites stand for that proposition and the law clearly requires only a preponderance of the evidence. *Curto v. Illini Manors, Inc.*, 405 Ill. App. 3d 888, 892, 940 N.E.2d 229, 232 (2010) ("The party claiming an agency relationship must prove it by a preponderance of the evidence.").

## IV. Conclusion

For the foregoing reasons, Defendant BNSF Railway's motion *in limine* number 1 should be denied in its entirety, with the parties directed to work together to fashion jury instructions reflecting the Court's ruling.

Dated: September 12, 2022

Respectfully submitted,

By: /s/ Mike Kanovitz
*One of Plaintiffs' Attorneys*

Myles McGuire
Evan M. Meyers
David L. Gerbie
Brendan Duffner
MCGUIRE LAW, P.C.
55 W. Wacker Drive, 9th Fl.
Chicago, IL 60601
Tel: (312) 893-7002
mmcguire@mgpc.com
emeyers@mcgpc.com
dgerbie@mcgpc.com
bduffner@mcgpc.com

Jon Loevy
Michael I. Kanovitz
Loevy & Loevy
311 N. Aberdeen St., 3rd Floor
Chicago, Illinois 60607
Tel: (312) 243-5900
jon@loevy.com
mike@loevy.com

*Attorneys for Plaintiff and the Certified Class*

**Certificate of Service**

I hereby certify that, on September 12, 2022, I caused the foregoing *Plaintiffs' Supplemental Response in Opposition to Defendant's First Motion in Limine* to be electronically filed with the Clerk of the Court using the CM/ECF system. A copy of said document will be electronically transmitted to all counsel of record:

/s/ Mike Kanovitz