IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RICHARD ROGERS, individually and on behalf of similarly situated individuals,<br><br>Plaintiff,<br><br>v.<br><br>BNSF RAILWAY COMPANY,<br><br>Defendant. | Case No. 1:19-cv-03083<br><br>Honorable Matthew F. Kennelly |

**DEFENDANT BNSF RAILWAY COMPANY'S
MOTION FOR JUDGEMENT AS A MATTER OF LAW**

Defendant BNSF Railway Company ("BNSF"), through its undersigned counsel, respectfully submits the following motion for judgement as a matter of law ("JMOL") pursuant to Federal Rule of Civil Procedure Rule 50(a). In support of its motion, BNSF states as follows:

**INTRODUCTION**

Plaintiff Richard Rogers accuses BNSF of violating Section 15(b) of the Illinois Biometric Information Privacy Act ("BIPA") in two ways. Plaintiff argues that BNSF violated Section 15(b) (1) directly by collecting, capturing, receiving through trade, or otherwise obtaining Plaintiff's biometric data, and/or (2) indirectly because BNSF is vicariously liable for the acts and omissions of non-party Remprex Inc. ("Remprex"). Plaintiff has now been fully heard on his claim. For numerous, independent reasons, there is not a "legally sufficient evidentiary basis" for the jury to find for Plaintiff, and the Court should grant JMOL against Plaintiff. Fed. R. Civ. P. 50(a). First, Plaintiff's claims are preempted by federal law. Second, Plaintiff's claim is time barred. Third, there is insufficient evidence to find that BNSF violated BIPA, either directly or vicariously

through Remprex. Finally, there is insufficient evidence to find that, even if BNSF violated BIPA under either or both of Plaintiff's theories, there is any basis for Plaintiff to recover any damages. For any of these reasons, the Court should grant JMOL against Plaintiff and enter judgment in BNSF's favor.

## LEGAL STANDARD

The court may enter judgment as a matter of law "[i]f a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for that party on that issue." Fed. R. Civ. P. 50(a)(1). Because "[t]he standard for granting judgment as a matter of law 'mirrors' the standard for granting summary judgment," the court "view[s] the evidence in the light most favorable to the [non-moving] party." *Murray v. Chi. Transit Auth.*, 252 F.3d 880, 886 (7th Cir. 2001). The plaintiff must "offer substantial affirmative evidence to support her argument," *Florek v. Vill. of Mundelein*, 649 F.3d 594, 601 (7th Cir. 2011), and if the plaintiff's evidence supports "but one reasonable conclusion as to the verdict," the court must enter judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250–51, 254 (1986).

## ARGUMENT

### I. Plaintiff's Claim Is Preempted By Federal Law.

BNSF is entitled to JMOL because Plaintiff's specific BIPA claim is preempted by at least three different federal laws, so there is insufficient evidence for a jury to find in Plaintiff's favor.[1]

---

[1] BNSF understands that the Court rejected BNSF's preemption arguments in denying BNSF's motion for summary judgment (*see* ECF No. 142), but BNSF re-asserts these defenses here in the event the Court is inclined to reconsider its prior ruling and, at a minimum, to ensure that its preemption defenses are properly preserved for any appeal. *See, e.g., Ward v. Soo Line R.R. Co.*, 901 F.3d 868, 882 n.3 (7th Cir. 2018) (noting that because the denial of a motion for summary judgment is "not final and definitive," "a defendant who seeks to pursue a defense rejected in such a denial must renew it at later stages, such as through a Rule 50 motion at trial."). BNSF also

*First,* Plaintiff's claim is preempted by the Federal Aviation Administration Authorization Act ("FAAAA"), which prohibits a state from enforcing a law "related to a price, route, or service of any motor carrier . . . with respect to transportation of property." 29 U.S.C. § 14501(c)(1). In an analogous case in this district, Chief Judge Pallmeyer recently held that a federal law with the exact same preemptive scope as the FAAAA preempted a BIPA claim. *See Kislov v. Am. Airlines, Inc.*, No. 17 C 9080, 2022 WL 846840, at *2, 6 (N.D. Ill. Mar. 22, 2022); *see also Rowe v. N.H. Motor Transp. Ass'n*, 552 U.S. 364, 370–71 (2008) (recognizing that the FAAAA and the Airline Deregulation Act ("ADA") have the same preemption language). Chief Judge Pallmeyer held that the "application of [BIPA] would have 'a significant effect upon [rates, routes, or services],'" and "[a]bsent a finding of preemption, [carriers] could potentially be subject to a 'patchwork' of varying state privacy laws, a result 'inconsistent with Congress' major legislative effort to leave such decisions, where federally unregulated, to the competitive marketplace.'" *Id.* at *2, 6. The same is true here. The FAAAA preempts Plaintiff's claim because applying BIPA to BNSF would punish BNSF for protecting its facilities' security using biometric information (and under a federally authorized program at that).[2] And it would subject BNSF to the conflicting and varied privacy regimes of all fifty states, in contravention of Congress's intent in enacting the FAAAA.

*Second*, Plaintiff's BIPA claim is preempted by the Federal Railroad Safety Act ("FRSA"). FRSA's broad preemption clause provides that states can enforce laws "related to railroad safety or security" only where the Secretaries of Transportation or Homeland Security have not "prescribe[d] a regulation or issue[d] an order covering the subject matter of the State

---

intends to submit an offer of proof detailing the evidence it would have introduced to support its preemption defenses if the Court had not excluded evidence regarding preemption before trial.

[2] *See infra* at 4 (discussing the Customs-Trade Partnership Against Terrorism ("C-TPAT") program in the context of FRSA).

requirement." 49 U.S.C. § 20106(a); *see also Burlington N. & Santa Fe Ry. Co. v. Doyle*, 186 F.3d 790, 796 (7th Cir. 1999) ("[D]etermining the safety concerns that a state or federal requirement is aimed at will necessarily involve some level of generalization that requires backing away somewhat from the specific provisions at issue."). Federal regulations require railroads like BNSF that ship hazardous materials to implement physical security measures to restrict access to their facilities. *See* 49 C.F.R. § 1580.205(i).

FRSA preempts Plaintiff's specific BIPA claim because that claim would impose Illinois-specific security protocols on BNSF, even though BNSF is able to select from a broader array of security protocols under federal law. The Supreme Court has held that a state regulation imposing a specific requirement is preempted where federal regulations allow for a range of different choices. *See Geier v. Am. Honda Motor Co., Inc.*, 529 U.S. 861, 881 (2000) (holding that a state law requiring installation of airbags was preempted in light of federal regulations allowing manufacturers discretion to implement a range of passenger restraint devices). Federal guidance permits railroads to use "biometric identification systems" to meet their security obligations under the voluntary Customs-Trade Partnership Against Terrorism ("C-TPAT"), to which BNSF is a party. 78 Fed. Reg. 15889 (Mar. 13, 2013). Unlike BIPA, C-TPAT makes no mention of notice and consent requirements. *See id.* Plaintiff's BIPA claim would therefore create state-to-state inconsistency in allowable security measures and impose a singular set of requirements for using biometric information, even though the C-TPAT allows BNSF to implement a biometric identification system without notice and consent to meet its security measures requirement.

*Third*, Plaintiff's BIPA claim is preempted by the Interstate Commerce Commission Termination Act ("ICCTA"). ICCTA preempts "those state laws that may reasonably be said to have the effect of 'managing' or 'governing' rail transportation." *PCS Phosphate Co. v. Norfolk*

*S. Corp.*, 559 F.3d 212, 218 (4th Cir. 2009) (quoting *Fla. E. Coast Ry. Co. v. City of W. Palm Beach*, 266 F.3d 1324, 1331 (11th Cir. 2001)). ICCTA contains a similarly "broad and sweeping" preemptive effect as FRSA. *Union Pac. R.R. Co. v. Chi. Transit Auth.*, 647 F.3d 675, 678 (7th Cir. 2011). ICCTA preempts Plaintiff's BIPA claim because it makes federal law paramount and exclusive at "railroad property," which is where the biometric information at issue in this case was collected. Because Plaintiff's BIPA claim prescribes a strict Illinois-only security protocol at BNSF's facilities, it is preempted by ICCTA.

**II.     Plaintiff's Claim Is Time Barred.**

Based on the evidence Plaintiff presented at trial, his claim is barred by the statute of limitations and no reasonable jury could find in his favor as a result. A claim accrues, and the limitations period begins to run, when "facts exist that authorize one party to maintain an action against another." *Feltmeier v. Feltmeier*, 798 N.E.2d 75, 85 (Ill. 2003). The Seventh Circuit has compared a BIPA claim to an invasion of privacy, *Cothron v. White Castle Sys., Inc.*, 20 F.4th 1156, 1161 (7th Cir. 2021), which in Illinois accrues at the time the injured party's interest in privacy is allegedly invaded. *See Blair v. Nev. Landing P'ship*, 859 N.E.2d 1188, 1193 (Ill. App. Ct. 2006) (privacy claim accrued when employer first displayed employee's image). This is true even if there are subsequent consequences of the initial invasion—or even republication of material that offends a privacy interest. *See id.* at 1194 (claim accrued with first display, despite nine years of republication). A claim under BIPA Section 15(b) thus accrues only the first time a private entity obtains a person's biometric identifier, and not upon each subsequent scan of that biometric identifier. *See Cothron*, 20 F.4th at 1166 (describing arguments in favor of both positions and certifying this issue to Illinois Supreme Court).

Plaintiff testified in his case-in-chief that he first registered his fingerprint at one of BNSF's Illinois facilities sometime in the 2012 or 2013 timeframe. *See* Oct. 7, 2022 Rough Tr. 133:9–17,

141:16–143:10. Yet Plaintiff did not initiate this action until April 4, 2019, well after the one- or five-year statute of limitations applicable to BIPA Section 15(b) claims.[3] *See* Dkt. 1, No. 2019-CH-04393 (Ill. Cir. Ct. Cook Cty. Apr. 4, 2019). Plaintiff's statute of limitations has run, and judgment should be entered against him and the members of the class he represents.[4] *See Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 399 (6th Cir. 1998) ("[A]s goes the claim of the named plaintiff, so go the claims of the class."); *Santiago v. City of Chicago*, 19 F.4th 1010, 1018 (7th Cir. 2021) ("To be an adequate representative, a named plaintiff must be a member of the putative class and have the same interest and injury as other members." (internal quotations omitted)).

### III. Plaintiff Did Not Introduce Sufficient Evidence To Find BNSF Liable Under BIPA.

Section 15(b) of BIPA provides that "[n]o private entity may collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric[s]" without first providing written notice and obtaining informed written consent. 740 ILCS 14/15(b). The Court should grant JMOL against Plaintiff because there is insufficient evidence for a reasonable jury to find that BNSF violated Section 15(b) or that it is vicariously liable for any violations by Remprex.

#### A. There Is Insufficient Evidence To Find That BNSF Directly Violated BIPA.

Plaintiff's first theory is that BNSF violated BIPA because BNSF itself collected, captured, received through trade, or otherwise obtained his biometric identifiers or information. But a

---

[3] The most recent decision on this question is *Tims v. Black Horse Carriers, Inc.*, 184 N.E.3d 466 (Ill. App. Ct. 2021). In that case—which is currently pending before the Illinois Supreme Court—the court held that a five-year statute of limitations applied to Section 15(a), (b), and (e) claims and a one-year statute of limitations applied to Section 15(c) and (d) claims. *Id.* at 473.

[4] Moreover, Plaintiff failed to provide sufficient proof to support Rule 23's requirements for class certification because (1) the class is overbroad, as it includes individuals with time-barred claims and hence includes large numbers of uninjured class members, and (2) Plaintiff (whose own claim is time barred) is not an adequate class representative. *See generally Kohen v. Pac. Inv. Mgmt. Co. LLC*, 571 F.3d 672, 677 (7th Cir. 2009) ("[A] class should not be certified if it is apparent that it contains a great many persons who have suffered no injury at the hands of the defendant.").

reasonable jury could not conclude from the evidence that BNSF did any of these things. For example, Remprex Chief Solutions Officer Timothy Ash conceded that throughout the relevant period, Remprex employees—*not* BNSF employees—were the ones who registered drivers and scanned their fingers. Oct. 6, 2022 Tr. 349:16–350:13. BNSF General Director of Hub Operations Chuck Burriss testified that BNSF did not—and *could not*—access drivers' biometric data at any point during this time. *See, e.g., id.* at 592:9–12, 594:14–17. BNSF had to ask Remprex how biometric data was being stored, what security measures were in place, and whether fingerprints were even being stored on the database at all. *Id.* at 394:17–23, 398:7–9. And, as Mr. Ash testified, Remprex was responsible for securely storing the data, *id.* at 405:23–24, and it could only be accessed using a secure Remprex login—the "heaviest" login Mr. Ash "knows of as far as security," *id.* at 371:20–372:11. The only reasonable conclusion from the evidence is that Remprex operated the system and collected, captured, and maintained the data, and BNSF never accessed that data. Because there is insufficient evidence from which a reasonable jury could conclude that BNSF violated BIPA directly, the Court should grant JMOL in BNSF's favor on Plaintiff's "direct liability" theory.

**B.     There Is Insufficient Evidence To Find BNSF Vicariously Liable For Any BIPA Violations By Remprex.**

The Court should also grant JMOL on Plaintiff's "indirect" theory that BNSF is liable under BIPA because Remprex was acting as BNSF's agent.

At the threshold, as BNSF has previously argued, BIPA does not incorporate common-law agency liability principles. Instead, BIPA's text imposes liability only on the *private entity*—which BIPA does not define to include agents or contractors, *see* 740 ILCS 14/10—that collects, captures, receives through trade, or otherwise obtains biometrics. *See* ECF Nos. 173 at 1–5; 177-6 at 8–10, 15, 17; 194 at 1–7. BIPA thus contrasts with other Illinois statutes that expressly

incorporate common-law principles. *See* ECF Nos. 173 at 4; 177-6 at 9, 15, 17; 194 at 2–5. Incorporating common-law agency principles also would disrupt the balance the Illinois legislature struck in enacting BIPA to facilitate the safe and secure processing of biometrics in contexts such as financial transactions and security screenings. Holding a company vicariously liable for a third-party entity's violation of BIPA would vastly increase the cost and risk of employing expert third-party independent contractors to assist with the safe and secure use of biometric information. *See* 740 ILCS 14/5; *see also* Illinois House Transcript, 2008 Reg. Sess. No. 276.

Moreover, even if BIPA did impose vicarious liability on one entity for the acts or omissions of another entity, there is insufficient evidence for a jury to conclude that such liability was proven here under any potentially applicable vicarious liability standard. The Court should apply a standard that would hold BNSF vicariously liable for Remprex's actions only if BNSF authorized the doing and the manner of Remprex's violations, Remprex was unfit and BNSF was reckless in employing Remprex, or BNSF ratified or approved Remprex's unlawful actions. *See* ECF No. 177-6 at 10–11; ECF No. 207 at 14–16. There is not sufficient evidence for a reasonable jury to conclude that this standard was satisfied. There is no evidence that BNSF authorized the doing and the manner of Remprex's violation. The evidence shows that BNSF allowed Remprex to decide how to complete its work and that Remprex was contractually obligated the follow the law. *See, e.g.*, Oct. 6, 2022 Tr. 333:16–334:12, 339:3–6, 344:8–10, 346:13–22. There is no evidence that Remprex was unfit and BNSF was reckless in employing Remprex. The evidence shows that Remprex held itself out as a leading expert in the use of biometric security and BNSF acted reasonably in retaining it. *See, e.g.*, Oct. 4, 2022 Tr. 276:13–21, 281:20–25, 298:13–23. And there is no evidence from which a reasonable jury could conclude that BNSF ratified or approved Remprex's unlawful actions with "full knowledge of the facts." *Stathis v. Geldermann,*

*Inc.*, 692 N.E.2d 798, 808 (Ill. Ct. App. 1998). Instead, Remprex was contractually obligated to comply with all "laws, rules, regulations, and ordinances—state, federal, or municipal—applicable to operations and services to be performed by contractor." Oct. 6, 2022 Tr. 333:16–334:12; *see also id.* at 339:3–6; 346:13–22; Oct. 7, 2022 Rough Tr. 205:14–17. And, as Mr. Ash testified, it was "fair that BNSF would expect that [Remprex] would abide by that provision because it's in black and white, and both parties signed [the contract]." *Id.* at 346:23–347:1.

BNSF objects to the vicarious liability standard that the Court adopted in its preliminary jury instructions. *See* ECF No. 207 at 14–22. But even under that standard, there is insufficient evidence for a reasonable jury to find that Remprex was BNSF's agent, not an independent contractor, and that Remprex was acting within the scope of its authority when it collected Plaintiff's biometric information. The evidence shows that BNSF did not have the right to control Remprex's actions or the method and manner of Remprex's work. For example, Mr. Ash testified that BNSF had no say in "which employees Remprex used to operate and maintain the AGS," "how many employees" Remprex should hire, or "what Remprex employees could be paid." Oct. 6, 2022 Tr. 332:4–21, 333:8–12. Mr. Ash also testified that Remprex employees are not BNSF employees, that Remprex employees receive their paycheck from Remprex not BNSF, and that Remprex is a technology company whereas BNSF is a railroad company. Oct. 4, 2022 Tr. 277:10–279:2, 297:4–298:12. He also testified that "Remprex gets to use its own manner and methods in performing the service[s]" under the contract with BNSF. Oct. 6, 2022 Tr. 344:8–10. In addition, a reasonable jury could not conclude from the evidence that Remprex was acting within the scope of its authority. The evidence shows that BNSF expressly *required* Remprex to follow all applicable laws and thus excluded any unlawful collection or use of biometrics from the scope of its contractual relationship with Remprex. *See, e.g., id.* at 333:16–334:12; 339:3–6; 346:13–22.

For these reasons, the Court should enter JMOL against Plaintiff on his claim that BNSF violated BIPA.

## IV. There Is Insufficient Evidence To Award Plaintiff Any Damages.

### A. BNSF Did Not Act Negligently, Recklessly, Or Intentionally.

Even if Plaintiff could prove that BNSF violated BIPA, there is insufficient evidence for a reasonable jury to conclude that BNSF acted negligently, recklessly, or intentionally. To obtain any damages under Section 20 of BIPA, Plaintiff must prove that BNSF acted either "negligently" or "intentionally or recklessly." 740 ILCS 14/20. Plaintiff has not introduced sufficient evidence to prove any of these mental states.

A reasonable jury could not conclude from the evidence that BNSF acted negligently— i.e., that it failed to do something that a reasonably careful person or entity would do under circumstances similar to those shown by the evidence. *See* Illinois Pattern Jury Instruction 10.01. To the contrary, BNSF engaged Remprex to operate the Auto-Gate Systems at BNSF facilities because Remprex held itself out as an expert and an "industry leader" in this field. *See, e.g.*, Oct. 4, 2022 Tr. 276:13–21, 298:13–23. Mr. Ash also testified that no other Remprex customers ever asked Remprex to obtain consent from drivers prior to collecting biometric data. *Id.* at 249:21–24. Nor is there sufficient evidence for a reasonable jury to find that BNSF acted recklessly (i.e., with conscious disregard for or utter indifference to the plaintiffs' rights) or intentionally (i.e., with intent to violate the law). *See* Seventh Circuit Civil Pattern Jury Instruction 3.13 (Aug. 2017, ed.); *Rogers v. CSX Intermodal Terminals, Inc.*, 409 F. Supp. 3d 612 (N.D. Ill. 2019). The evidence shows that BNSF did not even know about BIPA until this lawsuit was filed in 2019. *See, e.g.*, Oct. 6, 2022 Tr. 334:20–335:11. And after the lawsuit was filed, BNSF promptly engaged with Remprex, discontinued the use of biometrics, and sued Remprex. *Id.* at 599:6–17, 600:21–602:15.

Because Plaintiff has not introduced sufficient evidence to find that BNSF acted

negligently, recklessly, or intentionally, the Court should grant JMOL against Plaintiff and enter judgment in BNSF's favor.

### B. There Is Insufficient Evidence To Support Plaintiff's Claimed Number Of Violations.

Plaintiff also did not introduce sufficient evidence to show when and how many times Plaintiff and the class members each scanned their fingers to enter BNSF's intermodal facilities, or when Plaintiff and the class members registered and scanned their fingers for the first time. Instead, Plaintiff introduced expert testimony only on the unique number of class members reflected in the Remprex databases. *See* Oct. 7, 2022 Rough Tr. 96:6–12. And, in a ruling before trial, the Court expressly excluded expert evidence through which Plaintiff previously sought to prove the alleged total number of finger scans. ECF No. 192. Accordingly, there is insufficient evidence for a reasonable jury to find any exact number of violations, and JMOL should be granted against Plaintiff and the class members for that reason. At a minimum, the Court should rule that as a matter of law, the maximum number of times BNSF could have potentially violated BIPA in this case is one—for Plaintiff's own biometric data—or, at the very most, 44,139, which is the number of class members Plaintiff's expert estimated.[5] *See* Oct. 7, 2022 Rough Tr. 96:6–12.

### C. A Damages Award Under BIPA Is Discretionary, And There Is Insufficient Evidence For A Reasonable Jury To Award Any Damages.

Even if Plaintiff could prove that BNSF acted negligently, recklessly, or intentionally, there is insufficient evidence from which a reasonable jury could conclude that Plaintiff and the class members are entitled to damages. BIPA provides that a "prevailing party *may* recover . . . against

---

[5] BNSF further continues to preserve its argument that awarding the full scope of damages that Plaintiff seeks (or any comparable amount) would violate the U.S. Constitution. *See, e.g.*, ECF No. 177-7 at 5–6; *see, e.g.*, *Golan v. FreeEats.com, Inc.*, 930 F.3d 950, 962 (8th Cir. 2019) (holding that statutory damages of $1.6 billion awarded under the Telephone Consumer Protection Act violate the Due Process Clause).

a private entity that negligently violates a provision of this Act, liquidated damages of $1,000 or actual damages, whichever is greater." 740 ILCS 14/20 (emphasis added); *see id.* (capping damages for an intentional or reckless violation at $5,000). As BNSF has argued, this means that whether to award damages and the amount of a damages award should be left to the jury's discretion. *See* ECF No. 177-7 at 3–6 (arguing that the amount of any damages award is discretionary and that the Seventh Amendment to the U.S. Constitution guarantees the right to a jury determination of damages); ECF No. 180 at 1–3 (same); *see also, e.g., DirecTV, Inc. v. Barczewski*, 604 F.3d 1004, 1009 (7th Cir. 2010) (holding that the award of damages under a similarly worded statute is discretionary, not mandatory). But there is not sufficient evidence upon which to conclude that such an award is justified. The evidence shows that Plaintiff and the class member witnesses did not suffer any actual harm. *See, e.g.*, Oct. 6, 2022 Tr. 644:17–21; Oct. 7, 2022 Rough Tr. 53:12–18, 154:18–25. And it shows that a damages award is not necessary to deter future violations, given that BNSF acted reasonably and biometrics are no longer being used at BNSF's intermodal facilities. *See, e.g.*, Oct. 6, 2022 Tr. 599:6–17, 600:21–602:15.

## CONCLUSION

For the foregoing reasons, the Court should enter judgment as a matter of law against Plaintiff and in favor of BNSF.

Dated: October 7, 2022  Respectfully submitted,

**BNSF RAILWAY COMPANY**

By: */s/ Elizabeth Herrington*
　　　By Its Attorneys

Elizabeth Herrington
Tinos Diamantatos
Gregory Fouts
Alborz Hassani
Benjamin Kabe
MORGAN, LEWIS & BOCKIUS LLP
110 North Wacker Drive, Suite 2800
Chicago, IL  60606-1511
Telephone:   +1.312.324.1000
Facsimile:    +1.312.324.1001
beth.herrington@morganlewis.com
tinos.diamantatos@morganlewis.com
gregory.fouts@morganlewis.com
al.hassani@morganlewis.com
benjamin.kabe@morganlewis.com

Andrew S. Tulumello
Claire L. Chapla (*admitted pro hac vice*)
Robert Niles-Weed (*admitted pro hac vice*)
WEIL, GOTSHAL & MANGES LLP
2001 M Street, NW, Suite 600
Washington, DC 20036
Telephone: +1.202.682.7000
drew.tulumello@weil.com
claire.chapla@weil.com
robert.niles-weed@weil.com

*Counsel for Defendant BNSF Railway Company*

## **CERTIFICATE OF SERVICE**

I, Elizabeth Herrington, certify that on October 7, 2022, I caused a copy of the foregoing to be served upon all counsel of record via the Court's CM/ECF system.

*/s/ Elizabeth Herrington*
Elizabeth Herrington