IN THE UNITED STATES DISTRICT COURT
FOR THE FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RICHARD ROGERS, individually and on behalf of similarly situated individuals,<br><br>*Plaintiff*,<br><br>v.<br><br>BNSF RAILWAY COMPANY,<br><br>*Defendant*. | No. 1:19-cv-03083<br><br>Honorable Matthew F. Kennelly |

**DEFENDANT BNSF RAILWAY COMPANY'S
OBJECTIONS TO FINAL JURY INSTRUCTIONS**

Defendant BNSF Railway Company hereby submits the following objections to the Court's proposed final jury instructions. BNSF incorporates by reference all of the objections it filed regarding the Court's preliminary jury instructions, which apply equally to the Court's proposed final jury instructions. *See* ECF No. 207 & 207-1. This submission thus addresses BNSF's additional objections to the Court's proposed final jury instructions that are not addressed in BNSF's prior filing. BNSF understands that the Court will further address the final jury instructions on the record with the parties on Tuesday, October 11, 2022, and submits these written objections to facilitate that discussion.

## THE PARTIES AND THE CLAIMS

The named plaintiff in this lawsuit is Richard Rogers. The defendant is BNSF Railway Company.

The lawsuit is a "class action." This means that Mr. Rogers is suing on behalf of himself and other similarly-situated truck drivers who entered railyards belonging to BNSF. I will refer to all of these persons collectively as "the plaintiffs."

The lawsuit is filed under a law called the Illinois Biometric Information Privacy Act, which I will refer to as the BIPA. The provision of the BIPA that is relevant in this case states that no private entity may collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifier or biometric information, unless it first:

- informs the person in writing, before collecting or storing their biometric identifier(s) or information, that the biometric information is being collected or stored;

- informs the person in writing of the specific purpose for which their biometric identifier(s) or information will be collected, stored, or used, and the length of time for which the biometric identifier(s) or information will be collected, stored, or used; and

- receives an informed written consent from the person authorizing it to collect, store, and use their biometric identifier(s) or biometric information.

Mr. Rogers and the class contend that BNSF violated one or more of these three requirements. BNSF contends that it did not violate any of these requirements.

**DEFENDANT'S OBJECTION:**

BNSF objects to this instruction to the extent it does not instruct the jury on the class period during which the jury is being asked to decide whether BNSF violated BIPA; whether any violations by BNSF were negligent, reckless, and intentional; and, if so, the number of negligent,

reckless, or intentional violations, as explained more fully below in BNSF's objections to the Court's proposed final jury instruction on "Negligent/Reckless/Intentional Violation of the BIPA." *See infra* at 6–8. BNSF proposed the following additional language (in red) for the final instruction on "The Parties and the Claims," which the Court did not adopt in its proposed final instruction:

> The lawsuit is a "class action." This means that Mr. Rogers is suing on behalf of himself and a class of other truck drivers who claim their fingerprints were scanned using an Auto Gate System at BNSF's intermodal railyards in Illinois during the period April 4, 2014 through January 25, 2020.

BNSF maintains that the jury must be instructed on the dates of the class period, particularly given the serious risks of unfair prejudice and jury confusion arising from the admission of evidence regarding BNSF's post-litigation conduct, over BNSF's objections. *See infra* at 6–8.

## WHAT THE PLAINTIFF MUST PROVE

To prevail on their claims against BNSF, the plaintiffs must prove the following three propositions by a preponderance of the evidence:

1. BNSF collected, captured, purchased, received through trade, or otherwise obtained the plaintiffs' biometric identifier(s) or biometric information; and

2. BNSF failed to do one or more of the following:

(a) inform the plaintiffs in writing, before collecting or storing their biometric identifier(s) or information, that the biometric information was being collected or stored;

(b) inform the plaintiffs in writing of the specific purpose and length of time for which their biometric identifier(s) or information was being collected, stored, or used; or

(c) receive a written informed consent signed by the plaintiffs.

3. BNSF's failure to take one or more of the actions in paragraph 2 was negligent, reckless, or intentional.

As used in this instruction:

- the term "biometric identifier" includes a fingerprint; and

- the term "biometric information" includes any information, regardless of how it is captured, converted, stored, or shared, based on an individual's fingerprint used to identify an individual.

**DEFENDANT'S OBJECTION:**

BNSF incorporates by reference all of its objections to the Court's preliminary jury instructions on these issues, which apply equally to the Court's proposed final jury instruction. *See* ECF No. 207 at 8–13. BNSF further objects to the extent this instruction does not inform the jury of the damages amounts available for negligent and reckless or intentional violations of BIPA,

-5-

respectively, which are relevant to the jury's consideration of whether any BIPA violations by BNSF were negligent, reckless, or intentional. BNSF proposed the following language on this issue (in red), which the Court has not included in its proposed final instructions:

> In addition to proving that BNSF violated BIPA, in order to recover damages, the plaintiffs must prove that BNSF's failure to take one or more of the actions in paragraph 2 was negligent, reckless, or intentional. If plaintiffs prove that BNSF violated BIPA negligently, the Court may award $1,000 for each negligent violation. If plaintiffs prove that BNSF violated BIPA recklessly or intentionally, the Court may award $5,000 for each reckless or intentional violation.

The damages amounts reflect the Illinois Legislature's view of the severity of "negligent," "reckless," or "intentional" violations of BIPA, and thus are highly relevant to the jury's assessment of what constitutes negligent, reckless, or intentional conduct in this context.

## **NEGLIGENT/RECKLESS/INTENTIONAL VIOLATION OF THE BIPA**

If you find that BNSF violated the BIPA in one or more ways, you must then determine if the plaintiffs have proven by a preponderance of the evidence that BNSF's violation of BIPA was negligent, reckless, or intentional and, if so, how many negligent and reckless or intentional violations of the BIPA the plaintiffs have proven. You will see a question about this on the verdict form.

You will not be called upon to award damages to the plaintiffs if you find in their favor. I will determine the damage award, if any, based on your findings as set out on the verdict form.

BNSF acted "negligently" if it failed to do something that a reasonably careful person or entity would do, or did something that a reasonably careful person or entity would not do, under circumstances similar to those shown by the evidence. The law does say how a reasonable careful person or entity would act under the circumstances. That is for you to decide.

BNSF acted "recklessly" if it consciously disregarded or was utterly indifferent to the plaintiffs' rights.

BNSF acted "intentionally" if it intended to violate the law.

## **DEFENDANT'S OBJECTION:**

BNSF notes that the word "not" appears to be inadvertently missing from the following sentence and thus requests that it be added to the instruction:

The law does not say how a reasonable careful person or entity would act under the circumstances.

BNSF also objects to this instruction to the extent it does not instruct the jury that the timing of BNSF's conduct is relevant to the jury's determination of whether any BIPA violations by BNSF were negligent, reckless, and intentional; and, if so, the number of negligent, reckless, or

intentional violations. It is essential for the jury to understand the relevant time frame, particularly in light of the Court's admission of evidence of BNSF's post-litigation conduct, which the Court concluded "bears on intent, and awareness of the law." Oct. 6, 2022 Trial Tr. 486:15. BNSF objected to the admission of this evidence, in part on the ground that this evidence would be confusing to the jury and unfairly prejudicial under Federal Rule of Evidence 403. BNSF explained that Plaintiffs' counsel are asking the jury to infer intentional or reckless content for the *entire* class period—2014 through 2020—based on BNSF's conduct *after* the lawsuit was filed on April 4, 2019. *See id.* at 314:2–328:6, 484:21–491:17; *id.* at 489:15–21 ("The problem is what plaintiff is trying to do here is tell the members of the jury in April '19, the lawsuit hits, they're on notice, they do nothing, so find them reckless. So if the jury then says, "Okay, the class period is April 2014 through 2019, we think BNSF is reckless, there were X number of occurrences . . . .").

The Court rejected this argument, reasoning that "[a]t what part of the class period that covers, that's a jury instruction issue . . . It's a reason to define it, define the issues, and write the jury instructions in a way that the jury can sort it out." Oct. 6, 2022 Trial Tr. 491:1–2, 11–13. To that end, BNSF proposed the following additional language (in red) for the final jury instruction on negligent, reckless, or intentional conduct:

> In determining whether BNSF acted negligently, recklessly, or intentionally, you should focus on the circumstances and information available to BNSF at the time plaintiffs' biometric information or identifiers were collected. For example, you should not consider knowledge or information that BNSF may have had in 2020 when considering how BNSF acted in 2015.

The Court did not include this language (or any similar concept) in its proposed final jury instructions. It is essential for the jury to be instructed on this issue, particularly in light of the

significant risks of unfair prejudice and jury confusion arising from the admission of evidence regarding BNSF's post-litigation conduct to prove mental state, over BNSF's objections.

## CORPORATION ACTS THROUGH ITS AGENTS

BNSF is a corporation and, as such, can act only through its officers, employees, and agents. An action or omission of a BNSF officer or employee within the scope of their employment is the action or omission of BNSF. An action or omission of an agent of BNSF within the scope of its agency is the action or omission of BNSF.

## DEFENDANT'S OBJECTION:

BNSF incorporates by reference all of its objections to the Court's preliminary jury instruction on this issue, which apply equally to the Court's proposed final jury instruction. *See* ECF No. 207 at 14–17.

## AGENT OR INDEPENDENT CONTRACTOR

The plaintiffs contend, among other things, that BNSF is responsible for the actions and/or inaction of a company called Remprex with regard to collecting and handling biometric information because Remprex was acting as an agent of BNSF on these tasks. BNSF denies that Remprex was acting as an agent and contends that Remprex was an independent contractor.

An agent is a company that, by oral or written agreement with another company called the principal, manages some affair or does some service for the principal, with or without compensation. If BNSF had the right to control the actions of Remprex with regard to collecting, capturing, purchasing, receiving through trade, or otherwise obtaining biometric identifiers or biometric information, then you may find that a principal-agent relationship existed, even though the right to control may not have been exercised.

An independent contractor is a company that undertakes a specific job, where the company that hired it does not have the right to direct and control the method and manner of doing the work.

The existence of a contract identifying a company as an independent contractor is not conclusive on the question of whether the company was an independent contractor for the particular tasks or tasks that are at issue. You will have to consider all of the evidence bearing on the issue, including the contract.

The principal is liable to others for the negligent, reckless, or intentional conduct of its agent in the transaction of the business of the principal, if the agent itself is liable. However, a company that engages an independent contractor is not liable to others for the negligent, reckless, or intentional conduct of the independent contractor.

**DEFENDANT'S OBJECTION:**

BNSF incorporates by reference all of its objections to the Court's preliminary jury instruction on this issue, which apply equally to the Court's proposed final jury instruction. *See* ECF No. 207 at 18–20. BNSF further objects to the extent the Court's proposed final jury instruction does not adopt the modified version of this instruction that BNSF proposed, which BNSF maintains accurately reflects Illinois law for the reasons stated in BNSF's prior objections (and subject to and without waiving BNSF's objection that the jury should not be instructed on agency at all):

**Agent or Independent Contractor**

The plaintiffs contend, among other things, that even if BNSF did not violate BIPA by itself collecting, capturing, receiving through trade, or otherwise obtaining their biometric identifiers or information, BNSF should be held liable for the actions of third-party entities called Remprex and Nascent because Remprex and/or Nascent were acting as agents of BNSF. BNSF denies that Remprex and/or Nascent were acting as BNSF's agent and contends that they were independent contractors.

BNSF may be held liable for the negligence, recklessness, or intentional conduct of an agent, but it cannot be held liable for the actions of an independent contractor. Plaintiffs have the burden of proving an agency relationship.

An agent is a company that, by oral or written agreement with another company called the principal, manages some affair or does some service for the principal, with or without compensation. In Illinois, the test to determine whether an agency relationship exists is whether BNSF had the right to control the manner and method in which Remprex and/or Nascent carried out their work. An independent contractor is company that undertakes a specific job, where the

company that hired it does not have the right to direct and control the method and manner of doing the work.

In determining whether Remprex and/or Nascent was the agent of BNSF or was an independent contractor, you may also consider the method of payment; BNSF's right to discharge Remprex and/or Nascent; the skill required in the work to be done; who provides tools, materials or equipment; whether Remprex's and/or Nascent's occupation is related to that of BNSF; whether BNSF deducted for withholding tax; and other relevant factors.

If you find that Remprex and/or Nascent were independent contractors, you must find that BNSF is not liable for their conduct.

If you find that Remprex and/or Nascent were BNSF's agents, you may hold BNSF liable for their conduct only if they were acting within the scope of their authority when they allegedly violated BIPA and you find that one of the following circumstances occurred:

(a) BNSF authorized the doing and the manner of Remprex's and/or Nascent's violations of BIPA;

(b) Remprex and/or Nascent were unfit and BNSF was reckless in contracting with them; or

(c) BNSF ratified or approved Remprex's an/ord Nascent's violations of BIPA with full knowledge of the material facts.

If none of these conditions is satisfied, BNSF cannot be liable under BIPA for the actions of Remprex and/or Nascent.

## **AGENT – SCOPE OF AUTHORITY**

One question you may have to decide is whether Remprex was acting within the scope of its authority. An agent acts within the scope of its authority if it is engaged in an activity that has been assigned to it by the principal, or if it does something that may reasonably be said to have been contemplated as a part of that activity that benefits the principal. The principal need not have expressly authorized the agent's action or failure to act.

## **DEFENDANT'S OBJECTION:**

BNSF incorporates by reference all of its objections to the Court's preliminary jury instruction on this issue, which apply equally to the Court's proposed final jury instruction. *See* ECF No. 207 at 21–22.

## **DAMAGES**

*The Court's preliminary jury instructions do not include any instructions on damages.*

**DEFENDANT'S OBJECTION:**

  BNSF incorporates by reference all of its objections to the Court's lack of instruction son damages in its preliminary jury instruction, which apply equally to the Court's proposed final jury instructions that likewise do not address damages. *See* ECF No. 207 at 23–24.

Dated: October 10, 2022

Respectfully submitted,
**BNSF RAILWAY COMPANY**

By: */s/ Elizabeth Herrington*
    By Its Attorneys

Elizabeth Herrington
Tinos Diamantatos
Gregory Fouts
Alborz Hassani
Benjamin Kabe
MORGAN, LEWIS & BOCKIUS LLP
110 North Wacker Drive, Suite 2800
Chicago, IL 60606-1511
Telephone: +1.312.324.1000
Facsimile: +1.312.324.1001
beth.herrington@morganlewis.com
tinos.diamantatos@morganlewis.com
gregory.fouts@morganlewis.com
al.hassani@morganlewis.com
benjamin.kabe@morganlewis.com

Andrew S. Tulumello
Claire L. Chapla (*admitted pro hac vice*)
Robert Niles-Weed (*admitted pro hac vice*)
WEIL, GOTSHAL & MANGES LLP
2001 M Street, NW, Suite 600
Washington, DC 20036
Telephone: +1.202.682.7000
drew.tulumello@weil.com
claire.chapla@weil.com
robert.niles-weed@weil.com

*Counsel for Defendant BNSF Railway Company*

## **CERTIFICATE OF SERVICE**

I, Elizabeth Herrington, certify that on October 10, 2022, I caused a copy of the foregoing to be served upon all counsel of record via the Court's CM/ECF system.

*/s/ Elizabeth Herrington*
Elizabeth Herrington
