IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RICHARD ROGERS, individually and on behalf of similarly situated individuals,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>BNSF RAILWAY COMPANY,<br><br>　　　　Defendant. | Case No. 1:19-cv-03083<br><br>Honorable Matthew F. Kennelly |

**DEFENDANT BNSF RAILWAY COMPANY'S MOTION TO PRECLUDE ARGUMENT ON THE "TOTAL NUMBER" OF FINGER SCANS**

　　Defendant BNSF Railway Company ("BNSF"), through its undersigned counsel, respectfully submits the following motion to preclude Plaintiff's counsel from presenting argument or evidence to the jury regarding the alleged total number of times Plaintiff and/or the class members scanned their fingers to enter BNSF's four intermodal facilities in Illinois through the Auto-Gate Systems at those facilities. In support of its motion, BNSF states as follows:

**INTRODUCTION**

　　Preventing "trial by ambush" is the fundamental purpose of the discovery rules that govern litigation in federal court, including the disclosure rules that both parties must abide by under Federal Rules of Civil Procedure 26 and 37. Plaintiff's effort to present some total number of finger scans to the jury—which has never been disclosed to BNSF and flouts this Court's pretrial ruling prohibiting Plaintiff's expert from providing an opinion on this issue—runs roughshod over these bedrock principles. On the eve of closing arguments, BNSF still has no idea how many "total scans" Plaintiff is asking the jury to find, or on what basis. In fact, BNSF does not even know

(and Plaintiff has offered no evidence of) how many times the *named plaintiff*, Richard Rogers, allegedly scanned his finger during the class period. None of these numbers or any purported methodology supporting them was ever disclosed to BNSF at any point during the discovery process (or at trial), and Plaintiff's effort to smuggle this evidence in through argument of counsel after the Court already precluded Plaintiff from belatedly introducing it through his expert should be rejected for this reason alone.

Moreover, Plaintiff's effort to calculate some total number of finger scans based on a cherry-picked subset of data or estimated daily averages of visitors to BNSF's intermodal facilities would not even be admissible as expert testimony under Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993)—not even close. And it would plainly violate the Rules Enabling Act by subjecting BNSF to an unlawful "Trial by Formula" and depriving BNSF of its entitlement to present its defenses to Plaintiff's and the class members' claims. The Court should preclude Plaintiff's counsel from presenting argument or evidence to the jury regarding the alleged total number of times Plaintiff and/or the class members scanned their fingers to enter BNSF's intermodal facilities in Illinois through the Auto-Gate System.

## ARGUMENT

This trial began one week ago, and BNSF still does not know the total number of times Plaintiff is asking the jury to find (or infer) that BNSF violated Section 15(b) of the Illinois Biometric Information Privacy Act, or on what basis. But as far as BNSF can gather—since neither the number nor Plaintiff's methodology has *ever* been disclosed to BNSF during this litigation—Plaintiff is attempting to argue directly or ask the jury to infer some total number of finger scans for the entire six-year class period based on isolated bits of evidence in the record about the estimated number of visits to some of BNSF's intermodal facilities on any given day. Plaintiff apparently intends to extrapolate—directly or by implication—from a small subset of data and the

purported "average" number of daily visits to derive a total number of finger scans for more than 44,000 class members at four different Illinois intermodal facilities during a six-year period. The consequences of these calculations would be staggering, given the $1,000 and $5,000 statutory damages amounts available to Plaintiff under BIPA that (under Plaintiff's theory) accrue each time Plaintiff or one of the class members scanned their fingers to enter a BNSF intermodal facility. For numerous, independent reasons, Plaintiff should not be permitted to make any kind of argument to the jury—direct, indirect, or by implication—about total number of finger scans.

First, Plaintiff's effort to prove a total number of negligent, reckless, or intentional violations of BIPA and resulting damages based on a total number of finger scans that has never been disclosed to BNSF—and a methodology that has never been disclosed to BNSF—is a blatant violation of the discovery rules. Federal Rule of Civil Procedure 26(a) requires both parties to timely disclose "a computation of each category of damages claimed" and "the documents or other evidentiary material" on which those computations are based, along with "a complete statement of all opinions" the party's expert witness "will express and the basis and reasons for them." Fed. R. Civ. P. 26(a)(1)(A)(iii), (a)(2)(B)(i) & (a)(2)(D). Rule 26 also requires parties to "timely" supplement those disclosures. Fed. R. Civ. P. 26(e). Plaintiff has never disclosed an alleged total number of finger scans or any methodology for deriving one, so BNSF finds itself in the absurd position of preparing for closing arguments while guessing at a number that could lead to *billions* of dollars in statutory damages. Under Federal Rule of Civil Procedure 37, Plaintiff should be prevented from arguing any total number of scans to the jury or asking the jury to draw any inferences about a total number based on the evidence introduced at trial.

The "primary rationale" for exclusion under Rule 37 "is to avoid an unfair 'ambush' in which a party advances new theories or evidence to which its opponent has insufficient time to

formulate a response." *Rowe Int'l Corp. v. Ecast, Inc.*, 586 F. Supp. 2d 924, 934 (N.D. Ill. 2008) (Kennelly, J.). That rationale squarely applies here. And it is precisely why this Court granted BNSF's pretrial motion to preclude Plaintiff's expert, Mr. Caruso, from offering opinions at trial on "the number of biometric captures," since he had previously disclosed an opinion only on the number of unique class members, *not* the number of finger scans. *See* ECF No. 175; ECF No. 192. Plaintiff is now attempting to end-run around the Court's pretrial ruling by asking the jury to infer from the evidence some total number of finger scans that the Court expressly ruled Plaintiff's expert could not testify about. Allowing Plaintiff to do *indirectly* what the discovery rules and this Court's pretrial ruling emphatically prevent Plaintiff from doing *directly* would make a mockery of the litigation process and subject BNSF to a potentially massive statutory damages award that BNSF has no meaningful opportunity to rebut.

Moreover, Plaintiff's total scan theory would not even be admissible if it had been properly disclosed as expert testimony. In applying Federal Rule of Evidence 702 and the *Daubert* standard, the Seventh Circuit has made clear that experts must use reliable methodologies rather than "simplistic extrapolation and childish arithmetic." *Schiller & Schmidt, Inc. v. Nordisco Corp.*, 969 F.2d 410, 415 (7th Cir. 1992). The Seventh Circuit has thus excluded as unreliable expert testimony that attempts to extrapolate from a small sample size to a much larger data set. *See, e.g.*, *Am. Honda Motor Co. v. Allen*, 600 F.3d 813, 818 (7th Cir. 2010) (excluding expert testimony attempting to extrapolate from test of a single vehicle model for one year to the entire fleet of that model produced during a 7-year period). And it has excluded expert testimony based on non-random sampling methodologies like the one Plaintiff apparently intends to rely on here. *See, e.g.*, *DeKoven v. Plaza Assocs.*, 599 F.3d 578, 581 (7th Cir. 2010) ("The sample drawn by the plaintiffs' expert is what is called a 'convenience' sample—convenient to the sampler—as distinct from a

'representative' sample—representative of the population sampled."); *Tagatz v. Marquette Univ.*, 861 F.2d 1040, 1045 (7th Cir. 1988) ("It is an unacceptable statistical procedure to turn a large sample into a small one by arbitrarily excluding observations.").

Plaintiff is attempting to rely on precisely this type of unscientific, simplistic methodology by asking the jury to calculate a total number of finger scans based on a small, cherry-picked subset of Auto-Gate System data for three weeks in June 2014 at two BNSF intermodal facilities and testimony about estimated daily "average" numbers of visitors. Indeed, one of the class members, Mr. Galbreath, even testified that the number of times the gate opens at a facility—which is what the data and averages Plaintiff attempts to extrapolate from reflect—is not a reliable measure of the number of finger scans. *See* Oct. 7, 2022 Trial Tr. 685:17–686:19. Plaintiff's methodology would not even come close to passing muster if offered through a properly disclosed expert. *See, e.g.*, *People Who Care v. Rockford Bd. of Educ.*, 111 F.3d 528, 537 (7th Cir. 1997) (A "statistical study that fails to correct for salient explanatory variables, or even to make the most elementary comparisons, has no value as causal explanation and is therefore inadmissible in a federal court."); *Sheehan v. Daily Racing Form, Inc.*, 104 F.3d 940, 942 (7th Cir. 1997) ("Before allowing testimony cloaked in the authority of statistical analysis, the district court has an obligation to ensure that the expert proceeded with "the degree of care that a statistician would use in his scientific work."). Plaintiff is not entitled to circumvent *Daubert* and this Court's gatekeeping role by presenting his theory through argument of counsel instead of through an expert witness.

Finally, allowing Plaintiff to argue to the jury some estimated or extrapolated a "total number" of scans that was never disclosed to BNSF or derived by any reliable, admissible methodology would run afoul of the Supreme Court's decision in *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011), which held that the class action device cannot be used to deprive a defendant

of its entitlement "to litigate its statutory defenses to individual claims." *Id.* at 367. In *Dukes*, the Court reversed the certification of a class based on a methodology that would determine liability for a sample of class members, and "[t]he percentage of claims determined to be valid would then be applied to the entire remaining class" and "multiplied by the average backpay award in the sample set to arrive at the entire class recovery." *Id.* at 367. The Court held that this "novel project" would violate the Rules Enabling Act by interpreting Rule 23 to "abridge, enlarge or modify any substantive right" and preclude Wal-Mart from "litigat[ing] its statutory defenses to individual claims." *Id.* What Plaintiff is attempting here is even worse than the "Trial by Formula" the Supreme Court squarely rejected in *Dukes*. Plaintiff's methodology would not be admissible even through timely disclosed expert testimony, as explained above, and it plainly would deprive BNSF of its right to present individualized defenses to the purported number of scans for the class members. Plaintiff should not be permitted to conduct this unlawful trial by ambush.

## **CONCLUSION**

For the foregoing reasons, the Court should preclude Plaintiff's counsel from arguing to the jury about any alleged total number of times Plaintiff and/or the class members scanned their fingers to enter BNSF's intermodal facilities in Illinois through the Auto-Gate System.

Dated: October 10, 2022            Respectfully submitted,

                                                            **BNSF RAILWAY COMPANY**

                                                            By: */s/ Elizabeth Herrington*
                                                                 By Its Attorneys

                                                             Elizabeth Herrington
                                                             Tinos Diamantatos
                                                             Gregory Fouts
                                                             Alborz Hassani
                                                             Benjamin Kabe
                                                             MORGAN, LEWIS & BOCKIUS LLP
                                                            110 North Wacker Drive, Suite 2800
                                                            Chicago, IL 60606-1511
                                                            Telephone: +1.312.324.1000
                                                            Facsimile: +1.312.324.1001
                                                            beth.herrington@morganlewis.com
                                                            tinos.diamantatos@morganlewis.com
                                                            gregory.fouts@morganlewis.com
                                                            al.hassani@morganlewis.com
                                                            benjamin.kabe@morganlewis.com

                                                            Andrew S. Tulumello
                                                            Claire L. Chapla (*admitted pro hac vice*)
                                                            Robert Niles-Weed (*admitted pro hac vice*)
                                                            WEIL, GOTSHAL & MANGES LLP
                                                            2001 M Street, NW, Suite 600
                                                            Washington, DC 20036
                                                            Telephone: +1.202.682.7000
                                                            drew.tulumello@weil.com
                                                            claire.chapla@weil.com
                                                            robert.niles-weed@weil.com

                                                            *Counsel for Defendant BNSF Railway Company*

## **CERTIFICATE OF SERVICE**

      I, Elizabeth Herrington, certify that on October 10, 2022, I caused a copy of the foregoing to be served upon all counsel of record via the Court's CM/ECF system.

                                                              */s/ Elizabeth Herrington*
                                                              Elizabeth Herrington