IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RICHARD ROGERS, individually and on behalf of similarly situated individuals,<br><br>        Plaintiff,<br><br>   v.<br><br>BNSF RAILWAY COMPANY,<br><br>        Defendant. | Case No. 1:19-cv-03083<br><br>Honorable Matthew F. Kennelly |

**DEFENDANT BNSF RAILWAY COMPANY'S
OFFER OF PROOF**

Defendant BNSF Railway Company ("BNSF"), through its undersigned counsel, respectfully submits this offer of proof with respect to evidence relating to the preemption of Plaintiff's claim under the Illinois Biometric Information Privacy Act ("BIPA") by the Federal Aviation Administration Authorization Act ("FAAAA"), the Federal Railroad Safety Act ("FRSA"), and the Interstate Commerce Commission Termination Act ("ICCTA").

Plaintiff's BIPA claim is preempted by these three federal statutes. *See, e.g.*, Dkt. 107-1 at 7–22. The Court, however, rejected this argument at summary judgment, *see* Dkt. 142, and, at the pretrial conference, the Court granted Plaintiff's motion in limine to exclude evidence relating to BNSF's preemption defenses, *see* Pretrial Conference Tr. at 33 ("Evidence about preemption, argument about preemption does not come in during the trial, period.").

Because this evidence is admissible and relevant to BNSF's preemption defenses—as it tends to show the nationwide scope of BNSF's operations and the conflicting demands imposed by federal law and BIPA—BNSF should have been permitted to present it at trial. *See, e.g., Ward*

*v. Soo Line R.R. Co.*, 901 F.3d 868, 882 n.3 (7th Cir. 2018) (noting that because the denial of a motion for summary judgment is "not final and definitive," "a defendant who seeks to pursue a defense rejected in such a denial must renew it at later stages").

BNSF submits this offer of proof to explain what this evidence would have shown, had BNSF been allowed to present it at trial. Moreover, BNSF attaches to this offer of proof the relevant declarations and deposition excerpts reflecting the statements of the witnesses who would have testified to this evidence at trial, and which are cited below.

I. **Evidence Showing The Multi-State, Intermodal Scope Of BNSF's Operations And The Importance Of Uniform Security Protocols.**

1. BNSF is one of the largest freight railroad networks and railroad operators in North America, moving a variety of products (including hazardous materials), transporting freight to the Canadian and Mexican borders, serving more than 40 ports, spanning 28 states and three Canadian provinces, operating 25 intermodal facilities and has an average of 1,200 trains in service each day. Testimony of Chuck Burriss; Testimony of Jeff Briggs; **Ex. 1**, Briggs Decl. ¶¶ 2–3.

2. BNSF's integrated intermodal services provide seamless integration of rail, road, and water transportation to help customers efficiently manage their supply chains. Intermodal services combine the best attributes of rail and motor carrier transportation to provide customers with seamless, efficient, and cost-effective shipping. To do so, BNSF partners with motor carriers to offer customers comprehensive door-to-door services that offer customers seamless integration of rail and road transportation. BNSF is the world leader in providing intermodal services and offers integrated solutions that are more economical and environmentally friendly than other shipping options. BNSF's intermodal facilities are among the largest and most modern facilities in the industry and are designed to quickly

and cost-effectively move shipments across BNSF's integrated intermodal network. Testimony of Bryan Bass; Testimony of Jeff Briggs.

3. Security is crucially important for BNSF's railroad business and maintaining an accurate visitor authentication system is vital considering the sensitive cargo BNSF transports, the volume of cargo transported, the number of train cars in motion at any given time, and the number of truck drivers and other personnel entering a BNSF facility on a given day. Moreover, BNSF's shipping and trucking customer value the efficiency, reliability, and low cost of secure entry that BNSF provides at intermodal sites. Testimony of Bryan Bass; Testimony of Jeff Briggs; Ex. 1, Briggs Decl. ¶ 4.

4. Remprex's Auto-Gate System ("AGS") is designed and operated to be uniform and interconnected across multiple BNSF intermodal facilities regardless of location. Testimony of Chuck Burriss; **Ex. 2**, Burriss Dep. Tr. 141:24–143:4 (testifying that Remprex operates the AGS at facilities in seven different states and that Remprex's operation of these facilities is generally the same); Testimony of Timothy Ash; **Ex. 3**, Ash Dep. Tr. 115:12–116:20 (testifying that Remprex created a central database for driver registration across multiple BNSF intermodal facilities); **Ex. 4**, Reyes Dep. Tr. 40:16–21 ("Remprex has moved a big part of their operations to a centrally located operating center in Chicago where they are performing the driver assistance remotely from that -- from that building.").

5. BNSF's approach to security at its intermodal facilities directly and significantly impacts the transportation of property by the truck drivers and motor carriers who are part of BNSF's intermodal network. BNSF's security protocols have provided a seamless and secure entry and exit process that enables trucking companies and shippers to transport

goods for compensation at faster rates and lower prices than they would otherwise achieve. BNSF's customers are often price-sensitive and value reliable on-time performance, so it is important for BNSF to ensure efficient and cost-effective shipping across the entirety of the intermodal supply chain. Testimony of Bryan Bass; Testimony of Jeff Briggs.

6. Increased security and compliance obligations imposed on BNSF by BIPA affect the rates, routes, and services that motor carriers using BNSF's intermodal facilities are able to offer end consumers and alters the costs and delay of providing such services. Shippers and trucking companies have not requested or demanded that BNSF provide written notice and consent requirements for use of biometric information in Illinois or elsewhere. The obligations imposed on BNSF by BIPA force BNSF and the motor carriers who utilize BNSF's intermodal network to comply with security protocols that the market did not previously provide and which are not required in any of the other states where BNSF and its motor carrier partners operate. The rates, routes, and services BNSF provides are negatively affected by BIPA's written notice and consent requirement because they slow down traffic and increase costs for BNSF. BNSF and these motor carriers have accordingly been forced to tailor the services they provide to meet the demands of BIPA rather than being able to rely on competitive market forces to determine the nature and extent of security services they offer. Testimony of Bryan Bass; Testimony of Jeff Briggs.

II. **Evidence Showing The Obligations Imposed on BNSF By Federal Law That Conflict With The Requirements Of BIPA.**

7. BNSF transports cargo designated "hazardous material" by the U.S. Department of Homeland Security ("DHS"), including petroleum crude oil, alcohols, liquefied petroleum gas, elevated temperature liquid, anhydrous ammonia, sulphuric acid, hydrochloric acid

solution, sulphur, sodium hydroxide solution, and diesel fuel. Testimony of Bryan Bass; Testimony of Jeff Briggs; Ex. 1, Briggs Decl. ¶ 3.

8. Because BNSF is a shipper of hazardous material, BNSF is required by federal law and federal regulations to utilize an identity verification system at its railyards for security purposes. Testimony of Bryan Bass; Testimony of Jeff Briggs; Ex. 1, Briggs Decl. ¶ 5.

9. BNSF is a member of the U.S. Customs and Border Protection's ("CBP") CustomsTrade Partnership Against Terrorism ("C-TPAT") program. Testimony of Bryan Bass; Testimony of Jeff Briggs; Ex. 1, Briggs Decl. ¶ 19.

10. To become a C-TPAT member, a company must meet industry-specific eligibility requirements, including security standards and requirements set by CBP. Testimony of Bryan Bass; Testimony of Jeff Briggs; Ex. 1, Briggs Decl. ¶ 10.

11. Under CBP's current Minimum Security Criteria for Rail Carriers, BNSF members must implement access controls to prevent unauthorized access into facilities/areas, help maintain control of employees and visitors, and protect company assets, including the positive identification of all employees, visitors, service providers, and vendors at all points of entry. Testimony of Bryan Bass; Testimony of Jeff Briggs; Ex. 1, Briggs Decl. ¶ 13.

12. CBP's guidance to C-TPAT members identifies "biometric identification systems" as a means of fulfilling a C-TPAT member's requirement to prevent unauthorized access into its facilities. Testimony of Bryan Bass; Testimony of Jeff Briggs; Ex. 1, Briggs Decl. ¶ 15.

13. BNSF's status as a C-TPAT member is noted in many of its contracts with customers and with its vendors who assist in carrying out operations at BNSF railyard facilities, including

BNSF's contracts with Remprex. Testimony of Robert M. Whitaker; Testimony of Jeff Briggs; Ex. 1, Briggs Decl. ¶ 25.

14. Consistent with CBP's Minimum Security Criteria for Rail-Carriers Criteria ID 10.1, BNSF, among other things, contracts with Remprex to provide a variety of services at BNSF's intermodal facilities in the state of Illinois and across the country. Testimony of Bryan Bass; Testimony of Jeff Briggs; Ex. 1, Briggs Decl. ¶ 26.

15. Pursuant to the agreement between Remprex and BNSF, one of the services Remprex provides to BNSF is controlling entry to BNSF facilities in Illinois, which includes Remprex staffing and operating the AGS. Testimony of Robert M. Whitaker; Testimony of Jeff Briggs; Ex. 1, Briggs Decl. ¶ 27.

16. Biometric technology used by Remprex in connection with the AGS improves security at BNSF facilities because unlike other identity authentication systems (e.g., key cards), biometrics cannot be obtained and used by an unauthorized person to gain entry to a BNSF facility. Testimony of Bryan Bass; Testimony of Jeff Briggs; Ex. 1, Briggs Decl. ¶ 6.

17. The inclusion of a "biometric reader" at the Remprex AGS kiosk was for security purposes to prevent unauthorized access to BNSF's facilities. **Ex. 5**, Remprex Presentation, at BNSF_00001342–1347 (describing the use of biometrics for security purposes and detailing how Remprex AGS clerks will conduct a "Security Intervention"); **Ex. 6**, BNSF Presentation, at BNSF_00004711 (2008 presentation noting that one of the benefits of the AGS is "[i]mproved security through use of biometric driver ID's"); Ex. 4, Reyes Dep. Tr. 32:18–33:10 (testifying that "the AGS system provides a heightened level of security and authentication" through registering drivers, including when drivers "scan two fingers on a reader"); Testimony of Timothy Ash; Ex. 3, Ash Dep. Tr. 34:2–23 (testifying that one of

the services Remprex provides through the AGS is "[a]ssuring that every single individual coming into the terminal, we have positive validation for security purpose"); *id.* at 69:2–6 (testifying that drivers are "asked to put their finger on the biometric reader to validate they are who they are, as if they are a registered driver"); Testimony of Chuck Burriss; Ex. 2, Burriss Dep. Tr. 145:21–146:3.

Because the above evidence was admissible, relevant, and would have been introduced at trial had the Court not excluded it, BNSF makes this proffer to preserve the aforementioned objections to the Court's ruling and support its preemption arguments.

Dated: October 11, 2022　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　　　**BNSF RAILWAY COMPANY**


By: */s/ Elizabeth Herrington*
　　　By Its Attorneys

Elizabeth Herrington
Tinos Diamantatos
Gregory Fouts
Alborz Hassani
Benjamin Kabe
MORGAN, LEWIS & BOCKIUS LLP
110 North Wacker Drive, Suite 2800
Chicago, IL  60606-1511
Telephone:   +1.312.324.1000
Facsimile:     +1.312.324.1001
beth.herrington@morganlewis.com
tinos.diamantatos@morganlewis.com
gregory.fouts@morganlewis.com
al.hassani@morganlewis.com
benjamin.kabe@morganlewis.com

Andrew S. Tulumello
Claire L. Chapla (*admitted pro hac vice*)
Robert Niles-Weed (*admitted pro hac vice*)
WEIL, GOTSHAL & MANGES LLP
2001 M Street, NW, Suite 600
Washington, DC 20036
Telephone: +1.202.682.7000
drew.tulumello@weil.com
claire.chapla@weil.com
robert.niles-weed@weil.com

*Counsel for Defendant BNSF Railway Company*

**CERTIFICATE OF SERVICE**

      I, Elizabeth Herrington, certify that on October 11, 2022, I caused a copy of the foregoing to be served upon all counsel of record via the Court's CM/ECF system.

                                                       */s/ Elizabeth Herrington*
                                                         Elizabeth Herrington