**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

RICHARD ROGERS, individually and on
behalf of similarly situated individuals,

        Plaintiff,

    v.

BNSF RAILWAY COMPANY,

        Defendant.

Case No. 1:19-cv-03083

Honorable Matthew F. Kennelly

---

**DEFENDANT BNSF RAILWAY COMPANY'S RENEWED MOTION FOR JUDGMENT
AS A MATTER OF LAW AND MOTION FOR A NEW TRIAL OR TO ALTER OR
AMEND JUDGMENT AND INCORPORATED MEMORANDUM OF LAW**

---

Defendant BNSF Railway Company ("BNSF"), through its undersigned counsel, respectfully renews its motion for judgement as a matter of law pursuant to Federal Rule of Civil Procedure Rule 50(b), following the Court's denial of BNSF's Rule 50(a) motion at trial. *See* ECF No. 223. In the alternative, BNSF moves for a new trial under Rule 59(a), or to reduce the damages award under Rule 59(e). In support of its motion, BNSF states as follows:

## **INTRODUCTION**

On October 12, 2022, the jury returned a verdict in favor of Plaintiff Richard Rogers and the class, finding that BNSF recklessly or intentionally violated Section 15(b) of the Illinois Biometric Information Privacy Act ("BIPA") 45,600 times. ECF No. 224. This Court then entered judgment against BNSF in the amount of $228 million. ECF No. 225. This unprecedented judgment awarding Plaintiff and the class a nine-figure windfall despite their admission that they suffered no actual harm was not supported by the evidence at trial. It also runs afoul of the U.S. Constitution and multiple acts of Congress—among other fatal defects. It cannot stand.

The Court need not even reach BNSF's constitutional arguments since Plaintiff's case fails on the evidence. No rational jury could conclude that Plaintiff offered sufficient evidence to support a finding of liability or, even assuming that BNSF violated BIPA, that BNSF did so recklessly or intentionally. On liability, there was no direct evidence of BNSF's own or vicarious violations of the statute. To the contrary, the unrebutted evidence—including testimony from Remprex's own representatives—showed that Remprex was the entity that collected the biometrics, that Remprex maintained the data on databases that BNSF could not and did not access, and that Remprex carried out this work as an independent contractor with little or no oversight from BNSF. At a minimum, no rational jury could have found that BNSF violated BIPA recklessly or intentionally 45,600 times between 2014 and 2020. The evidence showed that BNSF reasonably relied on Remprex, which held itself out as an expert in the field and promised to monitor and

adhere to applicable law—and there was no evidence showing that BNSF's hiring decision was itself reckless. Moreover, witnesses uniformly testified that BNSF did not learn of BIPA until this litigation was filed in 2019. There is no basis in the record for a finding that BNSF consciously disregarded or intentionally violated the rights of Plaintiff and the class members at *any* point, much less for the entire nearly six-year class period beginning in 2014. The lack of sufficient evidence supporting the verdict warrants granting judgment as a matter of law to BNSF or granting a new trial, or, at a minimum, substantially reducing the unsupported $228 million damages award.

Even if the judgment were supported by the evidentiary record, applying Illinois' BIPA to impose $228 million in damages without any actual harm is barred by federal law on multiple, independent grounds. First, the constitutional limits imposed by the Due Process and Excessive Fines clauses require a significant reduction in the award, which is obviously unreasonable and wholly disproportionate to the undisputed utter lack of any actual harm. Second, federal laws governing railroads and motor carriers preempt state laws that, like BIPA here, force nationwide intermodal service providers like BNSF to adopt one-state-only security protocols that distort the market for their services and penalize the nationwide use of security measures authorized by federal law. And third, the text of BIPA and the Seventh Amendment to the U.S. Constitution make clear that damages are discretionary—not mandatory—and that BNSF was improperly denied its constitutional right to a jury determination of damages.

As a final matter, the Illinois Supreme Court is likely soon to rule that the claims of the named Plaintiff and a large number of the class members are time barred, requiring dismissal of Plaintiff's claim and decertification of the class. For any—and indeed all—of these reasons, the Court should grant judgment as a matter of law to BNSF, grant a new trial limited to these issues, or at least substantially reduce the $228 million damages award.

## **LEGAL STANDARD**

In ruling on a renewed motion for judgment as a matter of law under Rule 50(b), a court must "decide whether the jury had 'a legally sufficient evidentiary basis' for its verdict." *May v. Chrysler Grp., LLC*, 716 F.3d 963, 971 (7th Cir. 2013). The court should grant judgment as a matter of law if "no rational jury could have found for the prevailing party." *Stragapede v. City of Evanston*, 865 F.3d 861, 865 (7th Cir. 2017). Under Rule 59(a), "[a] new trial is appropriate if the jury's verdict is against the manifest weight of the evidence or if the trial was in some way unfair to the moving party." *Venson v. Altamirano*, 749 F.3d 641, 656 (7th Cir. 2014). "A district court is entitled to find that an award is unsupported by the evidence and thus that a motion for a new trial under Rule 59 should be granted, even if there was enough evidence in the record to justify sending the issue to the jury in the first instance." *Smart Mktg. Grp. Inc. v. Publ'ns Int'l Ltd.*, 624 F.3d 824, 832 (7th Cir. 2010). Relief under Rule 59(e) is warranted where there is "a manifest error of law or fact." *Boyd v. Tornier, Inc.*, 656 F.3d 487, 492 (7th Cir. 2011).

## **ARGUMENT**

### I.     **There Was Insufficient Evidence For The Jury To Find That BNSF Violated BIPA.**

At trial, Plaintiff argued that BNSF violated BIPA (1) directly by collecting, capturing, receiving through trade, or otherwise obtaining Plaintiff's biometrics, and/or (2) indirectly because BNSF is vicariously liable for Remprex's conduct. *See* Trial Tr. 171:15–173:5. But no rational jury could have concluded from the evidence at trial that BNSF violated BIPA under either theory.

#### A.     **There Was Insufficient Evidence To Find That BNSF Directly Violated BIPA.**

Remprex's Chief Solutions Officer, Timothy Ash, conceded that throughout the relevant period, Remprex employees—*not* BNSF employees—were the ones who registered drivers and scanned their fingers. Trial Tr. 349:16–350:13. BNSF General Director of Hub Operations, Chuck Burriss, testified that BNSF did not—and *could not*—access drivers' biometric data at any point.

*See, e.g.*, *id.* at 592:9–12, 594:14–17. Instead, BNSF had to ask Remprex how biometric data was being stored, what security measures were in place, and whether fingerprints were even being stored on the database at all. *Id.* at 394:17–24, 398:7–10. Similarly, Mr. Ash testified that Remprex was responsible for securely storing the data, *id.* at 405:23–24, and it could only be accessed using a secure Remprex login—the "heaviest" login Mr. Ash "know[s] of as far as security," *id.* at 371:20–372:11. In addition, BNSF's Director of Strategic Sourcing and Supply, Mike Whitaker, testified that BNSF did not collect biometrics or own the biometric data or the servers where it was stored. *Id.* at 882:1–13, 884:10–17, 892:13–15, 898:5–7, 897:2–23. And BNSF's former Director of Technology Services, Carlos Reyes (now with Remprex), testified that BNSF did not collect or obtain biometrics from truck drivers in Illinois, that the biometric data was "stored on a server on the Remprex network," and that BNSF did not maintain a copy of any of that data. *Id.* at 966:10–967:18, 983:5–984:9. The only rational conclusion from this evidence is that Remprex operated the system and collected, captured, and maintained the biometric data, and that BNSF never collected, captured, received through trade, or otherwise obtained that data— and thus did not violate Section 15(b) of BIPA.[1]

### B. There Was Insufficient Evidence To Find BNSF Vicariously Liable.

Even if BIPA did allow one entity to be held liable for the acts or omissions of another entity—which it does not[2]—there was insufficient evidence for the jury to find liability under any

---

[1] Mr. Burriss's testimony about the servers does not change this conclusion. Trial Tr. 539:16– 540:5. Mr. Burris gave ambiguous answers to these questions. *Compare id.*, *with id.* at 505:2–6. And he repeatedly stated that the question of ownership is controlled by the contracts between BNSF and Remprex. *Id.* at 583:11–584:9. Mr. Burriss also emphasized that "Remprex is the company that should be being sued. We didn't collect data. Remprex employees collected data, communicated with drivers, and entered the information that went to the servers." *Id.* at 603:6–9.
[2] Plaintiff should not have been permitted to argue an agency theory to the jury at all because BIPA does not incorporate common-law agency principles. Although the Court has rejected this argument (ECF No. 201), BNSF maintains that BIPA's plain text imposes liability only on the "*private entity*" that itself actively collects, captures, receives through trade, or otherwise obtains

applicable agency standard. BNSF proposed a standard that would impose liability only if Remprex was BNSF's agent *and* BNSF authorized the doing and the manner of Remprex's violations, Remprex was unfit and BNSF was reckless in employing it, or BNSF ratified or approved Remprex's unlawful actions.[3] *See* ECF No. 177-6 at 10–11; ECF No. 207 at 14–16. No rational jury could have concluded that this standard was satisfied. But even under the common-law agency standard the Court adopted (Trial Tr. 1331:5–1332:22), there was insufficient evidence to find BNSF liable for Remprex's actions.

The evidence showed that Remprex—an expert third-party contractor—decided how to complete its work and that it was contractually obligated the follow the law. *See, e.g.*, Trial Tr. 333:16–334:12, 339:3–6, 344:8–10, 346:13–22, 851:14–17. Mr. Ash testified it was "fair that BNSF would expect that [Remprex] would abide by that provision." *Id.* at 346:23–347:1. The evidence also showed BNSF did not have the right to control Remprex's actions or the method and manner of its work. Mr. Ash testified that "Remprex gets to use its own manner and methods in performing the service[s]" under the contract with BNSF, and that BNSF had no say in "which employees Remprex used to operate and maintain the AGS," "how many employees" Remprex should hire, or "what Remprex employees could be paid." *Id.* at 332:4–21, 333:8–12, 344:8–10. There was simply no evidence whatsoever from which the jury could rationally conclude that Remprex was BNSF's agent acting within the scope of its authority.

## II. There Was Insufficient Evidence To Find 45,600 Reckless Or Intentional Violations.

BNSF also is entitled to judgment as a matter of law or a new trial, or at least a significant

---

biometrics. *See* ECF No. 173 at 1–5; ECF No. 177-6 at 8–10, 15, 17; ECF No. 194 at 1–7; ECF No. 207 at 14–22; ECF No. 212 at 7–8.

[3] BNSF argued this standard "should apply in light of the magnitude of potential damages under BIPA, similar to the standard that applies to vicarious liability for punitive damages." ECF No. 177-6 at 11.

reduction in damages, because there was insufficient evidence for a rational jury to conclude that BNSF violated BIPA recklessly or intentionally 45,600 times—which is the basis for the staggering $228 million damages award against BNSF, *see* 740 ILCS 14/20(2).

The evidence introduced at trial showed that BNSF acted reasonably and in good faith. The Court instructed the jury that "BNSF acted negligently if it failed to do something that a reasonably careful person or entity would do, or did something that a reasonably careful person or entity would not do . . . BNSF acted recklessly if it consciously disregarded or was utterly indifferent to the plaintiffs' rights. BNSF acted intentionally if it intended to violate the law." Trial Tr. 1330:3–13. The evidence—including, especially, Mr. Ash's testimony—showed that BNSF engaged Remprex to operate the Auto-Gate Systems and relied on Remprex to ensure compliance with BIPA because Remprex held itself out as an expert and an "industry leader" in this field and promised to monitor and abide by applicable laws. *See, e.g.*, *id.* at 276:13–21, 298:13–23, 589:3–14, 900:2–901:1. In fact, the evidence showed that Remprex purported to "handle[] everything on site, allowing [BNSF], the customer, to focus solely on moving freight." *Id.* at 281:13–17. And BNSF paid Remprex substantial sums of money—millions of dollars each year—with the expectation that Remprex would deliver on these contractual promises. *Id.* at 293:25–294:12. Mr. Ash also testified that no other Remprex customers ever affirmatively asked Remprex to obtain consent from drivers before collecting biometric data (*id.* at 249:21–24)— which further confirms the reasonableness of BNSF's actions. It would defy common sense and upend settled law and commercial practice to conclude that BNSF was *reckless* for engaging an expert third-party contractor to handle its security needs. *See, e.g.*, *Gile v. United Airlines, Inc.*, 213 F.3d 365, 375–76 (7th Cir. 2000) (reversing jury determination of reckless indifference and punitive damages where defendant's good-faith but ultimately wrong belief that plaintiff did not

require a disability accommodation "amounted to negligence," not "the requisite reckless state of mind").

Moreover, there was no evidence that BNSF *even learned about BIPA until April 2019*. Mr. Burriss and Mr. Whitaker both testified that BNSF was not aware of BIPA until this lawsuit was filed in April 2019, and BNSF did not know whether Remprex was obtaining informed consent to collect biometrics until after that point. *See* Trial Tr. 469:10–12, 591:23–592:1, 834:21–835:3, 836:13–25. The Remprex witnesses likewise testified that *they* did not learn about BIPA until the 2019 timeframe—consistent with the testimony that BNSF, too, did not learn about BIPA until then. *See id.* at 334:20–335:11, 1160:14–18. And Mr. Ash testified that, to his knowledge, he "never told anyone at BNSF" during the relevant time period "that Remprex and Remprex employees were not providing information to drivers who were registering and obtaining their consent." *Id.* at 354:3–8. After the lawsuit was filed, BNSF promptly engaged with Remprex and its attorneys about the allegations—including through "discussions about preemption and if [BIPA] applied to the railroads"—and ultimately discontinued the use of biometrics and sued Remprex for indemnification.[4] *See id.* at 578:6–15, 582:3–8, 599:6–17, 600:21–602:15.

No rational jury could have inferred from this evidence that BNSF consciously disregarded or intentionally violated the rights of Plaintiff and the class members at any point, much less for the full class period starting in April 2014. Indeed, uncertainty about BIPA's interpretation and the possibility of preemption alone precludes a finding of recklessness. *Cf. Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 70 (2007) (holding that a statutory violation is not reckless unless a contrary

---

[4] BNSF objected to the admission of evidence about its post-litigation conduct under Federal Rules of Evidence 403 and 407 (Trial Tr. 314:2–327:17, 484:21–491:17), and maintains that it was improperly admitted, prejudicial, and warrants a new trial on mental state. But regardless, even this prejudicial evidence about BNSF's post-litigation conduct does not show recklessness.

interpretation of the statute is "objectively unreasonable"). And even if the jury believed BNSF "should have known" about BIPA and that Remprex was not complying with its requirements, "ignorance of [a plaintiff's] rights" is not reckless; "careless is not reckless." *Soderbeck v. Burnett Cnty.*, 752 F.2d 285, 290–91 (7th Cir. 1985) (Posner, J.). Plaintiff failed to meet his burden of proof, and BNSF is entitled to judgment as a matter of law, or at least to a new trial on state of mind. Alternatively, if the Court concludes the evidence was not sufficient to show BNSF's intent or recklessness but suffices to show negligence, the Court should reduce the damages award to no more than $45.6 million, or $1,000 per negligent violation. *See* 740 ILCS 14/20(1).

## III.   The Damages Award Against BNSF Is Unconstitutional.

The Court's award of $228 million in damages where Plaintiff admits he and the members of the class have suffered no actual harm violates the Due Process Clause and Excessive Fines Clause of the U.S. Constitution and should be remitted. The U.S Constitution sets an outer limit on the permissible magnitude of damages awards. *See State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 417 (2003); *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 568 (1996). As the Ninth Circuit very recently explained, "constitutional due process concerns are heightened where, as here, statutory damages are awarded as a matter of strict liability when plaintiffs are unable to quantify any actual damages." *Wakefield v. ViSalus, Inc.*, No. 21-35201, 2022 WL 11530386, at *8 (9th Cir. Oct. 20, 2022). The constitutional inquiry "focus[es] on extreme cases, the proportionality of the award to the 'offense' in light of the statute's goals, and the overall reasonableness of the award." *Id.*

This is one such extreme case. The Court's $228 million verdict is "obviously unreasonable" and "wholly disproportioned" to the alleged offense in light of BIPA's goals. *St. Louis, I.M. & S. Ry. Co. v. Williams*, 251 U.S. 63, 67 (1919). It is undisputed that neither Plaintiff

nor any member of the class has suffered *any* actual harm from any alleged violation of BIPA.[5]
Given that the agreed value of the class's injury is zero dollars, any award would be disproportional
to such nonexistent harm. *Cf. State Farm*, 538 U.S. at 425 ("[I]n practice, few awards exceeding
a single-digit ratio between punitive and compensatory damages, to a significant degree, will
satisfy due process."). An award of $5,000 to each uninjured class member—and, especially, the
aggregate award of $228 million—is "largely punitive and untethered to the statute's purpose."
*Wakefield*, 2022 WL 11530386, at *10. BIPA's text makes clear that the Illinois Legislature's
intent in enacting the statute was not to massively penalize the safe and harmless use of biometric
information; the statute provides that its purpose was to serve "public welfare, security, and safety
. . . by regulating the collection, use, safeguarding, handling, storage, retention, and destruction of
biometric identifiers and information." 740 ILCS 14/5(g). In this case, there is no benefit to public
welfare, security, and safety by punitively penalizing BNSF $228 million (or $5,000 per violation)
for an alleged technical violation of the statute's informed-consent requirement.

Finally, even if the Court concludes that each individual award of $5,000 does not violate
due process, the aggregate award of $228 million still can run afoul of the constitution's
protections, as multiple courts of appeals recognize.[6] The Court should remit the $228 million
award to $0 or another amount not wholly disproportioned to the nature of the offense.

---

[5] *See, e.g.*, Sept. 6, 2022 Pretrial Conference Tr. 71:15–16 (COURT: "[T]here's not a claim of
actual damages in the case.").

[6] *See Wakefield*, 2022 WL 11530386, at *9 ("[A]ggregated statutory damages awards are, in
certain extreme circumstances, subject to constitutional due process limitations."); *Capitol Recs.,
Inc. v. Thomas-Rasset*, 692 F.3d 899, 910 (8th Cir. 2012) ("The absolute amount of the award, not
just the amount per violation, is relevant to whether the award is [unconstitutional]."); *Parker v.
Time Warner Ent. Co.*, 331 F.3d 13, 22 (2d Cir. 2003) (same); *but see United States v. Dish
Network L.L.C.*, 954 F.3d 970, 980 (7th Cir. 2020) (declining to reduce damages under TCPA
because "[l]egislatures have a wide latitude of discretion to set civil penalties" and the "punitive
multiplier" for the award was "around 3" (citations and internal quotation marks omitted)).

IV.     **Plaintiff's Claim Is Preempted By Federal Law.**

BNSF is entitled to judgment as a matter of law because Plaintiff's specific BIPA claim is preempted by at least three different federal laws, so there was insufficient evidence for a rational jury to find in Plaintiff's favor. At a minimum, because BNSF's as-applied preemption defenses are fact-bound arguments, the Court should order a new trial for this reason alone to allow BNSF to present improperly excluded evidence of preemption.[7]

*First,* Plaintiff's claim is preempted by the Federal Aviation Administration Authorization Act ("FAAAA"), which prohibits a state from enforcing a law "related to a price, route, or service of any motor carrier . . . with respect to the transportation of property." 49 U.S.C. § 14501(c)(1). The FAAAA was enacted in 1994 as part of Congress's sweeping deregulatory agenda designed to "ensure that the States would not undo federal deregulation with regulation of their own." *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 378–79 (1992). "Congress' overarching goal" in enacting the FAAAA and the identically worded preemption provision in the Airline Deregulation Act ("ADA") was to "ensure transportation rates, routes, and services that reflect maximum reliance on competitive market forces." *Rowe v. N.H. Motor Transp. Ass'n*, 552 U.S. 364, 371 (2008) (internal citations omitted). The FAAAA thus preempts any state law with a "connection with" the "price, route or service of any motor carrier," even if the connection is "indirect," so long as the state law has a "significant impact" on Congress's "deregulatory and preemption-related objectives" and "require[s] carriers to offer a system of services that the market does not now provide." *Id.* at 368, 371–72.

---

[7] During trial, BNSF made an offer of proof describing the evidence it would have offered to support its preemption defenses, had such evidence not been excluded by the Court in limine. *See* ECF No. 217; *see also* ECF No. 229 at 33 (excluding all preemption-related evidence). BNSF reserves all rights to challenge on appeal the Court's *in limine* ruling, which improperly prevented BNSF from introducing relevant and admissible evidence essential to its preemption defenses.

That is the case here, as BIPA has a significant impact on the prices, routes, or services of motor carriers using BNSF's intermodal facilities. If BNSF had been permitted to introduce evidence bearing on this issue, it would have shown that "[i]ncreased security and compliance obligations imposed on BNSF by BIPA affect the rates, routes, and services that motor carriers using BNSF's intermodal facilities are able to offer end consumers" because "BIPA force[s] BNSF . . . to comply with security protocols that the market did not previously provide." ECF No. 217 at 4. Plaintiff confirmed as much at trial, focusing on the effect of the use of biometrics on the prices offered to consumers of intermodal services. *See, e.g.*, Trial Tr. 254:11–17 ("[O]ne of the things that motivated this automated system was you could get more trucks through faster," because "[t]ime is money."). This direct and significant effect of BIPA on intermodal rates, routes, and services—not to mention the impact of a $228 million verdict for alleged non-compliance with BIPA—has a "significant impact" on Congress's "deregulatory and preemption-related objectives," and runs afoul of the FAAAA. *Rowe*, 552 U.S. at 371. Indeed, in an analogous case, Chief Judge Pallmeyer held that the ADA—which has the exact same preemptive scope as the FAAAA—preempted a BIPA claim because it would have a "significant" effect on rates, routes, or services, and "[a]bsent a finding of preemption, [carriers] could potentially be subject to a 'patchwork' of varying state privacy laws, a result 'inconsistent with Congress' major legislative effort to leave such decisions, where federally unregulated, to the competitive marketplace.'" *Kislov v. Am. Airlines, Inc.*, No. 17 C 9080, 2022 WL 846840, at *2, 6 (N.D. Ill. Mar. 22, 2022) (citation omitted).

*Second*, Plaintiff's BIPA claim is preempted by the Federal Railroad Safety Act ("FRSA"). FRSA's broad preemption clause provides that states can enforce laws "related to railroad safety or security" only where the Secretaries of Transportation or Homeland Security have not

"prescribe[d] a regulation or issue[d] an order covering the subject matter of the State requirement." 49 U.S.C. § 20106(a)(2). The Supreme Court has held that a state regulation imposing a specific requirement is preempted where federal regulations allow for a range of different choices. *See Geier v. Am. Honda Motor Co.*, 529 U.S. 861, 881 (2000) (holding that a state law requiring installation of airbags was preempted in light of federal regulations allowing manufacturers discretion to implement a range of passenger restraint devices).

FRSA preempts Plaintiff's specific BIPA claim because that claim would impose Illinois-specific security protocols on BNSF, even though BNSF is able to select from a broader array of security protocols under federal law that include biometrics. Federal regulations require railroads like BNSF that ship hazardous materials to implement physical security measures to restrict access to their facilities. *See* 49 C.F.R. § 1580.205(i). Federal guidance permits railroads to use "biometric identification systems" to meet their security obligations under the voluntary Customs-Trade Partnership Against Terrorism ("C-TPAT"), to which BNSF is a party. 78 Fed. Reg. 15889 (Mar. 13, 2013). Unlike BIPA, C-TPAT does not impose notice and consent requirements. *See id.* As the evidence described in BNSF's offer of proof would have shown, Plaintiff's BIPA claim would therefore create state-to-state inconsistency in allowable security measures and impose a singular set of notice and consent requirements for using biometrics for security purposes, even though C-TPAT does not impose these requirements.

*Third*, Plaintiff's BIPA claim is preempted by the Interstate Commerce Commission Termination Act ("ICCTA"), which preempts "those state laws that may reasonably be said to have the effect of 'managing' or 'governing' rail transportation." *PCS Phosphate Co. v. Norfolk S. Corp.*, 559 F.3d 212, 218 (4th Cir. 2009) (quoting *Fla. E. Coast Ry. Co. v. City of W. Palm Beach*, 266 F.3d 1324, 1331 (11th Cir. 2001)). ICCTA contains a similarly "broad and sweeping"

preemptive effect as FRSA and makes federal law paramount and exclusive at "railroad property," which is where the biometric information at issue in this case was collected. *Union Pac. R.R. Co. v. Chi. Transit Auth.*, 647 F.3d 675, 678 (7th Cir. 2011). As BNSF's offer of proof describes, the evidence would have shown that Plaintiff's BIPA claim is preempted here because it prescribes a strict Illinois-only security protocol at BNSF's intermodal facilities. *See* ECF No. 217 at 4–7.

## V. BNSF Was Entitled To Have The Jury Determine Damages Under BIPA—And To A Determination That No Damages Were Available.

For the reasons above, Plaintiff is not entitled to *any* damages, but at the very least, the Court should order a new trial limited to the issue of damages. BIPA provides that for negligent violations, a "prevailing party *may* recover . . . liquidated damages of $1,000 or actual damages, whichever is greater." 740 ILCS 14/20 (emphasis added); *see id.* (capping liquidated damages for intentional or reckless violations at $5,000). As BNSF has argued, whether to award damages and the amount of a damages award is discretionary and should be determined by the jury. *See, e.g.*, ECF No. 177-7 at 3–6 (arguing the amount of any damages award is discretionary and the Seventh Amendment guarantees the right to a jury determination of damages); ECF No. 180 at 1–3 (same).

The Seventh Circuit has previously interpreted an identically worded statute—the Federal Wiretap Act, which provides that "the court *may* assess as damages whichever is the greater of— (A) [actual damages]; or (B) statutory damages," 18 U.S.C. § 2520(c)(2)—in exactly this way. *See DirecTV, Inc. v. Barczewski*, 604 F.3d 1004, 1007 (7th Cir. 2010). There, the Seventh Circuit recognized that "four other circuits have . . . held that [this provision] allows district judges *not* to award damages" because the statute "says that the judge 'may' award damages, then gives a formula," which "is the language of discretion, not command." *Id.* (emphasis added).

BIPA's identical language demands the identical result: that any award of damages under BIPA is discretionary, and that there is the option *not* to award damages, or to award damages in

any amount less than the statutory maximum. Moreover, as BNSF has argued, the Seventh Amendment to the U.S. Constitution requires that discretionary determination to be made by the jury. *See Feltner v. Columbia Pictures Television, Inc.*, 523 U.S. 340, 353 (1998). BNSF proposed—and the Court rejected—a jury instruction that would have instructed the jury on the factors to consider to determine whether to award damages and in what amount. *See* ECF No. 207 at 24. Even had the Court so instructed the jury, however, there was insufficient evidence to justify *any* award of damages for all of the reasons explained above. The Court should hold that Plaintiff is not entitled to any damages as a matter of law or, at a minimum, order a new trial limited to the issue of whether the jury will exercise its discretion to award damages, and in what amount.

## VI.   Plaintiff's Claim Is Time Barred.

BNSF also is entitled to judgment as a matter of law because the named Plaintiff's claim is time barred under any potentially applicable statute of limitations. The question whether a claim under Section 15(b) of BIPA "accrue[s] each time a private entity scans a person's biometric identifier . . . or only upon the first scan" is currently pending before the Illinois Supreme Court. *Cothron v. White Castle Sys., Inc.*, 20 F.4th 1156, 1167 (7th Cir. 2021). BNSF maintains that a Section 15(b) claim accrues only upon the first scan. *See id.* (describing the arguments in support of this position). The evidence at trial established that Plaintiff first registered his fingerprint at a BNSF intermodal facility in Illinois on December 5, 2012. *See* Trial Tr. 1014:4–11. Yet Plaintiff did not initiate this action until April 4, 2019, well after the one- or five-year statute of limitations applicable to BIPA Section 15(b) claims.[8] *See* Dkt. 1, No. 2019-CH-04393 (Ill. Cir. Ct. Cook Cnty. Apr. 4, 2019). Plaintiff's statute of limitations has run, and judgment as a matter of law

---

[8] Although Plaintiff's claims are time barred under either limitations period, BNSF maintains that a one-year statute of limitations applies to BIPA Section 15(b) claims, not five years as the Illinois Court of Appeal held in *Tims v. Black Horse Carriers, Inc.*, 184 N.E.3d 466 (Ill. App. Ct. 2021). This issue is currently pending in front of the Illinois Supreme Court, Case No. 127801.

should be entered against him and the members of the class he represents. *See Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 399 (6th Cir. 1998) ("[A]s goes the claim of the named plaintiff, so go the claims of the class."); *Santiago v. City of Chi.*, 19 F.4th 1010, 1018 (7th Cir. 2021) ("To be an adequate representative, a named plaintiff must be a member of the putative class and have the same interest and injury as other members." (internal quotations omitted)).

At a minimum, Rule 23's requirements for class certification are not met here and the class must be decertified. Plaintiff is not an adequate or typical class representative.[9] *See, e.g., J.H. Cohn & Co. v. Am. Appraisal Assocs., Inc.*, 628 F.2d 994, 999 (7th Cir. 1980) ("[E]ven an arguable defense peculiar to the named plaintiff or a small subset of the plaintiff class may destroy the required typicality of the class as well as bring into question the adequacy of the named plaintiff's representation."). Moreover, at least 8,805 class members registered before April 4, 2014 and likewise have time-barred claims under a five-year statute of limitations. *See* Trial Tr. 1015:11–19.[10] A class cannot be certified where, as here, it includes a large number of uninjured class members. *See Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 824 (7th Cir. 2012).

## CONCLUSION

For the foregoing reasons, the Court should enter judgment as a matter of law against Plaintiff and in favor of BNSF. In the alternative, the Court should grant BNSF a new trial on the issues described above or substantially reduce the damages award against BNSF.

---

[9] Plaintiff's failure to satisfy Rule 23 cannot be remedied by the trial testimony of Mr. Stewart and Mr. Galbreath. BNSF objected to these untimely disclosed class member witnesses and maintains that it was improper and prejudicial for them to testify. *See* ECF No. 174; Trial Tr. 629:9–25.

[10] If the Illinois Supreme Court in *Tims* holds that the statute of limitations is one year, the claims of an even larger number of class members would be time barred and thus the number of uninjured class members would be even higher. *See* Trial Tr. 1036:21–25 (testifying that a maximum of 17,075 unique drivers were registered at BNSF Illinois facilities on or after April 4, 2018).

Dated: November 9, 2022                    Respectfully submitted,

                                           **BNSF RAILWAY COMPANY**


                                           By: */s/ Elizabeth Herrington*
                                                By Its Attorneys

                                           Elizabeth Herrington
                                           Tinos Diamantatos
                                           Gregory Fouts
                                           Alborz Hassani
                                           Benjamin Kabe
                                           MORGAN, LEWIS & BOCKIUS LLP
                                           110 North Wacker Drive, Suite 2800
                                           Chicago, IL  60606-1511
                                           Telephone:  +1.312.324.1000
                                           Facsimile:    +1.312.324.1001
                                           beth.herrington@morganlewis.com
                                           tinos.diamantatos@morganlewis.com
                                           gregory.fouts@morganlewis.com
                                           al.hassani@morganlewis.com
                                           benjamin.kabe@morganlewis.com

                                           Andrew S. Tulumello
                                           Claire L. Chapla (*admitted pro hac vice*)
                                           Robert Niles-Weed (*admitted pro hac vice*)
                                           WEIL, GOTSHAL & MANGES LLP
                                           2001 M Street, NW, Suite 600
                                           Washington, DC 20036
                                           Telephone: +1.202.682.7000
                                           drew.tulumello@weil.com
                                           claire.chapla@weil.com
                                           robert.niles-weed@weil.com

                                           *Counsel for Defendant BNSF Railway
                                           Company*

## **CERTIFICATE OF SERVICE**

I, Elizabeth Herrington, certify that on November 9, 2022, I caused a copy of the foregoing to be served upon all counsel of record via the Court's CM/ECF system.

*/s/ Elizabeth Herrington*
Elizabeth Herrington