**IN THE UNITED STATES DISTRICT COURT FOR THE**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

RICHARD ROGERS, individually and on
behalf of similarly situated individuals,

        *Plaintiff*,

        v.

BNSF RAILWAY COMPANY,

        *Defendant*.

No. 19-cv-03083

Hon. Matthew F. Kennelly


## PLAINTIFFS' RULE 59 MOTION TO AMEND JUDGMENT


Jon Loevy
Michael I. Kanovitz
LOEVY & LOEVY
311 N. Aberdeen St., 3rd Floor
Chicago, Illinois 60607

Myles McGuire
Evan M. Meyers
David L. Gerbie
Brendan Duffner
MCGUIRE LAW, P.C.
55 W. Wacker Drive, 9th Fl.
Chicago, IL 60601

*Attorneys for Plaintiff and the Certified Class*

Pursuant to Federal Rule of Civil Procedure ("Rule") 59, Plaintiff Richard Rogers and the Certified Class ("Plaintiffs") respectfully move to amend the Court's Judgment in a limited way. To be clear, nothing about this Motion seeks to disturb in any respect the judgment or the jury's verdict finding that BNSF Railway Company ("Defendant" or "BNSF") committed violations of the Illinois Biometric Information Privacy Act ("BIPA") against 45,600 class members, and that it did so recklessly or intentionally. Plaintiffs do not seek a new trial on the jury's verdict as to liability or intent, nor on its *de facto* finding as to the number of class members. The sole purpose of this Motion is to ask the Court to adjust the statutory damages to conform to the undisputed evidence that there were actually 136,800 violations (each driver had three fingerprints captured[1] without express written consent at registration) and to include an award for prejudgment interest, and to order a partial new trial on the limited issue of the total number of scans collected. In support, Plaintiffs state as follows.

I.      **Plaintiffs' Limited Motion to Amend Judgment**

        A. **The Judgment Does Not Include All Of The Statutory Damages Proved At Trial**

        Section 20 of BIPA provides that liquidated damages available under the statute apply "for each violation." 740 ILCS 14/20. While the question of whether each collection (as opposed to only the first) constitutes a violation under Section 15(b) is currently pending before the Illinois Supreme Court on certification from the Seventh Circuit in *Cothron v. White Castle Sys., Inc.,* 20 F.4th 1156 (7th Cir. 2021), no court has ever concluded that the statutory language means something other than what it says. To the contrary, the only courts to have examined the issue have rejected the "one-and-done" rule—including Judge Tharp in *Cothron*, 477 F. Supp. 3d 723, 733-34 (N.D. Ill. 2020), as well as this Court multiple

_____

[1] For brevity, Plaintiffs use "capture(s)," "collection(s)" and "scan(s)" interchangeably herein to refer to BNSF's capture, collection, receipt through trade, or otherwise obtaining of the class members' biometric identifiers or biometric information in violation of BIPA.

times. R.142 (denying BNSF's motion for summary judgment); R.143 (granting class certification); R.192, RT 9/6/2022 at 52:2-14 (denying MIL to exclude evidence of multiple scans).

In this case, the jury correctly found that Defendant recklessly violated BIPA by collecting biometric information, without requisite disclosures or consent, from 45,600 class members. Those findings were amply supported by factually and legally sufficient evidence, and they should not be disturbed. Undisputed trial evidence, however, showed that each of those class members had fingerprints and/or biometric templates captured from *three* fingers when they registered using the AGS system., and again every time the driver entered each yard thereafter. *See, e.g.,* RT Vol. 1-B at 220:22-25; Vol. 2-B at 549:16-550:4, 634:20-24, 635:7-11; Vol. 3-A at 655:9-11, 657:2-10; Vol. 3-B at 778:9-12, 779:9-13. Importantly, by collecting biometric identifier and/or biometric information (collectively herein "biometrics") from three of each class members' fingers, Defendant collected mathematically *unique* biometrics related to each finger and stored such information in unencrypted fashion, which resulted in greater risk to class members' biometrics than would have resulted if Defendant had collected biometrics from only one finger. Accordingly, three times the risk and harm was suffered by Class members, which, in accordance with the plain language of BIPA, justifies three times the damages. Also undisputed was that each of the four facilities conducted hundreds of captures on class members every day (Ps'. Exs. 284 & 284-A; *see also* RT Vol. 2-B at 553:7-554:18 (Mr. Burriss) & Vol. 4-B at 1124:9-1126:22 (Mr. Diebes) (confirming typicality of daily visits reflected on Exs. 284 and 284-A.)), and that some individual drivers were scanned "well over a hundred times" (Mr. Stewart, Vol. 2-B at 635:7-11) and "dozens if not hundreds of times." (Mr. Rogers, Vol. 3-B at 778:9-12).

But on the eve of closing argument, BNSF argued successfully that Plaintiffs' counsel was barred from arguing to the jury the undisputed evidence regarding multiple violations per class member. Specifically, Defendant sought to "preclude Plaintiff's counsel

from arguing to the jury about any *alleged total number of times* Plaintiff and/or the class members scanned their fingers to enter BNSF's intermodal facilities." R.215 (emphasis added). The Court ruled that Plaintiffs had failed to disclose their "computation of damages" pursuant to Rule 26(a)(1)(c), and that such failure was neither justified nor harmless, and accordingly granted BNSF's motion pursuant to Rule 37(c)(1). RT Vol. 4-B at 1258:24-1259:16. Plaintiffs sought reconsideration of the Court's ruling, R.220, which was denied. R.223. Despite the jury's findings on liability, intent, and class size, as well as the undisputed evidence of multiple scans for each class member, BNSF has escaped with a judgment obligating it to pay only a small fraction of the damages mandated by the legislature when it enacted BIPA. With the total number of captures during the class period (very conservatively) estimated at 1.17 million, the Judgment of $228 million means that BNSF will pay less than $200.00 per violation for repeatedly and recklessly violating the class members' privacy rights for years. Again, this is a very conservative estimate; in reality, the Judgment currently owed by BNSF obligates it to pay only a fraction of a fraction of the true statutory damages.

Effectively, then, BNSF has obtained the benefit of the "one-and-done" rule currently pending in *Cothron,* despite that fact that no court has adopted this rule, and despite the fact that this Court rejected the rule's application in denying BNSF's motion for summary judgment, in granting class certification, and in denying BNSF's motion *in limine* to exclude evidence of the total number of scans.

As a result, Plaintiffs' counsel was precluded from any reference to the undisputed evidence relating to the total number of violations. Plaintiffs' counsel instead highlighted the total number of truck drivers who separately registered their fingerprints and biometric information with the AGS, and the jury thus found 45,600 violations of the statute – i.e., only one violation per class member – despite the undisputed evidence to the contrary.

**B. The Judgment Should Increase The Statutory Penalty Damages To Include Three Violations per Class Member in Accordance with the Undisputed Evidence**

It was undisputed at trial that BNSF collected biometrics from three different fingers from each class member when each initially registered with the AGS system. It was confirmed in the BNSF/Remprex operational manuals and every witness who testified on the matter. These witnesses included Mr. Ash from Remprex (RT Vol. 1-B at 220:22-25), Mr. Diebes from Remprex (RT Vol. 4-A at 1084:2-24), and class member Mr. Galbreath (RT Vol. 3-A at 655:9-11).[2] Additionally, multiple manuals governing the registration protocol confirmed that three scans were collected at registration:



Exhibit A, Plaintiffs' Trial Exhibit 101, p. 4 (highlight added).



Exhibit B, Plaintiffs' Trial Exhibit 188, p. 46 (highlight added).

---

[2] Defendants' expert Mr. Kalat also testified to the three scans per driver in his deposition. Exhibit D (Kalat Dep. at 36:8-22).

There was a minor discrepancy between Plaintiffs' expert, Mr. Caruso, and Defendant's expert, Mr. Kalat, as to the number of class members who had registered in the Remprex system, with Mr. Caruso opining that the class included approximately 44,000 members and Mr. Kalat opining that the number was 45,600. Plaintiffs' counsel urged the jury to adopt the Defendant's expert's calculation, which the jury did, as corroborated by the verdict form. Accordingly, the undisputed evidence showed that BNSF collected at least 136,800 BIPA-protected biometrics from class members during the class period.

However, due to the Court's ruling on Defendant's Rule 37 motion to preclude reference at closing to any alleged total number of times Plaintiff and/or the class members had their rights violated, Plaintiffs were only able to argue 45,600 violations to the jury. RT Vol. 5, at 1367:6-18. The jury, in turn, found that BNSF had committed 45,600 reckless violations – the exact, and highest, number that Plaintiffs' counsel was able to argue given the Court's ruling. That number, however, undercounts the undisputed evidence. As explained above, the evidence of three captures per class member through the AGS registration process was undisputed.

"A motion to alter or amend a judgment under Rule 59(e) may be granted to correct a manifest error of law or fact." *Duran v. Town of Cicero, Ill.,* 653 F.3d 632, 642 (7th Cir. 2011) (citing *Harrington v. City of Chicago,* 433 F.3d 542, 546 (7th Cir. 2006)). Here, the jury's verdict reflected in the Judgment includes only 33% (at the very most) of the statutory damages mandated by the legislature in Section 20 of BIPA. The jury plainly found that BNSF recklessly violated BIPA every time it collected a biometric identifier or biometric information from a class member. The undisputed evidence established BNSF collected a minimum of three biometrics from each class member. Accordingly, the Judgment should be amended to reflect an amount equal to the statutory damages ($5,000.00) times each

violation established by the undisputed evidence (136,800). That number is

$684,000,000.00[3]

Duran is directly on point, albeit in reverse. In Duran, the verdict form obviously and mistakenly led the jury into awarding double recovery for 13 plaintiffs. The defendant filed a motion to amend the judgment, which the district court denied. The Seventh Circuit reversed, holding, "A judgment that can be read to allow a plaintiff to recover twice for the same injury contains a manifest error of law. The Town's Rule 59(e) motion proposed nothing more than an obvious fix for a glaring double-recovery problem with the judgment." Duran, 653 F.3d at 642.

In other words, Duran found a manifest error when the judgment misstated the damages by a factor of two; the same result is appropriate here, where the judgment misstates the damages by a factor of three. It is obvious that the jury believed two things: (1) BNSF committed a reckless violation every time it collected biometrics; and (2) the maximum number of violations it could find was 45,600, notwithstanding the evidence that BNSF had actually collected 136,800 biometrics. As in Duran, the jury's confusion on this point is understandable (due to the limitations placed on Plaintiffs' closing argument), and as in Duran, Rule 59(e) provides an obvious fix: amend the judgment so the amount of the award reconciles the jury's findings with the undisputed evidence. Failing to do so would result in a manifest error of law, i.e., BNSF would be obligated to pay only a fraction of the statutory damages mandated by the legislature and proved at trial.

---

[3] The same relief is also appropriate under Rule 50(b). Plaintiffs raised the undisputed evidence of three scans per driver in their Rule 50(a) motion for judgment as a matter of law, while at the same time recognizing that the Court had already ruled on the "multiple scans" issue in connection with BNSF's Rule 37 motion. RT Vol. 5-A at 1314:13-15. Accordingly, and in the alternative, Plaintiffs request that the Court enter a judgment awarding statutory damages of $684,000,000 as a matter of law pursuant to Rule 50(b).

## C. The Judgment Should Be Further Amended To Include Prejudgment Interest

Rule 59(e) is also the appropriate mechanism to seek an award of prejudgment interest. *See Sterling Nat'l Bank v. Block,* No. 16 C 9009, 2019 WL 5085715, at *1-3 (N.D. Ill. Oct. 10, 2019)*, aff'd and remanded,* 984 F.3d 1210 (7th Cir. 2021) (quoting *Chicago Imp., Inc. v. Am. States Ins. Co.,* No. 09 CV 2885, 2016 WL 4366494, at *2 (N.D. Ill. Aug. 16, 2016)) (rejecting argument that request for prejudgment interest in Rule 59(e) motion was untimely where movant had sought prejudgment interest in its counterclaim).

In a diversity case such as this,[4] the Court must apply Illinois law in evaluating a request for prejudgment interest. *Travelers Ins. Co. v. Transp. Ins. Co.,* 846 F.2d 1048, 1053 (7th Cir. 1988). Illinois courts routinely awarded prejudgment interest in suits in which the plaintiff had won a judgment for statutory damages. *See, e.g., Boyd v. United Farm Mut. Reinsurance Co.,* 231 Ill. App. 3d 992, 1000-01, 596 N.E.2d 1344, 1349-50 (1992) (awarding prejudgment interest on statutory damages because "[t]o hold otherwise would allow the defendant to profit from its capricious acts"); *Millers Mut. Ins. Ass'n of Illinois v. House,* 286 Ill. App. 3d 378, 387-88, 675 N.E.2d 1037, 1044 (1997) (affirming prejudgment interest award on $25,000 statutory damage assessment).

Illinois recognizes a rate of 5% rate for prejudgment interest. *See, e.g., Kehoe v. Wildman, Harrold, Allen and Dixon*, 387 Ill. App. 3d 454, 472-73, 899 N.E.2d 1177, 1192-93 (2008) (utilizing 5% rate in 815 ILCS 205/2 to affirm award of prejudgment interest). Based on a 365-day year, daily interest on $684,000,000 is $93,698. As of the date of this filing, 1,314 days have passed since the complaint was filed; accordingly, the Judgment

---

[4] See R.1 at 3 (removing case on basis of diversity jurisdiction).

should be amended to reflect an award of $123,120,000 in prejudgment interest, for a total

award of $807,120,000.[5]

## II. Plaintiffs' Motion for Partial New Trial on Issue of Total Number of Violations in Excess of Three per Class Member

Rule 59(a) authorizes a new trial on the grounds that "the verdict is against the

weight of the evidence, the damages are excessive or insufficient, or if for other reasons the

trial was not fair to the moving party." *Briggs v. Marshall,* 93 F.3d 355, 360 (7th Cir. 1996)

(quoting *Winger v. Winger,* 82 F.3d 140, 143 (7th Cir. 1996)). As stated above, Plaintiffs do

not seek a new trial on any of the liability, intent, or class size issues the jury already

decided. Instead, Plaintiffs seek a partial new trial, which is permissible if "it clearly appears

that the issue to be retried is so distinct and separable from the others that a trial of it alone

may be had without injustice." *Gasoline Products Co. v. Champlin Refining Co.,* 283 U.S.

494, 500 (1933); *McClain v. Owens-Corning Fiberglas Corp.,* 139 F.3d 1124, 1128 (7th

Cir. 1998). A partial new trial can be limited to "any 'separable matter.'" *Rice v. Community

Health Ass'n,* 203 F.3d 283, 290 (4th Cir. 2000) (quoting 11 Charles Alan Wright, et al.,

Fed. Practice and Proc. 2814 (2d ed. 1995)).

For the reasons set forth below, a partial new trial limited solely to the issue of the

total number of biometrics collected (in excess of the 136,800 already established) is

appropriate. The undisputed evidence established not only that each class member's

biometrics were collected three times at registration, but again every time a class member

entered one of the railyards and had their fingerprints re-scanned  and compared to the

original biometric registration (hereafter "return violations," in contrast to the "registration

violations"). The only question that remained to be determined was how many return

violations had been committed over and above the undisputed three registration violations.

---

[5] Should the Court decide not to amend the Judgment to conform to the undisputed evidence of three violations per class member, daily interest on the $228,000,000 judgment would be $31,232, making the total prejudgment interest as of the date of this filing $41,040,000, for a total award of $269,040,000.

This "total violations" issue is sufficiently separate from the remainder of the issues determined by the jury to be separately tried. The vast majority of the exhibits and trial testimony went to liability and intent, and in particular whether BNSF could escape liability by pointing the finger at Remprex. In contrast, the "total violations" issue was the subject of only one exhibit and a summary (Ps'. Exs. 284 & 284-A), as well as less than five pages of testimony in a transcript that ultimately ran to nearly 1,500 pages.

To be clear, if the Court determines that the "total violations" issue is not sufficiently distinct from the jury's determinations as to liability and intent to be tried separately, Plaintiffs do not request a new trial. If, however, the Court does agree that the "total violations" issue amenable to a separate trial, for the following reasons the Court's ruling on BNSF's Rule 37 motion resulted in a verdict that was against the great weight of the evidence and a damages award that was grossly insufficient.

**A. The Court Should Not Have Barred Argument as to the Total Violations Because it is not a "Computation of Damages" Subject to FRCP 26(a)(1)(c)**

As an initial matter, the argument Plaintiffs' counsel was precluded from making at closing (which was based on undisputed evidence presented at trial) was not a "computation of damages." While neither Rule 26 nor the Advisory Committee notes shed any light on the meaning of "computation of damages," Black's defines "damages" as "Money claimed by, or ordered to be paid to, a person as compensation for loss or injury." Black's Law Dict. (7th Ed. 1999). Violations are not money, and Plaintiffs have found no case in which a party was sanctioned under Rule 37 for having failed to disclose something other than a monetary computation under Rule 26(a)(1)(c).

In fact, damages were not presented to the jury at all. Rather, the jury was asked to determine the factual questions of the total number of violations and whether BNSF's conduct was negligent or reckless. The jury heard evidence that the total number of violations was a multiple of at least three times for each class member, and potentially much

9

more. Yet as a result of BNSF's eleventh-hour invocation of Rule 37, Plaintiffs' counsel was reduced to arguing that the total number of violations was limited to one per class member, *i.e.,* the 45,600 distinct drivers identified by BNSF's expert. The jury found that precise number of violations, notwithstanding the undisputed evidence that the number of captures was much higher.

Rule 26(a)(1)(c) does not provide that a plaintiff is obligated to disclose every factual issue that may ultimately relate to the determination of damages. Nor does Rule 37 say that an appropriate sanction is to preclude Plaintiff from arguing to the jury the undisputed evidence of non-monetary facts undisclosed under Rule 26. For this reason alone, Plaintiffs' motion for partial new trial should be granted.

**B.      BNSF's Rule 37 Motion was Untimely**

It is well settled in the Seventh Circuit, as elsewhere, that "unreasonable delay [in bringing a motion under Rule 37] may render such a motion untimely." *Brandt v. Vulcan, Inc.,* 30 F.3d 752, 756 (7th Cir. 1994), *citing Butler v. Pettigrew,* 409 F.2d 1205, 1207 (7th Cir. 1969). Here, BNSF waited until after the evidence was already in the record. It did not invoke Rule 37 sanctions until the trial was basically over, and only hours prior to closing.

BNSF's delay is especially notable because they had a much earlier opportunity to seek exclusion under Rule 37, namely, prior to trial at the motion *in limine* stage. In fact, BNSF did raise the number of total scans in its omnibus motion *in limine*. R.173 at 8 (MIL No. 6). That motion, however, sought exclusion of evidence as to the total number of scans based solely on the oft-rejected one-and-done rule. *Id.* BNSF obviously knew at that time (as it had known since the complaint was filed) that Plaintiffs intended to present evidence of the total number of violations and seek damages based on that number. BNSF also by then knew (and had known) that Plaintiffs' initial disclosures did not include a computation of the total number of violations. But BNSF did not seek exclusion of evidence relating to the total number of scans on that basis. The Court denied the motion *in limine* that BNSF did timely bring, again rejecting application of the one-and-done rule. R. 192.

10

BNSF had yet another opportunity to raise Rule 37 when Plaintiffs offered their

Exhibit 284-A, which was a summary of the number of visits to two of the BNSF facilities

during a period in 2014. BNSF's counsel objected, stating as follows:

> I asked this today, what they're going to use it for. Effectively, they've taken 21 days of statistics and added them up. And I think what they're planning to do is they're planning to extrapolate that out and say, well, you know, 31 days in 2014, you know, and multiply it and try to have the jury think well, there's 7 million punches.
>
> This is the whole per scan issue that we have talked about during the pretrial. If that's what they're going to try to do, we have numerous objections to that, and I can go through them.

RT Vol. 2-B at 494:13-22.

Counsel then argued what the Court described as "all but about two of the rules of

evidence." RT Vol. 2-B at 499:13-15. Counsel did not argue, however, that Plaintiffs should

be excluded from arguing the number of total violations pursuant to Rule 37. This is

especially noteworthy given that the Court and both sides plainly understood that Plaintiffs'

counsel intended to argue exactly the type of extrapolation BNSF (rightly) anticipated and

was concerned about, as evidenced by this exchange:

> THE COURT: All right. So the whole question about extrapolation, I'm guessing that you're not going to ask the witness to do any extrapolating?
>
> MR. LOEVY: No math, you Honor. That's for later.
>
> THE COURT: That would be something that you're going to do through your expert or in argument or whatever?
>
> MR. LOEVY: Exactly. Not this witness.
>
> THE COURT: Okay.

(RT Vol. 2-B at 499:4-11.)[6]

---

[6] When Plaintiffs subsequently sought to move the exhibit into evidence, the Court provided BNSF's counsel with yet another opportunity to raise additional objections; once again, Defendant's counsel did not raise Rule 37. RT Vol. 2-B at 550:9-551:2.

Plaintiffs' counsel then proceeded to use Exhibit 284-A with multiple witnesses to establish that it was a fair representation of typical traffic at the two facilities and could provide a reasonable baseline for traffic at the others. RT Vol. 2-B at 553:7-554:18 (Mr. Burriss); RT Vol. 4-B, at 1124:9-1126:22 (Mr. Diebes). Having already established that BNSF collected three biometrics from each driver at registration, and another each time the driver subsequently entered the yard, all that remained was to argue to the jury what they could infer from the undisputed evidence as to the total number of violations.

Having made multiple unsuccessful attempts to exclude evidence of total violations without having once raised Rule 37, BNSF's last-minute effort to invoke the rule on the eve of closing argument was too late. Plaintiffs' counsel had already introduced the evidence into the record and was prejudiced by BNSF's failure to assert this objection.

The Seventh Circuit's opinion in *Brandt* is instructive on this point. The defendant there had claimed it did not have certain documents requested in discovery. At trial, the defendant's expert testified he had been provided with those very documents that the defendant previously had averred it did not have. At the jury instruction conference, the plaintiff sought an order pursuant to Rule 37(b)(2) awarding judgment as a matter of law due to the defendant's alleged discovery fraud. 30 F.3d at 755-56.

The Seventh Circuit held that the Rule 37 motion, raised for the first time at the jury instruction conference, was untimely. In reaching this conclusion, the court rejected the plaintiff's claim that it had not discovered the discovery abuse until trial, expressly noting that the plaintiff "clearly possessed information indicating that defendant's discovery responses were incomplete long before trial." *Id.* at 756.

So, too, here. BNSF has known since this case was filed that Plaintiffs intended to introduce evidence of total violations at trial and seek damages based on that number. And BNSF has known since December 2019 that Plaintiffs' initial disclosures did not include a computation of the total number of scans. At the very latest, BNSF should have invoked Rule 37's exclusionary sanction when it filed its motion *in limine* which unsuccessfully

sought the exclusion (on other grounds) of the very evidence that Plaintiffs' counsel intended to argue to the jury. Under the well-settled law of this Circuit, waiting until nearly the close of proofs to do so was too late.

### C. Plaintiffs' Failure to Disclose a Computation of Total Scans was Justified or Harmless

Even if Plaintiffs were required to disclose their computation of the total number of violations pursuant to Rule 26 (they were not), and even if BNSF had timely moved to exclude any reference to the total number of violations (it did not), BNSF's Rule 37 motion should still have been denied because Plaintiffs' non-disclosure was justified or harmless.

The Court's discretion in determining whether Plaintiffs' non-disclosure was justified or harmless is guided by the following factors: "(1) [T]he prejudice or surprise to the party against whom the evidence is offered; (2) the ability of the party to cure the prejudice; (3) the likelihood of disruption to the trial; and (4) the bad faith or willfulness involved in not disclosing the evidence at an earlier date." *David v. Caterpillar, Inc.,* 324 F.3d 851, 857 (7th Cir. 2003). Applied here, each of these factors militates that granting BNSF's motion was an abuse of the Court's discretion.

As to the first factor, BNSF has known since the complaint was filed that Plaintiffs sought recovery solely on the statutory damages per violation. R.1 at 9, R.18 at 10. Plaintiffs on multiple occasions throughout the litigation advised BNSF of their intent to seek per violation damages. *See, e.g.,* Exhibit C (email correspondence dated 11/12/2020). BNSF's own expert testified to the fact that BNSF collected biometrics from three fingers of each driver at registration. *See* Exhibit D (Kalat Dep. at 36:8-22). As to the total number of violations, on April 20, 2022, Plaintiffs provided an estimate very similar to what counsel ultimately attempted to argue nearly six months later at trial. *See* Exhibit E (4/20/22 Mediation position letter). Simply put, BNSF cannot plausibly claim to have been "surprised" by Plaintiffs' proposed argument regarding the total number of violations.

At the pre-closing discussion of BNSF's belated motion, the Court found that the mediation position letter was too late because it was after discovery closed, and thus BNSF was prejudiced. But this reasoning runs headlong into the second factor: the ability of the party to cure the prejudice. Defendant had more than four months after the mediation statement to cure any prejudice, and it could have done so easily. First and most obviously, it could have analyzed the documents and its own records to determine the total number of violations. The reason BNSF chose not to do so is fairly obvious: they knew if they came up with their own "total violations" number it likely would have exceeded whatever conservative estimate Plaintiffs intended to proffer, as is what occurred with respect to the number of class members. Alternatively, BNSF could have sought to re-open discovery for the limited purpose of obtaining additional information as to Plaintiffs' calculation. It did not do so. In fact, BNSF did not do anything to try to cure the alleged prejudice, instead waiting until the day before closing argument to raise the issue with the Court.

As to any "likelihood of disruption to the trial," the only disruption was BNSF's 11th-hour filing of the motion itself. The trial was already over. Plaintiffs intended to do nothing more than argue during closing what the undisputed evidence at trial had already established: each class member had biometrics collected from three fingers at registration and thereafter every time they returned to a BNSF railyard, all without express written consent. At that point, it would have been left to the jury to ascertain the total number of violations based on the undisputed evidence. Instead, it was the jury's ability to do so that was "disrupted" by BNSF's belated invocation of Rule 37.

The fourth factor also weighed in favor of denial of BNSF's motion. There was no suggestion that Plaintiffs' counsel engaged in bad faith or willfulness in not disclosing their argument as to total number of violations at an earlier date; to the contrary, Plaintiffs' counsel had disclosed that number (or a close approximation) nearly six months before trial, and then acted consistently throughout trial.

On similar facts, district courts routinely decline to use Rule 37 to sanction nondisclosure under Rule 26(a)(1)(c). *See, e.g., Smith v Fam. Video Movie Club, Inc.,* No. 10 C 1773, 2015 WL 1542663, at *6-7 (N.D. Ill. Mar. 31, 2015) (denying Rule 37(c)(1) motion to exclude testimony as to damages because plaintiffs' delayed disclosure was not in bad faith and thus there was no surprise or prejudice arising from delay in calculating exact amount of damages); *Malik v. Falcon Holdings, LLC,* No. 10 C 3451, 2011 WL 6841532, at *3-4 (N.D. Ill. Dec. 29, 2011) (permitting damages evidence on reply to summary judgment because defendant "'save[d]' this issue for summary judgment in the hopes of prevailing in what otherwise appears to be a case fraught with disputed issues of material fact"). This is particularly true in cases where the undisclosed damages are statutory liquidated damages, for which defendants (like BNSF in this case) are plainly on notice. *Adams v. City of Kansas City, Missouri,* No. 19-CV-00093-W-WBG, 2022 WL 210385, at *8-9 (W.D. Mo. Jan. 24, 2022) (excusing failure to disclose calculation of liquidated damages because the amount "is set by statute"); *Ellert v. Chipotle Mexican Grill, Inc.,* No. 1:07CV026, 2008 WL 11351569, at *2 (S.D. Ohio Dec. 16, 2008) (allowing evidence of non-disclosed liquidated damages because "the statute ... clearly sets forth that liquidated damages shall be awarded. Therefore, Defendant was clearly on notice").

## V.      Conclusion

For the foregoing reasons, Plaintiffs request that the Court amend the Judgment to reflect an award of $684,000.000, plus prejudgment interest of $123,123,000 in prejudgment interest, for a total award of $807,120,000. Alternatively, if the Court decides not to increase the Judgment beyond the current $228,000,000, Plaintiffs seek to prejudgment interest of $41,040,000, for a total award of $269,040,000. Plaintiffs' further request a partial new trial solely limited to the issue of the total number of violations in excess of the 136,800 already established by the undisputed evidence, and only to the extent that the Court determines that the "total violations" issue is sufficiently distinct from the jury's determinations as to liability and intent to be re-tried separately.

Dated: November 9, 2022

Respectfully submitted,

By: /s/ Jon Loevy
*One of Plaintiffs' Attorneys*

Myles McGuire
Evan M. Meyers
David L. Gerbie
Brendan Duffner
MCGUIRE LAW, P.C.
55 W. Wacker Drive, 9th Fl.
Chicago, IL 60601
Tel: (312) 893-7002

Jon Loevy
Michael I. Kanovitz
Loevy & Loevy
311 N. Aberdeen St., 3rd Floor
Chicago, Illinois 60607
Tel: (312) 243-5900

*Attorneys for Plaintiff and the Certified Class*

## Certificate of Service

I hereby certify that, on November 9, 2022, I caused the foregoing *Plaintiffs' Motion for New Trial* to be electronically filed with the Clerk of the Court using the CM/ECF system. A copy of said document will be electronically transmitted to all counsel of record:

/s/ Jon Loevy