# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| RICHARD ROGERS, individually and on behalf of similarly situated individuals,<br><br>      Plaintiff,<br><br>   v.<br><br>BNSF RAILWAY COMPANY,<br><br>      Defendant. | Case No. 1:19-cv-03083<br><br>Honorable Matthew F. Kennelly |

## DEFENDANT BNSF RAILWAY COMPANY'S OPPOSITION TO PLAINTIFFS' RULE 59 MOTION TO AMEND JUDGMENT AND MOTION FOR A NEW TRIAL

# INTRODUCTION

Plaintiffs were awarded an unprecedented $228 million judgment in a case where they admit they have suffered no actual harm. Nevertheless, Plaintiffs ask the Court to *triple* that judgment or grant them a new trial solely for the purpose of seeking damages *25 times greater* than the existing $228 million judgment based on damages computations that this Court twice ruled Plaintiffs failed to timely disclose to BNSF. Plaintiffs' failure to meet their disclosure obligations is Plaintiffs' fault alone. They cannot avoid the consequences of their own lack of diligence or shift the blame to BNSF, which faced a trial by ambush until the Court granted BNSF's motion to preclude Plaintiffs from relying on these undisclosed methods. The Court's rulings were well within the bounds of its broad discretion to administer the Federal Rules of Civil Procedure, and Plaintiffs offer no basis for the Court to revisit those rulings now.

Plaintiffs also ask the Court to inflate the judgment by granting them at least $41 million in prejudgment interest—and as much as $123 million if the judgment itself is tripled, as Plaintiffs request. But Illinois law allows for prejudgment interest only in very specific circumstances that do not apply here, and it is well settled that merely defending a lawsuit does not subject a defendant to prejudgment interest in Illinois. Plaintiffs' request for prejudgment interest should be denied.

# ARGUMENT

I.  **The Court Should Not Reverse Its Prior Rulings and Grant Plaintiffs a Partial New Trial on the Total Number of Finger Scans During the Class Period**

Plaintiffs' Rule 59(a) motion for a new trial on "the issue of the total number of biometrics collected" seeks to re-litigate a straightforward discovery issue on which the Court already *twice* ruled in BNSF's favor. *See* ECF No. 236 ("Mot.") at 8. The Court's ruling was correct and well within the Court's broad discretion to "construe[], administer[], and employ[]" the Federal Rules

of Civil Procedure. Fed. R. Civ. P. 1. None of Plaintiffs' arguments to the contrary has any merit.

At trial, the Court granted BNSF's motion to preclude Plaintiffs from seeking damages based on some total number of alleged violations of BIPA that BNSF never disclosed to BNSF. The Court's ruling was a textbook application of Rule 26's disclosure requirements. Rule 26 requires both parties to timely disclose "a computation of each category of damages claimed" and "the documents or other evidentiary material" on which those computations are based. Fed. R. Civ. P. 26(a)(1)(A)(iii). Yet Plaintiffs never disclosed the total number of times they sought to prove that BNSF violated BIPA—a number that dictates the amount of statutory damages Plaintiffs can obtain—or any methodology supporting their computation of this total. Instead, on the eve of closing arguments, BNSF was left to guess at what number of finger scans Plaintiffs might argue to the jury and on what basis, resulting in potentially billions of dollars in statutory damages.

These are exactly the kind of tactics that Rules 26 and 37 are designed to avoid. The "primary rationale" for exclusion under Rule 37 "is to avoid an unfair 'ambush' in which a party advances new theories or evidence to which its opponent has insufficient time to formulate a response." *Rowe Int'l Corp. v. Ecast, Inc.*, 586 F. Supp. 2d 924, 934 (N.D. Ill. 2008) (Kennelly, J.). The first time BNSF heard Plaintiffs' number and their purported computation methodology was during argument on BNSF's Rule 37 motion *at the end of trial*, when Plaintiffs' counsel pulled out a calculator to answer the Court's question, "What's the number you're going to argue." Trial Tr. 1244:19–20, 1245:18–12:47:4. After hearing argument from both sides, the Court concluded that Plaintiffs did not satisfy their disclosure obligations under Rule 26—they did not disclose either a total number of alleged finger scans or a methodology supporting their computation—and Plaintiffs' failure was neither substantially justified nor harmless under Rule 37. *Id.* at 1258:24–

1259:16. The Court later denied Plaintiffs' motion for reconsideration after giving Plaintiffs even more time to argue their position to the Court. *Id.* at 1310:14–1313:17.

Plaintiffs now seek to undo the Court's rulings by arguing, for the first time, that the information they failed to disclose "was not a 'computation of damages'" because the alleged total number of violations of BIPA "[is] not money," and Rule 26 does not obligate a party "to disclose every factual issue that may ultimately relate to the determination of damages." Mot. 9. This argument is nonsensical because under Plaintiffs' (and the Court's) view of BIPA, the total number of statutory violations *is* the computation of damages. Plaintiffs opted to pursue BIPA's liquidated damages remedies, which provide for $1,000 in damages for "each [negligent] violation" of BIPA and $5,000 in damages for "each [intentional or reckless] violation." 740 ILCS 14/20. Pursuant to the Court's pretrial ruling (ECF No. 192), the amount of damages was simply a matter of multiplying the number of violations by $1,000 or $5,000.[1] Thus, the computation of Plaintiffs' damages depended entirely on the number of statutory violations and the methodology for calculating that number—the precise information Plaintiffs failed to disclose to BNSF. Plaintiffs' contrary interpretation is untenable and would work an end-run around Rule 26's requirements.

Plaintiffs next argue that BNSF's Rule 37 motion was untimely—an argument the Court squarely rejected at trial. Plaintiffs' motion repeats the same failed argument they made before: That because BNSF knew that Plaintiffs were planning to pursue a "per scan" damages theory, BNSF should have somehow anticipated what total number Plaintiffs were going to argue at trial and on what basis and preemptively moved in limine. *See* Mot. 10. As the Court observed at trial,

---

[1] BNSF maintains—as it argued before, during, and after trial—that damages under BIPA are discretionary, not mandatory, and must be determined by the jury, not the Court. *See* ECF No. 235 at 13–14. But Plaintiffs had a duty to disclose a computation of the damages that *they claimed* (Fed. R. Civ. P. 26), and Plaintiffs claimed statutory damages for each and every violation of BIPA.

-3-

this is "not a winning argument. That's kind of like saying they didn't tell us all the ways [we] screwed up and therefore they shouldn't be able to add more on and make other objections." Trial Tr. 1252:18–24. And Plaintiffs' assertion that BNSF should have moved sooner because it knew at a high level the *legal* theory Plaintiffs were planning to pursue is "not an apples-and-oranges comparison." *Id.* at 1254:8–9. As the Court explained, the per-scan legal theory is distinct from "the evidence that [Plaintiffs were] going to use and the number that [they were] going to come up with based on that legal theory." *Id.* at 1254:5–8.

In any event, even though the Court found that BNSF was not required to move in advance of trial, the Court also noted that "it's been clear to me from at least the time that the motions in limine were filed that [BNSF] has been complaining as loudly as it possibly could about being blindsided on the damages question." Trial Tr. 1312:20–23. As the Court pointed out, BNSF moved in limine to preclude Plaintiffs' expert, Mr. Caruso, from offering an opinion on the total number of biometric captures because it was a new, undisclosed expert opinion—and the Court granted that motion. *Id.* at 1252:18–1253:6; *see also* ECF No. 175 at 3 ("Plaintiff should not be permitted to ambush BNSF at trial with new expert opinions on subjects about which Mr. Caruso has never before opined. Mr. Caruso has never offered an opinion on the number of 'biometric captures,' and pursuant to Rule 37(c)(1) he may not do so now."). The fact that Plaintiffs then deliberately hid the ball from BNSF all the way up until closing arguments and left BNSF guessing what number and methodology Plaintiffs were going to argue (and when and through which witnesses) until BNSF had no choice but to file a motion does not make that motion untimely.

Finally, Plaintiffs claim their failure to disclose a computation of the total number of finger scans and the methodology supporting it was substantially justified or harmless. Mot. 13–15. Again, the Court already considered and twice rejected this argument. The Seventh Circuit has

made clear that under Rule 37(c), "the sanction of exclusion is automatic and mandatory unless the sanctioned party can show that its violation of Rule 26(a) was either justified or harmless." *David v. Caterpillar, Inc.*, 324 F.3d 851, 857 (7th Cir. 2003) (citation and internal quotation marks omitted). Plaintiffs offered no viable justification for their undue delay, and the Court found none. Indeed, Plaintiffs' counsel admitted at trial that Plaintiffs had been thinking about their damages computations for "a couple of *years*," and had no "responsive answer" to the Court's question why "nobody put in any kind of a 26(a) disclosure" describing that computation. Trial Tr. 1255:13–17 (emphasis added). The Court also found that Plaintiffs' failure to comply with Rule 26 was not harmless "because, you know, this goes from being a case of 44,000 or whatever times a thousand or times 5,000, which, to be clear, is a very, very significant number to begin with, to being something that's literally 25 times greater than that." *Id.* at 1258:24–1259:15.

The Court had "broad discretion" to reach these conclusions, *David*, 324 F.3d at 857 (citation and internal quotation marks omitted), and Plaintiffs' third attempt to persuade the Court otherwise fares no better than their first two failed attempts. Like they did at trial, Plaintiffs point to their mediation position letter from April 2022 that claimed they were entitled to "per scan" damages. Mot. 13. But as the Court found at trial, that letter was "post-summary judgment," "post the close of discovery," "post-class certification," and "it's a mediation letter. It's not a computation of damages for purposes of Rule 26." Trial Tr. 1312:4–7. Plaintiffs now claim that the burden was on *BNSF* to deduce from Plaintiffs' mediation letter the number and methodology that Plaintiffs were planning to rely on at trial. Mot. 14. That argument flips Rule 26 on its head. *Plaintiffs* had the burden of disclosing their damages computations under Rule 26(a), and they

admitted they had no good reason for failing to do so despite sitting on their purported computation methodology for *years*.[2] *See* Trial Tr. 1255:13–17.

The cases Plaintiffs cite in their motion are inapposite. In *Adams v. City of Kansas City*, No. 19-CV-00093-W-WBG, 2022 WL 210385 (W.D. Mo. Jan. 24, 2022), for example, the court found the plaintiffs' failure to comply with Rule 26 substantially justified or harmless because plaintiffs disclosed their unpaid overtime damages computations in their summary judgment motion, and the liquidated damages plaintiffs sought were "set by statute" providing for liquidated damages "the same as the amount of unpaid overtime compensation." *Id.* at *8. Similarly, in *Ellert v. Chipotle Mexican Grill, Inc.*, No. 1:07cv026, 2008 WL 11351569 (S.D. Ohio Dec. 16, 2008), the liquidated damages amount was by statute equal to the amount of compensatory damages, which the plaintiff had properly disclosed. *Id.* at *2–3. And in *Smith v. Family Video Movie Club, Inc.*, No. 11 C 1773, 2015 WL 1542663 (N.D. Ill. Mar. 31, 2015), the plaintiffs submitted an expert report before trial that disclosed their damages calculations. *Id.* at *6–7. Plaintiffs made no such disclosure of their damages computations here, and the total amount of statutory damages depended entirely on the computations and methods that Plaintiffs failed to provide.

Because the Court properly barred Plaintiffs from arguing a computation of the total number of finger scans that Plaintiffs never disclosed to BNSF, and there is no basis to disturb the

---

[2] As BNSF argued at trial, even if Plaintiffs had properly disclosed their computation methodology, it would not be admissible under Federal Rule of Evidence 702. The methodology Plaintiff were hoping to rely on at trial apparently depended on extrapolating some total number of finger scans from a small, cherry-picked subset of data from three weeks during the nearly six-year class period. This is precisely the type of unscientific extrapolation and non-random sampling that the Seventh Circuit has excluded as unreliable under Rule 702 and the *Daubert* standard. *See* ECF No. 215 at 4–5. It also raises serious concerns under the Rules Enabling Act and would deprive BNSF of its right to present individualized defenses to the number of scans for each class member. *Id.* at 6.

Court's reasoned application of Rules 26 and 37(c), the Court should deny Plaintiffs' motion for a new trial on the total number of finger scans during the class period.

II. **The Court Should Not Triple the Judgment to Include Damages Based on the Three-Finger Computation the Court Already Ruled Plaintiffs Failed to Timely Disclose**

In the alternative, Plaintiffs move the Court under Rule 59(e) to *triple* the $228 million judgment to $684 million because, in Plaintiffs' view, the evidence at trial showed that each class member scanned three different fingers when they registered at a BNSF facility. But the Court already precluded Plaintiffs from seeking damages based on this three-finger computation, holding that Plaintiffs failed to timely disclose it to BNSF under Rule 26. The Court declined to reverse its initial ruling when Plaintiffs moved for reconsideration during trial, and there is no basis to revisit that sound determination again now.

As explained above, at trial BNSF moved to preclude Plaintiffs from seeking damages based on arguments about the "total number" of finger scans during the class period because Plaintiffs never disclosed either a total number or a methodology supporting their computation, as Rule 26 requires. After the Court granted BNSF's motion and ruled that Plaintiffs could only argue that the total number of BIPA violations is the number of unique class members, Plaintiffs' counsel stated, "[b]ut there were three fingerprints each time, so that's the argument we're going to make." Trial Tr. 1259 at 21–22. BNSF objected because Plaintiffs never disclosed that computation under Rule 26 either—until that moment, BNSF was "not aware that [Plaintiffs] were going to say that . . . one collection but done on three fingers could constitute three different violations." *Id.* at 1260:15–17. The Court heard additional argument from both sides and ruled that Plaintiffs could not rely on this three-finger damages computation because they never properly disclosed it. As the Court explained, the "only thing" Plaintiffs' counsel could point to in the record was a passing reference in an expert report "that says many drivers have three or more

fingerprints in the system." *Id.* at 1300:11–16. The Court correctly held that this "one line" in the expert report was not a sufficient disclosure under Rule 26. *Id.* at 1301:15–17. The Court then reaffirmed its ruling in denying Plaintiffs' motion for reconsideration. *Id.* at 1310:14–1313:17.

For the reasons explained above, the Court's ruling was a straightforward application of Rules 26 and 37—and Plaintiffs cannot seriously argue otherwise. Instead, Plaintiffs contend the judgment should be amended because the evidence at trial "showed that each of those class members had fingerprints and/or biometric templates captured from *three* fingers when they registered using the AGS system," and thus the jury's finding of 45,600 BIPA violations "undercounts the undisputed evidence" by a factor of three. Mot. 2, 6. But that misses the point entirely. Even if the evidence had supported a finding that each and every class member scanned three different fingers when they registered (which it did not, as Plaintiffs put in no such evidence), the Court barred Plaintiffs from seeking damages based on this three-finger computation.[3]

The *Duran* case Plaintiffs cite is inapposite because it did not involve a failure to comply with Rule 26 disclosure obligations. The Seventh Circuit held that a judgment that improperly allowed double recovery for the same injury must be amended because it was based on a manifest error of law. *Duran v. Town of Cicero*, 653 F.3d 632, 642–43 (7th Cir. 2011). That is not at all the situation here, where the jury's finding of 45,600 BIPA violations—the number of unique class members—was consistent with the Court's ruling that Plaintiffs were barred from pursuing their

---

[3] If Plaintiffs *had* timely disclosed their three fingers damages theory, BNSF also would have argued that damages under BIPA do not accrue for each individual finger scanned during a single collection event. No court has endorsed that novel theory, and it would be absurd to require a separate written disclosure and informed written consent for each finger scanned at the same time. *See Hall v. Henn*, 802 N.E.2d 797, 799 (Ill. 2003) (in interpreting Illinois statutes, courts "presume that the General Assembly did not intend an absurd, inconvenient, or unjust result").

theory that each of the class members scanned three different fingers. This is not a matter of jury "confusion." Mot. 7. The Court made a ruling, and the judgment is consistent with that ruling.

For the same reasons, there is no merit to Plaintiffs' assertion that failing to triple the judgment "would result in a manifest error of law, *i.e.*, BNSF would be obligated to pay only a fraction of the statutory damages mandated by the legislature and proved at trial." Mot. 7. BIPA sets statutory amounts that a prevailing party may recover for violations of the statute (740 ILCS 14/20); it does not "mandate[]" any particular total award that Plaintiffs think the evidence could support or absolve Plaintiffs of their disclosure obligations under the Federal Rules of Civil Procedure. Mot. 6. The Court should deny Plaintiffs' motion to triple the $228 million judgment.[4]

## III. Plaintiffs Are Not Entitled To Prejudgment Interest

Plaintiffs also move the Court to amend the judgment under Rule 59(e) to include prejudgment interest at a 5% rate, in an amount totaling more than $41 million at a *minimum*. Mot. 8 & n.5. But Plaintiffs plainly are not entitled to this relief.

Under Illinois law, "[i]t is well settled that interest is not recoverable absent a statute or agreement providing for it." *Tri-G, Inc. v. Burke, Bosselman & Weaver*, 856 N.E.2d 389, 412 (Ill. 2006) (citing *City of Springfield v. Allphin*, 413 N.E.2d 394 (Ill. 1980)). The Illinois Interest Act, 805 ILCS 205/2, governs awards of prejudgment interest. *See Prignano v. Prignano*, 934 N.E.2d 89, 108 (Ill. App. 2d Dist. 2010) ("In actions at law, prejudgment interest is recoverable only under the Interest Act or if the parties' agreement provides for it").

The Interest Act enumerates the *exclusive* circumstances in which prejudgment interest is permitted: "Creditors shall be allowed to receive at the rate of five (5) per centum per annum for

---

[4] In addition to moving to alter or amend the judgment under Rule 59(e), Plaintiffs alternatively request that, for the same reasons, "the Court enter a judgment awarding statutory damages of $684,000,000 as a matter of law pursuant to Rule 50(b)." Mot. 6 n.3. The Court should deny this request and decline to triple the judgment for the same reasons discussed above, *supra* at 7–9.

all moneys after they become due [1] on any bond, bill, promissory note, or other instrument of writing; [2] on money lent or advanced for the use of another; [3] on money due on the settlement of account from the day of liquidating accounts between the parties and ascertaining the balance; [4] on money received to the use of another and retained without the owner's knowledge; and [5] on money withheld by an unreasonable and vexatious delay of payment." 805 ILCS 205/2.

None of these circumstances applies here, and Plaintiffs do not even argue otherwise—nor could they. This case does not involve any "instrument of writing," any "money lent or advanced for the use of another," any "money due on the settlement of account," or any money "retained without the owner's knowledge." 805 ILCS 205/2. Nor has there been an "unreasonable and vexatious delay of payment." *Id.* Under the Interest Act, "[n]either an honest dispute regarding the existence of a legal obligation nor the defense of a lawsuit can be regarded as unreasonable and vexatious delays of payment." *Pietka v. Chelco Corp.*, 437 N.E.2d 872, 883 (Ill. App. 1st Dist. 1982) (denying pre-judgment interest where "no action of [defendant], other than the defense of this suit, occasioned the delay in payment"). Instead, "the claimant must show that his opponent has thrown obstacles in the way of collection or has otherwise induced the creditor to delay collection proceedings or such claimant must establish conduct on the part of his opponent which is tantamount to fraud." *Id.* (internal citations omitted).

Plaintiffs have not met this standard here. Instead, they blithely assert that "Illinois courts routinely award[] prejudgment interest in suits in which the plaintiff had won a judgment for statutory damages." Mot. 7. But that misstates the law. Both cases Plaintiffs cite were bad-faith insurance claims in which vexatious conduct by the defendant is an essential aspect of the claim. The courts in those cases affirmed awards of prejudgment interest based on factual findings that the defendant's conduct was unreasonable and vexatious. In *Boyd v. United Farm Mutual*

*Reinsurance Co.*, 596 N.E.2d 1344 (Ill. App. 5th Dist. 1992), the court affirmed an award of prejudgment interest because the jury found vexatious and unreasonable behavior—but it also emphasized "that an honest dispute as to the existence of a legal obligation will not result in unreasonable and vexatious delays which would permit recovery of prejudgment interest." *Id.* at 1349–50. And in *Millers Mutual Insurance Ass'n of Illinois v. House*, 675 N.E.2d 1037 (Ill. App. 5th Dist. 1997), the court affirmed an award of prejudgment interest based on a finding of bad faith delay in payment where the insurer *admitted there was no dispute* about the insured's coverage, ignored the insured's arbitration demand, and filed a lawsuit knowing that the insured would have to wait for its resolution to collect the funds the insurer knew it owed her. *Id.* at 1043–45. Both of these cases confirm that prejudgment interest is not available to Plaintiffs here.

This outcome is also consistent with federal law, which would not entitle Plaintiffs to receive prejudgment interest either. The Seventh Circuit has squarely held that where, as here, "uninjured plaintiffs have been awarded statutory damages, prejudgment interest would be inappropriate." *Matter of Marshall*, 970 F.2d 383, 386 (7th Cir. 1992). And, as the Seventh Circuit has explained, prejudgment interest is also unavailable where the legislature sets liquidated damages amounts like those Plaintiffs chose to pursue here. Those amounts reflect the legislature's judgment on the appropriate amount of damages to compensate a plaintiff—and "[t]here is no reason to think that adding prejudgment interest improves upon the accuracy of [the legislature's] rough guess." *Id.* at 385–86.

Because Plaintiffs are not entitled to prejudgment interest, the Court should deny their motion to amend the judgment to include prejudgment interest.

## **CONCLUSION**

For the foregoing reasons, the Court should deny Plaintiffs' motion to amend the judgment and their alternative motions for a new trial or for judgment as a matter of law.

Dated: January 27, 2023

Respectfully submitted,

**BNSF RAILWAY COMPANY**

By: */s/ Elizabeth Herrington*
    By Its Attorneys

Elizabeth Herrington
Tinos Diamantatos
Gregory Fouts
Alborz Hassani
Benjamin Kabe
MORGAN, LEWIS & BOCKIUS LLP
110 North Wacker Drive, Suite 2800
Chicago, IL 60606-1511
Telephone: +1.312.324.1000
Facsimile: +1.312.324.1001
beth.herrington@morganlewis.com
tinos.diamantatos@morganlewis.com
gregory.fouts@morganlewis.com
al.hassani@morganlewis.com
benjamin.kabe@morganlewis.com

Andrew S. Tulumello
Claire L. Chapla (*admitted pro hac vice*)
Robert Niles-Weed (*admitted pro hac vice*)
WEIL, GOTSHAL & MANGES LLP
2001 M Street, NW, Suite 600
Washington, DC 20036
Telephone: +1.202.682.7000
drew.tulumello@weil.com
claire.chapla@weil.com
robert.niles-weed@weil.com

*Counsel for Defendant BNSF Railway Company*

# CERTIFICATE OF SERVICE

      I, Elizabeth Herrington, certify that on January 27, 2023, I caused a copy of the foregoing to be served upon all counsel of record via the Court's CM/ECF system.

                                                   */s/ Elizabeth Herrington*
                                                   Elizabeth Herrington