**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

RICHARD ROGERS, individually and on behalf of similarly situated individuals,

Plaintiff,

v.

BNSF RAILWAY COMPANY,

Defendant.

Case No. 1:19-cv-03083

Honorable Matthew F. Kennelly

---

**DEFENDANT BNSF RAILWAY COMPANY'S REPLY IN SUPPORT OF RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW AND MOTION FOR A NEW TRIAL OR TO ALTER OR AMEND JUDGMENT**

---

## INTRODUCTION

The eye-popping $228 million damages award in this case—in which not a single person was actually harmed—is unprecedented. Each truck driver entering BNSF's intermodal facilities of course understood when they held their finger up to a scanner that they were providing a scan of their finger. Plaintiff introduced ***no*** evidence that he—or any class member—suffered real-world harm as a result. BNSF nonetheless has been punished by an astronomical verdict comprised entirely of aggregated statutory damages. The award is factually unsupported, procedurally improper, preempted, and the byproduct of legal error.

Plaintiff suggests that ample evidence supports the jury's verdict that BNSF acted "recklessly" or "intentionally." Not so. The ***undisputed*** evidence at trial showed that BNSF contracted and paid millions of dollars to Remprex, a third-party expert, which took explicit responsibility for complying with all laws governing its work, including any collection of biometrics. PX 13, § 6(e); *see also, e.g.*, Trial Tr. 333:22–334:12, 339:3–6, 346:23–347:1, 872:5–874:6, 900:10–13. The ***undisputed*** evidence further showed that BNSF ***never*** knew that Remprex was not obtaining informed written consents or was otherwise not complying with BIPA. *Id.* at 354:3–8, 469:10–12. On these undisputed facts, no jury could lawfully find (as this Court's instructions required) that BNSF "intended to violate the law" or was "utterly indifferent to the plaintiffs' rights," much less that BNSF did so ***45,600 times***. *Id.* at 1330:3–13.

The outsized award also does violence to the plain text of BIPA, which unambiguously states that a prevailing party **"*may*"** recover damages, not that it must. The Seventh Circuit, interpreting nearly identical language in the Federal Wiretap Act, held that when a statute says statutory damages "may" be awarded at one of two amounts, "whichever is [] greater," it also "allows district judges ***not*** to award damages" at all, because "may" means "discretion, not

command." *DirecTV, Inc. v. Barczewski*, 604 F.3d 1004, 1006–07 (7th Cir. 2010) (emphasis added). Plaintiff does not ***mention*** the Seventh Circuit's decision in *DirecTV* once. Opp. 1–25.

Plaintiff also fails to engage meaningfully with BNSF's other arguments, which warrant relief from the Court. The Court should grant judgment as a matter of law or a new trial to BNSF, or at a minimum should substantially reduce the $228 million damages award.

## ARGUMENT

### I. There Was Insufficient Evidence To Support A Finding Of Recklessness Or Intent.

The undisputed evidence showed that BNSF hired Remprex as an expert third-party independent contractor to run its Auto-Gate System and that Remprex agreed to comply with all applicable laws. The undisputed evidence also showed that BNSF ***never*** knew that Remprex failed to obtain written consents from class members. *See* Trial Tr. 354:3–8. On this record, it is impossible to sustain a finding that BNSF acted recklessly (i.e., "consciously disregarded or was utterly indifferent to the plaintiffs' rights") or intentionally (i.e., "intended to violate the law") and thus that damages should be quintupled. Trial Tr. 1330:3–13 (Jury Instructions); *see* 740 ILCS 14/20.

On recklessness, Plaintiff strays beyond facts and permissible inferences, and stitches together isolated points that come nowhere close to supporting scienter. Recklessness requires "highly unreasonable [action,] not merely simple, or even inexcusable negligence, but an extreme departure from the standards of ordinary care, and which presents a danger … that is either known to the defendant or is so obvious that the actor must have been aware of it." *Sundstrand Corp. v. Sun Chem. Corp.*, 553 F.2d 1033, 1045 (7th Cir. 1977); *see also Soderbeck v. Burnett County*, 752 F.2d 285, 290–91 (7th Cir. 1985) (Posner, J.) ("Ignorance of [a plaintiff's] rights" is not reckless; "careless is not reckless."). The evidence here simply is not "legally sufficient" to surmount this

high standard. *May v. Chrysler Grp., LLC*, 716 F.3d 963, 971 (7th Cir. 2013) (affirming district court's grant of JMOL where jury's recklessness finding was not supported by the evidence).

Plaintiff first posits that "BNSF acted recklessly in outsourcing its responsibility to comply with the law" to Remprex, describing Remprex as "a couple of lawyer-less technology guys" who failed to "adequately encrypt the biometric data that it collected." Opp. 8, 12–13. But the undisputed evidence showed that Remprex was an expert in its industry, and an outgrowth of the established technology company Nascent that had developed the software used to collect truck drivers' information. *See* Trial Tr. 337:25–338:25, 475:8–10, 405:5–406:4, 1153:7–1154:24. Remprex was far from "lawyer-less." It had sophisticated outside counsel from multiple large law firms, including Dickinson Wright and Taft. *See id.* at 1183:2–25. Remprex also adequately maintained the security of the data it collected. *Id.* 465:20–24, 1019:23–1020:9.

Even if BNSF should have known to retain a different vendor, there is no evidence that by hiring Remprex BNSF acted recklessly or intentionally. To the contrary, BNSF contractually required Remprex to "keep abreast of" and comply with "current and new laws"—including any changes or developments in the law—that apply to the specialized security-related services that Remprex was providing BNSF. PX 13, § 6(e); *see also, e.g.*, Trial Tr. 333:22–334:12, 339:3–6, 872:5–874:6, 900:10–13. ***And BNSF paid Remprex tens of millions of dollars for its services during the class period.*** *Id.* at 293:25–294:12. Retaining a sophisticated vendor and paying that vendor millions of dollars to ensure compliance with the law is not "reckless" or anything close to an "utter[] indifferen[ce] to the plaintiff's rights." *Id.* at 1330:3–13. No evidence suggests that BNSF intended to violate or consciously disregarded the rights of Plaintiff or the class by retaining and paying steeply for a third-party expert's services.

Plaintiff also defends the jury's finding of intent or recklessness because "BNSF operates in a highly regulated industry" and "has a fulsome legal department," and "BIPA was enacted all the way back in 2008" and "there are biometrics laws in other states in which BNSF operates." Opp. 9–10. None of that generalized and irrelevant evidence supports a finding of intent or recklessness with respect to the collection of any finger scans from these class members without obtaining written consent. *See, e.g.*, *In re Testosterone Replacement Therapy Prod. Liab. Litig.*, No. 14 C 1748, 2019 WL 652217, at *9 (N.D. Ill. Feb. 14, 2019) ("No reasonable jury, however, could conclude from general testimony about [a company's] business practices that" specific actions were taken.), *aff'd sub nom Med. Mut. v. AbbVie Inc.*, 784 F. App'x 457 (7th Cir. 2019). To the contrary, the undisputed evidence from Remprex's own employees showed that ***BNSF did not know*** Remprex was not providing notice and collecting consents. *See* Trial Tr. at 354:3–8 (Remprex "never told anyone at BNSF [that] Remprex employees were not … obtaining [informed] consent.").

Plaintiff points to a single November 2016 email from BNSF employee Doug Gruben to various Remprex employees asking how biometric data was being stored, which Plaintiff claims "certainly suggests that BNSF knew of BIPA." Opp. 9. Yet in response to this email, Remprex told Mr. Gruben that Remprex was ***not*** storing images of driver fingerprints ***at all***. *See* DX 15 at 1. And there was no testimony or other evidence suggesting that BNSF knew that ***Remprex was not obtaining consents*** or that Remprex made BNSF aware that it was not collecting consents—which is the gravamen of the statutory violation. Plaintiff also points to an internal BNSF policy for BNSF employees modified in 2017 to include certain biometric identifiers on a list of personally identifiable information. *Id.* at 9 n.3. Again, though, this internal policy for BNSF employees cannot rationally show that BNSF was aware that ***Remprex was not complying with***

***its BIPA obligations*** for the truck drivers Remprex was registering at BNSF's intermodal facilities. And that's it. Plaintiff cites no other evidence other than his own lawsuit in 2019 to prove that BNSF acted intentionally or recklessly. That falls far short of a viable claim for reckless or intentional violations of the statute.

Plaintiff hangs his entire argument for enhanced damages on BNSF's actions ***after*** this lawsuit was filed. Whatever BNSF's post-suit conduct was, relying on it as evidence of BNSF's state of mind at the beginning of the class period five years earlier is a stretch no reasonable jury could make. Nor does BNSF's post-suit conduct support a finding of intent or recklessness even for the short portion of the class period where it is relevant (April 2019 to January 2020). Plaintiff argues that BNSF intentionally or recklessly violated BIPA from April 2019 to January 2020 because upon being sued, BNSF did not immediately shut down all of the scanners. Opp. 10–11. But "mere allegations of a complaint are not evidence" of wrongdoing that BNSF was required to accept at face value. *Tibbs v. City of Chicago*, 469 F.3d 661, 663 n. 2 (7th Cir. 2006). And as soon as Plaintiff's lawsuit was filed, BNSF ***did*** immediately turn to Remprex, and both parties' legal teams worked to determine whether Remprex was complying with BIPA's procedures and to make it right if not. *See* Trial Tr. 578:6–15, 600:21–601:8. BNSF later sued Remprex for indemnification and discontinued the use of biometrics. *Id.* at 599:6–17, 601:9–602:15. These activities do not amount to "an extreme departure from the standards of ordinary care." *Sundstrand*, 553 F.2d at 1045. The Court should grant judgment as a matter of law to BNSF or grant a new trial limited to mental state; at a minimum, it should reduce the damages award to no more than $45.6 million. *See* 740 ILCS 14/20.

## II. Plaintiff Ignores On-Point Seventh Circuit Precedent Confirming That Damages Are Discretionary, Not Mandatory.

In *DirecTV, Inc. v. Barczewski*, 604 F.3d 1004, 1007 (7th Cir. 2010), the Seventh Circuit joined several other circuits in holding that the Federal Wiretap Act—which provides that a party "may" recover a measure of actual damages *or* a prescribed amount of statutory damages "whichever is greater"—"allows district judges not to award damages." BNSF relied on this case extensively (Mot. 13–14), yet Plaintiff says nothing about it.

Instead of engaging with Seventh Circuit authority, Plaintiff suggests that the word "may" in the phrase "a prevailing party ***may recover*** … liquidated damages" refers only to subsection (4) of BIPA Section 20 on injunctive relief. *See* Opp. 24; 740 ILCS 14/20. But this argument is a non-starter and, if anything, supports BNSF's position. Subsection (4) on injunctive relief says that this other relief can be awarded "as the State or federal court ***may*** deem appropriate." 740 ILCS 14/20(4) (emphasis added). Subsection (4) thus itself already makes clear that this "other relief" is discretionary, and the word "may" in the sentence of Section 20 preceding subsections (1) through (4) is unnecessary to accomplish that task. *See People v. Wick*, 107 Ill. 2d 62, 67 (1985) ("The rule of statutory construction followed by this court is that the presence of surplusage will not be presumed."). The term "may" therefore logically must refer to something ***other than*** the "other relief" in subsection (4), which means it can only refer to the award of ***damages and fees*** in subsections (1), (2), and (3). Moreover, by admitting that the term "may" in the first sentence makes injunctive relief in subsection (4) discretionary, Plaintiff effectively concedes that the word "may" also must make damages discretionary, because the same word cannot have two different meanings depending on which subsection applies. *See* 740 ILCS 14/20 ("A prevailing party ***may*** recover … damages … and … other relief") (emphasis added). If the term "may" makes "other relief" discretionary, it makes the award of statutory damages discretionary, too. *See Reno*

*v. Bossier Par. Sch. Bd.*, 528 U.S. 320, 329 (2000) ("[W]e refuse to adopt a construction that would attribute different meanings to the same phrase in the same sentence, depending on which object it is modifying.").

Plaintiff also raises meritless policy arguments. Plaintiff contends the liquidated damages amounts were included in BIPA "[o]wing to the amorphous and difficult-to-quantify nature of the injury" and that asking the jury to assess damages "would have risked confusing the jury, potentially prejudicing the jury, and the possibility of a calculation error." Opp. 22. But similar concerns could have been raised with respect to the Federal Wiretap Act in *DirecTV*. And any distrust of the jury to exercise discretion in awarding damages flies in the face of Supreme Court authority tracing the long history of juries rendering statutory damage awards since the 1700s. *See, e.g.*, *Feltner v. Columbia Pictures Television, Inc.*, 523 U.S. 340, 353 (1998) (holding the Constitution requires a jury to determine statutory copyright infringement damages).

Moreover, there is a far more compelling policy argument that cuts in the opposite direction—namely, construing BIPA to permit discretion not to impose the maximum statutory damages award would help avoid the type of excessive penalties imposed here that cannot possibly be justified by the nature of the violation at issue and any resulting harm (or lack thereof). Indeed, given the serious constitutional concerns that such an award poses under the Due Process Clause and the Excessive Fines Clause, as discussed below, the canon of constitutional avoidance further militates in favor of construing BIPA not to mandate or even permit such penalties. *See United States v. Palomar-Santiago*, 141 S. Ct. 1615, 1622 (2021). The verdict cannot stand in light of the failure to instruct the jury to determine discretionary statutory damages under BIPA.

## III. The Damages Award Against BNSF Is Unconstitutional.

The Court awarded Plaintiff a whopping $228 million in damages when there was no proof of any actual harm resulting from the failure to obtain written consent for finger scans that every

class member necessary consented to by placing their fingers on the scanners. Plaintiff cannot escape the straightforward conclusion that this windfall is "obviously unreasonable" and "wholly disproportioned" to the alleged offense. *St. Louis, Iron Mountain & S. Ry. Co. v. Williams*, 251 U.S. 63, 67 (1919). Recognizing the award is excessive under the relevant constitutional standards, Plaintiff claims—for the first time—that there was, in fact, actual harm, and that "[t]his lawsuit constitutes Plaintiffs' one and only chance at compensation." Opp. 14–15. Plaintiff ***admits***, however, that he did not introduce any evidence of these supposed damages. *See id.* at 14 (***"[T]here was no occasion to introduce evidence of actual damages at trial."***) (emphasis added).

Plaintiff also posits that "the increased risk of future harm is a compensable loss under BIPA." Opp. 15. But even apart from Plaintiff's admitted failure to introduce any evidence on this issue, the U.S. Supreme Court has made clear that "the mere risk of future harm, standing alone, cannot qualify as a concrete harm." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2210–11 (2021). The Supreme Court has also emphasized that even where "inaccurate or misleading information sits in a company database," so long as "it is not disclosed to a third party, [it] causes no concrete harm." *Id.* at 2210. Plaintiff's statements about speculative future harm or hypothetical hacking cannot justify a $228 million award. Nor are they relevant to any actual harm traceable to Plaintiff's claim for violation of BIPA Section 15(b), which addresses only the lack of written notice and consent—not any failure to adequately store the data, which is governed by a separate provision of BIPA not at issue in this case. *See* 740 ILCS 14/15(e).

Plaintiff defends the $228 million award on the ground that it merely reflects the aggregation of 45,600 awards of $5,000 each and that on an individual-by-individual basis, no individual award to a class member is excessive. Opp. 16–17, 18–19. But this is flawed in both premise and conclusion. As to the premise, even a $5,000 individual award is excessive for the

particular Section 15(b) violation at issue here, which was by definition harmless. And regardless, as to the conclusion, multiple courts of appeals have recognized that "[t]he absolute amount of the award, not just the amount per violation, is relevant to whether the award is [unconstitutional]." *Capitol Recs., Inc. v. Thomas-Rasset*, 692 F.3d 899, 910 (8th Cir. 2012); *see Wakefield v. ViSalus, Inc.*, 51 F.4th 1109, 1121 (9th Cir. 2022) ("[A]ggregated statutory damages awards are … subject to constitutional due process limitations."). To be sure, Plaintiff identifies a Seventh Circuit decision disfavoring due process challenges to aggregate statutory damages awards. Opp. 19. But in *United States v. Dish Network L.L.C.*, 954 F.3d 970, 980 (7th Cir. 2020), the Seventh Circuit considered an aggregated damages award worth just $4 per violation, and the court still vacated the damages award because the district court failed to "base[] civil damages and penalties on harm done, not on the depth of the wrongdoer's pocket."

Moreover, unlike in *Dish Network*, here BIPA's damages regime is plainly designed to punish, which heightens constitutional concerns under the Due Process and Excessive Fines Clause. The punitive nature of BIPA's statutory regime is demonstrated by its enhanced amounts for higher mental states of recklessness and intentionality regardless of the harm to the plaintiff. BIPA's damages provision "can only be explained as serving in part to punish," and that suffices to bring it within the compass of the Excessive Fines Clauses. *Austin v. United States*, 509 U.S. 602, 610 (1993).

## IV. No Reasonable Jury Could Find That BNSF Violated BIPA.

### A. Undisputed Evidence Showed That BNSF Did Not Violate BIPA.

On top of all of this, the undisputed evidence at trial also showed that BNSF did not violate BIPA. A Remprex executive testified that only Remprex—not BNSF—registered drivers and scanned their fingers, thus "collect[ing]" or "captur[ing]" their information. 740 ILCS 14/15(b); *see* Trial Tr. 349:16–350:13. No witness testified otherwise. *See, e.g.*, *id.* at 603:6–9 ("[BNSF]

didn't collect data. Remprex employees collected data, communicated with drivers, and entered the information that went to the servers."). Uncontroverted testimony further showed that BNSF also did not access—and did not have the ability to access—the data at any point and thus did not "receiv[e] [the data] through trade" or "otherwise obtain[]" it. 740 ILCS 14/15(b); *see* Mot. 3–4. In the face of this evidence, a rational jury could not have found that BNSF violated BIPA.

Plaintiff's Opposition focuses on evidence purportedly showing that it "was BNSF's idea" to collect biometrics (Opp. 2) and that BNSF owned the location where Remprex stored the biometric data and owned the data itself (*id.* at 3–6). But as to evidence suggesting it was "BNSF's idea" or "require[ment]" for Remprex to use biometric identifiers (Opp. 2), this evidence is simply irrelevant to whether BNSF itself "collect[ed], capture[d], purchase[d], receive[d] through trade, or otherwise obtain[ed]" biometric information. 740 ILCS 14/15(b). Regardless of whether it was BNSF's idea, it was Remprex (not BNSF) that engaged in the activities the statute regulates.

As to BNSF's supposed "ownership" of the servers where Remprex stored the data (Opp. 3) and BNSF's purported "proprietary interest" in Remprex's data (*id.* at 4), the evidence instead showed that BNSF did not have possession or control over either the servers or the data and "no rational jury" could have concluded otherwise. *Millbrook v. IBP, Inc.*, 280 F.3d 1169, 1173 (7th Cir. 2002). Even if BNSF paid for the servers, "Remprex spec-ed out, maintained, managed, refreshed, [and] kept [the servers] at the end of their useful life." Trial Tr. 812:23–24. And the undisputed evidence showed that the data was stored on a firewalled database that ***only Remprex*** could access and that BNSF never accessed. *Id.* at 422:10–22, 444:20–25, 592:20–22, 593:20–23, 928:24–929:7, 1000:3–11, 1002:9–22, 1018:13–17. Nor does the record support Plaintiff's claim that "BNSF documents express[] its own sweeping proprietary interest … in all data collected." Opp. 4. The evidence Plaintiff cites is silent on the ownership of the data at issue here, and the

undisputed evidence showed that BNSF never "receive[d]" or "obtain[ed]" the data, which is what matters under BIPA.[1] 740 ILCS 14/15(b).

Plaintiff resorts to linguistic gymnastics to establish BNSF's direct liability. Plaintiff says that "[o]ne can obtain or possess something without access to it." Opp. 4. ***But access is an essential condition for "obtaining" something***. Taking action "[t]o bring [something] into one's own possession," that is, into "one's actual control," is the definition of "obtaining." *Obtain*, Black's Law Dictionary (11th ed. 2019); *Possess*, Black's Law Dictionary (11th ed. 2019); *see generally Honeycutt v. United States*, 581 U.S. 443, 450, (2017) ("Neither the dictionary definition nor the common usage of the word 'obtain' supports the conclusion that an individual 'obtains' property that was acquired by someone else."). Because it is ***undisputed*** that BNSF did not and could not actually access or control any biometric information, no reasonable jury could conclude that BNSF "receive[d]" or "obtain[ed]" it, as BIPA requires. 740 ILCS 14/15(b). And mere "possession" is irrelevant, since Section 15(b)'s requirements do not apply to a private entity that "possesses" biometric information but did not actively collect or obtain it. *See, e.g.*, *Jacobs v. Hanwha Techwin Am., Inc.*, No. 21 C 866, 2021 WL 3172967, at *3 (N.D. Ill. July 27, 2021).

Plaintiff finally relies on the testimony of Mr. Burriss, BNSF's General Director of Hub Operations, which, according to Plaintiff, illustrates "BNSF's role with respect to the collection and capture of biometrics." Opp. 5. But the demonstrative exhibit on which Plaintiff relies is not

---

[1] Plaintiff cites to the Nascent Software License Agreement (PX 6), BNSF's Corporate Policy Records and Information Management Policy (PX 7), and various versions of the "BNSF Privacy and Security Supplement" (PX 17, PX 355, and DX 2). None of these documents addresses any biometric data collected and stored by Remprex. In fact, the BNSF Privacy and Security Supplement Plaintiff cites does not address ownership of data collected from Plaintiff or class members; it applies only to "personally identifiable information ('PII') of *employees or customers* of [BNSF]" (PX 17 at 6) (emphasis added), which Plaintiff and the class members are not. *See* Trial Tr. 784:3.

supported by the actual trial testimony and addresses whether collecting biometrics was BNSF's idea (it was "NOT," *id.*), and whether BNSF made the decision to capture biometric data and if it was done using BNSF's equipment and for BNSF's benefit. Plaintiff relies on Mr. Burriss's statements that BNSF "own[s] [the] data" and "owns the servers where the biometric data is captured and collected" (*id.* at 4, 6), but in undisputed testimony that Plaintiff ignores, Mr. Burriss repeatedly stated that these questions of ***ownership*** are controlled by the contracts between BNSF and Remprex and that he could not testify as to their meaning. Trial Tr. 476:11–12, 511:23–25, 583:11–584:9. The BNSF witness familiar with the contracts testified that BNSF did not own the data or servers. *Id.* at 882:1–13, 884:10–17, 890:23–891:6. Mr. Burriss himself put the point clearly. When asked "[d]id BNSF collect, capture, purchase, receive through trade, or otherwise obtain the driver's biometric materials," he responded with a conclusive, "No, sir," which is the only conclusion a rational jury could draw from the evidence. *Id.* at 472:3–18.

**B. Undisputed Evidence Showed That BNSF Did Not Violate BIPA Vicariously.**

The undisputed evidence at trial also showed that if Remprex violated BIPA, BNSF was not vicariously liable for it.[2] The contracts between BNSF and Remprex expressly provided that Remprex "shall at all times be and operate as an independent contractor to [BNSF]." PX 13, § 3(a); *see also, e.g.*, Trial Tr. 343:23–344:10, 869:12–870:24. And the Court's jury instructions made clear that BNSF could not be held vicariously liable for "the negligent, reckless, or intentional conduct of [its] independent contractor." Trial Tr. 1332:11–14. Under the plain terms of the governing contracts, BNSF cannot be vicariously liable for Remprex's conduct.

Even putting aside the contracts, however, no evidence supports a contrary conclusion. The Court's jury instructions stated that BNSF could be responsible for Remprex's violation of

[2] BNSF maintains Plaintiff should not have been permitted to argue any agency theory and continues to object to the Court's definitive pretrial ruling rejecting this argument (ECF No. 201).

BIPA only "[i]f BNSF had the right to control the actions of Remprex with regard to collecting, capturing, purchasing, receiving through trade, or otherwise obtaining biometric[s]." Trial Tr. 1331:16–21. Plaintiff points to no evidence showing this standard was satisfied, and the undisputed evidence showed BNSF lacked such a right. The BNSF-Remprex contracts provided that Remprex was an independent contractor and that BNSF did not have the right to control the manner and method of Remprex's work. *See, e.g.*, PX 13, § 3(a); Trial Tr. 869:12–870:24. Remprex's own Mr. Ash was clear that "Remprex gets to use its own manner and methods in performing the service[s]" under the contract with BNSF. *Id*. at 332:4–21, 333:8–12, 344:8–10. Mr. Burris likewise testified that BNSF did not control Remprex's conduct, but instead relied on Remprex's expertise to operate the system as Remprex saw fit. *Id.* at 589:3–17. Mr. Whitaker similarly testified that Remprex was "independently managing [its work] as the experts in their field." *Id*. at 890:21–891:6. Remprex was an independent contractor with the right to control its own actions within its scope of authority, and no rational jury could find otherwise.

Moreover, any violation of BIPA by Remprex was plainly outside the scope of its authority. The Court instructed the jury that it could find Remprex acted within the scope of its authority only if Remprex was "engaged in an activity that has been assigned to it by [BNSF], or if it does something that may reasonably be said to have been contemplated as part of an activity that benefits [BNSF]." Trial Tr. 1332:16–21. Remprex's failure to obtain the written consents required by BIPA cannot fit that definition, where the undisputed evidence showed that BNSF expressly required Remprex to comply with all applicable laws. Accordingly, no rational jury could find BNSF vicariously liable for any BIPA violation by Remprex.

## V. Plaintiff's Claim Is Preempted By Federal Law.

BNSF's post-trial motions address its preemption arguments in arguing for JMOL on preemption or, alternatively, for a new trial on preemption. *See* Mot. 10–13. Because Plaintiff's

Opposition does not meaningfully dispute the merits of these arguments, BNSF will refrain from addressing them again here.[3]

Plaintiff, however, newly challenges the written offer of proof that BNSF submitted at trial to describe the evidence BNSF would have introduced to provide factual support for its preemption defenses. Plaintiff says the offer of proof should be rejected as "forfeited," and that BNSF submitted it only because BNSF realized it "completely failed" to develop a record at trial to support its preemption defenses. Opp. 19–20.

Plaintiff is wrong. Over BNSF's objection, the Court granted Plaintiff's motion in limine to exclude from trial any evidence, testimony, or argument providing factual support for BNSF's preemption arguments. ECF No. 178 at 12. The Court definitively ruled at the pretrial conference that ***"[e]vidence about preemption, argument about preemption does not come in during the trial, period."*** Pretrial Conf. Tr. at 33:15–16 (emphasis added). BNSF was thus not required to renew its objections to preserve the issue for appellate review. *See* Fed. R. Evid. 103(b) ("Once the court rules definitively on the record — either before or at trial — a party need not renew an objection or offer of proof to preserve a claim of error for appeal."); *see also Wilson v. Williams*, 182 F.3d 562, 563 (7th Cir. 1999). BNSF went the extra step to renew its objection through an offer of proof despite this Court's pre-trial ruling.

Plaintiff claims this proffer was "forfeited" because the Court used that word in colloquy and Plaintiff self-servingly seeks to use that statement to try to insulate this Court's preemption rulings from meaningful appellate review. Opp. 20. BNSF preserved its preemption defenses in

---

[3] The Court ruled on preemption in denying summary judgment and made clear it considers that ruling final and definitive. *See, e.g.*, Pretrial Conf. Tr. at 33:8–18. BNSF has continued to assert its preemption defenses through Rule 50 motions to ensure they are properly preserved for appeal, and maintains it is entitled to JMOL because Plaintiff's claims (and those of the class members) are preempted. *See Ward v. Soo Line R.R. Co.*, 901 F.3d 868, 882 n.3 (7th Cir. 2018).

its motion to dismiss, motion for summary judgment, request for interlocutory appeal under 28 U.S.C. § 1292(b), opposition to Plaintiff's motion in limine, Rule 50(a) motion at the close of Plaintiff's evidence, Rule 50(b) motion, and its offer of proof. *See* ECF Nos. 19, 20, 107, 147, 180, 212, 217, 235. Plaintiff's attempt to inject a post-hoc "forfeiture" problem with BNSF's preemption defenses is baseless and should be rejected.

**VI. Plaintiff's Claim Is Time Barred.**

The parties continue to await the Illinois Supreme Court's decision in *Cothron v. White Castle System, Inc.*, which will determine whether a BIPA Section 15(b) claim "accrue[s] each time a private entity scans a person's biometric identifier … or only upon the first scan." *Cothron v. White Castle Sys., Inc.*, 20 F.4th 1156, 1167 (7th Cir. 2021). BNSF has repeatedly sought stays of this case in light of *Cothron* (ECF Nos. 70, 121, 147, 176), and has explained why if Plaintiff's claim is time-barred, *Cothron* requires decertification of the class and judgment as a matter of law on Plaintiff's claim. *See* Mot. 14; *see also Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 399 (6th Cir. 1998) ("[A]s goes the claim of the named plaintiff, so go the claims of the class.").

**CONCLUSION**

For the foregoing reasons, the Court should enter judgment as a matter of law against Plaintiff and in favor of BNSF. In the alternative, the Court should grant BNSF a new trial on the issues described above or substantially reduce the damages award against BNSF.

Dated: February 10, 2023

Respectfully submitted,

**BNSF RAILWAY COMPANY**

By: */s/ Elizabeth Herrington*
By Its Attorneys

Elizabeth Herrington
Tinos Diamantatos
Gregory Fouts
Alborz Hassani
Benjamin Kabe
MORGAN, LEWIS & BOCKIUS LLP
110 North Wacker Drive, Suite 2800
Chicago, IL 60606-1511
Telephone: +1.312.324.1000
Facsimile: +1.312.324.1001
beth.herrington@morganlewis.com
tinos.diamantatos@morganlewis.com
gregory.fouts@morganlewis.com
al.hassani@morganlewis.com
benjamin.kabe@morganlewis.com

Andrew S. Tulumello
Claire L. Chapla (*admitted pro hac vice*)
Robert Niles-Weed (*admitted pro hac vice*)
WEIL, GOTSHAL & MANGES LLP
2001 M Street, NW, Suite 600
Washington, DC 20036
Telephone: +1.202.682.7000
drew.tulumello@weil.com
claire.chapla@weil.com
robert.niles-weed@weil.com

*Counsel for Defendant BNSF Railway Company*

**CERTIFICATE OF SERVICE**

I, Elizabeth Herrington, certify that on February 10, 2023, I caused a copy of the foregoing to be served upon all counsel of record via the Court's CM/ECF system.

*/s/ Elizabeth Herrington*
Elizabeth Herrington