**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| RICHARD ROGERS, individually and on behalf of similarly situated individuals,<br><br>Plaintiff,<br><br>v.<br><br>BNSF RAILWAY COMPANY<br><br>Defendants. | Case No. 1:19-cv-03083<br><br>Hon. Matthew F. Kennelly |

**BNSF RAILWAY COMPANY'S OMNIBUS MOTION IN LIMINE**

BNSF Railway Company ("BNSF") submits the following omnibus motion in limine to exclude or limit evidence at the upcoming trial in this matter.

**Background**

In May 2019, Plaintiff filed this putative class action alleging that BNSF either negligently, recklessly, or intentionally violated sections 15(a) and 15(b) of Illinois' Biometric Information Privacy Act ("BIPA"). ECF No. 1. In August 2021, Plaintiff remanded his claims under section 15(a), leaving only his claims that BNSF collected biometric information without obtaining the required written consent described in section 15(b) of BIPA. ECF Nos. 85, 97. That same month, Plaintiff sought certification of a class, arguing that he and all class members sought "identical statutory damages." ECF No. 90 at 17. The Court then certified the class "because the claims involve uniform statutory damages and there is no indication that class members' interests would be better served by individually controlling their own actions." ECF No. 143 at 8. On October 12,

2022, a jury verdict was entered finding that BNSF recklessly or intentionally violated section 15(b) of BIPA 45,600 times. ECF No. 224. On June 30, 2023, the Court granted in part BNSF's motion for a new trial, holding that the amount of statutory damages under BIPA is for the jury to decide. ECF No. 260 at 21-22. Accordingly, the upcoming trial in this matter is limited to the narrow question of what amount of damages, if any, is appropriate under the circumstances here. *See Cothron v. White Castle Sys., Inc.*, 2023 IL 128004, ¶ 42, *as modified on denial of reh'g* (July 18, 2023). BNSF's motions in limine below ask the Court to appropriately limit the evidence at trial to that sole issue.

### 1. EXCLUDE UNDISCLOSED EVIDENCE OF HARM, ACTUAL DAMAGES, AND CALCULATIONS.

Federal Rule of Civil Procedure 26(a)(1)(A)(iii) requires parties to disclose "a computation of each category of damages claimed by the disclosing party" and produce all documents related to the calculation. When a party fails to identify or produce evidence in discovery, they cannot use it at trial. Fed. R. Civ. P. 37(c)(1). "[E]xclusion 'is automatic and mandatory unless the sanctioned party can show that its violation of Rule 26(a) was either justified or harmless." *NeuroGrafix v. Brainlab, Inc.*, No. 12 C 6075, 2021 WL 1057312, at *5 (N.D. Ill. Mar. 18, 2021) (quoting *David v. Caterpillar, Inc.*, 324 F.3d 851, 857 (7th Cir. 2003)).

In discovery, Plaintiff did not disclose any actual harm, actual damages, or calculation of damages as described in Rule 26(a)(1). Instead, Plaintiff relied solely on BIPA's statutory damages provision. *See* Ex. A (Plaintiff's Rule 26(a)(1) disclosures). And when directly asked to specify his monetary damages, Plaintiff responded: "Plaintiff intends on pursuing statutory damages against BNSF, as provided for by BIPA." Ex. B at 8 (Response to Rog. 7). Plaintiff could elaborate only with the vague and unsupported claim that "he suffers harm in the form of being placed at

2

additional risk of identity theft, and damage to the unique identifying value of his biometrics, and the broad privacy harms articulated in BIPA through the statutory violation of his right to privacy in his biometrics." *Id.* at 6. While Plaintiff claimed that BNSF had disclosed his biometric information to unnamed third parties (*Id.*), he produced no evidence of such disclosure, and conceded at deposition he "wouldn't know who the third party is if it has been done." Ex. C at 118:7-8 (Excerpt from R. Rogers Dep. Tr.). Likewise, Plaintiff never disclosed any other class member's purported damages, and when the Court allowed some class members to testify at the prior trial, it was only based on Plaintiff's assurance that the testimony was limited to the facts that those other witnesses' fingers had been scanned without the consent required by section 15(b) of BIPA. *See* Sept. 6, 2022 Hearing Tr. at 69:9-70:1. Letting Plaintiff either directly, or through other class members, add brand-new evidence to this case on the eve of trial is exactly what the Federal Rule of Civil Procedure's disclosure rules were designed to avoid. *E.g.*, *Burns v. Sherwin-Williams Co.*, No. 19-CV-5258, 2022 WL 4329417, at *27 (N.D. Ill. Sept. 18, 2022), *aff'd*, No. 22-2825, 2023 WL 5210857 (7th Cir. Aug. 15, 2023) ("The disclosure rules exist for good reason . . . [they] facilitate trial preparation, and prevent sandbagging and unfair surprise.").

While the jury can certainly consider the value of Plaintiff's consent, the spectral claims to "increased risk of identity theft," "unique value of his biometrics" and "broad privacy harms" divorced from any concrete evidence that would allow the jury to determine their value should be excluded. *E.g.*, *Foster v. PNC Bank, Nat'l Ass'n*, 52 F.4th 315, 323 (7th Cir. 2022) (claim of lost profits was too speculative to support damages without evidence of items sold and their value). It is too late for Plaintiff to try and muster a showing of actual harm, and the Court should exclude all such evidence that Plaintiff did not disclose in discovery.

## 2. EXCLUDE INDIVIDUALIZED DAMAGES OR ALTERNATIVELY DECERTIFY CLASS FOR INDIVIDUAL PROCEEDINGS ON DAMAGES.

Even had Plaintiff disclosed evidence of actual harm suffered by him or other class members, Plaintiff cannot use it in a class-wide damages proceeding. *See Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 458, 136 S. Ct. 1036, 1048, 194 L. Ed. 2d 124 (2016) (class action vehicle does not enlarge the named plaintiff's rights at trial and does not afford Plaintiff "different rights in a class proceeding than they could have asserted in an individual action). If Plaintiff were proceeding against BNSF individually, he could not prove *his* damages by introducing evidence of damages suffered by someone else. And conversely, any evidence of Plaintiff's *own* damages could not be introduced in a suit brought individually by one of the absent class members. Indeed, Plaintiff recognized this obvious principle – and sought to use it to his advantage – in seeking to certify a class. In that posture, Plaintiff claimed that there was no distinction between his damages and those of other class members precisely because he was seeking, on behalf of himself and others, only statutory damages. *See* ECF No. 90 at 1 (Plaintiff's motion for class certification arguing "because their legal claims and resulting statutory damages are identical this case is particularly well suited for class treatment."). The Court should hold Plaintiff to his choices and disclosures, precluding Plaintiff from introducing evidence or eliciting testimony of individual drivers' alleged actual damages, which would vary from driver to driver and would have prevented class certification. In other words, Plaintiff is limited to arguing for damages based on evidence and reasoning that applies equally to him and all other class members.[1]

---

1 Of course, in some cases individualized damages can be determined using evidence based on reliable statistical means applied by qualified experts. *E.g. Tyson Foods*, 577 U.S. at 455. But that is no help to Plaintiff who produced no such evidence.

The meager probative value of Plaintiff's individual harm in establishing class-wide damages is also significantly outweighed by the prejudicial effect and should excluded under Fed. R. Evid. 403. The record shows a likely variance from driver to driver in terms of what information they received regarding the collection of their biometric information and some drivers were likely informed in writing that their biometric information was being captured for use in the AGS system, and thus could not have been harmed in the same way Plaintiff claims. Allowing Plaintiff to introduce evidence of his harm will force BNSF to call drivers who saw this or similar notices, understood them, and thus were not harmed in the same way Plaintiff claims to be.

Alternatively, should Plaintiff wish to present evidence of his own actual damages, the Court should decertify the class for individual proceedings on damages. *See McMahon v. LVNV Funding, LLC*, 807 F.3d 872, 876 (7th Cir. 2015) ("if a case requires determinations of individual issues of causation and damages, a court may 'bifurcate the case into a liability phase and a damages phase.'") (citations omitted); *Butler v. Sears, Roebuck & Co.*, 727 F.3d 796, 800 (7th Cir. 2013) ("a class action limited to determining liability on a class-wide basis, with separate hearings to determine—if liability is established—the damages of individual class members, or homogeneous groups of class members, is permitted by Rule 23(c)(4) and will often be the sensible way to proceed."). There are procedural means to deal with cases like this one, where class-wide liability has been established, but the amount of alleged harm suffered differs among class members. If Plaintiff now contends that he should be allowed to present evidence of unique harms, then the class should be decertified for individual proceedings as to harm.

### 3. EXCLUDE REFERENCE OR ARGUMENT THAT THE JURY'S DISCRETION IS OTHER THAN TO AWARD ANY AMOUNT BETWEEN $0 AND $5,000

Because Plaintiff has not disclosed evidence of actual harm, and cannot do so anyway, the

damages available in this case are statutory. 740 ILCS 14/20(2). Plaintiff's arguments to the jury concerning the appropriate damages amount must thus comport with BIPA's statutory framework and the Court's interpretation of that framework as set forth in *Cothron*. *See* ECF No. 260 at 18-21. The parties should be permitted to argue to the jury that the appropriate damages award should be somewhere between $0 and $5,000, *i.e.*, that damages under BIPA are not an all-or-nothing proposition. There should also be no reference to BIPA setting a minimum damages amount of $1,000 for each reckless violation or any argument that the damages amount could be over $5,000.

*First*, both *Cothron* and the Court's prior interpretation of BIPA show that the jury should be allowed to exercise its discretion to fashion an appropriate damage award between $0 and $5,000. *Cothron* recognized that in drafting BIPA's damages provisions "the General Assembly chose to make damages discretionary rather than mandatory" without any language "suggesting legislative intent to authorize a damages award that would result in the financial destruction of a business." *Cothron*, 2023 IL 128004, ¶ 42. The most sensible reading of "may" in BIPA's damage provision is one that allows a jury to award damages between $0 and $5,000 per violation based on the evidence at trial, not an all-or-nothing construction that forces the jury to choose between $0 for Plaintiff, and a $5,000 per violation award that would threaten the defendant's destruction in many instances. That conclusion is supported by *Cothron*'s explanation that a trial court could fashion an award that "(1) fairly compensated claiming class members and (2) included an amount designed to deter future violations, without destroying defendant's business." *Id.* In granting BNSF's motion for a new trial as to damages, the Court agreed, relying on *Cothron* and the Seventh Amendment to hold that "BNSF is entitled to have a jury determine the appropriate amount of damages." ECF No. 260 at 22. The Court was correct and there is no reason to impose an artificial constraint on the jury's ability to fashion a damage award that is at odds with BIPA's purposes.

6

*Second*, there is no basis for a $1,000 "floor." BIPA has two separate damages provisions, one for negligent violations and one for reckless violations. 740 ILCS 14/20(1)–(2). While the first provision imposes a *ceiling* on liquidated damages of $1,000 per *negligent* violation, that in no way imposes a *floor* on liquidated damages for *reckless* violations. Rather, the second provision, governing reckless violations, says simply that a party may recover "liquidated damages of $5,000 or actual damages, whichever is greater," with no floor whatsoever. *Id.* As the Court has already recognized "where statutory language is clear, it must be given effect." ECF No. 260 at 20 (quoting *Cothron*, 2023 IL 128004, ¶ 40). Artificially setting a damages "floor" for particular violations would interfere with the discretion granted by the legislature for determining damages under the circumstances of each case. ECF No. 260 ("conclud[ing] damages under BIPA section 20 are discretionary" with no mention of a minimum). A jury has the discretion to decide that a reckless violation may warrant less than $1,000 in statutory damages in certain circumstances.

*Third*, the jury does not have the discretion, however, to award more than $5,000 per violation in statutory damages. Plaintiff's contrary argument again ignores the clear language of BIPA's damages provisions and basic rules of statutory construction. Having established that BNSF recklessly violated section 15(b) of BIPA, Plaintiff can recover "$5,000 or actual damages, *whichever is greater*." 740 ILCS 14/20(2) (emphasis added). And because Plaintiff has neither claimed actual damages nor disclosed any evidence of such damages, *see supra* at 2-3, $5,000 is the "greater" amount and is the ceiling on damages that may be awarded. Courts "cannot rewrite a statute to create new elements or limitations not included by the legislature." *Cothron*, 2023 IL 128004, ¶ 39; *see also Senne v. Vill. of Palatine, Ill.*, 695 F.3d 597, 605 (7th Cir. 2012) ("A basic canon of statutory construction requires us to give meaning to every word of a statute."). Granting unfettered discretion to the jury to award damages in excess of $5,000 per violation would run

counter to the Illinois Supreme Court's observation that "there is no language in the Act suggesting legislative intent to authorize a damages award that would result in the financial destruction of a business." *Cothron*, 2021 IL 128004, ¶ 42. $5,000 per violation is the limit Plaintiff is allowed to recover under BIPA.

### 4. EXCLUDE EVIDENCE OR ARGUMENTS OF PUNITIVE DAMAGES.

BIPA does not authorize punitive damages. *See* 740 ILCS 14/20. But "punitive damages must be expressly authorized by the statute on which a plaintiff's cause of action is founded . . . ." *Vincent v. Alden-Park Strathmoor, Inc.*, 241 Ill. 2d 495, 505 (2011); *also Crittenden v. Cook Cnty. Comm'n of Hum. Rts.*, 2013 IL 114876, ¶ 24, 990 N.E.2d 1161, 1167 ("When the legislature and local home rule units intend to authorize punitive damages, they have done so through express authorization in statutes and ordinances"). Nevertheless, Plaintiff's counsel has indicated that they will be aggressive in asking the jury to award an amount that punishes BNSF and sends a message to both BNSF and others. The Court should exclude this line of argument. In addition to requiring express authorization, under Illinois law, "[p]unitive damages are disfavored in the law due to their penal nature, and caution must be used to avoid awarding them unwisely." *Ainsworth v. Century Supply Co.*, 295 Ill. App. 3d 644, 651, 693 N.E.2d 510, 515 (1998). Indeed, one Illinois Court has answered this question directly, construing Illinois' Aids Confidentiality Act's damages provision that is nearly identical to BIPA's damages provision to preclude punitive damages:

> . . .the statute specifically provides for increased damages where the disclosure is the result of conduct which typically warrants the imposition of punitive damages, but it does not provide for the imposition of punitive damages for such disclosures . . . We conclude that our legislature chose not to provide for the recovery of punitive damages for violation of the Act.

8

*Doe v. Chand*, 335 Ill. App. 3d 809, 819, 781 N.E.2d 340, 349 (2002); *see also Rosenbach v. Six Flags Ent. Corp.*, 2019 IL 123186, ¶ 27, 129 N.E.3d 1197, 1204 (discussing the similarities between the ACA and BIPA).

*Chand*'s reasoning equally applies to BIPA's nearly identical damages provision. BIPA provides for increased damages for reckless or intentional violations without authorizing punitive damages. Allowing Plaintiff to pursue punitive damages "conflicts with our court's long-standing precedent that punitive damages are not favored under the law." *Crittenden*, 2013 IL 114876, ¶ 24. Similarly, *Cothron*'s guidance suggests that while the jury should be allowed to consider any need *to deter* BNSF from future violations of section 15(b), it did not suggest that the need *to punish* or to send a message to others was also a permissible consideration. *Cothron.*, 2023 IL 128004, ¶ 42. To the contrary, *Cothron* recognized "there is no language in the Act suggesting legislative intent to authorize a damages award that would result in the financial destruction of a business." *Id*. Plaintiff should therefore not be allowed to introduce evidence, elicit testimony, argue, or suggest that the jury should penalize, "send a message," or otherwise award punitive damages or their equivalent. *E.g.*, *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 416-17 (2003) (noting that "punitive damages serve a broader function" than compensatory damages, because "they are aimed at deterrence and retribution" and "serve the same purposes as criminal penalties").

### 5. EXCLUDE REFERENCE TO PREVIOUS JURY TRIAL AND VERDICT

The Court should bar any reference to the original trial in this case, including but not limited to anticipated references to the jury verdict and damages award. Any such references would unfairly prejudice BNSF by suggesting a jury had made an adverse finding against BNSF and that the damages jury should not contradict a prior determination of the amount of damages. Courts often exclude references to the liability phases of trial at separate trials on damages for those very

9

reasons. *See, e.g., Smart Mktg. Grhp. v. Publ'ns Int'l, Ltd.*, No. 04 C 146, 2014 WL 625321, at *2 (N.D. Ill. Feb. 18. 2014) (excluding from damages trial any reference to the circumstances surrounding defendant's breach of contract, the jury's verdict or the fact that a prior jury ruled adversely to defendant, ruling that "[t]o the extent possible, the prior trial should not be mentioned before the jury"); *Am. Nat'l Bank & Trust Co. of Chi. v. K-Mart Corp.*, No. 77 C 484, 1986 WL 6938, at *2 (N.D. Ill. June 10, 1986) (excluding references to the previous verdict or appellate reversal).[2]

Plaintiff will suffer no prejudice as BNSF agrees that, for the purposes of the damages trial, the jury should be instructed that BNSF is liable. Specifically, BNSF proposes that both during introductory statements to the jury, as well in the final jury instructions, this Court should inform the jury that BNSF is liable under BIPA, as well as the total number of violations. BNSF is thus not attempting to shield from the jury that it is liable; it merely seeks exclusion of the unduly prejudicial reference to the prior jury trial, jury determination, or damages award.

### 6. EXCLUDE EVIDENCE REGARDING PLAINTIFF'S BIFURCATED BIPA CLAIM OR IRRELEVANT PROVISIONS IN BIPA.

In the parties meet-and-confer, Plaintiff suggested that he will seek to present evidence and argument about the way data in the AGS database was stored or retained, presumably to argue

---

[2] BNSF seeks exclusion of any reference to the trial at all, but note that reference to the past damages award would be particularly inflammatory and prejudicial to BNSF. Plaintiff does not seek actual damages, and BIPA therefore authorizes Plaintiff to recover "liquidated damages of $5,000" at most. 740 ILCS 14/20(2). Because the previous damages award was calculated using the maximum figure, any reference to that award would suggest to the jury that they should award the maximum amount, and would plainly prejudice BNSF. *See Am. Nat'l Bank & Trust Co. of Chi.*, 1986 WL 6938, at *2 (stating the "court is particularly concerned that no one refer to the amount of the jury verdict in the original trial" because "[a]ny such reference would be unduly suggestive of a verdict in favor of [counterclaim plaintiff] and the amount of such judgment").

increased risk of unauthorized disclosure. The Court should not allow this evidence or argument. BIPA has multiple provisions aimed at protecting an individual's privacy rights in their biometric information, as well as safeguarding biometric information that an entity has collected. The upcoming trial in this case, however, deals only with section 15(b), the provision that requires BNSF to provide written notice of the fact that it is collecting biometric information, the purpose for which the information will be used and how long it will be stored, and to obtain a written release from the individual. 740 ILCS 14/15(b). Previously, the Court recognized that this is "a case about whether a particular provision of the statute was violated." Sept. 6, 2022 Hearing Tr. at 50:23-21:3. The Court was correct and should continue to bar evidence related to BIPA's other requirements, which is not relevant to damages and will only serve to confuse a jury.

*First*, the Court should bar all reference to Plaintiff's related case pending in Illinois state court, which alleges a violation of section 15(a) of BIPA, the requirement that BNSF establish and comply with a publicly available policy that "establish[es] a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within 3 years of the individual's last interaction with the private entity, whichever occurs first." 740 ILCS 14/15(a). It was Plaintiff's choice, over BNSF's objection, to bifurcate his claims, and remand his claim under section 15(a). *See* ECF Nos. 85, 93. It would be both unfair and distracting to let Plaintiff allude to claims that he removed from this Court's purview to imply that the jury should consider conduct that Plaintiff chose to litigate elsewhere. *See, e.g.*, *Barnes v. Conn Appliances, Inc.*, No. 3:16-CV-413-HTW-LRA, 2018 WL 4100943, at *3 (S.D. Miss. Aug. 28, 2018) (unresolved litigation not probative to issues in case before the court); *King v. Premier Fire Alarms & Integration Sys., Installation Div., Inc.*, No. 20-60064-CIV, 2021 WL 7540775, at *3 (S.D. Fla.

Dec. 1, 2021) (excluding evidence of pending case because its "marginal relevance is substantially outweighed by the danger of unfair prejudice to Defendants and the risk of creating a mini-trial about the differences between the [two cases]").

Any specific references to the state claim's deletion requirements are separately inadmissible as Plaintiff does not allege that BNSF is liable for failure to delete at all. *See* ECF No. 96 at 2 (Plaintiff's Motion to Remand stating that Plaintiff "has never intended to allege, or had any basis to allege, that BNSF had failed to destroy his biometrics or otherwise not comply with a biometric retention and destruction policy . . . ."). It was Plaintiff's decision to split his cases, his choice to represent that he has no evidence, and would countenance unfair gamesmanship to allow him to reverse course now. In addition, any discussion of deletion after this lawsuit was filed would necessarily involve argument over preservation obligations, which would serve to needlessly distract and confuse the jury.

*Second*, the Court should bar all references, suggestion, or speculation that BNSF disclosed Plaintiff's or the class members' biometric information to a third party. Section 15(d) of BIPA prohibits unauthorized disclosure of biometric information. 740 ILCS 14/15(d). But Plaintiff has never sought to recover under this provision, and it should be excluded. *See, e.g.*, *Brennan v. Paul Revere Life Ins. Co.*, No. 00 C 0725, 2002 WL 1284385, at *6 (N.D. Ill. June 10, 2002) (excluding evidence of any claims that have been "tak[en] out of the case"). Nor has Plaintiff disclosed any evidence of any such unauthorized disclosure, mandating exclusion. Fed. R. Civ. P. 37(c)(1). The risk of jury confusion, inflammation, and unfair prejudice is high if Plaintiff is allowed to suggest or elicit testimony that his, or any class member's, biometric information was disclosed without authorization.

*Third*, the Court should also bar evidence related to the way the biometric information was

12

stored. Section 15(e) of BIPA requires an entity to store biometric information using "a reasonable standard of care within the private entity's industry" and "in a manner that that is the same or more protective" than how that entity stores similar information. 740 ILCS 14/15(e). As with section 15(d), Plaintiff has never alleged that BNSF violated section 15(e), has taken no evidence on the standard of care for Class I railroads like BNSF, and has sought no discovery as to how BNSF would store similar information. The Court has likewise already barred this evidence once because this case is about section 15(b)'s informed consent regime and not BIPA's other requirements. *See* Sept. 9, 2022 Hearing Tr. at 48:12-51:4. And there is no colorable argument that an individual's injury related to a section 15(b) violation relates to the way data is stored, as that is not something an entity has to disclose to comply with section 15(b). Plaintiff should not be allowed to elicit testimony from their designated expert or any other witness about how the biometric information was stored.

As a result, neither party needs to call their expert witnesses to discuss technical details of network security, data encryption, or the like. That evidence has minimal probative value and would only confuse the jury as to what it can consider in fashioning an appropriate damage award.

**7. EXCLUDE EVIDENCE OR REFERENCES TO COLLECTION OF BIOMETRIC INFORMATION OUTSIDE OF ILLINOIS**

At every stage of this case, Plaintiff has been clear that his claims are limited to BNSF's conduct in Illinois. *See* ECF No. 1-1 at ¶ 23. That is because BIPA "is not authorized to have extraterritorial effect." *Rivera v. Google Inc.*, 238 F. Supp. 3d 1088, 1100 (N.D. Ill. 2017). In other words, the conduct "must have taken place in Illinois in order for them to win." *Id.* While it is true that other states have laws governing biometric information, none of those laws are at issue in this case, and Plaintiff has never disclosed evidence, or even a theory, that would suggest he was

seeking to recover based on conduct that took place outside of Illinois. While there is good reason to suspect Plaintiff will try—*see* Trial Tr. at 1362:2-7 ("You heard that there's biometric laws in California, in Texas, their home state had one, and there's a federal law in Canada, where they also operate; there's Washington, Seattle, a big port city; New York. If they weren't – if they truly didn't know about these laws, then they were being reckless.")—there is no legal basis for any such suggestion, argument, or innuendo to come before the jury when deciding damages and the Court should bar it entirely.

### 8. EXCLUDE EVIDENCE REGARDING THE TIMING OR REASONS FOR BNSF'S TERMINATION OF BIOMETRICS IN THE AGS SYSTEM

There is no dispute that BNSF stopped using biometrics in the AGS system in March 2020, ten months after this case was filed. Beyond the fact that biometrics are no longer used in the AGS system, the Court should bar evidence related to the timing or reasons for BNSF's decision to disable biometrics in the AGS system pursuant to Fed. R. Evid. 403. This evidence has no probative value to the issues the jury will decide: the amount of Plaintiff's harm and amount needed to deter BNSF from violating section 15(b) of BIPA in the future. Yet the risk of confusion and unfair prejudice to BNSF is significant. As BNSF has explained previously, it long believed that BIPA was preempted like many similar state laws. *See, e.g.*, ECF No. 13 (BNSF's Motion to Dismiss arguing preemption); Trial Tr. at 317:22-320:1. Allowing Plaintiff to put on evidence of the time period between his filing this suit and biometrics being disabled in March 2020 will force BNSF to counter by presenting its belief that BIPA did not apply to Class I Railroads like BNSF, and distract the jury with questions of whether that belief was justified. *Cf.* Sept. 6, 2023 Hearing Tr. at 33:8:-18 (barring BNSF from introducing evidence related to preemption at trial). It would also force BNSF to counter with evidence of any efforts to implement a BIPA-compliant consent

option in AGS, efforts that would not be admissible under Fed. R. Evid. 407. While the Court previously allowed Plaintiff to present some of this evidence, that was because the Court found it relevant to issues of intent and awareness of BIPA. *See* Trial Tr. at 486:7-17. With the determination that BNSF recklessly violated section 15(b) of BIPA settled, BNSF's intent or awareness of the law is not relevant to the issues the jury will decide in the upcoming trial, and there is no need to invite the distraction that will accompany delving into the reasons there was a delay between Plaintiff filing this case and BNSF disabling biometrics in the AGS system.

Dated: September 11, 2023

Respectfully submitted,

By: *Michael J. Gray*
Michael J. Gray (ARDC 06210880)v
Bethany Biesenthal (ARDC 6282529
Efrat R. Schulman (ARDC 06280999)
JONES DAY
110 North Wacker Drive, Suite 4800
Chicago, Illinois 60606
Tel.: (312) 782-3939
mgray@jonesday.com
bbiesenthal@jonesday.com
eschulman@jonesday.com
chall@jonesday.com

*Attorneys for BNSF Railway Company*