**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| RICHARD ROGERS, individually and on behalf of similarly situated individuals, | ) ) ) | |
| *Plaintiff*, | ) ) | No. 2019-cv-03083 |
| v. | ) ) | Hon. Matthew F. Kennelly |
| BNSF Railway Company, a Delaware corporation, | ) ) ) | |
| *Defendant.* | ) ) | |

**PLAINTIFF'S *UNOPPOSED* MOTION & MEMORANDUM IN SUPPORT OF**
**<u>PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT</u>**

Dated: February 26, 2024

Myles McGuire
Evan M. Meyers
David L. Gerbie
Brendan Duffner
MᴄGᴜɪʀᴇ Lᴀᴡ, P.C.
55 West Wacker Dr., 9th Fl.
Chicago, Illinois 60601
Tel: (312) 893-7002
mmcguire@mcgpc.com
emeyers@mcgpc.com
dgerbie@mcgpc.com
bduffner@mcgpc.com

Jon Loevy
Michael Kanowitz
LOEVY & LOEVY
311 N. Aberdeen St., 3rd Fl.
Chicago, IL 60607
jon@loevy.com
mike@loevy.com

*Proposed Class Counsel*

TABLE OF CONTENTS

Table of Authorities ........................................................................................................ iii

I.      INTRODUCTION .............................................................................................1

II.     THE LITIGATION ...........................................................................................2

        A.  The Illinois Biometric Information Privacy Act ("BIPA")..........................2

        B.  The Litigation and Procedural History. ......................................................3

            1.  Plaintiff Rogers's Allegations and Proceedings in the Federal Case....................3

            2.  Plaintiffs' Allegations and Proceedings in the State Case ......................6

            3.  The Parties' Settlement Negotiations.........................................................7

III.    THE PROPOSED SETTLEMENT ..................................................................8

        A.  The Settlement Class.................................................................................8

        B.  Monetary Relief ........................................................................................8

        C.  Notice and Settlement Administration.......................................................9

        D.  Exclusion and Objection Procedure........................................................11

        E.  Release of Liability. ................................................................................11

        F.  Attorneys' Fees and Service Awards .......................................................11

IV.     ARGUMENT ...................................................................................................12

        A.  The Settlement Warrants Preliminary Approval.......................................12

        B.  The Court will Likely Find that the Proposed Settlement is Fair, Reasonable, and
            Adequate ..............................................................................................13

            1.  The Settlement was Reached only after extensive Motion Practice, Discovery, and
                Arm's-Length Negotiation....................................................................13

            2.  The Relief Provided by the Settlement is Adequate in Light of the Risks of
                Continued Litigation and will be Distributed Equally to all Settlement Class
                Members in an Efficient Manner. .........................................................15

        C.  The Court will Likely Find that the Proposed Settlement Class meets all

Requirements for Certification for Purposes of Settlement Under Fed. R. Civ. P. 23(a) and 23(b)(3). ....................................................................................................19

1. The Proposed Settlement Class Meets all Prerequisites to Certification Under Fed. R. Civ. P. 23(a) ............................................................................................20

   i. The Proposed Settlement Class is Ascertainable Based on Objective Criteria ....................................................................................................................20

   ii. Numerosity....................................................................................................20

   iii. Commonality.................................................................................................21

   iv. Typicality ......................................................................................................22

   v. Adequacy ......................................................................................................23

2. The Proposed Settlement Class is Certifiable Under Fed. R. Civ. P. 23(b)(3) ......24

   i. Common Questions Predominate Within the Settlement Class.....................25

   ii. A Class Action is the Most Efficient way of Adjudicating the Putative Settlement Class Members' Claims and is Superior to the Alternative of Either a Multitude of Individual Lawsuits or no Individual Lawsuits at all..............25

   iii. The Proposed Form and Method of Notice Through the State Court Satisfies Due Process and the Requirements of Fed. R. Civ. P. 23................................26

   iv. Plaintiffs' Counsel Should be Appointed Class Counsel................................28

3. The Court Should Preliminarily Modify the Certified Class Under Fed. R. Civ. P. 23(c)(1)(C) to be Consistent with the Settlement Class. .......................................28

V. FINAL APPROVAL HEARING.........................................................................29

VI. CONCLUSION..................................................................................................29

Certificate of Service .........................................................................................31

## TABLE OF AUTHORITIES

**Case**                                                                                           **Page(s)**

*Amchem Prods. Inc. v. Windsor,*
    521 U.S. 591 (1997)......................................................................................23, 25

*Armstrong v. Board of Sch. Dirs. of City of Milwaukee,*
    616 F.2d 305 (7th Cir. 1980) .......................................................................12

*Barragan v. Evanger's Dog & Cat Food Co.,*
    259 F.R.D. 330, 334 (N.D. Ill. 2009).......................................................21

*Bedford v. Lifespace Communities, Inc.,*
    No. 20-cv-04574 (N.D. Ill. May 12, 2021).............................................10

*Boone, et al. v. Snap, Inc.,*
    No. 2022LA000708 (Cir. Ct. DuPage Cnty. Nov. 22, 2022) ................19

*Bryant v. Compass Group USA, Inc.,*
    958 F.3d 617 (7th Cir. 2020) ..................................................................4, 15

*Cothron v. White Castle Systems, Inc.*
    2023 IL 128004 (Feb. 17, 2023)..............................................................5, 14

*Davis, et al., v. Heartland Employment Services, LLC,*
    No. 19-cv-00680, Dkt. 130 (N.D. Ill. Oct. 25, 2021) ............................19

*Felzen v. Andreas,*
    134 F.3d 873 (7th Cir. 1998) ...................................................................12

*Figueroa v. Kronos Incorporated,*
    No. 19-cv-01306 (N.D. Ill. Dec. 20, 2022)............................................19

*Hinman v. M and M Rental Cen., Inc.,*
    545 F. Supp. 2d 802 (N.D. Ill. 2008) ................................................21, 26

*Howard v. Cook Cnty. Sheriff's Off.,*
    F.3d 587, 605 (7th Cir. 2021) ..................................................................22

*In re AT&T Mobility Wireless Data Services Sales Litig.,*
    270 F.R.D. 330 (N.D. Ill. 2010)..........................................................12, 27

*In re Bridgestone/Firestone, Inc.,*
    288 F.3d 1012, 1015 (7th Cir. 2002). .....................................................26

*In re TikTok, Inc., Consumer Priv. Litig.,*
    565 F. Supp. 3d 1076 (N.D. Ill. 2021) ...............................................12, 18

*Isby v. Bayh,*
    75 F.3d 1191 (7th Cir. 1996) ........................................................................... 12-13

*Jones v. CBC Rest. Corp.*,
    No. 19-cv-06736 (N.D. Ill. Nov. 11, 2020) .......................................................10

*Keele v. Wexler,*
    149 F.3d 589 (7th Cir. 1998) ......................................................................... 21-22

*Kusinski v. ADP, LLC,*
    No. 2017-CH-12364 (Cir. Ct. Cook Cnty. Feb. 10, 2021) ...................................19

*Mitchem v. Illinois Collection Serv., Inc.*,
    271 F.R.D. 617 (N.D. Ill. 2011)........................................................................20

*Mullins v. Direct Digital, LLC*,
    795 F.3d 654 (7th Cir. 2015) ...........................................................................20

*Quarles v. Pret A Manger (USA) Limited*,
    No. 20-cv-07179, (N.D. Ill. May 4, 2022)..............................................................18

*Radamanovich v. Combined Ins. Co. of Am.*,
    16 F.R.D. 424 (N.D. Ill. 2003)..........................................................................25

*Retired Chicago Police Ass'n v. City of Chicago*,
    7 F.3d 584 (7th Cir. 1993) ................................................................................22

*Rivera, et al. v. Google*
    No. 2019-CH-00990 (Cir. Ct. Cook Cnty. Sept. 8, 2022) ............................... 18-19

*Roach v. Walmart, Inc.*,
    No. 2019-CH-01107 (Cir. Ct. Cook Cnty., Ill. 2020)..........................................19

*Rosario v. Livaditis,*
    963 F.2d 1013 (7th Cir. 1992) .........................................................................21

*Schulte v. Fifth Third Bank,*
    805 F. Supp.2d 560 (N.D. Ill. 2011) ................................................................ 16

*Synfuel Techs., Inc. v. DHL Express (USA), Inc.*,
    463 F.3d 646 (7th Cir. 2006) ..........................................................................15

*Thome v. NovaTime Tech., Inc.,*
    No. 19-cv-06256 (March 8, 2021 N.D. Ill.)........................................................19

*Wal-Mart Stores, Inc. v. Dukes,*
    564 U.S. 338, 350 (2011)..................................................................................21

*Wordlaw v. Enterprise Leasing Co. of Chicago, et al.*

No. 20-cv-03200 (N. D. Ill. Feb. 2, 2023) ............................................................................10

## Statutes

735 ILCS 5/2-801 .......................................................................................................................29

740 ILCS 14/ *et seq.* .......................................................................................... *passim*

Fed. R. Civ. P. 16 ........................................................................................................................7

Fed. R. Civ. P. 23 ............................................................................................... *passim*

28 U.S.C. § 1292(b) .....................................................................................................................5

28 U.S.C. § 1332 ..........................................................................................................................4

28 U.S.C. § 1441 ..........................................................................................................................4

28 U.S.C. § 1446 ..........................................................................................................................4

28 U.S.C § 1715 .....................................................................................................................27-28

## Other Authorities

Conte & Newberg, 4 *Newberg on Class Actions*, §11.25 (4th Ed. 2002).....................................12

7A Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure (2d ed. 1987) .........20

## I.     **INTRODUCTION**

The Settlement Agreement before the Court, if approved, will resolve the most advanced claims ever prosecuted under the Illinois Biometric Information Privacy Act, 740 ILCS 14/1, *et seq*. ("BIPA"). The Settlement would resolve the above-captioned class action (the "Federal Case"), as well as the related putative class action pending in the Circuit Court of Cook County, Illinois before the Honorable Pamela M. Meyerson, *Rogers et al. v. BNSF Railway Co.*, No. 2019-CH-04393 (the "State Case) (the "Federal Case" and the State Case are collectively referred to as the "Litigation".)[1]

The Litigation was brought on behalf of individuals who allege that they had their biometrics captured by Defendant BNSF Railroad Company ("Defendant" or "BNSF") through their Auto-Gate Systems in Illinois. This case represents the first BIPA case, of thousands, to be adversarially certified and go to trial. The State Case, which consists of claims that were severed and remanded from this case, is also procedurally advanced, including fully briefed motions for class certification and for judgment on the pleadings.

Rather than continue to litigate and face numerous additional questions of first impression and lengthy appeal processes in both this Court and in state court, including a new trial in this case on the question of damages, the Parties have reached a proposed Settlement which, if approved, would resolve all claims at issue in the Litigation and provide outstanding benefits to the Settlement Class. Through the proposed Settlement, Defendant will establish a non-reversionary Settlement Fund in the amount of $75,000,000.00 from which approximately 46,500 Settlement Class Members will be compensated on an equal basis via direct checks without having to submit claims. (Ex. 1 § IV.) If approved, the Settlement will bring certainty, closure and valuable cash

---

[1] Unless otherwise defined, capitalized terms used herein have the same meaning given to them as in the Parties' Settlement Agreement, a copy of which is attached hereto as Exhibit 1.

compensation to what has been contentious and costly litigation regarding BNSF's alleged collection of individuals' fingerprints at its Illinois facilities.

While Plaintiff believes he would be able to succeed on the merits and on appeal, success is not assured, particularly given the continued uncertainty in the law surrounding BIPA, numerous legislative efforts to limit BIPA's strength and scope, and the fact that Defendant has vigorously defended both the State Case and the Federal Case. The terms of the Settlement, which include a Settlement Fund providing significant cash compensation to the Settlement Class Members, meet and exceed the applicable standards of fairness. Preliminary approval is thus in the best interests of the Settlement Class Members and is consistent with Fed. R. Civ. P. 23 and due process. Accordingly, the Court should preliminarily approve the Settlement.

By this unopposed Motion, Plaintiff Richard Rogers ("Plaintiff"), seeks, *inter alia*, preliminary approval of the Settlement Agreement, appointment of the undersigned attorneys as Class Counsel, appointment of Richard Rogers and Michael Stewart as Class Representatives, preliminary certification of the Settlement Class for settlement purposes, and approval of the proposed form and methods of Notice, including issuance of notice and administration of the Settlement through the State Case, and preliminary modification of the certified class consistent with the Settlement Class.

## II.  THE LITIGATION

### A.  The Illinois Biometric Information Privacy Act ("BIPA")

BIPA requires private entities which seek to use biometric identifiers (e.g., fingerprints or facial geometry) and biometric information (any information gathered from a biometric identifier which is used to identify an individual)[2] to:

---

[2] "Biometric identifiers" and "biometric information" are collectively referred to herein as "biometrics."

(1) inform the person whose biometrics are to be collected *in writing* that biometrics will be collected or stored;

(2) inform the person whose biometrics are to be collected *in writing* of the specific purpose and the length of term for which such biometrics are being collected, stored and used;

(3) receive a written release from the person whose biometrics are to be collected allowing the capture and collection of their biometrics; and

(4) publish a publicly available retention schedule and guidelines for permanently destroying biometrics.

740 ILCS 14/15. BIPA was enacted to protect the privacy rights of individuals, to provide them with a means of enforcing their rights, and to regulate the practice of collecting, using and disseminating biometrics. 740 ILCS 14/5(c).

**B.     The Litigation and Procedural History**

1.     *Plaintiff Rogers's Allegations and Proceedings in the Federal Case*

On April 4, 2019, Plaintiff Richard Rogers filed a class action lawsuit against Defendant, alleging numerous violations of BIPA in the Circuit Court of Cook County, Illinois, where it was assigned to the Honorable Pamela McLean Meyerson. Plaintiff Rogers, a truck driver, alleged that BNSF utilized biometrically-enabled devices to verify his identity and the identities of other similarly-situated truck drivers, when they entered BNSF's Illinois facilities. Plaintiff alleged that these identity verification devices were components in the automated gate systems ("Auto-Gate System") at BNSF facilities in Illinois and relied on Settlement Class Member's fingerprints and biometric information derived therefrom. Plaintiff alleged that the use of such devices in Illinois was subject to regulation by BIPA and that Defendant failed to obtain written consent from him and the Settlement Class Members to collect or otherwise obtain their biometrics. (Dkt. 1-1 ¶¶ 18-21.) Plaintiff Rogers further alleged that Defendant failed to comply with BIPA by not publishing a publicly available retention schedule and guidelines for permanently destroying biometrics. (*Id.*)

On May 7, 2019, Defendant timely removed the Litigation to this Court, pursuant to 28 U.S.C. §§ 1332, 1441, and 1446. (Dkt. 1.) The Federal Case was assigned to Your Honor and captioned *Rogers v. BNSF Railway Co.*, No. 19-cv-03083. Defendant filed a Motion to Dismiss, which was fully briefed. (Dkts. 19-20). On October 31, 2019, the Court issued a Memorandum Opinion and Order denying Defendant's Motion to Dismiss. (Dkt. 31.) The Parties then began an extended period of protracted discovery which ultimately included several rounds of written discovery; production and review of tens of thousands of documents; eight party and third-party depositions; significant third-party written discovery; and expert discovery including production of expert reports from both Parties and depositions of each Party's expert.

Following expert discovery, Plaintiff Rogers moved to remand his claim made under Section 15(a) of BIPA to the Circuit Court of Cook County, Illinois on the basis that the District Court lacked subject matter jurisdiction pursuant to the Seventh Circuit's decision in *Bryant v. Compass Group USA, Inc.,* 958 F.3d 617 (7th Cir. 2020). (Dkt. 85.) After full briefing, Plaintiff's Motion to Remand was granted, and his claims under Section 15(a) of BIPA were severed and remanded to the Circuit Court of Cook County, Illinois. (Dkts. 97, 100.) In the Federal Case, the Parties briefed Plaintiff's Motion for Class Certification and Defendant's Motion for Summary Judgment. On March 15, 2022, the Court issued an Order denying Defendant's Motion for Summary Judgment. (Dkt. 142.) On March 22, 2022, the Court issued an Order granting Plaintiff's Motion for Class Certification and appointing Myles McGuire, Evan Meyers, David Gerbie, and Brendan Duffner of McGuire Law as Class Counsel. (Dkt. 143.)

On April 5, 2022, Defendant filed a Petition for Permission to Appeal the Court's Order granting class certification under Fed. R. Civ. P. 23(f). On April 11, 2022, Defendant's petition was summarily denied by a panel of the Seventh Court of Appeals. (Dkt. 145.) On April

26, 2022, Defendant filed a combined Motion for Certification of Interlocutory Appeal Under 28 U.S.C. § 1292(b). (Dkt. 147.) On June 21, 2022, the Court denied Defendant's Motion for Certification of Interlocutory Appeal Under 28 U.S.C. § 1292(b). (Dkt. 158.) Subsequently, the firm Loevy & Loevy was engaged to bring the Certified Class's claims through trial.

On August 25, 2022, the Parties filed their pretrial motions, including Omnibus Motions *in Limine* from both Parties and Defendant filing a Motion to Strike Undisclosed Witnesses, a Motion to Strike Plaintiff's Expert from Offering Undisclosed Expert Opinions at Trial, and a Motion to Stay Proceedings. (Dkts. 173-176, 178.) The Parties also filed their Final Pretrial Order. (Dkt. 177.) On September 1, 2022, the Parties responded to each of the foregoing pretrial motions. (Dkts. 180-185), and on September 6, 2022, the Court held a final pretrial conference. Starting on October 4, 2022, the Parties conducted a five-day jury trial presided over by the Court. On October 12, 2022, the jury returned a verdict, finding that Defendant had recklessly violated Section 15(b) of BIPA 45,600 times. (Dkt. 223.) The Court directed the Clerk to enter judgment in favor of the plaintiff class in the amount of $228,000,000 based on application of the statutory damages provision contained within BIPA. (Dkts. 223-225.)

On November 9, 2022, the Parties filed their post-trial motions. (Dkts. 235-236.) Defendant filed a Renewed Motion for Judgment as a Matter of Law and Motion for a New Trial or to Alter or Amend Judgment. Plaintiff Rogers filed a Rule 59 Motion to Amend Judgment. Those post-trial motions were fully briefed (Dkts. 245, 247, 250, 252), and the Court heard oral argument on the motions on June 2, 2023. On June 30, 2023, the Court granted Defendant's post-trial motion in part, relying on the then-recently issued Illinois Supreme Court opinion in *Cothron v. White Castle Systems* 2023 IL 128004 (Feb. 17, 2023) vacating the damages award and ordering a new trial to determine the damages to be awarded. (Dkt. 260.) The Court also denied Plaintiff Rogers's

post-trial motions. (*Id.*) On July 7, 2023, the Court set the damages retrial to begin on October 2, 2023. Prior to conducting the retrial, and as developed in further detail below, the instant Settlement was reached.

2.       *Plaintiffs' Allegations and Proceedings in the State Case*

Subsequent to the remand of Plaintiff Rogers's Section 15(a) claims, Plaintiff Rogers was granted leave to file the operative Second Amended Complaint in State Court. Plaintiff did so on October 20, 2021, adding Michael Stewart as a named plaintiff. Plaintiffs Rogers and Stewart are hereinafter referred to as "Plaintiffs." Defendant filed its Answer on December 6, 2021. On May 20, 2022, Judge Meyerson entered an Agreed Protective Order which operated to consider all materials produced in the Federal Case to have been produced in the State Case as well. The Parties then began conducting additional discovery tailored to Plaintiffs' Section 15(a) claims and to obtain updated information concerning the size of the putative class.

Discovery in the State Case was also extensive and resulted in the Parties conducting numerous additional depositions, including those of Plaintiff Stewart, Defendant's employees, and four additional depositions of Defendant's service provider Remprex, LLC and its employees. The Parties also engaged in additional written discovery and exchanged deficiency correspondence related thereto. On July 18, 2022, Plaintiffs filed a Motion to Compel Production of Data in Discovery that was fully briefed and that was ultimately granted on September 19, 2022. On March 28, 2023, Plaintiffs filed a Motion for Class Certification. In response, Defendant filed a Motion to Stay briefing on Plaintiffs' Motion for Class Certification pending further discovery. Defendant's Motion was ultimately denied, and Plaintiffs' Motion for Class Certification was fully briefed, but not ruled upon. On June 12, 2023, Defendant filed a Motion for Judgment on the Pleadings, seeking dismissal of the State Case with prejudice. That Motion was fully briefed but

not ruled upon. Prior to oral argument and Judge Meyerson's rulings on the Motion for Class Certification and the Motion for Judgment on the Pleadings, the instant Settlement was reached. Judge Meyerson has stayed argument and ruling on these motions pending approval of the Settlement.

### 3.     *The Parties' Settlement Negotiations*

Over the course of the extensive litigation outlined above, the Parties have mediated a total of seven times with the assistance of three separate experienced neutrals. On March 11, 2020, when the Parties were in the early stages of discovery, the Parties mediated with Judge James Holderman (Ret.) of JAMS Chicago, former Chief Judge of the U.S. District Court for the Northern District of Illinois. This mediation was unsuccessful. A year later, on April 7, 2021, the Parties participated in a second private mediation, this time overseen by the Honorable James Epstein (Ret.) of JAMS Chicago, a former Justice of the Illinois Appellate Court and Judge in the Chancery Division of the Circuit Court of Cook County. On June 6, 2022, the Parties participated in a third arm's-length mediation, again overseen by Judge Epstein.

The Parties also engaged in four separate Fed. R. Civ. P. 16 settlement conferences with Your Honor. On September 29, 2022, the Court held a pretrial settlement conference. The Parties did not reach agreement to resolve the Litigation. Following the jury verdict, on November 29, 2022, the Court held a post-trial settlement conference where the Parties were again unable to resolve the Litigation. On December 23, 2022, the Court held a second post-trial settlement conference, which was again unsuccessful. (Dkt. 240.) On September 8, 2023, just prior to the retrial scheduled for October 2, 2023, the Court held a fourth court-mediated settlement conference in this matter, which ultimately led to this settlement. (Dkt. 271.)

Following the Parties' formal settlement efforts, and over the following months, counsel

for Plaintiffs and for Defendant continued to expend significant further efforts and resources negotiating specific terms of the Settlement, including, among other things: the scope of the release; the form and content of the Notice; settlement administration procedures; and the process and deadlines for objections, exclusions, and other submissions to the Court. Eventually, these extensive negotiations culminated in the Settlement Agreement and the attendant exhibits for which Plaintiff now seeks preliminary approval.

The Settlement represents the Parties' agreement to resolve all matters pertaining to, arising from, or associated with the Litigation – for both the Federal Case and the State Case – including all claims the Releasing Parties have or may have had against the Released Parties in the context of the biometric functions of the Auto-Gate System at BNSF's facilities in Illinois. The Parties have agreed to settle the Litigation on the terms and conditions set forth in the Settlement Agreement in recognition that the outcome of litigation is inherently uncertain and that achieving a final result through litigation would require substantial additional risk, time and expense.

## III.    THE PROPOSED SETTLEMENT

### A.    The Settlement Class

The proposed Settlement will establish a Settlement Class defined as follows:

> "All individuals whose fingerprint information was registered using an Auto-Gate System at one of BNSF's four Illinois facilities at any time between April 4, 2014 and the date of the Preliminary Approval Order."

(Ex. 1 ¶ 58.)

### B.    Monetary Relief

The proposed Settlement will establish a fully paid out, non-reversionary Settlement Fund of $75,000,000.00 (seventy-five million dollars). (*Id.* ¶¶ 87, 92.) The Settlement Class consists of approximately 46,500 individuals. (*Id.* ¶ 58.) The entire amount of the Settlement Fund will be distributed directly to Settlement Class Members on a *pro rata* basis after deductions for the costs

of notice and administration, a Fee Award, and Service Awards to the Class Representatives, with no need for Settlement Class Members to submit a claim in order to receive payment. (*Id.* ¶¶ 101-106.) As discussed below, after deductions for the costs of notice and administration, a Fee Award, and Service Awards to the Class Representatives, Plaintiff anticipates that each Settlement Class Member will receive approximately $1,000. Moreover, any uncashed check amounts from the Settlement Fund following the first distribution of payments to the Settlement Class Members will be redistributed on an equal, *pro rata* basis to Settlement Class Members who cashed their initial check. (*Id.* ¶¶ 104-106.) Importantly, Defendant also represents that it no longer uses the technology at issue in the Litigation at its Illinois facilities. (*Id.* ¶ 52.)

### C. Notice and Settlement Administration

The notice plan set forth in the Settlement Agreement will be administered through the State Court. Plaintiffs will ask the State Court to approve as administrator Epiq Class Actions & Claims Solutions ("Epiq"), an industry-leading administrator of class action settlements. (*Id.* ¶ 86.) Epiq previously distributed direct notice in this case to members of the certified class after class certification. (Dkts. 155-156.) Following entry of a Preliminary Approval Order in the State Case, direct notice, substantially in the form of Exhibit A to the Settlement Agreement, will be sent directly to Settlement Class Members via U.S. Mail where the parties have a last-known mailing address or where the address can be determined by the Settlement Administrator. (*Id.* ¶¶ 75, 91.) The Class Notice has been carefully drafted in straightforward, easy-to-read language to clearly inform Settlement Class Members of all material aspects of the Settlement, such as the relief they are entitled to under the Settlement, the amount of the Fee Award and Service Awards that may be sought, instructions and deadlines for opting out of or objecting to the Settlement, and the scope of the release, including the fact that the Settlement releases all claims pending in the Federal Case and the State Case. (*Id.* at Ex. A; Ex. 1 ¶ 88.) The Notice being provided directly to Class Members

is a full detailed Notice, and not merely a postcard notice.

In addition to the robust direct notice being provided, the Settlement Class Members can learn about the Litigation and the Settlement on the Settlement Website, www.BNSFBIPAClassAction.com, which was established following class certification. (Dkts. 155-156.) The Settlement Website will identify all relevant deadlines and include downloadable case documents, including the operative Complaint, Settlement Agreement, and the Class Notice. Other important case documents, including Plaintiffs' forthcoming submissions regarding a Fee Award in the State Case and regarding final approval in the State and Federal Cases, will also be made available on the Settlement Website for consideration by the Settlement Class Members.

If the Settlement is granted final approval, monetary relief will be automatically provided via check to the Settlement Class Members who do not exclude themselves from the Settlement. (*Id.* ¶¶ 100-103.) Settlement Class Members will not have to submit a claim form or otherwise "opt-in" to the Settlement Class. Any uncashed check amounts from the Settlement Fund following the first distribution of payments to the Settlement Class Members will be redistributed on an equal, *pro rata* basis to Settlement Class Members who cashed their initial check. (*Id.* ¶¶ 104-106.) Any uncashed amounts after the second distribution shall be distributed to a *cy pres* recipient(s) selected by the Parties and approved by the Court. (*Id.*) No portion of the Settlement Fund will revert to or be returned to Defendant. This direct individual Notice and method of monetary distribution to the Settlement Class Members without a claims process is consistent with or better than what courts have regularly approved in other BIPA settlements.[3]

---

[3] *See, e.g., Jones v. CBC Rest. Corp.*, 19-cv-06736, Dkt. 53 (N.D. Ill. Nov. 11, 2020); *Bedford v. Lifespace Communities, Inc.*, No. 20-cv-04574, Dkt. 31 (N.D. Ill. May 12, 2021); *Wordlaw v. Enterprise Leasing Co. of Chicago, et al.* No. 20-cv-03200 (N. D. Ill. Feb. 2, 2023).

### D.    Exclusion and Objection Procedure

Settlement Class Members will have an opportunity to exclude themselves from the Settlement or object to its approval. The procedures and deadlines for filing exclusion requests and objections will be identified in the Class Notice directly sent to Settlement Class Members and will also be made available on the Settlement Website. (*Id.* ¶ 117-121.) The Class Notice informs Settlement Class Members that the Final Approval Hearing will be their opportunity to appear and have their objections heard. (*Id.*) The Class Notice also informs Settlement Class Members that they will be bound by the Release contained in the Settlement Agreement unless they exercise their right to exclusion in a timely manner. (*Id.* at Ex. A.)

### E.    Release of Liability

In exchange for the relief described above, the Settlement Class Members who do not exclude themselves will provide the Released Parties a full release of all Released Claims, including BIPA claims, arising from or relating to the subject matter of the Litigation and all claims that were brought or could have been brought in the Litigation, including the State Case and the Federal Case, by Plaintiffs and/or the Settlement Class Members. (*Id.* § VI.)

### F.    Attorneys' Fees and Service Awards

Subject to approval, attorneys' fees are to be paid out of the Settlement Fund. (*Id.*, ¶¶ 84-88.) Under the Settlement Agreement, Class Counsel have agreed, with no consideration from Defendant, to limit their request for attorneys' fees to no more than 35% of the Settlement Fund, plus their reasonable litigation costs and expenses. (*Id.*, ¶ 84.) The Class Representatives also intend to move for Service Awards, subject to approval, of up to $15,000 each for their numerous contributions to the Litigation, which include, among other things, participating in written discovery, sitting for depositions, attending and testifying at trial, and being involved in the settlement process. (*Id.*, ¶ 86.)

## IV.    ARGUMENT

### A.    The Settlement Warrants Preliminary Approval.

As revised, Fed. R. Civ. P. 23 directs the Court at this stage to only determine whether it "will be likely" to grant final approval of the proposed Settlement as "fair, reasonable, and adequate," pursuant to Fed. R. Civ. P. 23(e)(2), and certifiable "for purposes of judgment on the proposal," pursuant to Fed. R. Civ. P. 23(e)(1)(B)(ii). The edits to Rule 23 mirror the well-established two-step process in this Circuit of performing a "preliminary" evaluation of the fairness of the settlement to determine whether notice is to be sent out, prior to the final fairness inquiry. Conte & Newberg, 4 *Newberg on Class Actions*, § 11.25, at 38–39 (4th Ed. 2002); *Armstrong v. Board of Sch. Dirs. of City of Milwaukee*, 616 F.2d 305, 314 (7th Cir. 1980), *overruled on other grounds by Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998); *In re AT&T Mobility Wireless Data Servs. Sales Litig.*, 270 F.R.D. 330, 346 (N.D. Ill. 2010). Accordingly, the preliminary approval evaluation is not a final fairness hearing. Rather, it is an evaluation to determine whether there is reason to notify the class members of the proposed settlement and to proceed with a final fairness hearing. *Newberg*, § 11.25, at 38-39; *Armstrong*, 616 F.2d at 314.

Because the essence of every settlement is compromise, courts should not reject a settlement solely because it does not provide a complete victory, given that parties to a settlement "benefit by immediately resolving the litigation and receiving some measure of vindication for [their] position[s] while foregoing the opportunity to achieve an unmitigated victory." *In re AT&T*, 270 F.R.D. at 347 (internal quotations and citations omitted). There is a strong judicial and public policy favoring the settlement of class action litigation, and such a settlement should be approved by the Court after inquiry into whether the settlement is "fair, reasonable, and adequate." *In re TikTok, Inc., Consumer Priv. Litig.*, 565 F. Supp. 3d 1076, 1083 (N.D. Ill. 2021); *Isby v. Bayh*, 75

F.3d 1191, 1198 (7th Cir. 1996).

**B.**    **The Court will Likely Find that the Proposed Settlement is Fair, Reasonable, and Adequate.**

As the amendments to Rule 23 direct, in determining whether to preliminarily approve a settlement, the Court must first evaluate where it is "likely" to finally determine that the settlement is fair, reasonable, and adequate. Under Rule 23(e)(2), the factors in determining whether a settlement is fair, reasonable, and adequate include: (1) whether the class representative and class counsel have adequately represented the class; (2) whether the settlement was negotiated at arm's length; (3) the relief provided to the class versus the cost and risk of proceeding to trial, the method by which relief will be distributed to the class, and the proposed attorneys' fees award; and (4) whether the Settlement treats all Class members equally to one another. Fed. R. Civ. P. 23(e)(2). Application of these factors to this case demonstrates that the proposed Settlement is fair, reasonable, and adequate.

1.    <u>The Settlement was Reached only after Extensive Motion Practice, Discovery, and Arm's-Length Negotiation.</u>

The first two factors under the amended Rule 23(e)(2) address "procedural concerns" and are intended to "look[] to the conduct of the litigation and of the negotiations leading up to the proposed settlement." Fed. R. Civ. P. 23(e)(2)(A) & (B) advisory committee's note. In determining whether these factors are satisfied, the Court may consider "the nature and amount of discovery in this or other cases, or the actual outcomes of other cases, [which] may indicate whether counsel negotiating on behalf of the class had an adequate information base." Fed. R. Civ. P. 23(e)(2)(A) & (B) advisory committee's note.

As the Court is aware, the Parties litigated this case heavily and underwent substantial discovery and motion practice. But to fully analyze this particular Settlement, it is important to

also consider the bifurcation of Plaintiffs' and the Settlement Class Members' claims between state and federal court. The Federal Case was successfully litigated through trial, resulting in the first-ever judgment to be entered in a BIPA case—for $228 million. (Dkt. 223.) However, pursuant to the Parties' post-trial motions, the Court vacated the monetary award on June 30, 2023. (Dkt. 260.) Accordingly, had Plaintiff continued to pursue his 15(b) claims through a retrial and any subsequent post-trial motions and appellate proceedings, he would have had to again prove the most important issue to monetary recovery again: damages. To that end, in light of the Illinois Supreme Court's ruling in *Cothron* and the Parties' pre-retrial motions (Dkts. 272-273), Plaintiff faced numerous additional questions of first impression. Similarly, the State Case, though less procedurally advanced than the Federal Case, has been heavily litigated and would otherwise be on a similar path to trial. The Parties had fully briefed Plaintiffs' Motion for Class Certification and Defendant's Motion for Judgment on the Pleadings, and those motions were set for oral argument. Moreover, just prior to reaching the instant Settlement, Plaintiffs were preparing to file a motion for summary judgment in short order, having sought and obtained leave to file such documents under seal. Accordingly, Plaintiffs and Class Counsel had sufficient information about the facts of the Litigation to fairly weigh their prospects of ultimate success on the merits versus the negotiated outcome provided by the Settlement such that the Court is likely to find that they adequately represented the Class.

Indeed, it was not until the eve of the second trial in the Federal Case that the Parties were able to resolve the Litigation. As discussed above, the instant Settlement was reached following a combined seven mediations and settlement conferences in this case, which occurred with the assistance of three separate experienced neutrals. Your Honor's September 8, 2023 settlement conference ultimately formed the basis of this Settlement. Over the following months, counsel for

the Parties continued to expend significant further efforts negotiating numerous specific, material terms of the Settlement. That such an extensive and formal process was overseen by Your Honor – and only after a full trial on the merits – underscores the non-collusive nature of the proposed Settlement. *See* Fed. R. Civ. P. 23(e)(2)(A) & (B) advisory committee's note ("[T]he involvement of a neutral or court-affiliated mediator or facilitator in those negotiations may bear on whether they were conducted in a manner that would protect and further the class interests.")

2. <u>The Relief Provided by the Settlement is Adequate in Light of the Risks of Continued Litigation and will be Distributed Equally to all Settlement Class Members in an Efficient Manner.</u>

The Court is also likely to find that the proposed Settlement satisfies Rule 23's requirement of providing adequate relief when weighed against the prospects of continued litigation. Fed. R. Civ. P. 23(e)(2)(C)(i). As the Seventh Circuit has found, this is the most important consideration in determining whether a Settlement should be approved. *Synfuel Techs, Inc. v. DHL Express (USA), Inc*., 463 F.3d 646, 653 (7th Cir. 2006). The Settlement provides significant monetary benefits to the Settlement Class, as every Settlement Class Member will receive an equal payment from a Settlement Fund totaling $75,000,000 after deductions for settlement administration expenses and the court-approved attorneys' fees and Service Awards. Settlement Class Members can expect to receive at least $1,000 from the Settlement Fund – an excellent result for Settlement Class Members.

This substantial relief, when weighed against the risk of continued litigation, makes the Settlement particularly strong. Importantly, due to the bifurcation of this Litigation, Plaintiffs were pursuing very similar claims in two separate courts. This inefficiency, borne of the Seventh Circuit's decision in *Bryant v. Compass Group USA, Inc.,* 958 F.3d 617 (7th Cir. 2020), resulted in expensive and complex litigation. (Dkt. 85.) Significant high stakes motion practice, trials, and

appeals loomed in both cases absent settlement. In the Federal Case, the Parties were preparing for a retrial and were preparing responses to motions *in limine* and jury instructions concerning the contours of a possible damages verdict. In the State Case, the Parties had briefed class certification and Defendant had moved for judgment on the pleadings. Plaintiffs were also preparing to brief summary judgment and intended to pursue another trial in the State Case.

Moreover, and as was demonstrated in the Federal Case, given the complexity of the issues, the numerous issues of first impression, the size of the putative class, and the amount in controversy, appellate litigation was highly likely with respect to any decision on the merits (at summary judgment and/or trial). Indeed, even if Plaintiffs had been victorious in both the State Case and the Federal Case, Defendant raised multiple preemption defenses and preserved those defenses for purposes of appeal. (Dkts. 19-20, 235.) The Parties' retrial on the question of damages itself was also sure to result in rulings on numerous additional questions of first impression considering the unprecedented nature of the first damages award, its undoing through Defendant's post-trial motion victory, and the subsequent rulings by this Court on motions *in limine* concerning a putative jury's "discretion" with respect to crafting a damages award. These questions, along with the additional defenses present in Defendant's Answer and Affirmative Defenses, if successful, could have resulted in Plaintiffs and the proposed Settlement Class Members receiving no compensation whatsoever, or at least materially less, were a jury instructed it could award damages along a complete sliding scale "up to" $5,000 as Defendant had argued. Accordingly, any success during re-trial in the Federal Case or summary judgment in the State Case would not be set in stone and would be subject to substantial appellate risk. *See Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 582 (N.D. Ill. 2011). "Settlement allows the class to avoid the inherent risk, complexity, time, and cost associated with continued litigation." *Id*. at 586. "If the Court approves

the [Settlement], the present lawsuit will come to an end and [Settlement Class Members] will realize both immediate and future benefits as a result." *Id.* Taking the available remaining defenses into account, and recognizing the risks involved in any litigation, the quality relief afforded to each Settlement Class Member represents a truly excellent result for the Settlement Class. Approval of the Settlement will allow Plaintiffs and the Settlement Class Members to receive meaningful and significant payments now, instead of years from now—or perhaps never. *Id*. at 582.

Another consideration affecting the long-term viability of Plaintiffs' claims is the uncertain future of BIPA itself, as multiple bills designed to blunt BIPA's protections and limit the availability of monetary damages have been introduced in the Illinois Legislature.[4] If the Illinois Legislature were to amend, reduce, or limit BIPA, Plaintiff and the Settlement Class Members could see their claims diminished or even completely evaporate.

The relief provided to Settlement Class Members will also be distributed in an effective and efficient manner that treats all Settlement Class Members equally in accordance with Fed. R. Civ. P. 23(e)(2)(C)(iii) and (D). As set forth in § III(C), *supra*, the Settlement Agreement contemplates direct class Notice designed to reach as many potential Settlement Class Members as possible. This is made possible by nature of the class data here, which was captured along with the alleged biometric information and includes Settlement Class Members' names and addresses. Under the Settlement Agreement, the Settlement Administrator will send direct notice, primarily in the form of Exhibit A to the Settlement Agreement, via U.S. mail to all Settlement Class Members for which the Settlement Administrator is able to identify a mailing address. (Ex. 1 ¶ 76.) This direct notice process should be very effective at reaching the Settlement Class Members given the nature of the class data. Because each Settlement Class Member will be sent an equal

---

[4] *See* Illinois S.B., 3053 (2018); 2134 (2019); 3593 (2020); 3591 (2020) and H.B. 5103 (2018); 5374 (2020); 2979 (2023/2024).

share of the Settlement Fund in exchange for an identical release, the proposed Settlement "treats class members equitably relative to each other." Fed. R. Civ. P. 23(2)(D).

Lastly, the remaining factors to be considered under Rule 23(e)(2)(C) are also all satisfied here. Plaintiff's Counsel's anticipated attorneys' fees request – no more than 35% of the Settlement Fund plus reasonable costs and expenses – falls within the range of attorneys' fees awarded in other similar settlements and will likely be found reasonable in light of the recovery achieved for the Settlement Class Members and the efforts undertaken by Plaintiff's Counsel in pursuing these claims on behalf of the Settlement Class. Fed. R. Civ. P. 23(e)(2)(C)(iii); *In re TikTok,* 617 F.Supp.3d at 940 (applying percentage-of-the-fund method in $92 million BIPA settlement); *see also Quarles v. Pret A Manger (USA) Limited*, No. 20-cv-07179, Dkt. 53 (N.D. Ill. May 4, 2022) (Shah, J.) (approving class counsel fee request for 36% of the settlement fund in BIPA class settlement; *Rivera, et al. v. Google* 2019-CH-00990 (Cir. Ct. Cook Cnty. Sept. 8, 2022) (35% of the settlement fund in a $100 million BIPA class settlement). To the extent that any Settlement Class Members believe that the attorneys' fees requested are not appropriate, they will have the opportunity to object to the Settlement and to raise their concerns at the Final Approval Hearing.[5]

In sum, the lengthy duration of the Litigation; the extensive and often contentious investigation and discovery process; the excellent result for the Settlement Class in spite of the significant substantive and procedural hurdles faced by the Settlement Class Members; and the participation of an experienced intermediary during the negotiation process are all testament to the fairness of the proposed Settlement. Illinois state and federal courts have approved class action settlements involving violations of BIPA providing similar or less than the gross payment per Class Member here. *See, e.g.*, *Davis, et al., v. Heartland Employment Services, LLC,* No. 19-cv-00680,

---

[5] Pursuant to Fed. R. Civ. P. 23(e)(2)(C)(iv), there are no agreements made in connection with the Settlement other than the terms contained in the Settlement Agreement.

Dkt. 130 (N.D. Ill. Oct. 25, 2021) (Valderrama, J.) ($5.4 million fund for 11,048 class members for a gross recovery of $490.40 per class member); *Roach v. Walmart, Inc.,* No. 2019-CH-01107 (Cir. Ct. Cook Cnty., Ill. 2020) ($10 million fund for 21,677 class members for a gross recovery of $461.32 per class member); *Thome v. NovaTime Tech., Inc.,* No. 19-cv-06256 (March 8, 2021 N.D. Ill.) ($4.1 million fund for approximately 62,000 class members, for a $66.12 gross recovery); *Figueroa v. Kronos Incorporated*, No. 19-cv-01306, Dkt. 380 (N.D. Ill. Dec. 20, 2022) ($15.2 million fund for approximately 171,643 class members, for a $88.55 gross recovery); *Kusinski v. ADP, LLC.*, No. 2017-CH-12364 (Cir. Ct. Cook Cnty. Feb. 10, 2021) ($25 million fund for approximately 320,000 class members, for a $78.12 gross recovery); *Boone, et al. v. Snap, Inc.* No. 2022LA000708 (Cir. Ct. DuPage Cnty. Nov. 22, 2022) ($35 million fund for 3.8 million class members, for a $9.21 gross recovery); *Rivera, et al. v. Google* No. 2019-CH-00990 (Cir. Ct. Cook Cnty. Sept. 28, 2022) ($100 million fund for 5.8 million class members, for a $17.24 gross recovery).

Moreover, the total amount of all checks that remain uncashed following the First Distribution of settlement awards will be re-distributed amongst the Settlement Class Members who cashed their initial check rather than being returned to Defendant. (Ex. 1 ¶ 108.)

Accordingly, the Settlement is likely to be found as fair, reasonable, and adequate, and warrants the Court's preliminary approval.

C. **The Court will Likely Find that the Proposed Settlement Class Meets all Requirements for Certification for Purposes of Settlement Under Fed. R. Civ. P. 23(a) and 23(b)(3).**

The proposed Settlement is not only likely to be found fair, reasonable, and adequate, but the proposed Settlement Class is also likely to be finally certified by the Court at the final approval hearing. As explained below, the Settlement Class meets all the criteria for certification under Rule

23(a) and 23(b)(3).

    1.    <u>The Proposed Settlement Class Meets all Prerequisites to Certification Under Fed. R. Civ. P. 23(a).</u>

    *i.*    *The Proposed Settlement Class is Ascertainable Based on Objective Criteria.*

Although not explicitly required under Rule 23(a), some courts require that a proposed class be ascertainable. A class is ascertainable if "its members can be ascertained by reference to objective criteria[.]" *Mitchem v. Illinois Collection Serv., Inc.*, 271 F.R.D. 617, 619 (N.D. Ill. 2011) (internal citations omitted); 7A Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1760, at 121 (2d ed. 1987) (noting that the class must be defined in a way that is administratively feasible for a court to determine whether a particular individual is a member).

Here, membership in the proposed Settlement Class is easily determined based on objective criteria and records that the Parties have access to – including names and addresses – and, as a result, the proposed Settlement Class is ascertainable. *See Mullins v. Direct Digital, LLC*, 795 F.3d 654, 661 (7th Cir. 2015), *cert. denied*, No. 15-549, 2016 WL 763259 (U.S. Feb. 29, 2016) (noting that ascertainability focuses on the "adequacy of the class definition itself" and not on the "difficulty [in] identify[ing] particular members of the class"). Indeed, direct notice was sent to the vast majority of Settlement Class Members in connection with adversarial class certification in the Federal Case. (Dkts. 155-156.)

    *ii.*    *Numerosity*

The numerosity requirement of Rule 23(a)(1) is met where "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "Although there is no bright-line test for numerosity, a class of forty is generally sufficient to satisfy Rule 23(a)." *Hinman v. M & M Rental Ctr., Inc.*, 545 F. Supp. 2d 802, 805-806 (N.D. Ill. 2008).

Here, the proposed Settlement Class encompasses approximately 46,500 individuals. (Ex. 1 ¶ 58.) The only difference between the Settlement Class and the Certified Class is one of temporal scope. Where the class period for the Certified Class ended on January 25, 2020 (Dkt. 143 at 1), the Settlement Class runs through preliminary approval, capturing an additional ~2 months of truck driver registrations, which reflects the fact that the Illinois' Auto-Gate System's biometric capabilities were shut off in March 2020. (Trial Tr., 606:5-8; 1192: 8-11.) In finding adversarial class certification appropriate, the Court found this requirement satisfied. (Dkt. 143 at 4.) It is satisfied for purposes of settlement as well.

### iii.     Commonality

The second prerequisite of Rule 23(a) requires that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). The commonality requirement is met where the putative class members share a "common contention" that is "capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Commonality is often present where defendants have "engaged in standardized conduct toward members of the proposed class." *Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998); *Hinman*, 545 F. Supp. 2d at 806. "Commonality requires that there be at least one question of law or fact common to the class." *Barragan v. Evanger's Dog & Cat Food Co.,* 259 F.R.D. 330, 334 (N.D. Ill. 2009) (quoting *Rosario v. Livaditis,* 963 F.2d 1013, 1018 (7th Cir. 1992)).

In this case, all members of the proposed Settlement Class share common statutory BIPA claims arising out of what Plaintiff claims to be standardized conduct: the alleged collection and storage of Settlement Class Members' biometrics without sufficient consent at Defendant's Illinois facilities through Defendant's use of Auto-Gate Systems. These claims require the resolution of

the same central factual and legal issues, including: (1) whether the information obtained from Settlement Class Members constituted biometric identifiers or biometric information as defined by BIPA; (2) whether such information was obtained without valid written consent required under BIPA; (3) whether Defendant had a BIPA-compliant publicly-available written policy addressing retention and storage of biometrics; and (4) whether such conduct violated BIPA.

Here, the number and significance of the common questions are sufficient to meet the commonality requirement for purposes of settlement. Indeed, in finding adversarial class certification appropriate, the Court found this requirement satisfied. (Dkt. 143 at 4-5.) It is satisfied for purposes of settlement as well.

iv.      Typicality

Rule 23(a) requires the class representative's claims to be typical of those of the potential class members. Fed. R. Civ. P. 23(a)(3). "As a general matter, '[a] plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory.'" *Howard v. Cook Cnty. Sheriff's Off.*, 989 F.3d 587, 605 (7th Cir. 2021) (quoting *Keele v. Wexler*, 149 F.3d 589, 595 (7th Cir. 1998)) (alteration in original). The typicality requirement asks whether the class representative's claims "have the same essential characteristics as the claims of the class at large." *Retired Chicago Police Ass'n v. City of Chicago*, 7 F.3d 584, 596-97 (7th Cir. 1993).

Here, Plaintiff and the Settlement Class Members all allege they were required to register their biometrics using an Auto-Gate System at Defendant's facilities in Illinois. Further, Plaintiff and the putative Settlement Class Members have all alleged the same injury: a violation of their BIPA rights through Defendant's use of the Auto-Gate System to obtain their biometrics. Because the Settlement Class Members assert identical claims based on the same legal theory, the same

22

facts, and the same course of conduct by Defendant, and they seek redress for the same injury, Plaintiffs' claims are thus typical of the Settlement Class they seek to represent for purposes of settlement. In finding adversarial class certification appropriate, the Court found that "Rogers's claim is virtually identical to the claims of the proposed class members, as it arises from a uniform course of conduct." (Dkt. 143 at 5.) The same is true for purposes of settlement as well, and the same is true for Plaintiff Stewart, who testified at trial to this effect. (Trial Tr. at 630:10-639:5.)

*v.*      *Adequacy*

The final subsection of Rule 23(a) requires that the class representatives "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This inquiry "serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 625 (1997). To demonstrate adequacy, class representatives must show that: (1) their claims are not antagonistic or in conflict with those of the proposed class, (2) they have sufficient interest in the outcome of the case, and (3) they are represented by experienced and competent counsel. *Hinman*, 545 F. Supp. 2d at 807.

Here, Plaintiffs' interests are entirely representative of and consistent with the interests of the proposed Settlement Class: all have allegedly had their biometrics taken and used by Defendant in a manner inconsistent with the legal protections provided by BIPA. Plaintiffs sought out legal representation after coming to believe their rights had been violated, and their pursuit of the Litigation has demonstrated that they have been, and will remain, zealous advocates for the Settlement Class. Plaintiffs have sacrificed their time, energy, and privacy on behalf of the Class by agreeing to publicly serve as the named plaintiffs here and in the State Case. Notably, Plaintiffs both testified during trial in the Federal Case and are both currently named plaintiffs in the State Case. Thus, Plaintiffs have the same interests as the Settlement Class, and have at all times acted

as zealous advocates of the Settlement Class Members' interests. In finding adversarial class certification appropriate, the Court found that Plaintiff Rogers was an adequate class representative. (Dkt. 143 at 6.) Now, for purposes of Settlement, the Court should appoint Plaintiff Rogers and Mr. Michael Stewart to represent the Settlement Class Members.

Similarly, proposed Class Counsel have regularly engaged in major complex litigation and have extensive experience in class action lawsuits relating to privacy and emerging technologies, including numerous BIPA class actions. Plaintiffs' counsel and their firms have been appointed as class counsel in many complex class actions in the Northern District of Illinois, the Circuit Court of Cook County, and in courts throughout the country, including in numerous BIPA cases.[6] Plaintiffs' Counsel will continue to adequately represent the Settlement Class through settlement. In finding adversarial class certification appropriate, and prior to the retention of Loevy & Loevy as trial counsel, the Court found that McGuire Law had demonstrated its adequacy. (Dkt. 143 at 6.) Now, and for purposes of settlement, the Court should find that the undersigned attorneys from McGuire Law and Loevy & Loevy have adequately represented the Settlement Class Members and that there is every reason to find that they will continue to do so.

2.    The Proposed Settlement Class is Certifiable under Fed. R. Civ. P. 23(b)(3).

A class is certifiable under Rule 23(b)(3) where "questions of law or fact common to class members predominate over any questions affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

i.    *Common Questions Predominate Within the Settlement Class.*

The predominance inquiry focuses on whether a proposed class is sufficiently cohesive to

---

[6] *See* Declarations of proposed Class Counsel Evan M. Meyers and Jon Loevy, attached hereto as <u>Exhibits 2 and 3</u>, respectively.

warrant adjudication by representation. *Amchem*, 521 U.S. at 623. To satisfy the predominance requirement of Rule 23(b)(3), "each class member must share common questions of law or fact with the rest of the class, therefore making class-wide adjudication of the common questions efficient compared to the repetitive individual litigation of the same question." *Lemon v. Int'l Union of Operating Eng's.*, 216 F.3d 577, 581 (7th Cir. 2000). While the common issues must predominate, they need not be exclusive. *Radamanovich v. Combined Ins. Co. of Am.*, 216 F.R.D. 424, 435 (N.D. Ill. 2003).

Here, for purposes of settlement, the common questions resulting from Defendant's alleged conduct predominate over any individual issues that may exist and can be answered on a class-wide basis based on common evidence maintained by Defendant. Chiefly, the common evidence for settlement purposes is a database of alleged biometric and other information identifying the Settlement Class Members that was obtained at Defendant's facilities in Illinois. Accordingly, this factor is satisfied. As such, the elements of any given Settlement Class Member's claim will be based on the same classwide proof applicable to other Settlement Class Members within the same class. Notably, in finding adversarial class certification appropriate, the Court found this requirement satisfied as well. (Dkt. 143 at 7.) It is satisfied for purposes of settlement as well.

> ii. *A Class Action is the Most Efficient way of Adjudicating the Putative Settlement Class Members' Claims and is Superior to the Alternative of Either a Multitude of Individual Lawsuits or no Individual Lawsuits at all.*

A class action is vastly superior to any other method available to fairly and efficiently adjudicate the Settlement Class Members' claims for purposes of settlement. Rule 23(b)(3) lists four factors that the Court should consider in taking into account whether a class action is superior to other methods of adjudicating this action: (a) the class members' interests in individually controlling the prosecution or defense of separate actions; (b) the extent and nature of any litigation

concerning the controversy already commenced by or against class members; (c) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (d) the likely difficulties in managing a class action. Fed. R. Civ. P. 23 (b)(3)(A)-(D). To determine whether a class action is a superior method, courts often look to whether it is an "efficient use of both judicial and party resources." *Hinman,* 545 F. Supp. 2d at 807. The superiority requirement is generally satisfied where class members have uniform claims governed by the same law. *In re Bridgestone/Firestone, Inc.*, 288 F.3d 1012, 1015 (7th Cir. 2002).

This case is particularly well-suited for class treatment for settlement because the claims of Plaintiffs and the proposed Settlement Class Members involve the same alleged violations of BIPA for the same alleged failure to maintain a BIPA compliant retention and destruction schedule and the same alleged unauthorized collection, use and storage of Settlement Class Members' biometrics. Absent a class action, most members of the Settlement Class would find the cost of litigating their claims to be prohibitive. It is thus unlikely that individuals would invest the time and expense necessary to seek relief through individual litigation. Here, the Court can resolve the claims of tens of thousands of identically situated individuals in one stroke, substantially serving economies of both time and expense. Accordingly, a class action remains the superior method of adjudicating this action for purposes of settlement and the proposed Settlement Class should be certified. (Dkt. 143 at 7-8.)

> iii.     *The Proposed Form and Method of Notice Through the State Court*
>          *Satisfies Due Process and the Requirements of Fed. R. Civ. P. 23.*

When a class is certified through settlement, Due Process and Rule 23 require that the court "direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). Where, as here, a class is certified pursuant to Rule 23(b)(3), "the court must direct to class members the best notice that is practicable under the circumstances, including

individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). The notice must contain information in plain, easily understood language, including the nature of the action, the class definition(s), the claims, and the rights of class members. Fed. R. Civ. P. 23(c)(2)(B)(i)–(vii); *see In re AT&T*, 270 F.R.D. at 352.

As discussed above, the Parties have agreed to an effective manner and method of distributing Class Notice through administration in the State Court that more than satisfies the requirements of Due Process and Rule 23. Under the notice plan, the Settlement Administrator will send direct notice of the Settlement via U.S. Mail to the Settlement Class Members. (Ex. 1 ¶ 116.) Before sending Notice, the Settlement Administrator will run the Class Members' addresses through the U.S. Postal Service's National Change of Address database and mail the Notice using the most current mailing address information. (*Id.*) For any Class Member whose Notice is returned as undeliverable without a forwarding address, the Settlement Administrator will promptly conduct additional searches of available databases. (*Id.*) Additionally, the Settlement Administrator will continue to update and maintain the Settlement Website, which will contain links to the relevant court documents, the Notice, information outlining how Settlement Class Members can update their mailing address or other contact information, and a list of answers to frequently asked questions. (*Id.,* ¶ 89.) In accordance with Rule 23(e)(4), the Class Notice will inform Settlement Class Members of their right to object or exclude themselves from the Settlement and the process and deadlines for doing so. (*Id.,* § VIII-X.)

Finally, pursuant to the Class Action Fairness Act, 28 U.S.C. § 1715, and no later than ten days from the date of this filing, Defendant will send required notice to the appropriate government entities. 28 U.S.C § 1715(b). Because the proposed notice plan effectuates direct notice to the vast majority of Class Members and fully apprises class members of their rights, it comports with the

requirements of Due Process and Rule 23 and should be approved.

> iv.     *Plaintiffs' Counsel Should be Appointed Class Counsel.*

Under Rule 23, "a court that certifies a class must appoint class counsel . . . [who] must fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B). As described in detail above, proposed Class Counsel have devoted significant time and resources to this litigation and have committed extensive efforts to negotiating and executing this Settlement. Proposed Class Counsel have extensive experience with similar class action litigation, including scores of BIPA cases. *See* Exs. 2-3. Accordingly, the Court should appoint the undersigned Plaintiffs' Counsel to serve as Class Counsel for the Settlement Class pursuant to Rule 23(g).

> 3.     The Court Should Preliminarily Modify the Certified Class Under Fed. R. Civ. P. 23(c)(1)(C) to be Consistent with the Settlement Class.

On March 22, 2022, this Court issued a Memorandum Opinion and Order granting Plaintiff Rogers's Motion for Class Certification. The certified class included: "all individuals whose fingerprint information was registered using an Auto-Gate System at one of BNSF's four Illinois facilities at any time between April 4, 2014 and January 25, 2020." (Dkt. 143 at 1). The Settlement Class runs through preliminary approval, capturing an additional ~2 months of truck driver registrations, which reflects the fact that the Auto-Gate System's biometric capabilities were shut off in March 2020. Consistent with the class definition in the Settlement Agreement and in consideration of factual developments, the Parties jointly request that the Court preliminarily modify the definition of the certified class to include: "All individuals whose fingerprint information was registered using an Auto-Gate System at any of BNSF's four Illinois facilities at any time from April 4, 2014 through the date of the Preliminary Approval Order." *See* Fed. R. Civ. P. 23(c)(1)(C) ("An order that grants or denies class certification may be altered or amended before final judgment.")

## V.   **FINAL APPROVAL HEARING**

The State Court will hold a Final Approval Hearing, at which the Honorable Pamela McLean Meyerson and Honorable Matthew F. Kennelly shall participate. At the Final Approval Hearing, Class Counsel shall request that the State Court grant final approval of the Settlement, and also enter a Final Approval Order that (i) grants final certification, for settlement purposes, of the Settlement Class pursuant to 735 ILCS 5/2 801, (ii) approves the Settlement as a fair, reasonable, adequate and binding release of all claims by the Qualified Class Members, (iii) approves the Settlement as a fair, reasonable, adequate, and binding General Release of all claims by the Class Representatives, (iv) dismisses the State Case with prejudice; (v) grants Plaintiffs' Counsel's forthcoming request for attorneys' fees, expenses, and service awards; and (vi) retains jurisdiction solely for purposes of enforcing the Parties' obligations under the Settlement. In addition, Class Counsel shall request that the Federal Court enter an order approving the Settlement under Rule 23 of the Federal Rules of Civil procedure and dismissing the Federal Case with prejudice.

## VI.   **CONCLUSION**

For the foregoing reasons, Plaintiff Richard Rogers respectfully requests that the Court enter an Order: (1) appointing Richard Rogers and Michael Stewart as the Settlement Class Representatives; (2) appointing Myles McGuire, Evan M. Meyers, David L. Gerbie and Brendan Duffner of McGuire Law, P.C. and Jon Loevy and Michael Kanovitz of Loevy and Loevy as Class Counsel; (3) preliminarily approving the proposed Settlement Agreement; (4) certifying the Settlement Class for purposes of effectuating the Settlement; (5) approving the form and administration of the proposed Class Notice through the State Case; (6) preliminarily modifying the certified class consistent with the Settlement Class; and (7) granting such further relief as the

Court deems reasonable and just.[7]

Dated: February 26, 2024

Respectfully submitted,

RICHARD ROGERS, individually and on behalf
of a class of similarly situated individuals

By:  /s/ David L. Gerbie
       *One of Plaintiff's Attorneys*

Myles McGuire
Evan M. Meyers
David L. Gerbie
Brendan Duffner
MCGUIRE LAW, P.C. (Firm ID No. 56618)
55 West Wacker Drive, Suite 900
Chicago, Illinois 60601
Tel: (312) 893-7002
mmcguire@mcgpc.com
emeyers@mcgpc.com
dgerbie@mcgpc.com
bduffner@mcgpc.com

Jon Loevy
Michael I. Kanovitz
Tom Hanson
LOEVY & LOEVY
311 N. Aberdeen St., 3rd Floor
Chicago, Illinois 60607
Tel: (312) 243-5900
jon@loevy.com
mike@loevy.com

*Proposed Class Counsel*

---

[7] A proposed preliminary approval Order will be provided to the Court.

## <u>CERTIFICATE OF SERVICE</u>

The undersigned, an attorney, hereby certifies that on February 26, 2024, a copy of *Plaintiff's Unopposed Motion & Memorandum in Support of Preliminary Approval of Class Action Settlement* was filed electronically with the Clerk of Court, to be served on all counsel of record.

/s/David L. Gerbie