**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| RICHARD ROGERS, individually and on behalf of similarly situated individuals, | |
| *Plaintiff,* | No. 2019-cv-03083 |
| v. | Hon. Matthew F. Kennelly |
| BNSF Railway Company, a Delaware corporation | |
| *Defendant.* | |

**PLAINTIFF'S *UNOPPOSED* MOTION & MEMORANDUM
IN SUPPORT OF FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

Dated: June 10, 2024

Myles McGuire
Evan M. Meyers
David L. Gerbie
Brendan Duffner
MCGUIRE LAW, P.C.
55 W. Wacker Dr., 9th Fl.
Chicago, IL 60601
Tel: (312) 893-7002
Fax: (312) 275-7895
mmcguire@mcgpc.com
emeyers@mcgpc.com
dgerbie@mcgpc.com
bduffner@mcgpc.com

Jon Loevy
Michael Kanowitz
LOEVY & LOEVY
311 N. Aberdeen St., 3rd Fl.
Chicago, IL 60607
jon@loevy.com
mike@loevy.com
*Counsel for Plaintiff and Class Counsel*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. iii

I. INTRODUCTION ..................................................................................................... 1

II. BACKGROUND ........................................................................................................ 3

   A. The Litigation and Procedural History ................................................................. 3

     1. The Parties' Negotiations Leading to Settlement .......................................... 3

III. THE PROPOSED SETTLEMENT ........................................................................... 4

   A. The Settlement Class ............................................................................................... 4

   B. Settlement Terms. ................................................................................................... 4

   C. Notice and Settlement Administration .................................................................. 5

   D. Exclusion and Objection Procedure ...................................................................... 6

   E. Release ...................................................................................................................... 6

IV. THE SETTLEMENT WARRANTS FINAL APPROVAL ...................................... 7

   A. The Class Notice Fully Satisfied Due Process ...................................................... 8

   B. The Settlement is Fair, Reasonable, Adequate and Should be Approved. ........ 10

     1. Plaintiffs and Class Counsel Have Adequately Represented the Settlement
      Class .................................................................................................................. 10

     2. The Settlement Was Reached Only After Extensive Motion Practice,
      Discovery, and Arm's-Length Negotiation ..................................................... 12

     3. The Relief Provided by the Settlement Is Adequate and Warrants Final
      Approval ............................................................................................................ 14

       i. The Relief Provided by the Settlement Is Excellent ................................... 14

       ii. The Cost, Risk, and Delay of Further Litigation Compared to the
       Settlement's Benefits Favors Final Approval ................................................. 15

       iii. The Method of Distributing Relief to the Settlement Class Members Is
       Effective and Supports Final Approval ........................................................... 16

     4. The Settlement Treats All Settlement Class Members Equally ...................... 17

   C. The Remaining Considerations Set Forth by the Seventh Circuit Support Approval of the
    Settlement ................................................................................................................. 17

     1. The Reaction of the Settlement Class Favors Approval .................................. 17

     2. Class Counsel's Belief That the Settlement Is in the Best Interests of the
      Settlement Class Members Weighs in Favor of Final Approval .................... 18

     3. The Settlement Raises No Red Flags ............................................................... 18

V. CONCLUSION ........................................................................................................ 19

# TABLE OF AUTHORITIES

**Cases**                                                                      **Page(s)**

*Armstrong v. Board of Sch. Dirs. of City of Milwaukee,*
  616 F.2d 305 (7th Cir. 1980) .................................................................. 7

*Cothron v. White Castle System, Inc.,*
  Dkt. No. 128004 (argued on May 15, 2022) ........................................... 12

*Davis, et al., v. Heartland Employment Services, LLC,*
  No. 19-cv-00680 (N.D. Ill. Oct. 25, 2021) ............................................ 14

*Eisen v. Carlisle & Jacquelin,*
  417 U.S. 156 (1974) ............................................................................... 8

*Eubank v. Pella Corp.,*
  753 F.3d at 728 (7th Cir. 2014) ............................................................ 18

*Felzen v. Andreas,*
  134 F.3d 873 (7th Cir. 1998) ................................................................. 7

*Fournigault v. Independence One Mortgage Corp.,*
  1234 F.R.D. 641 (N.D. Ill. 2006) .......................................................... 11

*Goldsmith v. Technology Solutions Co.,*
  9 No. 92 C 4374, 1995 U.S. Dist. LEXIS 15093 (N.D. Ill. Oct. 10, 1995). ............ 12

*In re AT&T Mobility Wireless Data Services Sales Litig.,*
  270 F.R.D. 330 (N.D. Ill. 2010) ........................................................ 8, 15

*In re Southwest Airlines Voucher Litig.*
  No. 11-cv-8176, 2013 U.S. Dist. LEXIS 120735 (N.D. Ill. Dec. 6, 2013) ........ 2, 17

*Isby v. Bayh,*
  75 F.3d 1191 (7th Cir. 1996) ................................................................. 7

*Jones v. CBC Rest. Corp.,*
  No. 19-cv-06736, (N.D. Ill., 2020) ........................................................ 14

*Ortiz v. Fibreboard Corp.,*
  527 U.S. 815 (1999) ............................................................................... 17

*Quarles v. Pret A Manger (USA) Limited,*
  No. 20-cv-07179, (N.D. Ill. May 4, 2022) ............................................. 14

*Retsky Family Ltd. P'ship v. Price Waterhouse LLP,*
  No. 97 C 7694, 2001 WL 1568856 (N.D. Ill. Dec. 10, 2001) ................. 18

*Rysewyk v. Sears Holdings Corp.*,
   No. 15-cv-4519, 2019 U.S. Dist. LEXIS 236004 (N.D. Ill. Jan. 29, 2019) ........................... 10

*Schulte v. Fifth Third Bank*,
   No. 09-CV-6655, 2010 U.S. Dist. LEXIS 144810 (N.D. Ill. Sept. 10, 2010) .................... 13-14

*Schulte v. Fifth Third Bank*,
   805 F. Supp. 2d 560 (N.D. Ill. 2011) ................................................................... 9, 16

*Williams, et al. v. PersonalizationMall.com, LLC,*
   No. 20-cv-00025 (N.D. Ill., 2022) ................................................................... 14

*Wong v. Accretive Health, Inc.*,
   773 F.3d 859, 863 (7th Cir. 2014) ............................................................... 10, 17

*Wordlaw v. Enterprise Leasing Co. of Chicago, et al.*
   No. 20-cv-03200 (N. D. Ill.) ................................................................... 6

**Statutes and Rules**

28 U.S.C. § 1715 ................................................................................... 9-10

Fed. R. Civ. P. 23 .......................................................................... *passim*

740 ILCS 14/1 *et seq.* .................................................................. *passim*

**Miscellaneous Authority**

Conte & Newberg, 4 *Newberg on Class Actions* (4th Ed. 2002) ................................... 7-8

Federal Judicial Center,
   Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide
   2010, available at www.fjc.gov/sites/default/files/2012/NotCheck.pdf ..................... 9

*Manual for Complex Litigation* (4th ed. 2004) ............................................. 7-8

## I.    <u>INTRODUCTION</u>

Plaintiff Richard Rogers respectfully requests that this Court grant final approval of the Parties' Class Action Settlement.[1] The Settlement, if finally approved, will provide substantial monetary relief to the Settlement Class Members and resolve the most advanced claims ever prosecuted under the Illinois Biometric Information Privacy Act, 740 ILCS 14/1, *et seq*. ("BIPA"). The Settlement resolves the above-captioned class action (the "Federal Case"), as well as the related putative class action pending in the Circuit Court of Cook County, Illinois before the Honorable Pamela M. Meyerson, *Rogers et al. v. BNSF Railway Co.*, No. 2019-CH-04393 (the "State Case) (the "Federal Case" and the State Case are collectively referred to as the "Litigation").[2] The Litigation was brought on behalf of individuals who accessed Defendant BNSF Railroad Company's ("Defendant" or "BNSF") facilities and allegedly had their biometrics captured and stored through Auto-Gate Systems at Defendant's Illinois facilities.

The Court preliminarily approved the Settlement on February 28, 2024. Dkt. 296. Under the terms of the Settlement, Defendant will establish a non-reversionary Settlement Fund in the amount of $75,000,000.00 (seventy-five million dollars) from which approximately 46,500 Settlement Class Members will be compensated on an equal basis without having to submit claims. Ex. 1 § IV. Class Notice was effectuated on March 26, 2024. *See* Declaration of Epiq Class Action and Claims Solutions, Inc. Project Manager Scott DiCarlo ("DiCarlo Decl."), attached hereto as <u>Exhibit 2</u> at ¶ 10. The deadline for objections and exclusions was May 7, 2024.

Plaintiff is pleased to report that the Settlement has been met with overwhelming approval by the Settlement Class Members. Following implementation of the Notice Plan approved by the

---

[1] Unless otherwise defined, capitalized terms used herein have the same meaning given to them as in the Parties' Settlement Agreement, a copy of which is attached hereto as <u>Exhibit 1</u>.

[2] In the State Case, Plaintiff Rogers added a second named plaintiff, Michael Stewart, through amendment. When discussed together, Plaintiffs Rogers and Stewart are referred to herein as "Plaintiffs."

Court (including direct mailings to the Settlement Class Members and the establishment of a Settlement Website) no formal or informal opposition has been received—there have been <u>no</u> objections and <u>only six</u> opt out requests. Given the outsized publicity for this case, the large number of "professional objectors" who seek out class settlements, the large class size, and the regularity with which class settlements are met with objection, the absence of any objections here is a testament to the fairness and adequacy of this Settlement. *See In re Southwest Airlines Voucher Litig.,* No. 11 C 8176, 2013 U.S. Dist. LEXIS 120735, at *21 (N.D. Ill. Dec. 6, 2013) (finding that the "low level of opposition" from the class "supports the reasonableness of the settlement").

The universally positive reaction from the Settlement Class Members is unsurprising given that the Settlement is an excellent result. After deducting settlement administration expenses, Class Counsel's requested award of attorneys' fees and expenses, and Plaintiffs' requested Service Award,[3] Class Members will automatically receive checks of over $1,000.00. The total amount of all checks that remain uncashed following the First Distribution of settlement awards will not be returned to Defendant, but rather will be re-distributed amongst the Settlement Class Members who cashed their first settlement distributions.

As demonstrated below, the significant relief provided by the Settlement, along with its equitable and effective method of distribution is an excellent result for the Settlement Class, particularly in view of the risks and delays involved in litigating the substantive merits of their claims. The terms of the Settlement meet and exceed the applicable standards of fairness. Final approval is thus in the best interests of the Settlement Class Members and is consistent with Fed. R. Civ. P. 23 and due process. Accordingly, this Court should grant final approval of the Settlement

---

[3] The approval of attorneys' fees and expenses and the Service Awards will be decided by Judge Meyerson in the State Case, pursuant to Plaintiffs' Motion for Approval of Attorneys' Fees, Expenses and Service Awards filed in the State Case on April 16, 2024.

so that Class Members can receive the significant cash benefit to which they are entitled. Plaintiff respectfully requests that the Court enter an Order: (i) finding that the Settlement is fair, reasonable, and adequate; (ii) granting final approval of the Settlement under Fed. R. Civ. P. 23; (iii) amending the defined certified class to be coextensive with the defined Settlement Class; and (iv) dismissing with prejudice any and all remaining claims in this case.

## II.   <u>BACKGROUND</u>

### A.   The Litigation and Procedural History

The Litigation's extensive procedural history, which was detailed in Plaintiff's Motion for Preliminary Approval (Dkt. 295) is well known by the Court and need not be repeated here.

#### 1.   *The Parties' Negotiations Leading to Settlement*

Over the course of the extensive Litigation that has been pending in two courts since 2019, the Parties have mediated a total of seven times over multiple years with the assistance of three separate experienced neutrals. On September 8, 2023, just prior to the retrial scheduled for October 2, 2023, the Court held its fourth court-mediated settlement conference in this matter, which ultimately led to this settlement. Dkt. 274. Following the Parties' formal settlement efforts, and over the following months, counsel for Plaintiff and Defendant continued to expend significant further efforts and resources negotiating specific terms of the Settlement, including, among other things: the scope of the release; the form and content of the Notice; settlement administration procedures; and the process and deadlines for objections, exclusions, and other submissions to the Court. Eventually, these extensive negotiations culminated in the Settlement Agreement and the attendant exhibits which this Court preliminarily approved on February 28, 2024 and for which Plaintiff now seeks final approval.

III.    **THE PROPOSED SETTLEMENT**

The terms of the Settlement already preliminarily approved by the Court are contained in the Settlement Agreement, and are briefly summarized below:

A.    **The Settlement Class**

The Settlement establishes a Settlement Class defined as follows:

> "All individuals whose fingerprint information was registered using an Auto-Gate System at one of BNSF's four Illinois facilities at any time between April 4, 2014 and the date of the Preliminary Approval Order."

Ex. 1 at ¶ 58.

B.    **Settlement Terms**

The Settlement establishes a $75,000,000.00 (seventy-five million dollar) Settlement Fund. *Id.* at ¶¶ 88. The Settlement Class consists of approximately 46,500 individuals. *Id.* at ¶ 58. The entire amount of the Settlement Fund will be distributed directly to Settlement Class Members on a *pro rata* basis after deductions for the costs of notice and administration, a Fee Award, and Service Awards to the Class Representatives, with no need for Settlement Class Members to submit a claim in order to receive payment. *Id.* at ¶¶ 102-106. As discussed below, after deductions for the costs of notice and administration, an expected Fee Award, and Service Awards to the Class Representatives, Plaintiff anticipates that each Settlement Class Member will still receive over $1,000 net. Moreover, any uncashed check amounts from the Settlement Fund following the first distribution of payments to the Settlement Class Members will be redistributed on an equal, *pro rata* basis to Settlement Class Members who cashed their initial check. *Id.* at ¶¶ 104-106. Any uncashed amounts after the Second Distribution will be distributed to *cy pres. Id.* at ¶ 108. No part of the Settlement Fund will revert to Defendant. *Id.* at ¶ 93. Additionally, Defendant represents that it no longer uses the technology at issue in the Litigation at its Illinois facilities. *Id.* at ¶ 52.

### C. Notice and Settlement Administration

The Settlement resolves the claims of individuals who used the Auto-Gate System at Defendant's facilities in Illinois. After this Court's Order granting preliminary approval, Judge Meyerson's March 5, 2024 Preliminary Approval Order, and pursuant to the Settlement Agreement, direct individual notice was mailed to Settlement Class Members on March 26, 2024. Per the Settlement Agreement, Epiq Class Actions & Claims Solutions ("Epiq"), an industry-leading administrator of class action settlements, was selected to administer the Settlement. *Id.* at ¶¶ 76, 96-97. The Settlement Website, www.BNSFBIPAClassAction.com,[4] has been continually updated with relevant information concerning the Settlement, including all relevant deadlines, and contains case and settlement documents available for download, including the operative Complaint, Settlement Agreement, and the detailed Class Notice. Ex. 1 ¶ 89. Plaintiffs' Motion for Award of Attorneys' Fees, Expenses, and Service Awards was also made available on the Settlement Website for review so that the Settlement Class Members could consider such Motion in advance of the objection and exclusion deadlines.

The Class Notice was carefully drafted in straightforward, easy-to-read language to clearly inform Settlement Class Members of all the material aspects of the Settlement, such as the relief they are entitled to under the Settlement, the amount of the Fee Award and Service Awards that may be sought, and instructions and deadlines for opting out of, or objecting to, the Settlement. The Settlement Website was visited by 17,846 unique individuals. DiCarlo Decl. at ¶ 14. The Settlement Administrator mailed notice to every Class Member where an address was available. *Id*. at ¶¶ 7-12.This targeted and direct individual Notice and method of monetary distribution to

---

[4] This website was initially established following the Court's Order granting class certification (Dkt. 143) and was updated and maintained to reflect the details of the Settlement, including that it released all claims pending in the Federal Case and the State Case.

the Settlement Class Members without a claims process is consistent with what courts have regularly approved in other BIPA settlements.[5] Simply put, the direct notices and Settlement Website have been highly effective at reaching the Settlement Class Members, and importantly, none of them needed to submit a claim in order to receive their Settlement benefits.

**D.     Exclusion and Objection Procedure**

Settlement Class Members had an opportunity to exclude themselves from the Settlement or object to its approval. The procedures and deadlines for filing exclusion requests and objections were identified in the detailed Notice directly sent to Settlement Class Members and were also made available on the Settlement Website. Ex. 1 at ¶¶ 116-122. The Notice informed Settlement Class Members that the Final Approval Hearing would be their opportunity to appear and have any objections heard. *Id.* The Notice also informed Settlement Class Members that they would be bound by the Release contained in the Settlement Agreement unless they exercised their right to exclusion in a timely manner. *Id.* at Ex. A. The deadline for Class Members to file objections or to exclude themselves was May 7, 2024. *No objections were made*, and only six Class Members elected exclusion from the Settlement. DiCarlo Decl. at ¶¶ 18-19.

**E.     Release**

In exchange for the relief described above, the Settlement Class Members who did not exclude themselves will provide the Released Parties a full release of all Released Claims, including BIPA claims, that arose from or related to the subject matter of the Litigation and all claims that were brought or could have been brought in the Litigation, including the State case and the Federal Case. Ex. 1 § VI. Plaintiffs Rogers and Stewart, in their individual capacities, have also granted the Released Parties a general release of all claims germane to them. *Id.* at ¶ 112.

---

[5] *See, e.g., Wordlaw v. Enterprise Leasing Co. of Chicago, et al.* No. 20-cv-03200 (N. D. Ill.).

## IV.    THE SETTLEMENT WARRANTS FINAL APPROVAL

As the Seventh Circuit has recognized, federal courts strongly favor and encourage settlements, particularly in class actions and other complex matters, where the inherent costs, delays, and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain:

> It is axiomatic that the federal courts look with great favor upon the voluntary resolution of litigation through settlement. In the class action context in particular, there is an overriding public interest in favor of settlement. Settlement of the complex disputes often involved in class actions minimizes the litigation expenses of both parties and also reduces the strain such litigation imposes upon already scarce judicial resources.

*Armstrong v. Bd. of Sch. Dirs. of the City of Milwaukee*, 616 F.2d 305, 312-13 (7th Cir. 1980) (citations and quotations omitted), overruled on other grounds by *Felzen v. Andreas*, 134 F.3d 873, 875 (7th Cir. 1998); *see also Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996) ("Federal courts naturally favor the settlement of class action litigation"); Herbert B. Newberg & Alba Conte, 4 Newberg on Class Actions § 11.41 (4th ed. 2002) (citing cases). The alternative means for handling claims like those at issue here – individual litigation – would unduly tax the court system, require a massive expenditure of public and private resources and, given the relatively small value of the claims of the individual class members, would be impracticable. Thus, the proposed Settlement is the best vehicle for Settlement Class Members to receive relief to which they are entitled in a prompt and efficient manner.

The *Manual for Complex Litigation* § 21.63 (4th ed. 2004) describes a three-step procedure for approval of class action settlements:

> (1) Preliminary approval of the proposed settlement at an informal hearing;

(2) Dissemination of mailed and/or published notice of the settlement to all affected class members; and

(3) A "formal fairness hearing" or final settlement approval hearing, at which class members may be heard regarding the settlement, and at which evidence and argument concerning the fairness, adequacy, and reasonableness of the settlement may be presented.

This procedure, used by courts in this Circuit and endorsed by class action commentators, safeguards class members' due process rights and enables the Court to fulfill its role as the guardian of class interests. 4 Newberg § 11.25. Following entry of the Court's Preliminary Approval Order and the distribution of Class Notice, the first two steps in this process have occurred. With this Motion, Plaintiff respectfully requests that the Court take the third and final step and grant final approval of the Settlement. Final approval of a class action settlement requires adherence to due process and is further governed by Federal Rules of Civil Procedure 23(a) and 23(b)(3), and 23(e)(2). As explained below, each prerequisite for final approval is satisfied here.

**A.      The Class Notice Fully Satisfied Due Process.**

When a class is certified through settlement, Due Process and Rule 23 require that the court "direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). The notice must contain information in plain, easily understood language, including the nature of the action, the class definition(s), the claims, and the rights of class members. Fed. R. Civ. P. 23(c)(2)(B)(i)–(vii); *see In re AT&T Mobility Wireless Data Services Sales Litig.,* 270 F.R.D. 330 (N.D. Ill. 2010).

Prior to granting final approval to this Settlement, the Court must consider whether the class members received "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B); *accord Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974); *Schulte v. Fifth Third*

Bank, 805 F. Supp. 2d 560, 595 (N.D. Ill. 2011). The "best notice practicable" does not necessarily require receipt of actual notice by all class members in order to comport with both Rule 23 and the requirements of due process. In general, a notice plan that reaches at least 70% of class members is considered reasonable. See Federal Judicial Center, *Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide* at 3 (2010), available at www.fjc.gov/sites/default/files/2012/NotCheck.pdf.

Here, after preliminary approval, the Parties began an agreed-upon and effective manner and method of distributing Class Notice that more than satisfied the requirements of Due Process and Rule 23. Under the Class Notice plan, the Settlement Administrator sent direct notice of the Settlement via U.S. Mail to the Settlement Class Members. Ex. 1 ¶ 116. Before sending Notice, the Settlement Administrator ran the Class Members' addresses through the U.S. Postal Service's National Change of Address database and mailed the Notice using the most current mailing address information. *Id.* For any Class Member whose Notice was returned as undeliverable without a forwarding address, the Settlement Administrator promptly conducted additional searches of available databases. *Id.* Additionally, the Settlement Administrator continued to update and maintain the Settlement Website, which contained links to the relevant court documents, the Notice, information outlining how Settlement Class Members could update their mailing address or other contact information, and a list of answers to frequently asked questions. *Id.* at ¶ 89. In accordance with Rule 23(e)(4), the Class Notice informed Settlement Class Members of their right to object or exclude themselves from the Settlement and the process and deadlines for doing so. *Id.* at § VIII-X.

Finally, pursuant to the Class Action Fairness Act, 28 U.S.C. § 1715, and no later than ten days from the date of the preliminary approval filing, Defendant sent required notice to the

appropriate government entities. 28 U.S.C § 1715(b). Because the Class Notice effectuated direct notice to the vast majority of Class Members and fully apprised class members of their rights, it comported with the requirements of Due Process and Rule 23. Accordingly, the Settlement's Notice plan has satisfied all due process concerns and thus weighs in favor of granting final approval.

### B. The Settlement Is Fair, Reasonable, Adequate and Should Be Approved.

When deciding whether to grant final approval of a proposed settlement, Rule 23(e)(2) directs courts to consider whether: (1) the named plaintiffs and class counsel have adequately represented the class; (2) the settlement resulted from arm's-length negotiations; (3) the settlement treats class members equally; and (4) the relief provided for the class is adequate. Fed. R. Civ. P. 23(e)(2); *see, e.g.*, *Rysewyk v. Sears Holdings Corp.*, No. 15-cv-4519, 2019 U.S. Dist. LEXIS 236004, at *11-12 (N.D. Ill. Jan. 29, 2019) (Shah, J.).[6] Application of these factors to this case demonstrates that the proposed Settlement is fair, reasonable, and adequate. Each of these factors supports approval of the instant Settlement.

#### 1. Plaintiffs and Class Counsel Have Adequately Represented the Settlement Class.

The first Rule 23(e)(2) factor analyzes whether the named plaintiffs and class counsel have adequately represented the class. Fed. R. Civ. P. 23(e)(2)(4). This requirement is satisfied where the named plaintiffs: (1) possess an interest in the outcome of the case sufficient to ensure vigorous advocacy; (2) have no interest antagonistic to the class; and (3) have retained qualified and

---

[6] The factors to be considered under the 2018 amendment to Rule 23 "overlap with the factors articulated by the Seventh Circuit, which include: '(1) the strength of the case for plaintiffs on the merits, balanced against the extent of the settlement offer; (2) the complexity, length, and expense of further litigation; (3) the amount of opposition to the settlement; (4) the reaction of members of the class to the settlement; (5) the opinion of competent counsel; and (6) stage of the proceedings and the amount of discovery completed.'" *Rysewyk*, 2019 U.S. Dist. LEXIS 236004, at *12 (quoting *Wong v. Accretive Health, Inc.*, 773 F.3d 859, 863 (7th Cir. 2014)).

competent counsel. *Fournigault v. Independence One Mortgage Corp.*, 234 F.R.D. 641, 646 (N.D. Ill. 2006).

The first prong of the adequacy analysis is satisfied here. Plaintiffs' interests in this case are aligned with, and not antagonistic to, those of the Settlement Class they seek to represent. Plaintiffs and the other Settlement Class Members all share identical claims arising from a common course of conduct: Defendant's allegedly unlawful collection, retention, and dissemination of their biometrics. To vindicate those claims, Plaintiffs sought out legal representation after coming to believe their rights had been violated, and their pursuit of the Litigation has demonstrated that they have been, and will remain, zealous advocates for the Settlement Class. Plaintiffs have sacrificed their time and privacy on behalf of the Class by agreeing to publicly serve as the named plaintiffs here and in the State Case. Notably, Plaintiffs both testified during trial in the Federal Case and are both currently named plaintiffs in the State Case. Thus, Plaintiffs have the same interests as the Settlement Class, and have at all times acted as zealous advocates of the Settlement Class Members' interests. In finding adversarial class certification appropriate, the Court found that Plaintiff Rogers was an adequate class representative. Dkt. 143 at 6. Similarly, in finding preliminary approval appropriate, the Court found that "[t]he class representatives and appointed class counsel have more than adequately represented the class throughout this litigation, including during the course of the negotiations that led to the proposed settlement." Dkt. 296 at 2.

The second prong of the adequacy analysis is also satisfied because Class Counsel have extensive experience in complex litigation and class actions involving statutory privacy claims such as BIPA and have been found adequate and appointed class counsel in scores of cases arising under BIPA and various other consumer privacy statutes in this Court and in state and federal

11

courts throughout the country. Dkts. 295-2 at ¶ 3; 295-3 at Ex. A; Declaration of Class Counsel

Evan M. Meyers ("Meyers Decl."), attached hereto as <u>Exhibit 3</u> at ¶¶ 10-11. Drawing on this

experience, Class Counsel were able to effectively evaluate the merits of this case, the benefits of

the proposed Settlement, and the attendant risks of litigation. Further, Class Counsel have

vigorously pursued the class claims from the outset of the Litigation, which spans over five years

of active litigation in two courts. Dkts. 295-2 at ¶¶ 10-11; 295-3 at ¶¶ 8-9; Meyers Decl. at ¶¶ 10-

11. These efforts culminated in an excellent settlement providing valuable monetary benefits. As

such, the Court should find the adequacy of representation prong met.

        2.    <u>The Settlement Was Reached Only After Extensive Motion Practice, Discovery, and Arm's-Length Negotiation</u>.

The second Rule 23(e)(2) factor focuses on whether the Settlement was "negotiated at

arm's length." There is usually a presumption of fairness when a proposed class settlement "is the

product of arm's-length negotiations, sufficient discovery has been taken to allow the parties and

the court to act intelligently, and counsel involved are competent and experienced." 4 Newberg §

11.41; *Goldsmith v. Technology Solutions Co.,* No. 92 C 4374, 1995 U.S. Dist. LEXIS 15093, at

*10 n.2 (N.D. Ill. Oct. 10, 1995). In determining whether this factor is satisfied, the Court may

consider "the nature and amount of discovery in this or other cases, or the actual outcomes of other

cases, [which] may indicate whether counsel negotiating on behalf of the class had an adequate

information base." Fed. R. Civ. P. 23(e)(2)(A) & (B) advisory committee's note.

Here, the Parties litigated these two cases heavily and underwent substantial discovery and

motion practice. The Federal Case was successfully litigated through trial, resulting in the first-

ever judgment to be entered in a BIPA case, but pursuant to the Parties' post-trial motions, the

Court vacated the monetary award on June 30, 2023. Dkt. 260. In light of the Illinois Supreme

Court's ruling in *Cothron v. White Castle Sys., Inc.* and the Parties' pre-retrial motions in advance

of a damages retrial (Dkts. 272-273), Plaintiffs faced numerous additional questions of first impression, as well as appellate risk. Similarly, the State Case, though less procedurally advanced than the Federal Case, has been heavily litigated and would otherwise be on a similar path to trial. At the time the Settlement was reached, the Parties had fully briefed Plaintiffs' Motion for Class Certification and Defendant's Motion for Judgment on the Pleadings and those motions were set for oral argument in State Court. Accordingly, Plaintiffs and Class Counsel had sufficient information about the facts of the Litigation to fairly weigh their prospects of ultimate success on the merits versus the negotiated outcome provided by the Settlement such that the Court should find that they adequately represented the Class.

Indeed, it was not until the eve of the second trial in the Federal Case that the Parties were able to resolve the Litigation. As previously discussed, the instant Settlement was reached only following a combined seven mediations and settlement conferences, which occurred with the assistance of three separate experienced neutrals. Your Honor's September 8, 2023 settlement conference ultimately formed the basis of this Settlement. Over the following months, counsel for the Parties continued to expend significant further efforts negotiating numerous specific, material terms of the Settlement. That such an extensive and formal process was overseen by Your Honor – and only after a full trial on the merits – underscores the non-collusive nature of the proposed Settlement. *See* Fed. R. Civ. P. 23(e)(2)(A) & (B) advisory committee's note ("[T]he involvement of a neutral or court-affiliated mediator or facilitator in those negotiations may bear on whether they were conducted in a manner that would protect and further the class interests.")

For all these reasons, the Court should find the Settlement here was the result of good-faith, arm's-length negotiations. *See Schulte v. Fifth Third Bank*, No. 09-CV-6655, 2010 U.S. Dist. LEXIS 144810, at *15-16 n.5, at *4 n.5 (N.D. Ill. Sept. 10, 2010) (noting that courts "presume the

absence of fraud or collusion in negotiating the settlement, unless evidence to the contrary is offered").

        3.     <u>The Relief Provided by the Settlement Is Adequate and Warrants Final Approval.</u>

        *i.     The Relief Provided by the Settlement Is Excellent.*

The Settlement in this case is an excellent result for the Settlement Class Members and provides significant monetary benefits, as every Settlement Class Member will receive an equal payment from the Settlement Fund, after deductions for settlement administration expenses and any court-approved attorneys' fees and Service Awards. As such, Settlement Class Members can expect to each receive over $1,000.00 from the Settlement Fund.

The Court need not rule on a blank slate as to the reasonableness of the Settlement. Similar class action settlements involving alleged violations of BIPA have received final approval in this District and elsewhere. *See, e.g.*, *Davis, et al., v. Heartland Employment Services, LLC,* No. 19-cv-00680, Dkt. 130 (N.D. Ill. Oct. 25, 2021) (Valderrama, J.) (approving BIPA employment class action settlement with a gross payment of $500 per class member); *Williams, et al. v. PersonalizationMall.com, LLC,* No. 20-cv-00025 Dkt. 103 (N.D. Ill., 2022) (Durkin, J.) (approving BIPA timekeeping class action settlement with a gross recovery of $220 per class member); *Jones v. CBC Rest. Corp.,* No. 19-cv-06736, Dkt. 53 (N.D. Ill., 2020) (approving BIPA timekeeping class action settlement with a gross payment of $800 per class member); *Quarles v. Pret A Manger (USA) Limited,* No. 20-cv-07179, (N.D. Ill. May 4, 2022) Dkt. 53 (Shah, J.) (finally-approved BIPA class settlement resulted in gross recovery of $850 per class member).

Here, from a gross fund perspective, each Settlement Class Member will receive a settlement payment of over $1,600.00. Even after the deduction of settlement administration expenses, any Fee Award, and any Service Awards, Settlement Class Members who did not

exclude themselves will still receive over $1,000.00, which is fair, reasonable, and adequate, and warrants the Court's final approval.[7]

>    ii.      *The Cost, Risk, and Delay of Further Litigation Compared to the Settlement's Benefits Favors Final Approval.*

While Plaintiffs believe their BIPA claims against Defendant are strong, they are also aware that Defendant has denied their allegations and raised numerous legal defenses, many of which, if successful, could result in Plaintiffs and the Settlement Class Members receiving no payment whatsoever. Another consideration affecting the long-term viability of Plaintiffs' claims is the uncertain future of BIPA itself, as multiple bills designed to blunt BIPA's protections and limit the availability of monetary damages have been introduced and recently advanced in the Illinois Legislature.[8]

This substantial relief, when weighed against the risk of continued litigation, makes the Settlement particularly strong. Importantly, due to the bifurcation of this Litigation, Plaintiffs were pursuing very similar claims in two separate courts. Significant high stakes motion practice, trials, and appeals loomed in both cases absent settlement.

Moreover, and as was demonstrated in the Federal Case, given the complexity of the issues, the numerous issues of first impression, the size of the putative class, and the amount in controversy, appellate litigation was highly likely with respect to any decision on the merits (at summary judgment and/or trial). Indeed, even if Plaintiffs had been victorious in both the State Case and the Federal Case, Defendant raised multiple preemption defenses and preserved those

---

[7] Because every settlement is a compromise, courts should not reject a settlement solely because it does not provide a complete victory. Parties to a settlement "benefit by immediately resolving the litigation and receiving some measure of vindication for [their] position[s] while foregoing the opportunity to achieve an unmitigated victory." *In re AT&T*, 270 F.R.D. at 347 (internal quotations and citations omitted).
[8] *See* Illinois S.B., 3053 (2018); 2134 (2019); 3593 (2020); 3591 (2020) and H.B. 5103 (2018); 5374 (2020); 2979 (2023/2024). One such bill (SB2979) has been passed and is currently awaiting Governor Pritzker's signature.

defenses for purposes of appeal. Dkts. 19-20, 235. The Parties' retrial on the question of damages itself was also sure to result in rulings on numerous additional questions of first impression. These questions, along with the additional defenses present in Defendant's Answer and Affirmative Defenses, if successful, could have resulted in Plaintiffs and the proposed Settlement Class Members receiving no compensation whatsoever, or at least materially less, absent settlement. *See Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 582 (N.D. Ill. 2011). "Settlement allows the class to avoid the inherent risk, complexity, time, and cost associated with continued litigation." *Id*. at 586. "If the Court approves the [Settlement], the present lawsuit will come to an end and [Settlement Class Members] will realize both immediate and future benefits as a result." *Id.* Taking the available remaining defenses into account, and recognizing the risks involved in any litigation, the quality relief afforded to each Settlement Class Member represents a truly excellent result for the Settlement Class. Approval of the Settlement will allow Plaintiffs and the Settlement Class Members to receive meaningful and significant payments now, instead of years from now—or perhaps never. *Id*. at 582.

> iii. *The Method of Distributing Relief to the Settlement Class Members Is Effective and Supports Final Approval.*

The relief provided to Settlement Class Members will be distributed in an effective and efficient manner that treats all Settlement Class Members equally in accordance with Fed. R. Civ. P. 23(e)(2)(C)(iii) and (D). Where most other class action settlements require Settlement Class Members to submit claims in order to receive compensation, here Settlement Class Members do not have to do anything to receive a substantial check. The "direct check" method utilized here is far more efficient than a traditional claims process and will result in many more Settlement Class Members receiving compensation than likely otherwise would. Accordingly, this factor weighs in favor of granting final approval.

####     4.     The Settlement Treats All Settlement Class Members Equally.

The final Rule 23(e)(2) subpart supports approval where the proposed settlement treats all class members the same. Fed. R. Civ. P. 23(e)(2)(D). Here, each Settlement Class Member has identical BIPA claims against Defendant, each received the same notice, and each will receive an equal, *pro rata* share of the Settlement Fund. As such, the proposed Settlement "treats class members equitably relative to each other." Fed. R. Civ. P. 23(2)(D). *See Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 855 (1999) (where class members are similarly situated with similar claims, equitable treatment is "assured by straightforward pro rata distribution of the limited fund"). Because there is no disparate treatment between members, this factor is also satisfied.

**C.     The Remaining Considerations Set Forth by the Seventh Circuit Support Approval of the Settlement.**

In addition to the requirements that overlap with those now required by Rule 23(e), the Seventh Circuit requires a few additional considerations: the class's reaction to the settlement, the opinion of competent counsel, and whether the settlement raises any red flags that courts should be wary of. *Wong*, 773 F.3d at 863. Here, each additional consideration weighs in favor of granting final approval.

####     1.     The Reaction of the Settlement Class Favors Approval.

The Court-approved Settlement Administrator diligently implemented the Class Notice plan set forth in the Settlement Agreement, and the objection and exclusion deadlines have passed *without a single person* objecting to the Settlement, and only six Settlement Class Members elected to exclude themselves from the Settlement. DiCarlo Decl.  ¶ 18. The complete lack of objections and minimal opt outs strongly support granting final approval of the Settlement. See *In re Southwest,* 2013 U.S. Dist. LEXIS 120735, at *21 (N.D. Ill. Dec. 6, 2013) (finding that the "low level of opposition" "supports the reasonableness of the settlement.")

2.    <u>Class Counsel's Belief That the Settlement Is in the Best Interests of the Settlement Class Members Weighs in Favor of Final Approval.</u>

Where Class Counsel has "extensive experience in consumer class actions and complex litigation[,]" their "belie[f] that the [s]ettlement is beneficial to the [c]lass" supports approval of the settlement. *Schulte*, 805 F. Supp. 2d at 586; see also *Retsky Family Ltd. P'ship v. Price Waterhouse LLP,* No. 97 C 7694, 2001 WL 1568856, at *3 (N.D. Ill. Dec. 10, 2001) (finding plaintiff's counsel competent, and their endorsement of a settlement thus supporting approval, where counsel were "experienced and skilled practitioners in the [relevant] field, and [were] responsible for significant settlements as well as legal decisions that enable litigation such as this to be successfully prosecuted") (internal quotations omitted). As discussed at length in Plaintiff's Motion for Preliminary Approval, Class Counsel are highly experienced in the field of BIPA class litigation and are competent to give their opinion on this Settlement. *See* Meyers Decl. ¶¶ 3-4; Dkts. 295-2 at ¶ 3; 295-3 at Ex. A. Put simply, and for the reasons discussed above, Class Counsel believe that the Settlement provides outstanding monetary and prospective relief without the uncertainty and delay that years of additional litigation would bring. *Id.* This factor thus weighs in favor of final approval.

3.    <u>The Settlement Raises No Red Flags.</u>

Finally, the Settlement raises none of the red flags identified by the Seventh Circuit in analyzing class settlements. In *Eubank v. Pella Corp.,* the Seventh Circuit identified "almost every danger sign in a class action settlement that our court and other courts have warned district judges to be on the lookout for[.]" 753 F.3d at 728 (7th Cir. 2014). Those signs include (i) a single class containing two adverse subgroups, (ii) a familial relationship between class counsel and the class representative, (iii) failure to establish the amount of class member recovery, (iv) the reversion of any unawarded attorneys' fees to defendant, (v) an advance of attorneys' fees before notice of the

settlement was provided to class members, (vi) a provision in the settlement agreement denying incentive awards to class representatives who objected to the settlement, (vii) providing some class members only coupons, and (viii) a complicated claims procedure creating substantial obstacles to recovery. *Id*. at 721-28.

Here, none of those red flags are present. There are no subgroups to the Settlement Class, and the Class Representatives, Mr. Rogers and Mr. Stewart, have no familial or other relationship with Class Counsel or any member of their law firms. The Notice here was simple and straightforward: Class Members received direct notice via U.S. mail and will receive payment under the Settlement in the same way without a claims process. The Settlement Fund will be distributed to Class Members on a *pro rata* basis, and no amount will revert to Defendant. Ex. 1 at ¶ 93. Under the Settlement, there has also been no advance of attorneys' fees to Class Counsel before notice was provided, and there is no provision in the Settlement Agreement denying an incentive award to named plaintiffs who do not support the Settlement. Altogether, the Settlement here is beneficial to Class Members and displays no warning signs that should give this Court pause. The Settlement should therefore be finally approved.

## V.    **CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that the Court enter an Order: (i) finding that the Settlement is fair, reasonable, and adequate; (ii) granting final approval of the Settlement under Fed. R. Civ. P. 23; (iii) amending the defined certified class to be coextensive with the defined Settlement Class; (iv); dismissing with prejudice any and all remaining claims in this case; and (v) providing such other and further relief as the Court deems reasonable and just.[9]

---

[9] A copy of a Proposed Final Approval Order is attached hereto as <u>Exhibit 4.</u>

Dated: June 10, 2024

Respectfully submitted,

RICHARD ROGERS, individually and on behalf of a class of similarly situated individuals

By: /s/          *Brendan Duffner*          
          *One of Plaintiff's Attorneys*

Myles McGuire
Evan M. Meyers
David L. Gerbie
Brendan Duffner
MCGUIRE LAW, P.C.
55 W. Wacker Drive, 9th Fl.
Chicago, IL 60601
Tel: (312) 893-7002
mmcguire@mcgpc.com
emeyers@mcgpc.com
dgerbie@mcgpc.com
bduffner@mcgpc.com

Jon Loevy
Michael I. Kanovitz
Tom Hanson
LOEVY & LOEVY
311 N. Aberdeen St., 3rd Floor
Chicago, Illinois 60607
Tel: (312) 243-5900
jon@loevy.com
mike@loevy.com

*Counsel for Plaintiff and Class Counsel*

## CERTIFICATE OF SERVICE

I hereby certify that on June 10, 2024, I electronically filed the foregoing *Plaintiff's Unopposed Motion & Memorandum in Support of Final Approval of Class Action Settlement* with the Clerk of the Court using the CM/ECF system. A copy of said document will be electronically transmitted to all counsel of record.

/s/  *Brendan Duffner*